# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | | **CRIMINAL NO.   07-550 (s)** |
| **v.** | | **DATE FILED:** _____ |
| **KABONI SAVAGE,** | | **VIOLATIONS:** |
| a/k/a "Bonnie," | : | **18 U.S.C. § 1962(d) (conspiracy to** |
| a/k/a "Yusef Billa," | | **participate in a racketeering enterprise -** |
| a/k/a "Joseph Amill," | : | **1 count)** |
| **LAMONT LEWIS,** | | **18 U.S.C. § 1959(a)(1) (murder in aid of** |
| a/k/a "Poppy-Eye," | : | **racketeering activity - 12 counts)** |
| a/k/a "Mont," | | **18 U.S.C. § 1959(a)(3) (assault with a** |
| **ROBERT MERRITT,** | : | **dangerous weapon in aid of racketeering** |
| a/k/a "B.J.," | | **activity - 1 count)** |
| a/k/a "Bishop," | : | **18 U.S.C. § 1959(a)(5) (conspiracy to** |
| **STEVEN NORTHINGTON,** | | **commit murder in aid of racketeering** |
| a/k/a "Smoke," | : | **activity - 1 count)** |
| a/k/a "Michael Tillery," | | **18 U.S.C. § 1958 (interstate travel to** |
| a/k/a "Syeed Burhannon," | : | **commit murder-for-hire - 1 count)** |
| a/k/a "Darnell Doss," | | **18 U.S.C. § 1512(a) (tampering with a** |
| a/k/a "S1" | : | **witness  - 1 count)** |
| | | **18 U.S.C. § 1513(a) (retaliating against a** |
| | ; | **witness  - 1 count)** |
| | | **18 U.S.C. § 844(h)(1) (using fire to** |
| | : | **commit a felony  - 1 count)** |
| | | **21 U.S.C. § 841(a)(1) (distribution of 50** |
| | : | **grams or more of "crack" cocaine base  -** |
| | | **4 counts)** |
| | : | **18 U.S.C. § 924(c) (use and carrying of a** |
| | | **firearm during and in relation to a crime** |
| | : | **of violence - 2 counts)** |
| | | **18 U.S.C. § 924(c) (use and carrying of a** |
| | | **firearm during and in relation to a drug** |
| | | **trafficking crime - 1 count)** |
| | | **18 U.S.C. § 2 (aiding and abetting)** |
| | | **Notice of special findings** |

## SUPERSEDING  INDICTMENT

## COUNT ONE

## CONSPIRACY TO PARTICIPATE IN A RACKETEERING (RICO) ENTERPRISE
## 18 U.S.C. § 1962(d)

**THE GRAND JURY CHARGES THAT:**

### THE RACKETEERING CONSPIRACY

1.      From a time at least as early as late 1997, to on or about August 16, 2007,

in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont,"**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop," and**
**STEVEN NORTHINGTON,**
**a/k/a "Smoke,"**
**a/k/a "Michael Tillery,"**
**a/k/a "Syeed Burhannon,"**
**a/k/a "Darnell Doss,"**
**a/k/a "S1,"**

being persons employed by and associated with an enterprise known as the "Kaboni Savage

Organization" ("KSO" ), as more fully described in paragraphs 2 through 12 of this count, which

enterprise was engaged in, and the activities of which affected, interstate commerce, conspired

and agreed, with each other, and with others known and unknown to the grand jury, to violate

Title 18, United States Code, Section 1962(c), that is, to knowingly and unlawfully conduct and

participate, directly and indirectly, in the conduct of the affairs of such enterprise through a

2

pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which consisted of multiple acts:

        a.      involving murder, which is chargeable under Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502, 306, and 903, of the laws of the Commonwealth of Pennsylvania, which are punishable by imprisonment for more than one year, and which is defined as the intentional killing of a human being, which killing was willful, deliberate and premeditated, the knowing aiding and abetting, and willful causing of that murder with the intent to promote or facilitate, aid or attempt to aid, and solicit another to commit the intentional killing, and the agreement to commit the intentional killing;

        b.      involving the receiving, concealing, selling, and otherwise dealing in controlled substances; namely, conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, 50 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), heroin, marijuana, and phencyclidine ("PCP"), which is indictable under Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846;

        c.      involving arson, which is chargeable under Title 18, Pennsylvania Consolidated Statutes Annotated, Section 3301, of the laws of the Commonwealth of Pennsylvania, which is punishable by imprisonment for more than one year, and which is defined by Pennsylvania law as the intentional starting of a fire or causing of an explosion, while either recklessly placing another person in danger of death or bodily injury, or with the purpose of destroying or damaging an inhabited building or occupied structure;

3

d.      indictable under Title 18, United States Code, Section 1512, tampering with a witness, by killing and attempting to kill another person, with intent to prevent the attendance and testimony of any person in an official proceeding; and by using physical force, and the threat of physical force against any person, or attempting to do so, with the intent to influence, delay, or prevent the testimony of any person in an official proceeding;

e.      indictable under Title 18, United States Code, Section 1513, retaliating against a witness, by killing and attempting to kill another person with intent to retaliate against any person for the attendance of a witness at an official proceeding, and testimony at an official proceeding; or for a person's providing to law enforcement officers information relating to the commission of a federal offense;

f.      indictable under Title 18, United States Code, Section 1956, the laundering of monetary instruments, by conducting and attempting to conduct financial transactions which involve the proceeds of specified unlawful activity, that is, dealing in controlled substances, knowing that the property involved in these financial transactions represents the proceeds of some form of unlawful activity, and knowing that the transactions are designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity;

g.      indictable under Title 18, United States Code, Section 1957, knowingly engaging and attempting to engage in monetary transactions in criminally derived property, in values greater than $10,000, which property is derived from specified unlawful activity, that is, dealing in controlled substances; and

4

h.    indictable under Title 18, United States Code, Section 1958, interstate travel to commit murder-for-hire, traveling in interstate commerce, and using a facility in interstate commerce, with intent that a murder be committed in violation of the laws of any State or of the United States, as consideration for the receipt of, or as consideration for the promise or agreement to pay anything of pecuniary value.

THE RACKETEERING ENTERPRISE

At all times material to this indictment:

2.    The defendants and others were members of a regional criminal organization, based in North Philadelphia, that: packaged, prepared, and distributed controlled substances throughout the greater Philadelphia area; distributed drugs and collected drug proceeds at the residence of KABONI SAVAGE, at 3643 North Darien Street, in North Philadelphia; and operated multiple drug distribution centers in North Philadelphia, which centers were often referred to as "drug corners."  This organization consisted of a number of members and associates, some of whom were also members of the organization known as the "Erie Avenue Mob" ("EAM"), which during the time frame of this indictment was supplied drugs by, and was in part controlled by, this organization.  This criminal organization was known as the Kaboni Savage Organization ("KSO").

3.    The KSO, including its leadership, members, and associates, constituted an enterprise, as that term is defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

5

4.      This enterprise was engaged in, and its activities affected, interstate commerce, and functioned as follows:

5.      The KSO maintained control of its drug distributions, and its exclusive control of its drug corners, through a pattern of threats, intimidation, violence, and murder.

6.      The KSO recruited members, and demanded of its members loyalty and submission to the KSO, and to its leadership, as a condition of membership.

7.      The KSO was an organization dedicated to committing drug trafficking offenses and violent crimes, including murder, arson, money laundering, the use and carrying of firearms during and in relation to violent crimes and drug trafficking crimes, witness tampering, retaliation against witnesses, and assault and battery.

