IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550-03 |
| KABONI SAVAGE | : | |

## **MEMORANDUM**

Presently before the Court is Defendant Kaboni Savage's Motion for Relief from Special Administrative Measures (ECF No. 137). For the following reasons, Defendant's Motion will be denied consistent with this Memorandum.

**I.    BACKGROUND**

Defendant Kaboni Savage is currently serving a 30-year sentence for his 2005 conviction for numerous offenses, including conspiracy to manufacture and distribute cocaine and crack cocaine, money laundering, and witness tampering. (Govt.'s Resp. 2, ECF No. 146; *see also* Sent'g Mem. 2, United States v. Savage, No. 04-269-01 (E.D. Pa. Mar. 15, 2006), ECF No. 823.) On April 8, 2009, a federal grand jury returned a 26-count superseding indictment charging Defendant with, *inter alia*, 11 counts of murder in aid of racketeering, all of which are eligible for the death penalty. (Govt.'s Resp. 1.) It is alleged that Defendant ordered several of these murders while incarcerated as a pretrial detainee at the Federal Detention Center ("FDC") in Philadelphia.

Because Defendant is accused of a capital crime, federal law grants him protections beyond those ordinarily given to criminal defendants. Courts are required under 18 U.S.C. § 3005 to appoint two attorneys to represent Defendant, at least one of whom is required to be

"learned in the law applicable to capital cases." These attorneys are required by statute to have "free access to the accused at all reasonable hours." *Id.* § 3005. Defendant is also entitled to advanced notice from the government that it intends to seek the death penalty and advanced notice of the factors that the government will present as justifying a sentence of death if Defendant is convicted. *Id.* § 3593(a)(1)-(2). Defense counsel must be given an opportunity to present evidence and argument to the Capital Review Committee of the Department of Justice before the government can seek the death penalty. *See* United States Attorneys' Manual § 9-10.150 (June 7, 2001) ("No final decision to seek the death penalty shall be made if defense counsel has not been afforded an opportunity to present evidence and argument in mitigation.").

Since Defendant's 2005 conviction, he has been incarcerated at three different facilities: the United States Penitentiary in Atlanta; the maximum security unit ("ADMAX") at the United States Penitentiary in Florence, Colorado; and, currently, the Metropolitan Corrections Center ("MCC") in Manhattan, New York. (Govt.'s Resp. 3.) Defendant was housed in the general population at the United States Penitentiary in Atlanta from April 2006 to February 2007. (Def.'s Mot. 3, ECF No. 137.) Because the Government believed that Defendant posed a threat to others even while incarcerated, the Attorney General authorized the imposition of Special Administrative Measures ("SAMs") in February 2007 to restrict Defendant's movements and communications. (*Id.* at 4.) The Attorney General has reauthorized the SAMs annually. (Govt.'s Resp. 3.)

MCC is a SAMs facility that does not allow contact visits between inmates and their attorneys. (*Id.*) Defendant is subject to severe restrictions as an inmate at MCC. He is not permitted recreation time, his ability to receive visitors is highly restricted, he has limited access

2

to newspapers and other publications and is not permitted to receive literature from outside sources, and his access to the law library and computer is restricted. (Def.'s Mot. 5-6.) After Defendant complained about the inability to have contact visits with his attorneys, government counsel, defense counsel, and representatives of the Bureau of Prisons ("BOP") discussed the matter and agreed to have Defendant transported from MCC in New York to FDC in Philadelphia once per month for contact visits with his attorneys. (Govt.'s Resp. 4.) Defendant now asks this Court to order that the SAMs be lifted. Defendant complains that correspondence that is clearly marked as "legal mail" is being opened outside of his presence, that the two days of contact visits per month that were arranged for Defendant are "grossly inadequate," that he has insufficient access to a computer or law library, and that he is unable to focus on trial preparation when "the immediate dehumanizing conditions of [his] confinement are at issue." (Def.'s Mot. 9-10.) Defendant asks that we strike the SAMs in their entirety. (*Id.* at 18.)