## PURPOSES OF THE ENTERPRISE

8.      It was a purpose of the enterprise that its members and associates would obtain money and property, enrich its members, and generate revenue for the enterprise by committing criminal acts, consisting primarily of drug distribution, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere.

9.      It was a further purpose of the enterprise that its members and associates would maintain, preserve, protect and attempt to expand the power, territory and profits of the enterprise through the use of threats, intimidation, violence, and murder.

10.     It was a further purpose of the enterprise that its members avoid arrest, prosecution, and imprisonment for criminal offenses, in state and federal courts, by intimidating witnesses and potential witnesses, placing them in fear, retaliating against witnesses and their family members, and by murdering witnesses and their family members.

6

## MANNER AND MEANS OF THE ENTERPRISE

11.____The manner and means used by the enterprise to further its goals and achieve its purposes included the following:

(a)      Members of the enterprise (members) packaged, prepared, distributed, sold, and possessed with intent to distribute controlled substances, primarily cocaine and "crack" cocaine base, but also heroin, marijuana, phencyclidine ("PCP"), and other controlled substances, with the permission, and under the supervision, of the KSO, the proceeds of which were used directly and indirectly to benefit the KSO.

(b)      Members diluted, re-compressed, and re-packaged cocaine, in powder form, to increase profits to the KSO.

(c)      Members distributed controlled substances throughout the greater Philadelphia area, including drug corners controlled by the KSO in Philadelphia, including but not limited to street corners at:  8th & Venango Streets; 8th & Butler Streets; 9th Street & Erie Avenue; and Franklin & Pike Streets.

(d)      Members obtained, possessed, used, and carried firearms, during and in relation to the commission of violent crimes and drug trafficking crimes on behalf of the KSO.

(e)      Members committed and conspired, attempted, and threatened to commit, acts of violence against rival drug traffickers and others, to protect and expand the KSO's territory, scope of criminal operations, and revenues.

(f)      Members threatened, intimidated, brought violence upon, and murdered witnesses, potential witnesses, and the family members of witnesses and potential witnesses,

whom the members believed may testify against members and associates in criminal proceedings in state and federal courts of law.

(g)      Members conducted, and attempted to conduct, financial transactions which involved the proceeds of drug dealing, including the purchase of properties and automobiles in false names, in order to conceal the nature and source of those proceeds.

(h)      Members engaged and attempted to engage in monetary transactions in criminally derived property, in values greater than $10,000, which property was derived from drug dealing.

### THE DEFENDANTS AND THEIR ROLES IN THE ENTERPRISE

12.      The defendants' roles in the enterprise are as follows:

(a)      Defendant KABONI SAVAGE, a/k/a "Bonnie," a/k/a "Yusef Billa," a/k/a "Joseph Amill," was the leader of, and exercised direct authority over, the members of the KSO. He participated in murders, murder conspiracy, arson, money laundering, beatings, conspiracy to distribute controlled substances, carrying firearms during violent crimes, witness tampering, and witness retaliation.  He ordered murders of rival drug dealers, people he deemed to be disloyal to the KSO, witnesses, potential witnesses, and family members of witnesses.

(b)      Defendant LAMONT LEWIS, a/k/a "Poppy-Eye," a/k/a "Mont," was a drug distributor, drug corner boss, enforcer, and assassin for the KSO.  He participated in murders, murder conspiracy, arson, the distribution of controlled substances, conspiracy to distribute controlled substances, carrying firearms during violent crimes, carrying firearms during drug trafficking crimes, witness tampering, witness retaliation, and interstate travel to commit murder-for-hire.

(c)     Defendant ROBERT MERRITT, a/k/a "B.J.," a/k/a "Bishop," was a drug distributor, enforcer, and assassin for the KSO.  He participated in murders, murder conspiracy, arson, the distribution of controlled substances, carrying firearms during violent crimes, carrying a firearm during a drug trafficking crime, witness tampering, and witness retaliation.

(d)     Defendant STEVEN NORTHINGTON, a/k/a "Smoke," a/k/a "Michael Tillery," a/k/a "Syeed Burhannon," a/k/a "Darnell Doss," a/k/a "S1" was a drug distributor, drug corner boss, enforcer, and assassin for the KSO.  He participated in murders, the distribution of controlled substances, carrying firearms during violent crimes, witness tampering, and witness retaliation.

## THE AGREEMENT

13.     It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the enterprise's affairs.

## OVERT ACTS

14.     In furtherance of the conspiracy, and to effect the objects and purposes thereof, the defendants, and other co-conspirators not named as defendants, committed various overt acts, including but not limited to the following:

(1)     On or about March 19, 1998, in Philadelphia, KABONI SAVAGE shot and killed, and caused the murder of, Kenneth Lassiter, at or near the corner of 8th & Butler Streets.

(2)     On or about September 8, 1999, in Maple Shade, New Jersey and elsewhere, KABONI SAVAGE obtained at least ten kilograms of cocaine from a supplier from

Florida, and packaged and re-compressed that cocaine in an apartment he rented in Maple Shade, New Jersey, under the false name "Joseph Amill."

(3)     On or about September 10, 1999, Maple Shade, New Jersey, KABONI SAVAGE and others possessed cocaine, "re-rocking" presses, packaging materials, and drug-cutting substances, in an apartment rented by SAVAGE in the false name of "Joseph Amill."

(4)     On or about September 17, 1999, in Philadelphia, KABONI SAVAGE possessed items used in the packaging and re-compression of cocaine at a self-storage locker at 12005 Roosevelt Boulevard, which locker SAVAGE leased under the false name "Joseph Amill."

(5)     On or about April 5, 2000, in Philadelphia, ROBERT MERRITT possessed with intent to distribute approximately 40 grams of cocaine base ("crack").

(6)     In or about May 2000, in Philadelphia, KABONI SAVAGE received gifts of money and financial support from co-conspirators known and unknown to the grand jury, as a show of respect and loyalty upon SAVAGE's release from custody, on bond.

(7)     In or about May 2000, in Philadelphia, KABONI SAVAGE received from co-conspirator Gerald Thomas, a/k/a "Uncle Bubbie," a/k/a "Bub," equipment, that is, steel presses, and molds, to be used in the re-compression and packaging of cocaine.

(8)     In or about May 2000, in Philadelphia, KABONI SAVAGE received from co-conspirator Craig Oliver approximately three kilograms of cocaine, at 3643 North Darien Street, which cocaine was re-compressed and packaged by SAVAGE and co-conspirators Eugene Coleman and Kareem Bluntly, a/k/a "Bree."

(9 )    On or about June 14, 2000, in Philadelphia, ROBERT MERRITT possessed with intent to distribute cocaine base ("crack").

10

(10 )    On or about July 25, 2000, in Philadelphia, ROBERT MERRITT possessed with intent to distribute approximately 11.7 grams of cocaine base ("crack").

(11)    In or about the Summer of 2000, in Philadelphia, KABONI SAVAGE purchased from co-conspirator Juan Rosado, a/k/a "Chucky," approximately one kilogram of cocaine, and negotiated with Juan Rosado to receive regular supplies of multiple kilograms of cocaine on a semi-weekly to weekly basis.