The government objects to the lifting of the SAMs, arguing that Defendant had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and that, in any event, the SAMs do not violate Defendant's constitutional rights. A hearing was held on September 30, 2010, for the purpose of determining whether Defendant is barred from seeking removal of the SAMs due to a failure to exhaust his administrative remedies. The matter is now ripe for disposition.

## II.  DISCUSSION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

3

exhausted." 42 U.S.C. § 1997e(a). The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" and to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

To exhaust his administrative remedies in the federal prison system, an inmate must follow a multi-step grievance procedure established by the BOP. The inmate must "first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13. If informal action fails to resolve the issue, the prisoner must submit a formal written complaint to the warden on a BP-9 form within 20 days of the date on which the situation giving rise to the inmate's complaint occurs. *Id.* § 542.14. If the inmate is dissatisfied with the resolution of his written complaint, he must appeal the decision to the Regional Director "within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15. Finally, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.*

Defendant claims that he has exhausted his administrative remedies, noting that he has "continuously objected to the imposition of SAMs restrictions on him at both ADX and MCC-New York both informally, and through the Federal Bureau of Prisons' Administrative Remedy Program." (Def.'s Mot. 6.) A review of the exhibits that Defendant has attached to his Motion,

4

reveals that although Defendant did complain about the SAMs, he has not completed all of the steps required for exhaustion since his arrival at MCC. (*See generally* Def.'s Mot. Ex. E.) Defendant also claims that he has received no explanation linking the SAMs to his behavior. However, Defendant's own submissions show otherwise. (*See id.* at 10 ("[T]he SAM was imposed because of the gravity of your instant offense, including conspiracy to manufacture and distribute cocaine, money laundering, threatening witnesses, and threatening to retaliate against witnesses. While in general population, you continued to threaten to kill federal agents, prison officials, witnesses and their families, as well as other hostile activity. The basis for the imposition of a SAM on you was directly related to your behavior and the substantial risk your communications or contacts with other persons pose.").) Defendant claims that exhaustion of his administrative remedies is not required because the BOP has no authority to rescind or to modify the SAMs in any event. (Def.'s Mot. 6.) This, too, is contradicted by the BOP's response to Defendant's appeal. (*See* Def.'s Mot. Ex. E at 10 ("[U]nit staff have influence as to how the restrictions are applied, and can affect [sic] appropriate modifications provided such approval would not jeopardize security concerns.").)

Finally, Defendant argues that he need not exhaust administrative remedies before bringing a motion to remove the SAMs because his motion is not an "action" to which the PLRA's exhaustion requirement applies. (Def.'s Mot. 6-7.) Defendant points to the PLRA, which states that "[n]o *action* shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Defendant argues that since he has simply filed a motion in his underlying criminal case and has not filed a federal action or a lawsuit, the PLRA's exhaustion requirement does not apply.

The Third Circuit has not yet addressed the question of whether a motion to remove SAMs that is brought in the inmate's criminal case must comply with the PLRA's exhaustion requirement. The case law in other circuits is mixed. For this reason a brief analysis of the case law is instructive.

In *United States v. Hashmi*, 621 F. Supp. 2d 76 (S.D.N.Y. 2008), the court found that such a motion is not an "action" to which the PLRA would apply. The court reasoned that "an 'action' is best understood as 'a civil or criminal judicial proceeding.'"[1] *Id.* at 85 (quoting *Black's Law Dictionary* 28 (7th ed. 1999)). This definition constituted the plain meaning of the statutory language, according to the court, which should be given effect unless it would create an absurd result. *Id.* (citing *Salinas v. United States*, 522 U.S. 52, 57 (1997)). The court observed that,

> [f]inding that the current motion is not an "action" would not lead to an absurd result. Congress's clear purpose in enacting the PLRA, as the Supreme Court has recognized, was to reduce the quantity of lawsuits related to prison conditions. The initiation of a new lawsuit is certainly a more costly process than an application for a specific ruling or order brought to a court in the context of an already-pending action. A new lawsuit requires, *inter alia*, the assignment of a Judge; the effectuation of service on the Government; a formal answer from the Defendant; the briefing of a motion to dismiss or for summary judgment, etc. This is a costly process. A motion by a pretrial detainee, on the other hand, is relatively inexpensive. Thus it would certainly not be absurd for Congress to have intended that a motion be treated differently from the initiation of an "action."