(12)    On or about August 2, 2000, in Philadelphia, KABONI SAVAGE,  co-conspirator Kareem Bluntly, a/k/a "Bree," and others known to the grand jury, conducted a cocaine transaction with Mansur Abdullah, a/k/a "Shafiq."

(13)    On or about August 2, 2000, in Philadelphia, KABONI SAVAGE and co-conspirator Kareem Bluntly, a/k/a "Bree," shot and killed, and caused the murder of, Mansur Abdullah, a/k/a "Shafiq," stole intended drug proceeds, and ordered others to burn the body of Mansur Abdullah.

(14)    On or about September 27, 2000, in Philadelphia, KABONI SAVAGE negotiated with, and agreed to supply, co-conspirators Gerald Thomas, a/k/a "Uncle Bubbie," a/k/a "Bub," and Paul Daniels, at least two kilograms of cocaine.

(15)    On or about October 7, 2000, in Philadelphia, KABONI SAVAGE agreed to obtain approximately six kilograms of cocaine from a supplier at a price of $27,500 per kilogram.

(16)    On or about October 8, 2000, in Philadelphia, KABONI SAVAGE discussed with co-conspirator Gerald Thomas, a/k/a "Uncle Bubbie," a/k/a "Bub," the distribution of two kilograms of cocaine, and the anticipated distribution of an additional five kilograms of cocaine.

11

(17)     On or about October 18, 2000, in Philadelphia, KABONI SAVAGE discussed with co-conspirators Gerald Thomas, a/k/a "Uncle Bubbie," a/k/a "Bub" and Paul Daniels, the distribution of approximately one-half kilogram of cocaine.

(18)     On or about January 18, 2001, in Philadelphia, KABONI SAVAGE received approximately nine kilograms of cocaine from Juan Rosado, a/k/a "Chucky."

(19)     On or about January 26, 2001, in Philadelphia, KABONI SAVAGE purchased a 1998 Ford automobile in exchange for approximately $20,135 in drug proceeds, in the false name of "Yusef Billa."

(20)     On or about September 12, 2001, in Cinnaminson, New Jersey, KABONI SAVAGE purchased a 2001 Jeep automobile in exchange for approximately $38,895 in drug proceeds, using the false name of "Yusef Billa."

(21)     On or about September 13, 2001, in Philadelphia, LAMONT LEWIS shot and killed, and caused the murder of, Carlton Brown, a/k/a "Mohammed," as revenge for the August 29, 2001 murder of KSO associate Ronald Walston, a/k/a "Pumpkin," and other acts LEWIS believed were committed by Carlton Brown, a/k/a "Mohammed."

(22)     On or about October 1, 2001, at 8th & Venango Streets in Philadelphia, co-conspirators known and unknown to the grand jury, shot and killed Mustafa Bey, who was attempting to kill LAMONT LEWIS as retribution for LEWIS' murder of Carlton Brown, a/k/a "Mohammed."

(23)     On or about January 9, 2002, in Philadelphia, KABONI SAVAGE purchased real property, that is, a house located at 1732 Kendrick Street, Philadelphia, Pennsylvania, in exchange for approximately $127,500 in drug proceeds, using the false name of "Yusef Billa."

12

(24)     In or about late March or early April 2002, ROBERT MERRITT threatened to kill Eric Satterthwaite, a/k/a "E," and persons known to the grand jury as "A.W." and "Y.D." if they were to inform anyone that MERRITT had murdered Norman Simon, a/k/a "Skeet."

(25)     In or about Spring 2002, ROBERT MERRITT and LAMONT LEWIS threatened a person known to the grand jury as "A.W.," a potential witness in a state prosecution, at gunpoint, and attempted to abduct A.W. in an automobile.

(26)     On or about March 30, 2002, in Philadelphia, KABONI SAVAGE purchased a 2002 Subaru automobile in exchange for approximately $29,094 in drug proceeds, in the false name of "Yusef Billa."

(27)     In or about April 2002, in Philadelphia, KABONI SAVAGE and Kareem Bluntly, a/k/a "Bree," obtained approximately five kilograms of cocaine from co-conspirators Lamont Smith and Stanley Smith, in South Philadelphia.

(28)     In or about April 2002, in Philadelphia, KABONI SAVAGE and Kareem Bluntly, a/k/a "Bree," obtained approximately five kilograms of cocaine from co-conspirators Lamont Smith and Stanley Smith, in North Philadelphia.

(29)     On or about June 24, 2002, in Philadelphia, KABONI SAVAGE purchased real property, that is, a house located at 6641 Lynford Street, Philadelphia, Pennsylvania, in exchange for approximately $65,900 in drug proceeds, using the false name of "Yusef Billa."

(30)     On or about January 30, 2003, in Philadelphia, KABONI SAVAGE, STEVEN NORTHINGTON, and others known and unknown to the grand jury, arrived at 3510 North Palmetto Street, to re-compress cocaine.

(31)     On or about February 26, 2003, in Philadelphia, STEVEN NORTHINGTON complained to KABONI SAVAGE that Barry Parker was selling drugs on a drug corner controlled by NORTHINGTON and the KSO.

(32)     On or about February 26, 2003, in Philadelphia, KABONI SAVAGE instructed STEVEN NORTHINGTON to kill Barry Parker, in order to eliminate Barry Parker as a competitor on one of the KSO's drug corners.

(33)     On or about February 26, 2003, at or near Franklin & Luzerne Streets, in Philadelphia, STEVEN NORTHINGTON aided and abetted, ordered the shooting and killing of, and caused the murder of, Barry Parker.

(34)     On or about February 27, 2003, at 3908 North Franklin Street, in Philadelphia, STEVEN NORTHINGTON possessed in his apartment approximately 90 packets of cocaine, a scale, razor blades, packaging materials, handcuffs, security badges, ammunition, and firearms, that is, a loaded Intertec 9 mm semi-automatic handgun with an obliterated serial number, and a Davis Industries .380 caliber handgun.

(35)     On or about February 28, 2003, at or near the 3600 block of North Darien Street, in Philadelphia, STEVEN NORTHINGTON possessed approximately $3,078 in U.S. currency that represented the proceeds of drug dealing, in the presence of KABONI SAVAGE.

(36)     On or about March 14, 2003, in Philadelphia, KABONI SAVAGE and co-conspirator Kareem Bluntly, a/k/a "Bree," attacked and pistol-whipped a person known to the grand jury as D.B. in the head, claiming that D.B. had failed to pay a cocaine debt to KABONI SAVAGE.

(37)     On or about March 14, 2003, in Philadelphia, KABONI SAVAGE lured Tyrone Toliver to, and ordered Tyrone Toliver to be taken to, a drug packaging house in

14

Philadelphia, under the pretense of conducting a drug transaction, in order to murder and steal from Tyrone Toliver.

(38)     On or about March 14, 2003, in Philadelphia, KABONI SAVAGE and co-conspirator Kareem Bluntly, a/k/a "Bree," shot and killed, and caused the murder of Tyrone Toliver, and stole U.S. currency from the body of Tyrone Toliver.

(39)     On or about March 14, 2003, in Philadelphia, co-conspirator Kareem Bluntly, a/k/a "Bree," delivered the U.S. currency stolen from the body of Tyrone Toliver to KABONI SAVAGE.

(40)     On or about March 15, 2003, in Philadelphia, co-conspirator Kareem Bluntly, a/k/a "Bree," and Eugene Coleman transported the body of Tyrone Toliver, and cleansed the drug packaging house of evidence of Tyrone Toliver's murder, at the direction of KABONI SAVAGE.