*Id.* The court concluded that based on the plain language of the PLRA, the defendant's motion to remove SAMs was not an action to which the PLRA's exhaustion requirement applied. *Id.* at 86.

Other courts that have considered whether a motion to remove SAMs is an "action" for

---

[1] The court defined "motion" as "'a written or oral application requesting a court to make a specified ruling or order.'" *Hashmi*, 621 F. Supp. 2d at 85 n.7 (quoting *Black's Law Dictionary* 1031 (7th ed. 1999)).

purposes of the PLRA have similarly found that it is not. In *Sattar v. Gonzales*, No. 07-2698, 2010 WL 685787, at *2 (D. Colo. Feb. 23, 2010), the court observed that the purposes of the PLRA would not be served by requiring exhaustion when an inmate brings a motion to remove SAMs in a preexisting case. *See id.* ("The initiation of a new lawsuit or claim is different from 'an application for a specific ruling or order . . . in the context of an already pending action.'" (quoting *Hashmi*, 621 F. Supp. 2d at 85 n.7)). The court also noted that "to the extent Plaintiff's Motion raises issues related to his right of access to the court, he may raise it at any time during the course of the litigation." *Id.* (citing *Ayyad v. Gonzales*, No. 05-02342, 2008 WL 203420, at *3 (D. Colo. Jan. 17, 2008)). In *Ayyad*, the court likewise found that a motion challenging the constitutionality of SAMs was not an "action" to which the PLRA applied. 2008 WL 203420, at *2. In *United States v. Lopez*, 327 F. Supp. 2d 138 (D.P.R. 2004), the court concluded after a thorough analysis that a motion to lift SAMs in a capital case is not an "action" to which the PLRA applies. *Id.* at 140-142 ("We will not ratchet out the PRLA and read the word motion into the Act in order for it to be applicable to Defendant's motion."). In *United States v. Catalan-Roman*, 329 F. Supp. 2d 240 (D.P.R. 2004), the district court likewise concluded that a capital defendant's motion challenging his placement in an administrative housing unit was not barred for failure to exhaust his administrative remedies because the motion was not properly considered an "action" under the PLRA. *Id.* at 250 ("This is not a separate action or civil suit brought by the defendants. Defendants filed their motion in the pending criminal action based upon their status as 'death certified' defendants; they did not file an action or suit. Consequently the PLRA is inapplicable to the matter at hand.").

Other cases have concluded that a motion seeking to challenge the constitutionality of

7

SAMs is barred if the inmate has not exhausted his administrative remedies. However, these cases assume that the PLRA applies to motions to remove SAMs without discussing whether such motions are properly considered an "action" under the PLRA. In *United States v. Ali*, 396 F. Supp. 2d 703 (E.D. Va. 2005), the court found that a pretrial detainee's motion seeking relief from SAMs was barred for failure to exhaust administrative remedies. In support of its decision, the court cited two cases, *Yousef v. Reno*, 254 F.3d 1214, 1216 (10th Cir. 2001), and *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 17 n.5 (D.D.C. 2003), in which the court found that inmates must exhaust administrative remedies before challenging SAMs. However, *Yousef* and *Al-Owhali* both involved civil actions initiated by inmates for the sole purpose of challenging SAMs. They were not criminal actions in which the defendant filed a motion seeking relief from SAMs. Similarly, in *United States v. Troya*, No. 06-80171, 2008 WL 2537145 (S.D. Fla. June 24, 2008), the court held that a defendant in a capital prosecution must exhaust his administrative remedies before bringing a motion challenging SAMs. Like *Ali*, *Troya* cites *Yousef* and *Al-Owhali* (as well as *Ali* itself) in support of its decision. *Id.* at *3. The *Troya* Court did not discuss the question of whether motions are properly considered "actions" under the PLRA.[2]