(41)     On or about April 7, 2003, at 3510 North Palmetto Street, in Philadelphia, KABONI SAVAGE and others known to the grand jury possessed items used in the manufacture, processing, and re-compression of cocaine, including presses, bottles, cutting agents, and paraphernalia.

(42)     On or about April 7, 2003, at 3643 North Darien Street, in Philadelphia, KABONI SAVAGE and STEVEN NORTHINGTON possessed firearms and a blender containing cocaine residue, used in the processing of cocaine.

(43)     In or about late December 2003, in Philadelphia, a co-conspirator known to the grand jury as D.B. approached a person known to the grand jury as V.C., and told V.C. to talk to his brother, "Twin" (witness Eugene Coleman), and convince Twin to not testify at the pending federal trial of KABONI SAVAGE, D.B., and others.

(44)     In or about early January 2004, in Philadelphia, co-conspirator Kareem Bluntly, a/k/a "Bree," brandished a handgun in the presence of a person known to the grand jury as V.C., told V.C. to tell his brother "Twin" not to testify, and asked V.C., "How long do you expect to walk around with Twin telling?"

(45)     On or about February 24, 2004, in Philadelphia, KABONI SAVAGE ordered  STEVEN NORTHINGTON to murder Tybius Flowers, to prevent Tybius Flowers from attending and testifying in Philadelphia Court of Common Pleas, at the trial of Commonwealth of Pennsylvania v. Kaboni Savage, in which KABONI SAVAGE was charged with the murder of Kenneth Lassiter, as set forth in overt act 1.

(46)     On or about March 1, 2004, in Philadelphia, STEVEN NORTHINGTON and another person unknown to the grand jury, ambushed, shot and killed, and caused the murder of Tybius Flowers, at or near the corner of 8th & Butler Streets.

(47)     In or about April 2004, in Philadelphia, KABONI SAVAGE threatened to kill a family member witness of Stanley Smith, threatened to injure a family member of witness Eugene Coleman, and threatened to kill witness Juan Rosado, a/k/a "Chucky."

(48)     On or about April 23, 2004, in Philadelphia, co-conspirators known to the grand jury as B.S., C.C., and K.S., a/k/a "Da," confronted a person known to the grand jury as V.C., told V.C. that KABONI SAVAGE was in possession of statements made by V.C.'s brother, witness Eugene Coleman, a/k/a "Twin," and discussed their abilities to convince other co-conspirators to leave V.C. alone.

(49)     On or about May 24, 2004, in Norristown, Pennsylvania, ROBERT MERRITT stole a firearm, that is, a Taurus .357 caliber revolver, bearing serial number TA788966, from the residence of persons known to the grand jury as T.L. and A.W.

(50)     In or about June 2004, in Philadelphia, a co-conspirator known to the grand jury as J.T., a/k/a "Shareef," approached a person known to the grand jury as S.W., and expressed concern that witness Robert Wilks, a/k/a "Miami," might be cooperating with law enforcement and testifying at the pending federal trial of KABONI SAVAGE, D.B., and others.

(51)     In or about July 2004, in Philadelphia, a co-conspirator known to the grand jury as D.B. conveyed a threat to witness Eugene Coleman, via another inmate at the Federal Detention Center in Philadelphia, that D.B. would kill Coleman, also noting that Coleman's family had not moved.

(52)     In or about Summer 2004, in Philadelphia, KABONI SAVAGE threatened to kill witness Paul Daniels, a/k/a "P," and his son, in retaliation for Daniels' cooperation with law enforcement, and to dissuade Paul Daniels from testifying at trial, stating, "Think about what you're doing, man . . . Because you son, he history  . . . I gotta tell you how I feel.  Everything must go."

(53)     In or about Summer 2004, in Philadelphia, a co-conspirator known to the grand jury as D.B. threatened witness Paul Daniels, by telling Paul Daniels that he was "not exempt," that he was putting his family in danger by testifying at the KABONI SAVAGE trial, and that all D.B. had to do was make one telephone call to make his "magic happen."

(54)     On or about August 8, 2004, in Philadelphia, ROBERT MERRITT possessed a firearm, that is, a loaded Taurus .357 caliber revolver, bearing serial number TA788966, in the area of 9th & Venango Streets.

(55)     In or about September 2004, in Philadelphia, KABONI SAVAGE threatened to kill witness and former cocaine supplier Juan Rosado, a/k/a "Chucky," and Rosado's family members, in retaliation for Juan Rosado's cooperation with law enforcement, as

17

SAVAGE later recounted, "You know what it's gonna cost you?  Your life, and your mom life. I'm gonna kill your motherfuckin' ass.  Tell the prosecutor I threatened you too, bitch."

(56)   On or about September 10, 2004, in Philadelphia, KABONI SAVAGE threatened to kill witness Stanley Smith, and Stanley Smith's daughter, by stating, "I'm gonna kill everything you love," recounting again on November 10, 2004, "Yep.  He's got a daughter down my way, I gonna blow her little head off.  She like five."

(57)   On or about October 8, 2004, in Philadelphia, KABONI SAVAGE accused witness Myron Wilson of being an informant, and threatened to kill Myron Wilson.

(58)   On or about October 8, 2004, in Philadelphia, KABONI SAVAGE threatened to kill witness Eugene Coleman, a/k/a "Twin," and his family, and made threatening gestures, including using his hand in the shape of a gun, and making a slashing motion with his finger across his throat, in retaliation for Eugene Coleman's testimony before the federal grand jury, and for his providing of information to federal law enforcement officers regarding the Kaboni Savage Organization.

(59)   On or about October 8, 2004, in Philadelphia, KABONI SAVAGE placed a telephone call from the Federal Detention Center in Philadelphia to his family's home, and spoke to a co-conspirator known to the grand jury as K.S., a/k/a "Da," and to LAMONT LEWIS.

(60)   On or about October 8, 2004, in Philadelphia, KABONI SAVAGE and others known to the grand jury solicited and ordered LAMONT LEWIS to set fire to the home of witness Eugene Coleman's family, and to kill the family of Eugene Coleman.

(61)   On or about October 9, 2004, in the very early morning hours, ROBERT MERRITT traveled from Norristown, Pennsylvania to Philadelphia, to meet with LAMONT LEWIS.

18

(62)    On or about October 9, 2004, at approximately 5:00 a.m., in Philadelphia, LAMONT LEWIS and ROBERT MERRITT entered and set fire to the North Philadelphia home of the Coleman family, at 3256 North 6th Street, Philadelphia, Pennsylvania, causing the deaths of: Marcella Coleman, the 54-year-old mother of Eugene Coleman; Tameka Nash, a 33-year-old female; Sean Anthony Rodriguez, a 15-year-old male; Tajh Porchea, a 12-year-old male; Khadijah Nash, a 10-year-old female; and Damir Jenkins, a 15-month-old male infant.  The Coleman family's pet dog was also killed in the fire.

(63)    On or about October 9, 2004, in the early morning hours, in Philadelphia, LAMONT LEWIS placed a telephone call to a co-conspirator known to the grand jury as K.S., a/k/a "Da."

(64)    On or about October 9, 2004, in Philadelphia, a telephone call was placed from a telephone used by a co-conspirator known to the grand jury as K.S., a/k/a "Da," to a telephone used by ROBERT MERRITT.