---

[2] The court in *Troya* did discuss the cases of *United States v. Catalan-Roman*, 329 F. Supp. 2d 240 (D.P.R. 2004), and *United States v. Lopez*, 327 F. Supp. 2d 138 (D.P.R. 2004), which had been cited by the defendant for the proposition that a defendant facing the death penalty was not required to exhaust administrative remedies before challenging SAMs. Both *Catalan-Roman* and *Lopez* dealt with death penalty eligible defendants who had been placed in the Special Housing Unit ("SHU") by Administrative Detention Order. All death penalty eligible defendants were placed in the SHU, which was more restrictive than the general population. The court distinguished the cases based upon the fact that "[t]hey involve the automatic placement of defendants in 'administrative detention' simply because they are certified as death penalty eligible. Here, the Government has informed Defendant that the SAM restrictions were imposed upon a finding by the Attorney General that the Defendant has a 'proclivity to violence which poses a significant risk to the safety of others.'" *Troya*, 2008 WL 2537145, at *4 (citations omitted).

The government argues that the viability of *Hashmi* "is in question, because the parties did not address, nor did the court there consider, the application of *In Re Nagy*, [89 F.3d 115 (2d Cir. 1996)]." (Govt.'s Resp. 7-8.) In *Nagy*, an incarcerated defendant in a criminal prosecution pending in the Southern District of New York filed a motion seeking recusal of the district judge. The defendant then filed a petition for writ of mandamus in the Second Circuit seeking to compel the trial judge to rule on his recusal motion. 89 F.3d at 116. The Second Circuit was faced with the issue of "whether the new fee requirements of the [PLRA] apply to extraordinary writs, such as a petition for writ of mandamus, filed as an original action in this Court." *Id.* The panel observed that "[t]he PLRA applies to a 'civil action' and an appeal in a 'civil action,'"[3] *id.*, and that "[n]either the text nor the legislative history of the PLRA indicates whether a petition for a writ of mandamus is to be considered a 'civil action' for purposes of the Act." *Id.* The panel assumed, however, that Congress sought to apply the PLRA's deterrent effect to prisoners' complaints "regardless of the type of pleading filed by the prisoner to obtain relief." *Id.* at 117. Thus, the Second Circuit held that if a prisoner filed an extraordinary writ simply as an end-run around the PLRA's filing fees, the PLRA would still apply. *Id.* "However, if a prisoner seeks a writ of mandamus directed to a judge conducting a criminal trial, the application is not within the category of lawsuits to which the PLRA was aimed." *Id.*

Even if *Nagy* were binding on us, it would not compel the result that the government seeks. *Nagy* involved a writ of mandamus, which is a new judicial proceeding initiated by the inmate, as opposed to a motion in an existing criminal proceeding. More generally, *Nagy*'s

---

[3] We note that the PLRA's exhaustion requirement does not specify that it is limited to civil actions. *See* 42 U.S.C. § 1997e(a) (stating that "[n]o *action* shall be brought with respect to prison conditions . . ." (emphasis added)).

9

admonishment that courts should look to the substance of the inmate's petition rather than the form still would not compel us to require Defendant to exhaust his administrative remedies. The majority of Defendant's complaints directly implicate the ability of this Court to give him a fair and efficient trial, as we discuss at greater length *infra*. Thus, a finding that these complaints are not barred by the PLRA is consistent with *Nagy*.

The government also cites *Lyons v. United States Marshals*, 840 F.2d 202 (3d Cir. 1988), as an example of a case in which the Third Circuit held that a pretrial detainee was required to exhaust administrative remedies before challenging the conditions of his confinement. However, *Lyons* was decided before the PLRA was enacted and, in any event, it involves a separate civil action brought by the pretrial detainee rather than a motion raised in his underlying criminal case. *See id.* at 203.

Our survey of the case law reveals that every court that has considered the issue has found that a motion to remove SAMs that is filed pre-trial in a defendant's criminal case is not an "action" to which the PLRA applies. The cases holding that a defendant's motion to remove SAMs is barred for failure to exhaust administrative remedies fail to consider whether such a motion is properly considered an "action" under the PLRA. Several of these cases rely on civil cases as authority for their conclusions. We agree with the weight of authority that a capital defendant's motion to remove SAMs, brought as part of his underlying criminal case, is not an "action" to which the PLRA's exhaustion requirement applies.