(65)    In or about October 2004, in Philadelphia, a co-conspirator known to the grand jury as K.S., a/k/a "Da," posted information concerning witnesses Eugene Coleman, Myron Wilson, and Craig Oliver on the world-wide web, on the website, "www.whosarat.com."

(66)    On or about November 4, 2004, in Philadelphia, KABONI SAVAGE complained that Eugene Coleman was permitted to attend the funeral of his family members, and suggested that barbecue sauce should be poured on the victims of the October 9, 2004 arson murder.

(67)    On or about November 10, 2004, in Philadelphia, KABONI SAVAGE threatened to kill witnesses, government informants, and their family members, declaring that SAVAGE is "gonna get [their] mother fucking ass and their kids, everybody gonna pay."

(68)     On or about November 3, 2004, in Philadelphia, in response to the statement, "By time of trial, everybody be dead," KABONI SAVAGE replied, "And we just getting started . . . The night's still young."

(69)     On or about November 9, 2004, in Philadelphia, KABONI SAVAGE admitted to, and discussed the strategy of, using women to register and carry firearms for him, to avoid arrest.

(70)     On or about November 10, 2004, in Philadelphia, KABONI SAVAGE vowed to kill witnesses and their family members, stating, "They should have left me alone. 'Cause, these rats better not come around me . . . 'Cause I'm gonna get your motherfuckin' ass and your kids.  Everybody gonna pay."

(71)     On or about November 12, 2004, in Philadelphia, KABONI SAVAGE plotted to kill the children of witnesses, in order to dissuade witnesses from testifying, stating, "You took me away from mine, I'm gonna try to take you away from your . . . That shit start's going on enough, these rats are gonna stop."

(72)     On or about November 12, 2004, in Philadelphia, KABONI SAVAGE vowed to continue his efforts to kill witnesses and their family members "'til the day I day," stating, "The fight don't stop 'til the casket drop."

(73)     On or about November 28, 2004, in Philadelphia, KABONI SAVAGE planned to have people bring cellular telephones with cameras into the  courtroom during SAVAGE's federal trial, and to take pictures of witnesses while the witnesses are on the witness stand testifying.

(74)     On or about November 29, 2004, in Philadelphia, KABONI SAVAGE vowed to kill a U.S. Bureau of Prisons Captain at the Federal Detention Center in Philadelphia,

stating, "I want to fuck the captain up . . . I want to blow his head off.  I want everybody to know it, too."

(75)    On or about December 8, 2004, in Philadelphia, KABONI SAVAGE vowed to kill the mother of witness Paul Daniels, stating, "I'd rather just kill his motherfuckin' mom . . . I want this nigga.  You see what I'm saying?  . . . I want his, I want his, them people. Bad, man."

(76)    On or about December 9, 2004, in Philadelphia, KABONI SAVAGE vowed to kill the children of cooperating witnesses, in retaliation for SAVAGE's incarceration, stating, "That's why them niggas got to pay . . . Those fuckin' rats . . . Their kids got to pay, for making my kids cry.  I want to smack one of their four year old sons in the head with a bat . . . Straight up.  I have dreams about killing their kids . . . Killing their kids.  Cutting their kids' heads off."

(77)    On or about December 10, 2004, in Philadelphia, KABONI SAVAGE directed a co-conspirator known to the grand jury as D.B. to target the girlfriend and infant child of witness Paul Daniels, in lieu of Paul Daniels' mother, stating, "Gotta get Tosha's ass . . . Tosha and that little bitchy baby he got."

(78)    On or about December 12, 2004, in Philadelphia, KABONI SAVAGE vowed to kill a U.S. Bureau of Prisons Captain at the Federal Detention Center in Philadelphia, stating, "That captain a motherfucker, man.  He gonna die a miserable death, and I hope I'm there, I hope I'm the cause of that motherfucker.  I'm gonna torture his ass, I'm gonna set him on fire.  Alive.  That's what I wanna do to a nigga, I wanna set a nigga on fire alive. Watch him jump around like James fuckin' Brown.  Get a metal chair and some cuffs.  Douse him with that

21

gasoline.  Set his ass on fire.  Say, 'Welcome to hell, bitch.'  I'm gonna get somebody, that fire a

motherfucker."

(79)    On or about December 16, 2004, in Philadelphia, KABONI SAVAGE and

a person known to the grand jury as "D.B." threatened witness Craig Oliver.

(80)    In or about December 2004, in Philadelphia, KABONI SAVAGE

recounted a threat to witness Craig Oliver, stating, "Listen, don't think my kids . . . gonna be the

only kids crying . . . It's gonna be some tears from blood behind mine . . . I'm just tellin' ya,

you've been warned."

(81)    On or about December 23, 2004, in Philadelphia, KABONI SAVAGE told

a Captain at the Federal Detention Center, that he intended to kill FBI Special Agent Kevin

Lewis, stating that he wanted to keep the funeral homes busy.

(82)    On or about December 24, 2004, in Philadelphia, KABONI SAVAGE

plotted with a co-conspirator known to the grand jury as D.B. to retaliate against witness Craig

Oliver, by causing physical harm to Craig Oliver, stating, "I want somebody to fuck that nigga

up, man . . . We need somebody to fuck that nigga up."

(83)    On or about December 25, 2004, in Philadelphia, KABONI SAVAGE

vowed to kill the daughter of witness Myron Wilson.

(84)    On or about December 27, 2004, in Philadelphia, KABONI SAVAGE

plotted with a co-conspirator known to the grand jury as D.B. to retaliate against witness Paul

Daniels by killing Paul Daniels and his child, stating, "Them rats . . . they got to pay.  That's all I

think about.  They kids, they moms.  I had dreams about hitting P daughter in her head, man.

Opening her head, wide open with 40's, dum-dums, man.  That's all I dream about.  Getting that

nigga killed . . . I wanna erase his whole family tree, man.  You're hurting my kids sending me to

22

jail, man.  Your kids, your mom, nobody's getting a pass, man . . . Before I make a dollar, they

gonna pay, man.  That's all I dream about, man, getting them niggas."

        (85)    On or about December 27, 2004, in Philadelphia, KABONI SAVAGE

plotted with a co-conspirator known to the grand jury as D.B. to retaliate against witness Craig

Oliver, by killing family members of Craig Oliver, stating, "These rats gonna pay, man.  Their

momma's gonna pay.  I'm sick of them . . . I'm killing what they love while they in there.  You

hurt my mother, you hurt my sister, . . . I gotta hurt yours.  You hurting my kids, I'm hurting

your.  I ain't Scarface, kids count to me, man.  They count to me . . . Craig family go first . . . His

mom, his pop, all of them . . . You ain't gonna beat me to it . . . If you know my man, he can't do

nothing right now, he's hot . . . 'cause he tells, ah, Little Sis? . . . But, I'm like, tell him, not right

now . . . But, another three or four months, I'm gonna ask, or I'm gonna tell . . . Tie them boots

back up, nigga . . . While he's still in the groove, huh?"

        (86)    On or about December 27, 2004, in Philadelphia, KABONI SAVAGE

plotted with a co-conspirator known to the grand jury as D.B. to retaliate against witnesses,

stating, "Tears of rage . . . I'm flooded internally from 'em . . . Tears of rage 'cause these son-of-

bitches gonna pay, man.  They gonna pay or my name ain't what it is, my pop name wasn't what

it was, they gonna pay.  They kids gonna pay, they mommas gonna pay . . . (T)hat's the kind of

conviction I got for this shit, man.  I'm dedicated to their death, man.  They better hope and pray

I go to jail for a long time.  It don't matter, 'cause while I'm still living, I'm a get them."