We add the caveat that not every motion concerning prison conditions that is filed as part of an incarcerated defendant's criminal case should escape the PLRA's exhaustion requirement. The Second Circuit was correct to require district courts to look to the substance of the filing to

determine whether it is in reality a § 1983 action in disguise. *See Nagy*, 89 F.3d at 116-17 ("[I]f a prisoner, contemplating the filing of a complaint against prison officials under 42 U.S.C. § 1983, decided to avoid liability for filing fees and instead sought comparable relief by applying for a writ of mandamus directed to a prison official, the PLRA provisions should normally apply."). Thus, if a defendant were to file a motion challenging aspects of prison life that have no bearing on the ability of the court to manage the criminal prosecution, that motion should be treated as an attempt to commence a new civil action that must comply with the PLRA, even if it is stylized as a motion in a criminal case. *See United States v. Antonelli*, 371 F.3d 360, 361 (7th Cir. 2004) (finding that motion challenging prison conditions, filed by inmate as part of his dormant 25-year-old criminal case, was "appropriately seen as an attempt to commence a new civil suit" and therefore subject to the procedural constraints of the PLRA). Where, as here, a defendant's motion challenges aspects of prison life that directly implicate the court's ability to fairly and efficiently manage the defendant's criminal prosecution, that motion is "not within the category of lawsuits to which the PLRA was aimed." *Nagy*, 89 F.3d 117. Therefore, Defendant's Motion in the instant case seeking removal of the SAMs is not barred by the PLRA to the extent that it challenges aspects of Defendant's incarceration that directly and necessarily affect our ability to give him a fair and speedy trial. We will hear Defendant's complaints that he is not permitted sufficient contact visits with his attorneys, that he is not receiving sufficient access to a computer and the law library, and that his legal mail is being opened outside of his presence. Any complaints that have a tangential effect at best on our ability to manage Defendant's criminal case are more properly understood to be § 1983 claims that should be brought in a separate civil action, and we find that any such claims are barred by the PLRA's

11

exhaustion requirement.  (*See, e.g.*, Def.'s Mot. Ex. E at 2 (complaining about lack of access to running water at FDC and being held in a "disgusting" cell without access to cleaning supplies).)

This approach strikes an appropriate balance between Congress's desire to reduce the number of baseless prisoner lawsuits that are filed in the federal courts and district courts' need to manage their criminal dockets without getting bogged down by the federal bureaucracy. Congress enacted the PLRA as a response to the growing number of prison inmate lawsuits, many of which were patently frivolous.  *See, e.g.*, 141 Cong. Rec. S14408-01 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) ("These suits can involve such grievances as insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and yes, being served chunky peanut butter instead of the creamy variety.").  This decision should not be interpreted as an invitation to incarcerated defendants or pretrial detainees seeking an end-run around the PLRA.

There is nothing in either the language of the PLRA or its legislative history to suggest that Congress intended to strip district courts of the ability to effectively manage their criminal cases.  Defendant is facing the death penalty.  He is scheduled to stand trial in September 2011. He has two attorneys and a number of experts working to protect his interests.  To require Defendant to spend time pursuing administrative remedies before we can resolve issues that necessarily bear on Defendant's ability to receive a fair trial makes little sense.  *See* 28 C.F.R. § 542.13-15 (specifying deadlines for submission of complaints and appeals).  Accordingly, we conclude that Defendant, who is facing the death penalty, need not exhaust his administrative remedies under the PLRA before challenging aspects of SAMs that directly affect the Court's ability to ensure that Defendant receives a fair and speedy trial.

## III. CONCLUSION

For the foregoing reasons, the aspects of Defendant's Motion for Relief from Special Administrative Measures that directly affect our ability to manage these criminal proceedings are not barred for failure to exhaust his administrative remedies under the PLRA. This includes Defendant's complaints regarding his legal mail being opened outside of his presence, his lack of contact visits with his attorneys, and his lack of access to a computer and the law library. To the extent that Defendant seeks to challenge other conditions of confinement that do not directly affect our ability to assure a fair trial, Defendant must exhaust his administrative remedies under the PLRA.

An appropriate Order will follow.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**