        (87)    On or about January 3, 2005, in Philadelphia, KABONI SAVAGE plotted

with a co-conspirator known to the grand jury as D.B. to retaliate against witnesses, stating,

"These rats deserve to die, right or wrong? . . . My war is with the rats.  I'm a hunt every last one

bitch that I can, and kill 'em.

(88)     On or about September 8, 2005, in Philadelphia, ROBERT MERRITT plotted to retaliate against witnesses in his federal firearms trial, planning to disseminate transcripts of trial testimony, and stating, "He'll get his.  He's gonna get his."

(89)     On or about November 28, 2005, in Philadelphia, STEVEN NORTHINGTON threatened witness Robert Wilks, a/k/a "Miami," during the federal trial of KABONI SAVAGE, stating, "The same thing that happened to Twin's family is going to happen to your family."

(90)     On or about May 24, 2006, in Atlanta, Georgia, KABONI SAVAGE had a discussion by telephone with a co-conspirator known to the grand jury as "R.W.," a/k/a "Manny," concerning the collection of funds for, and on behalf of, SAVAGE.

(91)     On or about June 5, 2006, in Atlanta, Georgia, KABONI SAVAGE had a discussion by telephone with a co-conspirator known to the grand jury as "C.C.," in which SAVAGE threatened C.C. with death, stating,"You don't know me like you think you know me, read the papers . . . I got fifteen other 'Brees' out there."

(92)     On or about June 8, 2006, in Atlanta, Georgia, KABONI SAVAGE had a discussion by telephone with a co-conspirator known to the grand jury as "C.C.," in which SAVAGE threatened C.C. with death, promising to send "agents," co-conspirators R.W. and B.E., to visit C.C.

(93)     On or about July 11, 2007, in Philadelphia, LAMONT LEWIS distributed approximately 125 grams of cocaine base ("crack") to a person known to the grand jury.

(94)     On or about July 24, 2007, in Philadelphia, LAMONT LEWIS distributed approximately 104 grams of cocaine base ("crack") to a person known to the grand jury.

(95)   On or about July 25, 2007, in Philadelphia, LAMONT LEWIS threatened to kill persons known to the grand jury, warning them not to sell drugs on LAMONT LEWIS' drug corner at 8th & Venango Streets, in Philadelphia.

(96)   On or about July 25, 2007, in Philadelphia, LAMONT LEWIS caused, and aided and abetted others, known and unknown to the grand jury, to shoot at people LAMONT LEWIS suspected of being rival drug dealers, resulting in the shooting of a bystander known to the grand jury as "A.S." in the head.

(97)   On or about July 25, 2007, in Philadelphia, LAMONT LEWIS aided and abetted the use and carrying of firearms during the course of a violent crime, that is, the shooting of a person known to the grand jury as "A.S."

(98)   On or about July 26, 2007, in Philadelphia, LAMONT LEWIS distributed approximately 14 grams of cocaine base ("crack") to a person known to the grand jury.

(99)   On or about August 7, 2007, in Philadelphia, LAMONT LEWIS and two co-conspirators known to the grand jury as "C.A." and "E.J." congregated at or about the drug corner at 8th and Venango Streets, while C.A. and E.J. were armed with firearms.

(100)   On or about August 15, 2007, in Philadelphia, LAMONT LEWIS traveled from Philadelphia, Pennsylvania, to Pennsauken, New Jersey, to meet with a person known to the grand jury, with the intent to commit a murder-for-hire of a person LAMONT LEWIS believed to be cooperating with law enforcement.

(101)   On or about August 15, 2007, in Philadelphia and Pennsauken, New Jersey, LAMONT LEWIS carried a firearm, that is, a handgun, while meeting with a person known to the grand jury, during and in relation to a violent crime, that is, interstate travel to commit murder-for-hire.

25

(102)   On or about August 16, 2007, in Philadelphia, LAMONT LEWIS distributed 170 grams of cocaine base ("crack") to a person known to the grand jury.

(103)   On or about August 16, 2007, in Philadelphia, LAMONT LEWIS carried a firearm during and in relation to the distribution of 170 grams of cocaine base ("crack") to a person known to the grand jury.

## NOTICE OF SPECIAL SENTENCING FACTORS

The allegations and facts set forth in this Notice of Special Sentencing Factors relate to Count One of this Indictment.

1.     From a time at least as early as in or about late 1997 to on or about August 16, 2007, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, the defendants, KABONI SAVAGE, LAMONT LEWIS, ROBERT MERRITT, and STEVEN NORTHINGTON, knowingly and intentionally conspired and agreed to distribute, and to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, and 50 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"); all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

2.     On or about March 19, 1998, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, KABONI SAVAGE, knowingly and intentionally murdered, and willfully caused the murder of, Kenneth Lassiter, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502(a).

3.     On or about August 2, 2000, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, KABONI SAVAGE, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Mansur Abdullah, a/k/a "Shafiq," a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

4.      On or about September 13, 2001, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, LAMONT LEWIS, knowingly and intentionally murdered, and willfully caused the murder of, Carlton Brown, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502(a).

5.      On or about February 26, 2003, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE and STEVEN NORTHINGTON, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Barry Parker, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

6.      On or about March 14, 2003, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, KABONI SAVAGE, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Tyrone Toliver, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

7.      On or about March 1, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE and STEVEN NORTHINGTON, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Tybius Flowers, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

8.     On or about March 1, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE and STEVEN NORTHINGTON, killed Tybius Flowers, with the intent to prevent the attendance and testimony of Tybius Flowers at an official proceeding, that is, the trial of Kaboni Savage in the Philadelphia Court of Common Pleas, for the murder of Kenneth Lassiter, in violation of Title 18, United States Code, Section 1512.

9.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Marcella Coleman, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

10.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Tameka Nash, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

11.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, knowingly and intentionally murdered, knowingly aided and abetted, and willfully

caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Sean Anthony Rodriguez, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

12.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Tajh Porchea, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

13.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Khadijah Nash, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

14.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, and aided, agreed or attempted to aid, and solicited another to commit, the murder of Damir Jenkins, a human being, in violation of the laws of the Commonwealth of

Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

15.     On or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, the defendants, KABONI SAVAGE, LAMONT LEWIS, and ROBERT MERRITT, killed, and aided and abetted the killing of, Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins, with the intent to retaliate against another person, namely, Eugene Coleman, for the attendance of Eugene Coleman as a witness at an official proceeding, that is, grand jury testimony, for testimony given by Eugene Coleman to a federal grand jury, and for Eugene Coleman's providing to law enforcement officers information relating to the commission of federal offenses, that is, conspiracy to distribute controlled substances and money laundering, as charged by indictment against Kaboni Savage and others in United States District Court for the Eastern District of Pennsylvania; all in violation of Title 18, United States Code, Sections 1513 and 2.

16.     On or about July 11, 2007, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, LAMONT LEWIS, knowingly and intentionally distributed 50 grams or more, that is, approximately 125 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

17.     On or about July 24, 2007, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, LAMONT LEWIS, knowingly and intentionally distributed 50 grams or more, that is, approximately 104 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

31

18.     On or about August 16, 2007, in Philadelphia, in the Eastern District of Pennsylvania, the defendant, LAMONT LEWIS, knowingly and intentionally distributed 50 grams or more, that is, approximately 170 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

All in violation of Title 18, United States Code, Section 1962(d).

**COUNT TWO**

**MURDER IN AID OF RACKETEERING**
**18 U.S.C. § 1959(a)(1)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The Kaboni Savage Organization (KSO), as described more particularly in paragraphs 2 through 12 of Count One, which paragraphs are realleged here, constitutes an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which is engaged in, and the activities of which affect, interstate commerce.  The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      The KSO, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats involving: murder, in violation of Pennsylvania law; and offenses involving dealing in controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and acts indictable under Title 18, United States Code, Sections 1956 and 1957, that is, money laundering.

3.      On or about March 19, 1998, at Philadelphia, in the Eastern District of Pennsylvania, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendant

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**

33

knowingly and intentionally murdered, and willfully caused the murder of Kenneth Lassiter, a

human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18,

Pennsylvania Consolidated Statutes Annotated, Section 2502(a).

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT THREE

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.      On or about August 2, 2000, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in the enterprise engaged in racketeering activity, defendant

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Mansur Abdullah, a/k/a "Shafiq," a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

**COUNT FOUR**

**MURDER IN AID OF RACKETEERING**
**18 U.S.C. § 1959(a)(1)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about September 13, 2001, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Carlton Brown, a/k/a "Mohammed," a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT FIVE

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.      On or about February 26, 2003, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in the enterprise, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill," and**
**STEVEN NORTHINGTON,**
**a/k/a "Smoke,"**
**a/k/a "Michael Tillery,"**
**a/k/a "Syeed Burhannon,"**
**a/k/a "Darnell Doss,"**
**a/k/a "S1,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Barry Parker, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT SIX

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about March 14, 2003, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendant

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Tyrone Toliver, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT SEVEN

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about March 1, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill," and**
**STEVEN NORTHINGTON,**
**a/k/a "Smoke,"**
**a/k/a "Michael Tillery,"**
**a/k/a "Syeed Burhannon,"**
**a/k/a "Darnell Doss,"**
**a/k/a "S1,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Tybius Flowers, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT EIGHT

### WITNESS TAMPERING
### 18 U.S.C. § 1512(a)(1)(A)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 1, 2004, at Philadelphia, in the Eastern District

of Pennsylvania, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill," and**
**STEVEN NORTHINGTON,**
**a/k/a "Smoke,"**
**a/k/a "Michael Tillery,"**
**a/k/a "Syeed Burhannon,"**
**a/k/a "Darnell Doss,"**
**a/k/a "S1,"**

killed Tybius Flowers, a human being, with the intent to prevent the attendance and testimony of

Tybius Flowers at an official proceeding, that is, the trial of Kaboni Savage in the Philadelphia

Court of Common Pleas, for the murder of Kenneth Lassiter.

In violation of Title 18, United States Code, Section 1512.

40

**COUNT NINE**

**CONSPIRACY TO COMMIT MURDER IN AID OF RACKETEERING**
**18 U.S.C. § 1959(a)(5)**

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

      2.     From in or about September 2004, to on or about October 9, 2004, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, for the purpose of maintaining and increasing their position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

conspired and agreed with each other, and with others known and unknown to the grand jury, to commit the knowing and intentional murders of Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 903 and 2502(a).

      All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT TEN

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about October 9, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J."**
**a/k/a "Bishop,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Marcella Coleman, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT ELEVEN

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.      On or about October 9, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Tameka Nash, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

COUNT TWELVE

## MURDER IN AID OF RACKETEERING
## 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about October 9, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Sean Anthony Rodriguez, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

44

**COUNT THIRTEEN**

**MURDER IN AID OF RACKETEERING**
**18 U.S.C. § 1959(a)(1)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about October 9, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Tajh Porchea, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT FOURTEEN

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.      On or about October 9, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Khadijah Nash, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

46

## COUNT FIFTEEN

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about October 9, 2004, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Damir Jenkins, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

47

**COUNT SIXTEEN**

**RETALIATING AGAINST A WITNESS**
**18 U.S.C. § 1513**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 9, 2004, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**KABONI SAVAGE,**
a/k/a "Bonnie,"
a/k/a "Yusef Billa,"
a/k/a "Joseph Amill,"
**LAMONT LEWIS,**
a/k/a "Poppy-Eye,"
a/k/a "Mont," and
**ROBERT MERRITT,**
a/k/a "B.J.,"
a/k/a "Bishop,"

killed, and aided and abetted the killing of, Marcella Coleman, Tameka Nash, Sean Anthony

Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins, with the intent to retaliate against

another person, namely, Eugene Coleman, for the attendance of Eugene Coleman as a witness at

an official proceeding, that is, grand jury testimony, for testimony given by Eugene Coleman to a

federal grand jury, and for Eugene Coleman's providing to law enforcement officers information

relating to the commission of federal offenses, that is, conspiracy to distribute controlled

substances and money laundering, as charged by indictment against Kaboni Savage and others in

United States District Court for the Eastern District of Pennsylvania;

In violation of Title 18, United States Code, Sections 1513 and 2.

48

## COUNT SEVENTEEN

### USING FIRE TO COMMIT A FELONY
### 18 U.S.C. § 844(h)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 9, 2004, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**KABONI SAVAGE,**
**a/k/a "Bonnie,"**
**a/k/a "Yusef Billa,"**
**a/k/a "Joseph Amill,"**
**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont," and**
**ROBERT MERRITT,**
**a/k/a "B.J.,"**
**a/k/a "Bishop,"**

knowingly and intentionally used fire, and aided and abetted the use of fire, in the commission of

a crime punishable by imprisonment for more than one year, in a court of the United States, that

is, murder in aid of racketeering;

In violation of Title 18, United States Code, Sections 844(h)(1) and 2.

49

## COUNT EIGHTEEN

### DISTRIBUTION OF COCAINE BASE ("CRACK")
### 21 U.S.C. § 841(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 11, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont,"**

knowingly and intentionally distributed 50 grams or more, that is, approximately 125 grams, of a

mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

## COUNT NINETEEN

### DISTRIBUTION OF COCAINE BASE ("CRACK")
### 21 U.S.C. § 841(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 24, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont,"**

knowingly and intentionally distributed 50 grams or more, that is, approximately 104 grams, of a

mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

## COUNT TWENTY

**ASSAULT WITH A DANGEROUS WEAPON IN AID OF RACKETEERING
18 U.S.C. § 1959(a)(3)**

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      The allegations set forth in paragraphs one and two of Count Two are hereby incorporated by reference as if fully set forth herein.

      2.      On or about July 25, 2007, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendant

**LAMONT LEWIS,
a/k/a "Poppy-Eye,"
a/k/a "Mont"**

knowingly and intentionally assaulted, and aided and abetted the assault of, a person known to the grand jury as "A.S.," with a dangerous weapon, that is, a firearm, by shooting her in the head, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2702(a)(1) and 306.

      In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

52

## COUNT TWENTY-ONE

**CARRYING A FIREARM DURING A VIOLENT CRIME**
**18 U.S.C. § 924(c)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 25, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly used and carried a firearm, and aided and abetted the use and carrying of a firearm,

that is, a handgun, during and in relation to a crime of violence for which he may be prosecuted

in a Court of the United States, that is, assault with a dangerous weapon in aid of racketeering, in

violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count 20 of this

indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

## COUNT TWENTY-TWO

### DISTRIBUTION OF COCAINE BASE ("CRACK")
### 21 U.S.C. § 841(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 26, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly and intentionally distributed 5 grams or more, that is, approximately 14 grams, of a

mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## COUNT TWENTY-THREE

### DISTRIBUTION OF COCAINE BASE ("CRACK")
### 21 U.S.C. § 841(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 16, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly and intentionally distributed, and aided and abetted in the distribution of, 50 grams or

more, that is, approximately 170 grams, of a mixture and substance containing a detectable

amount of cocaine base ("crack"), a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), and

Title 18, United States Code, Section 2.

## COUNT TWENTY-FOUR

### USING AND CARRYING A FIREARM DURING A DRUG TRAFFICKING CRIME
### 18 U.S.C. § 924(c)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 16, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly used and carried a firearm, that is, a handgun, during and in relation to a drug

trafficking crime for which he may be prosecuted in a Court of the United States, that is,

distribution of a controlled substance, in violation of Title 21, United States Code, Section

841(a)(1), as charged in Count 23 of this indictment.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(I).

## COUNT TWENTY-FIVE

### INTERSTATE TRAVEL TO COMMIT MURDER-FOR-HIRE
### 18 U.S.C. § 1958

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about August 15, 2007, to on or about August 16, 2007, in

Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly and intentionally traveled in interstate commerce, that is, from Philadelphia,

Pennsylvania to New Jersey, and used a facility of interstate commerce, that is, a telephone, with

the intent to commit murder in violation of the laws of the Commonwealth of Pennsylvania, that

is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502, and of the State of

New Jersey, that is, New Jersey Statutes Annotated, Section 2C:11-3, as consideration for the

receipt of something of pecuniary value, that is, U.S. currency, and as consideration for a promise

and agreement to pay money.

In violation of Title 18, United States Code, Section 1958.

## COUNT TWENTY-SIX

**USING AND CARRYING A FIREARM DURING A VIOLENT CRIME**
**18 U.S.C. § 924(c)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 15, 2007, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendant

**LAMONT LEWIS,**
**a/k/a "Poppy-Eye,"**
**a/k/a "Mont"**

knowingly used and carried a firearm, that is, a handgun, during and in relation to a crime of

violence for which he may be prosecuted in a Court of the United States, that is, interstate travel

to commit murder for hire, in violation of Title 18, United States Code, Section 1958, as charged

in Count 25 of this indictment.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(I) ._____

### NOTICE OF SPECIAL FINDINGS

The allegations of Counts Two, Three, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

**DEFENDANT KABONI SAVAGE**

As to Counts Two, Three, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen, defendant KABONI SAVAGE:

1.      Was more than 18 years of age at the time of the offenses (18 U.S.C. § 3591(a));

2.      Intentionally killed the victims (18 U.S.C. § 3591(a)(2)(A));

3.      Intentionally inflicted serious bodily injury that resulted in the death of the victims (18 U.S.C. § 3591(a)(2)(B));

4.      Intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offenses, and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(C));

5.      Intentionally and specifically engaged in acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(D));

6.      In the commission of the offenses, knowingly created a grave risk of death to one or more persons in addition to the victims of the offense (18 U.S.C. § 3592(c)(5));

7.     Committed the offenses after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)); and

8.     Had been previously convicted of violating title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed (18 U.S.C. § 3592(c)(12));

As to Counts Three and Six, defendant KABONI SAVAGE:

9.     Committed the offenses as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8));

As to Counts Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen, defendant KABONI SAVAGE:

10.    Committed the offenses in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victims (18 U.S.C. § 3592(c)(6));

11.    Procured the commission of the offenses by payment, or promise of payment, of anything of pecuniary value (18 U.S.C. § 3592(c)(7));

12.    Committed the offenses upon victims who were particularly vulnerable due to youth (18 U.S.C. § 3592(c)(11)); and

13.    Intentionally killed and attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

## DEFENDANT LAMONT LEWIS

As to Counts Four, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen, defendant LAMONT LEWIS:

1.     Was more than 18 years of age at the time of the offenses (18 U.S.C. § 3591(a));

2.     Intentionally killed the victims (18 U.S.C. § 3591(a)(2)(A));

3.     Intentionally inflicted serious bodily injury that resulted in the death of the victims (18 U.S.C. § 3591(a)(2)(B));

4.     Intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offenses, and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(C));

5.     Intentionally and specifically engaged in acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(D));

6.     In the commission of the offenses, knowingly created a grave risk of death to one or more persons in addition to the victims of the offense (18 U.S.C. § 3592(c)(5));

7.     Committed the offenses after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)); and

8.     Had been previously convicted of violating title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed (18 U.S.C. § 3592(c)(12));

As to Counts Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen, defendant LAMONT LEWIS:

9.      Committed the offenses in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victims (18 U.S.C. § 3592(c)(6));

10.      Committed the offenses as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8));

11.      Committed the offenses upon victims who were particularly vulnerable due to youth (18 U.S.C. § 3592(c)(11)); and

12.      Intentionally killed and attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.


**<u>DEFENDANT ROBERT MERRITT</u>**

As to Counts Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen, defendant ROBERT MERRITT:

1.      Was more than 18 years of age at the time of the offenses (18 U.S.C. § 3591(a));

2.      Intentionally killed the victims (18 U.S.C. § 3591(a)(2)(A));

3.      Intentionally inflicted serious bodily injury that resulted in the death of the victims (18 U.S.C. § 3591(a)(2)(B));

4.      Intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other

than a participant in the offenses, and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(C));

5.      Intentionally and specifically engaged in acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(D));

6.      In the commission of the offenses, knowingly created a grave risk of death to one or more persons in addition to the victims of the offense (18 U.S.C. § 3592(c)(5));

7.      Committed the offenses in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victims (18 U.S.C. § 3592(c)(6));

8.      Committed the offenses as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8));

9.      Committed the offenses after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9));

10.     Committed the offenses upon victims who were particularly vulnerable due to youth (18 U.S.C. § 3592(c)(11));

11.     Had been previously convicted of violating title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed (18 U.S.C. § 3592(c)(12)); and

12.     Intentionally killed and attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

**DEFENDANT STEVEN NORTHINGTON**

As to Counts Five, Seven, and Eight, defendant STEVEN NORTHINGTON:

1.      Was more than 18 years of age at the time of the offenses (18 U.S.C. § 3591(a));

2.      Intentionally killed the victims (18 U.S.C. § 3591(a)(2)(A));

3.      Intentionally inflicted serious bodily injury that resulted in the death of the victims (18 U.S.C. § 3591(a)(2)(B));

4.      Intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offenses, and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(C));

5.      Intentionally and specifically engaged in acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(D));

6.      In the commission of the offenses, knowingly created a grave risk of death to one or more persons in addition to the victims of the offense (18 U.S.C. § 3592(c)(5));

7.      Committed the offenses after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9));

8.      Had previously been convicted of two or more state or federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of controlled substances (18 U.S.C. § 3592(c)(10)); and

9.      Had been previously convicted of violating title II or III of the

Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or

more years may be imposed (18 U.S.C. § 3592(c)(12)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

**A TRUE BILL:**


_____
**GRAND JURY FOREPERSON**


_____
**LAURIE MAGID**
**UNITED STATES ATTORNEY**

65