IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550 |
| KABONI SAVAGE | : | |
| ROBERT MERRITT | : | |
| STEVEN NORTHINGTON | : | |
| KIDADA SAVAGE | : | |

**SURRICK, J.**                                                    **JUNE  1  , 2012**

<u>**MEMORANDUM**</u>

Presently before the Court are Defendant Kaboni Savage's Motion to Dismiss the

Indictment on Double Jeopardy Grounds (ECF No. 374) and Motion to Dismiss Count Nine of

the Third Superseding Indictment on Double Jeopardy Grounds (ECF No. 375).  For the

following reasons, Defendant's Motions will be denied.

**I.      BACKGROUND**

     **A.      The Instant Indictment**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding

Indictment charging Defendant Kaboni Savage ("Savage") with conspiracy to participate in the

affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1),

twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-

7, 10-15), tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8), conspiracy to

commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9),

retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16), and using fire to

commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17).  (Fourth Superseding

Indictment, ECF No. 480.)  Savage was charged, along with three co-defendants, Steven

Northington, Robert Merritt, and his sister, Kidada Savage ("Kidada").[1]  Defendant Lamont

Lewis was also charged in the First Superseding Indictment.  The charges against Lewis were

disposed of by guilty plea on April 21, 2011.[2]

All Defendants are charged on the RICO conspiracy count (Count 1).  In addition,

Northington is charged on Counts 5, 7, and 8.  Merritt is charged on Counts 9, 10-15, 16 and 17.

Kidada is charged on Counts 10-15, 16 and 17.  (Fourth Superseding Indictment.)  On March 14,

2011, the Government filed a notice of intent to seek the death penalty against Savage, Merritt

and Northington.  (ECF Nos. 196, 197, 198.)  The Government is not seeking the death penalty

against Kidada.

In Count 1, the RICO conspiracy count, the Government alleges that all four Defendants

were members of a regional criminal organization, which was based in North Philadelphia and

was known as the "Kaboni Savage Organization" ("KSO").  From late 1997 through April 2010,

this racketeering enterprise conspired and agreed to distribute large quantities of controlled

substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who

had testified, or were about to testify, against the racketeering enterprise or its members.  The

---

[1] For ease of reference, we refer to Kidada Savage by her first name.

[2] The First Superseding Indictment was filed on April 8, 2009.  (ECF No. 51.)  The Second Superseding Indictment was filed on June 22, 2011.  (ECF No. 229.)  The Third Superseding Indictment was filed on September 7, 2011.  (ECF No. 284.)
The Government filed the Fourth Superseding Indictment after Savage filed the Motion to Dismiss and the Motion to Dismiss Count Nine.  The Fourth Superseding Indictment is almost identical to the Third Superseding Indictment, except for four minor changes, which include rearranging three covert acts in chronological order, changing the dates of two overt acts, and changing the initials of one cooperating co-conspirator.  For purposes of this Memorandum, we will refer to the allegations as they are stated in the Fourth Superseding Indictment.

KSO packaged, prepared and distributed cocaine, crack and phencyclidine ("PCP") throughout the greater Philadelphia area, and collected drug proceeds in exchange.  The KSO operated drug distribution centers, also known as "drug corners," throughout North Philadelphia and maintained control of these drug corners through a pattern of threats, intimidation, violence and murder.  (Fourth Superseding Indictment 5.)  The KSO was also committed to maintaining, preserving, protecting and expanding its power, territory and profits.  It did this by tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence and murder.

Counts 2 through 7 charge murder in aid of racketeering for the murders of Kenneth Lassiter (Count 2), Mansur Abdullah (Count 3), Carlton Brown (Count 4), Barry Parker (Count 5), Tyrone Toliver (Count 6) and Tybius Flowers (Count 7).  (*Id.*)  Savage is charged on all of these counts while Northington is charged on Counts 5 and 7.  In Count 8, the witness tampering charge, the Government alleges that Savage and Northington murdered Tybius Flowers with the intent to prevent Flowers' attendance and testimony at Savage's trial for the murder of Kenneth Lassiter in the Philadelphia Court of Common Pleas.  In Count 9, Savage and Merritt are charged with conspiracy to murder in aid of racketeering.  It is alleged in Count 9 that Savage and Merritt agreed with each other and with Lewis and Kidada to commit arson at the home of Eugene Coleman's family members, in retaliation for Coleman testifying against Savage before a federal grand jury.  Six people were killed during the arson, including three young children and Coleman's mother.  Counts 10 through 15 charge Savage, Kidada and Merritt for the arson-murders of the Coleman family members:  Marcella Coleman (Count 10), Tameka Nash (Count 11), Sean Anthony Rodriguez (Count 12), Tajh Porchea (Count 13), Khadija Nash (Count 14),

and Damir Jenkins (Count 15).  Count 16 charges Savage, Kidada and Merritt with retaliation against a witness, and Count 17 charges these Defendants with using fire to commit a felony. These Counts both relate to the murder of Coleman's family members.

> ### B.     The Prior Indictment, Conviction and Sentencing in 2005

On February 9, 2005, a grand jury returned a twenty-four count Second Superseding Indictment (the "2005 Indictment") against Savage, Northington and four other co-defendants. *See United States v. Savage*, No. 04-269 (E.D. Pa.), at ECF No. 448.[3]  Except for Savage and Northington, none of the other co-defendants named in the 2005 Indictment are charged in the instant Indictment.

The 2005 Indictment charged Savage with conspiring to manufacture and distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841 (Count 1), five counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 4-8), possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 10), possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 12), three counts of threatening a witness, in violation of 18 U.S.C. 1512(a)(2)(A) (Counts 13-15), three counts of threatening to retaliate against a witness, in violation of 18 U.S.C. § 1513(b)(2) (Counts 16-18), and two counts of using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b) (Counts 19 and 20).  *See Savage*, No. 04-269, at ECF No. 448.  Northington was charged in Count 1, the drug conspiracy, and Counts 9, 11 and 12.  *Id.*

---

[3] The First Superseding Indictment in this criminal drug case was returned on May 19, 2004, and charged eighteen defendants in addition to Savage and Northington.  *See Savage*, No. 04-269, at ECF No. 13.  Fourteen of those defendants pleaded guilty before the Second Superseding Indictment was returned.

The conspiracy count alleged that Savage and Northington, together with other co-conspirators, conspired and agreed to manufacture and distribute more than five kilograms of cocaine, and more than 50 grams of crack.  *Id.*  According to the 2005 Indictment, Savage and Gerald Thomas, who was also named in the 2005 Indictment and in Count 1, supervised, managed and organized a drug trafficking enterprise referred to as the "Thomas-Savage Organization."  *Id.*  The enterprise operated in and around Philadelphia, obtained large quantities of drugs, supplied the drugs to co-conspirators for distribution, and collected proceeds from the distribution.  *Id.*

On December 16, 2005, following a seven-week jury trial before the Honorable Mary A. McLaughlin, a jury found Savage guilty of fourteen (of the sixteen) Counts, including the drug conspiracy count (the "2005 Conviction").[4]  *See Savage*, No. 04-269, at ECF No. 847. Northington was found guilty of two (of the four) Counts charged against him, including the drug conspiracy count.  *See Savage*, No. 04-269*, at ECF No. 896.[5]  Based on Savage's convictions, he was subject to a mandatory minimum sentence of ten years and a statutory maximum sentence of life in prison.  *See Savage*, No. 04-269, ECF No. 859 (Apr. 27, 2006 Sentencing Tr. 6-7 (on file with Court)).  At sentencing, Savage was found to have a United States Sentencing Guidelines total offense level of 43 and a criminal history category of II.  *Id.*; *Savage*, No. 04-269, at ECF No. 823.  This resulted in a Guidelines range of life imprisonment.  *See Savage*, No. 04-269, at

---

[4] Savage was also found guilty of money laundering (Counts 4-8), possessing a firearm as a convicted felon (Count 12), threatening a witness (Counts 13-15), two counts of threatening to retaliate against a witness (Counts 16 and 18), and using a telephone to facilitate drug trafficking (Counts 19 and 20).

[5] Northington was also found guilty on Count 11.  (ECF No. 896.)

ECF No. 859.  Savage was ultimately sentenced to thirty years in prison.  During his sentencing,

the Government presented evidence to Judge McLaughlin that was unrelated to the charges in the

2005 Indictment.  Specifically, the Government presented evidence of additional threats and

intimidation made by Savage to witnesses and their families during the trial.  *Id.*  The

Government also told Judge McLaughlin about the Coleman family murders.  Based on this

evidence, the Government requested an upward departure of at least four offense levels.  *Id.* at 53

(noting that Savage's drug trafficking conduct alone should result in a life sentence, but that

based on his conduct during trial, an upward adjustment is appropriate).

Northington was subject to a mandatory minimum sentence of ten years in prison and

statutory maximum of fifty years in prison.  *See Savage*, 04-269, ECF No. 841.  During

Northington's sentencing, the Government presented evidence that was unrelated to the conduct

charged in the 2005 Indictment.  Specifically, the Government's evidence showed that while the

trial was underway, Northington threatened to kill the family of Robert Wilks, who was

scheduled to testify at the trial.  *Id.*  The Government requested a two-level upward adjustment

based on these threats.  *Id.* at 8-9.  He was subject to a total offense level of 36 and a criminal

history category of III.  This resulted in a Guidelines range of 235 to 293 months in prison.  *See*

*Savage*, 04-269, at ECF No. 968 (June 13, 2006 Sentencing Tr. (on file with Court)).

Northington was sentenced on June 15, 2006 to 235 months, or approximately nineteen-and-a-

half years, in prison.  *See Savage*, 04-269, at ECF No. 895.  Northington's sentence fell at the

bottom of his Guidelines range.

### C.    Procedural History

By Order dated June 29, 2001, the deadline to file pretrial motions in this case was set for

February 21, 2012.  (ECF No. 239.)[6]  The Defendants have filed approximately sixty-two pretrial

motions.  Savage filed the instant Motion to Dismiss the Indictment on Double Jeopardy

Grounds on February 21, 2012.  (Def.'s Mot. Dismiss, ECF No. 374.)  Savage also filed a

Motion to Dismiss Count Nine of the Third Superseding Indictment that same day.  (Def.'s Mot.

Dismiss Count 9, ECF No. 375.)  The Government filed a joint response to these Motions on

April 13, 2012.  (Gov't Resp., ECF No. 465.)  Trial of Defendants is scheduled for September

2012.

## II.     DISCUSSION

### A.     Standing of Defendants to Assert Double Jeopardy Claims

As a preliminary matter, we must determine which Defendants have standing to join the

Motions to assert the respective double jeopardy claims.  Savage is the only Defendant that has

filed pretrial motions asserting double jeopardy claims, and neither of his Motions asserts

arguments on behalf of any of the other Defendants.  All Defendants have, however, filed

motions to join the other pretrial motions of their co-defendants.  (*See* ECF Nos. 397 (Merritt

seeking to join pretrial motions of Savage and Northington), 434 (Kidada seeking to adopt

pretrial motions of all co-defendants), 365 (Northington seeking to join pretrial motions of

Merritt).)[7]  The Government does not object to any of the Defendants being permitted to join the

_____

[6] The deadline for Kidada to file pretrial motions was extended until March 21, 2012.
(ECF No. 357.)

[7] Northington's motion to join Merritt's pretrial motions purportedly only seeks to join
one of Merritt's motions, the motion to strike or modify the notice of intent to seek the death
penalty (ECF No. 368).  Merritt has filed a motion to join the pretrial motions of Savage and
Northington.  We will construe Northington's motion to join Merritt's pretrial motions liberally
to include joinder of Merritt's pretrial motion to join Savage's pretrial motions.  This will permit
Northington to join in each of the co-defendants' motions to the same extent as Merritt, and thus

motions filed by co-defendants, provided that each Defendant has standing to assert the issues raised in the respective motions.  (*See* ECF No. 439.)  In order to determine which of the Defendants have standing, we must look at the specific arguments raised in these double jeopardy Motions.

In the Motion to Dismiss the Indictment on Double Jeopardy Grounds, Savage argues that double jeopardy precludes the Government from prosecuting the instant Indictment because it charges the same crimes for which Savage was prosecuted and sentenced in the 2005 Indictment. In the prior prosecution, Savage was charged and convicted of, among other crimes, conspiracy to manufacture and distribute cocaine.  In the instant Indictment, Savage is charged with RICO conspiracy and conspiracy to commit murder in aid of racketeering.  Savage contends that the 2005 Indictment and the instant Indictment allege a single conspiracy, and that he has already been prosecuted and punished for this conspiracy.  Of all Defendants charged in the instant Indictment, only Savage and Northington were charged in the 2005 Indictment.  Both Savage and Northington were previously found guilty of conspiracy to manufacture and distribute cocaine, and both are now charged with RICO conspiracy.  Accordingly, Savage and Northington have standing to assert this double jeopardy argument.

In the Motion to Dismiss Count Nine, Savage argues that the conspiracy to commit murder in aid of racketeering charge (Count 9) and the RICO conspiracy charge (Count 1) are impermissibly multiplicitous and that Count 9 should be dismissed.  Count 1 charges all Defendants with RICO conspiracy and Count 9 charges Savage and Merritt with conspiracy to

---

Northington may join in the instant Motions to the extent that he has standing.

commit murder in aid of racketeering.  Accordingly, only Savage and Merritt have standing to assert the arguments raised in the Motion to Dismiss Count Nine.

### B.      Motion to Dismiss Indictment

The Fifth Amendment guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause is an affirmative defense that attaches when it is "shown that the two offenses charged are in law and in fact the same offense."  *United States v. Felton*, 753 F.2d 276, 278 (3d Cir. 1985).  Double jeopardy "'protects against three distinct abuses:  a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.'"  *United States v. $184,505.01 in U.S. Currency*, 72 F.3d 1160, 1165 (3d Cir. 1995) (quoting *United States v. Halper*, 490 U.S. 435, 440 (1989)).

Defendants have the initial burden of putting their double jeopardy claims at issue.  As the Third Circuit has explained:

> [A] defendant moving to dismiss an indictment on double jeopardy grounds has the burden of going forward with the evidence by putting his double jeopardy claim in issue. If the defendant makes a non-frivolous showing of double jeopardy, he is entitled to a pre-trial evidentiary hearing to determine the merits of his claim.  Once the defendant has made out his prima facie case, the burden of persuasion shifts to the government to prove by a preponderance of the evidence that [the indictments or punishments are not for the same offense].

*United States v. Garcia*, 919 F.2d 881, 886-87 (3d Cir. 1990) (quoting *United States v. Liotard*, 817 F.2d 1074, 1077 (3d Cir. 1987)).

The Double Jeopardy Clause prevents the Government from splitting one conspiracy into multiple prosecutions.  *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989); *see also United States v. Rigas*, 605 F.3d 194, 212 (3d Cir. 2010) ("[A] single conspiracy should not be

divided into multiple prosecutions, each alleging different overt acts.").  "Importantly, the Double Jeopardy Clause prohibits repeat trials for the same offense, not for the same conduct." *Rigas*, 605 F.3d at 204.

The test for determining whether two offenses are "the same" for purposes of double jeopardy was articulated by the Supreme Court in the seminal case of *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*; *see also Albernaz v. United States*, 450 U.S. 333, 337 (1981); *United States v. Grayson*, 795 F.2d 278, 281-82 (3d Cir. 1986); *Rigas*, 605 F.3d at 204.  In other words, under the *Blockburger* test, "a court looks to the statutory elements of the crime charged to determine if there is an overlap." *Rigas*, 605 F.3d at 204 (quoting *United States v. Chorin*, 322 F.3d 274, 281 (3d Cir. 2003)).  *Blockburger* is a rule of statutory construction used to determine legislative intent.  *Grayson*, 795 F.2d at 282 ("In essence, the ultimate question of whether two offenses are the same, under *Blockburger*, is one of legislative intent."); *Garrett v. United States*, 471 U.S. 773, 779 (1985).  The test is used "for determining whether Congress intended to separately punish violations of distinct statutory provisions, and is therefore inapplicable where a single statutory provision was violated."  *Rigas*, 605 F.3d at 204.

As noted above, Savage asserts two double jeopardy arguments in support of dismissing the instant Indictment.  Savage argues that by including the RICO conspiracy charge in the instant Indictment, the Government seeks to prosecute him for the same offenses for which he was already charged, prosecuted and sentenced in the 2005 Conviction.  In other words, when

read together, the 2005 Indictment and the instant Indictment allege a single conspiracy, and the instant Indictment represents a successive prosecution for the same offense, in violation of the Double Jeopardy Clause.  Savage also argues that he was already punished for the conduct alleged in the instant Indictment by being sentenced for the 2005 Conviction.  Thus, being subject to the instant Indictment may result in multiple punishments for the same offense, in violation of his double jeopardy rights.

> 1.    *Successive Prosecution for the Same Offense*

In *United States v. Grayson*, a case factually and legally indistinguishable from the instant case, the Third Circuit considered whether successive prosecutions and punishments for a RICO offense and the underlying predicate acts violated the Double Jeopardy Clause.  In 1984, a federal grand jury returned an indictment charging the defendant and ten other members of a motorcycle club with RICO conspiracy, RICO substantive violations, and engaging in a continuing criminal enterprise ("CCE").  *Grayson*, 795 F.2d at 280.  During trial, the government introduced evidence of the defendant's two prior drug conspiracy convictions as evidence of the requisite predicate acts for the RICO conspiracy and CCE counts.  *Id.* at 282.[8]  The defendant argued that introduction of this evidence violated his right to be protected from double jeopardy. *Grayson*, 795 F.2d at 282.

The Third Circuit first reviewed the language and legislative history of the RICO statutes and determined that it was Congress' intention to allow for the separate prosecution and punishment of predicate offenses and subsequent RICO offenses.  *Id.* ("RICO's statutory

---

[8]  The defendant had previously been convicted of conspiracy to manufacture methamphetamine in 1977, and conspiracy to manufacture PCP in 1983.  Both convictions were in violation of 21 U.S.C. § 846.

language indicates that Congress sought to supplement, rather than supplant, existing crimes and penalties."); *see also United States v. Pungitore*, 910 F.2d 1084, 1135 (3d Cir. 1990) (discussing language of RICO statute and stating that "the RICO conspiracy and the predicate conspiracy are distinct offenses with entirely different objectives"); *United States v. Irizarry*, 341 F.3d 272, 292-93 n.7 (3d Cir. 2003) ("Congress' purpose in enacting RICO was to eradicate organized crime by bring[ing] the often highly diversified acts of a single organized crime enterprise under RICO's umbrella . . . .   The government can prosecute a series of different conspiracies in a single RICO count so long as all of the different conspiracies relate to the affairs of a single enterprise.").  The Court stated in *Grayson* that the language of RICO "suggests that Congress envisioned the situation where a defendant is convicted and sentenced for a racketeering act and subsequently charged with a RICO violation based on the prior conviction."  *Grayson*, 795 F.2d at 282.  The Court also noted that this interpretation of Congress' intent is supported by the decisions of other Circuit Courts.  *Id.* at 283 (citing cases from the Second, Fifth and Ninth Circuits); *see also United States v. Persico*, 832 F.2d 705, 711 (2d Cir. 1987) ("Congress intended to permit conduct resulting in prior convictions to be used as predicate acts of racketeering activity to establish subsequent RICO convictions.").

After determining that Congress intended separate prosecutions and cumulative punishments for substantive RICO violations and predicate offenses, the *Grayson* Court considered whether a RICO offense is the "same offense" as one or more of its predicate offenses for purposes of double jeopardy.  *Id.* at 283.  The Court recognized that "[a] RICO offense is not, in a literal sense, the 'same' offense as one of the predicate offenses," and that RICO offenses and predicate offenses are "intended to deter two different kinds of activity—'racketeering' on

the one hand and narcotics violations on the other."  *Id.*  The Court ultimately concluded that

prosecuting the defendant for the predicate drug conspiracy and then subsequently prosecuting

him for RICO offenses, including RICO conspiracy, was not inconsistent with the Double

Jeopardy Clause.  *Id.*[9]

     *Grayson* is controlling.  Savage's argument that the instant Indictment subjects him to

double jeopardy as a result of his prior drug conspiracy charge was squarely addressed and flatly

rejected by the Third Circuit in *Grayson*.  Like the defendant in *Grayson*, Savage faces a RICO

conspiracy charge after having been previously prosecuted for a predicate drug conspiracy under

21 U.S.C. § 846.  Also like the defendant in *Grayson*, Savage's prior drug activities charged in

---

     [9]  The *Grayson* Court noted that in accordance with Supreme Court precedent, "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history" that two offenses are the same.  *Grayson*, 795 F.2d at 282.  Since the Court had determined that "Congress, in enacting RICO, sought to allow the separate prosecution and punishment of predicate offenses and a subsequent RICO offense," it did not need to apply the *Blockburger* test.  *Id.*

     In *United States v. Bennett*, 44 F.3d 1364 (8th Cir. 1995), the Eighth Circuit reached the same conclusion as the *Grayson* Court, that double jeopardy is not violated by a prosecution for RICO conspiracy and substantive RICO violations after a prior prosecution for drug conspiracy. The Court in *Bennett* applied the *Blockburger* test in arriving at this conclusion.  *Id.* at 1373.  The defendant, who had been indicted for RICO conspiracy and substantive offenses, filed a motion to dismiss the indictment on grounds that double jeopardy would be violated in light of his prior conviction for conspiracy to distribute heroin.  *Id.* at 1371-72.  The Eighth Circuit first concluded that Congress intended the RICO offenses to be separate from drug conspiracy offenses under 21 U.S.C. §§ 846, 848.  *Id.* at 1373.  The Court then applied the "same elements" test as articulated in *Blockburger* to determine whether the offenses are the same within the meaning of the Double Jeopardy Clause.  *Id.*  Under the same elements test, the Court identified the relevant statutory elements of the conspiracy statutes, and determined that the elements of the RICO charges were different than the elements of the drug conspiracy charges.  *Id.*  Specifically, RICO conspiracy requires proof of the existence of an enterprise, a "pattern of racketeering activity" and an agreement to violate RICO, all of which are not required to prove a drug conspiracy under § 846. In addition, a drug conspiracy under § 846 requires proof of an agreement to deal in narcotics, which is not required for RICO offenses.  *Id.*  The Court concluded that "[a]n examination of the statutory elements of the prior drug conspiracies . . . and the RICO offenses alleged in the current indictment reveals that these offenses are not the same."  *Id.* at 1375.

the underlying conspiracy are not charged in the instant Indictment as substantive crimes but instead are used as evidence of the existence of a racketeering enterprise and the racketeering activities of such enterprise.  In *Grayson*, the Third Circuit found no double jeopardy violation. Accordingly, Savage's double jeopardy claim here based on successive prosecutions must be rejected.  *See Grayson*, 795 F.2d at 282-83; *see also Pungitore*, 910 F.2d at 1108 ("The double jeopardy clause does not bar a subsequent RICO prosecution which is based, in part, on predicate offenses for which the defendant already has been prosecuted."); *Bennett*, 44 F.3d at 1367, 1371-72 (finding no double jeopardy violation where defendant was charged with RICO conspiracy and substantive offenses after having previously been charged with conspiracy to distribute heroin).

Savage not only ignores this controlling authority—indeed, he fails to even reference the *Grayson* opinion—he invites us to apply a different standard to this double jeopardy claim. Instead of applying the *Blockburger* test, Savage argues that the instant Indictment should be dismissed under the "totality of the circumstances" test.  This test was adopted by the Third Circuit in *Liotard* as an alternative way to address double jeopardy claims for conspiracy charges. 817 F.2d at 1078.  In *Liotard*, the Third Circuit considered a double jeopardy argument involving successive conspiracy prosecutions under 18 U.S.C. § 371.  The defendant had been acquitted of a § 371 conspiracy to transport goods in interstate commerce and was subsequently charged with a § 371 conspiracy to steal from an interstate shipment of goods.  *Id.* at 1076.  The Third Circuit recognized that conspiracy indictments "raised special concerns that the 'same evidence test' might not adequately address."  *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir. 1995); *see also Liotard*, 816 F.2d at 1078 ("The danger is that successive indictments against a single

14

defendant for participation in a single conspiracy might withstand same evidence scrutiny if the court places undue emphasis upon the evidence used to prove the commission of the overt acts alleged.").

> Under the totality of the circumstances test set forth in *Liotard*:
>
> [A] conspiracy defendant will make out a non-frivolous showing of double jeopardy if he can show that (a) the "locus criminis" of the two alleged conspiracies is the same, (b) there is a significant degree of temporal overlap between the two conspiracies charged, (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted coconspirators), and (d) the overt acts charged and the role played by the defendant according to the two indictments are similar.

*Id.* at 1078 (internal citations omitted).  These factors are not exhaustive, and "different conspiracies may warrant emphasizing different factors."  *Rigas*, 605 F.3d at 213 (quoting *Smith*, 82 F.3d at 1267).  "The ultimate goal of the totality-of-the-circumstances test is to determine 'whether there are two agreements or only one.'"  *Id.* (quoting *Smith*, 82 F.3d at 1267); *see also Becker*, 892 F.2d at 268 ("The critical determination is whether one agreement existed.").

Savage bases his entire successive prosecution argument on the totality of the circumstances test set forth in *Liotard*.  However, the *Liotard* test does not apply to Savage's double jeopardy claim.  The totality of the circumstances test applies where the successive conspiracy charges involve the same conspiracy statute.  Here, the conspiracy charge in the 2005 Indictment and the conspiracy charge in the instant Indictment involve different conspiracy statutes.[10]  Significantly, *Grayson*, which involved successive prosecutions under different

---

[10] In a footnote, Savage recognizes that the conspiracy charges involve different statutes.  Nevertheless, Savage maintains that the totality of the circumstances test should govern this Court's review of his double jeopardy claims.  Savage attempts to reserve his rights to submit a brief arguing his double jeopardy claims under the *Blockburger* test.  This request is denied.  Savage could have presented his double jeopardy arguments under both tests.  In any event,

conspiracy statutes, did not apply a totality of the circumstances test in evaluating the double jeopardy claims.[11]  After deciding *Grayson* and *Liotard*, the Third Circuit has suggested on a number of occasions that application of the totality of the circumstances test is limited to cases where the prior conspiracy and the subsequent conspiracy are charged under the same conspiracy statute.  *See, e.g.*, *United States v. Ciancaglini*, 858 F.2d 923, 929 (3d Cir. 1988) ("Because this case involves successive prosecutions of the same substantive and conspiracy RICO offenses, we will apply the 'totality of the circumstances test' outlined in *Liotard* to determine whether both indictments charge the same 'pattern of racketeering activity.'"); *Rigas*, 605 F.3d at 206 (noting that the Supreme Court has concluded that the *Blockburger* test applies where the defendant's conduct violated multiple conspiracy statutes); *cf. United States v. Komolafe*, 246 F. App'x 806, 812 (3d Cir. 2007) ("Where the same conduct violates two separate statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." (quoting *Garrett*, 471 U.S. at 778)).  Moreover, a review of the cases in this Circuit that have applied *Liotard* to successive prosecution claims reveals that they involve conspiracy charges under the same conspiracy statute.  *See, e.g., Rigas*, 605 F.3d at 212

---

supplemental briefing would be futile in light of controlling Third Circuit authority that precludes Savage's double jeopardy claim.  *See Grayson*, 795 F.2d at 283; *see also Pungitore*, 910 F.2d at 1107-08 (relying on *Grayson* in finding no double jeopardy violation when prior conspiracy was used as predicate act in subsequent RICO conspiracy).

[11] The Court recognizes that *Liotard* was decided after *Grayson*.  However, any claim that *Grayson*'s precedential value is undermined by *Liotard*'s adoption of the totality of the circumstances must be rejected.  *Liotard* was decided less than a year after *Grayson*. Nevertheless, *Grayson* was affirmed by the Third Circuit in a case that was decided after *Liotard*. *See Pungitore*, 910 F.2d at 1107-08 (applying *Grayson* and holding that prior conspiracy to extort money could be used as a predicate act in the defendant's subsequent RICO conspiracy prosecution).

(determining that the criminal conspiracy statute, 18 U.S.C. § 371, was intended to create a single offense and thus applying the totality of the circumstances test to successive prosecutions under § 371); *Ciancaglini*, 858 F.2d at 929 (applying *Liotard* to double jeopardy claim involving successive RICO substantive and RICO conspiracy charges); *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989) (applying *Liotard* to successive drug conspiracy charges under § 846); *United States v. Kelly*, Crim. No. 07-163, 2012 U.S. Dist. LEXIS 16323, at *14-19 (W.D. Pa. Feb. 9, 2012) (applying *Liotard* to habeas petitioner's double jeopardy argument where charges involved same conspiracy statute).[12]

Even if we were to apply the totality of the circumstances test, Savage nevertheless fails to make a non-frivolous showing that his double jeopardy rights are at issue. The only factor in the totality of the circumstances test that weighs in Savage's favor is the fact that both indictments allege acts that primarily took place in Philadelphia. The remaining factors weigh against a finding that the conspiracy in the 2005 Indictment and RICO conspiracy are one and the same.

---

[12] In one District Court case, the court applied both *Blockburger* and *Liotard* to a double jeopardy claim involving conspiracies charged under different conspiracy statutes. *See United States v. Harris*, No. 90-144, 1990 U.S. Dist. LEXIS 10462, at *3-4, 7-9 (E.D. Pa. Aug. 13, 1990). The defendant in *Harris* had previously been convicted of, among other things, RICO conspiracy, for participating in a price-fixing scheme. *Id.* at *1. In a subsequent prosecution, the defendant was charged with conspiracy to violate the Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises Act ("ITAR"), in violation of 18 U.S.C. § 1952. *Id.* The court first applied the *Blockburger* test and determined that a RICO conspiracy and an ITAR conspiracy are distinct for purposes of double jeopardy. *Id.* at *4. The court then applied the totality of the circumstances test, noting that the test is "a gloss applied to the *Blockburger* test where the statutes at issue charge conspiracy." *Id.* at *7. The court determined that the defendant failed to make a non-frivolous showing of a double jeopardy violation. *Id.* at *9.

First, and most importantly, the two conspiracies constitute two distinct agreements. *See Rigas*, 605 F.3d at 213 ("[T]he critical determination is whether one agreement existed."); *Ciancaglini*, 858 F.2d at 927 ("It is the agreement which constitutes the crime [of conspiracy], not the overt acts."). The conspiracy charged in the 2005 Indictment focused primarily on drug-related activities. The conspiracy charged in the instant Indictment focuses predominantly on acts of violence by Defendants to protect or advance their racketeering enterprise. A comparison of the counts charged in the 2005 Indictment with the counts charged in the instant Indictment supports a finding that the conspiracies constituted distinct agreements. *See Ciancaglini*, 858 F.2d at 929 (considering pattern of racketeering activities charged in prior and subsequent indictments when applying totality of circumstances test). The 2005 Indictment charged Savage with conspiracy to manufacture and distribute cocaine and crack, money laundering, possession of firearms, threatening of a witness, retaliation against a witness and using a telephone to facilitate drug trafficking. The instant Indictment charges RICO conspiracy, thirteen counts of murder in aid of racketeering, witness tampering, conspiracy to commit murder in aid of racketeering, retaliating against a witness and using fire to commit a felony. Although the conspiracy found in the 2005 Indictment is included as a predicate act in the RICO conspiracy, none of the charges in the instant Indictment are found in the 2005 Indictment. In fact, a majority of the charges in the instant Indictment involve crimes of violence against witnesses from the 2005 prosecution, including the witnesses' families, in retaliation for the witnesses' cooperation with the Government.

Second, the conspiracies in the 2005 Indictment and the instant Indictment do not share a significant degree of temporal overlap. The drug conspiracy charged in the 2005 Indictment

includes acts that took place from September 1999 through April 2003.  *See Savage*, No. 04-269, ECF No. 448 at 2.  This conspiracy spanned approximately three-and-a-half years.  The RICO conspiracy includes predicate acts that took place from as early as 1997 through April of 2010. (Fourth Superseding Indictment at 1.)  This conspiracy spanned approximately thirteen years. Although the time frame of the 2005 conspiracy was completely subsumed by the time frame of the RICO conspiracy, this fact is not determinative.  *See Harris*, 1990 U.S. Dist. LEXIS 10462, at *8 (finding that one conspiracy that was temporally subsumed within another conspiracy was a mere "coincidence").  Indeed, 94 of the 140 overt acts listed in the RICO conspiracy charge occurred after the April 2003 end date of the drug conspiracy.  (Gov't's Resp. 7.)

Third, the conspiracies do not share a significant degree of personnel overlap.  Savage and Northington are the only two Defendants named in both the 2005 Indictment and the instant Indictment.  The conspiracy charged in the 2005 Indictment originally contained eighteen defendants, most of whom pleaded guilty prior to trial.  *See Savage*, No. 04-269, at ECF No. 13. The RICO conspiracy contains four defendants.  Thus, of the twenty-two total defendants charged in the two conspiracies, there is no overlap other than Savage and Northington.

Finally, the overt acts charged in the prior and instant conspiracies are sufficiently different.  Of the 140 overt acts alleged in the RICO conspiracy count, thirty-two are shared between the two indictments.  This overlap is not significant when compared to the number of non-overlapping overt acts, many of which had not yet occurred at the time of the drug conspiracy.  In addition, the overlap is not inconsistent with the well-settled law that the Government may charge previous drug conspiracies as predicate acts in RICO conspiracies.  *See Pungitore*, 910 F.2d at 1108 (prior conspiracy charged as predicate act in a subsequent RICO

19

conspiracy not a violation of double jeopardy); *Grayson*, 795 F.2d 282 (holding that prosecution for RICO offense after an earlier conviction for predicate conspiracy is permissible under the Double Jeopardy Clause).  Moreover, as the Government points out, the overlapping overt acts are offered in the conspiracy charges for different purposes.  In the 2005 Indictment, the acts were offered to prove that the Defendants had entered into an agreement to manufacture and distribute crack and cocaine.  In the RICO conspiracy, the overt acts are offered to show the existence of a racketeering enterprise, "which protected and advanced the organization's interests through various acts of violence."  (Gov't's Resp. 8.)

Accordingly, Savage has failed to make a non-frivolous showing that his double jeopardy rights are being violated by his being subjected to successive conspiracy prosecutions.[13]

### 2.    *Multiple Punishments for the Same Offense*

Savage also argues in the Motion to Dismiss that he has already been punished for the acts alleged in the Indictment as a result of his sentencing for the 2005 Conviction.  Savage contends that during sentencing for the 2005 Conviction, the District Court considered acts alleged in the instant Indictment in fashioning Savage's sentence.  Savage states that "[a]t the time of sentencing for [his] convictions in the first indictment, the government presented the district court with evidence and arguments of additional threats and acts of retaliation [he] allegedly committed.  The court took this information into account in imposing [his] sentence."  (Def.'s Mot. Dismiss 20.)  The Government responds that, when enacting RICO, Congress intended to allow cumulative punishments for RICO conspiracy and the underlying predicate

---

[13] Similarly, this double jeopardy claim is rejected with respect to Northington.

drug conspiracies.  *See Pungitore*, 910 F.3d at 1108 n.24 (noting the "legislative intent to permit

cumulative punishment for RICO and for underlying predicate acts"); *Grayson*, 795 F.2d at 286

("Congress intended to permit the imposition of cumulative sentences for both RICO offenses

and the underlying predicate offenses.").

 While it is true that the imposition of consecutive sentences for a RICO conspiracy and

an underlying predicate drug conspiracy does not offend the Double Jeopardy Clause, Savage's

double jeopardy argument focuses on something different.  Specifically, Savage argues that if a

District Court takes into consideration additional uncharged evidence during sentencing, then

any subsequent prosecution based, in part, on that evidence is barred by the Double Jeopardy

Clause.  Savage offers no legal support for this proposition.  Moreover, Savage offers no

evidence that Judge McLaughlin took additional uncharged evidence into consideration when

sentencing him.[14]  Based on Savage's convictions, he was subject to a mandatory minimum

sentence of ten years and a statutory maximum sentence of life in prison.  *See Savage*, No. 04-

269, ECF No. 859.  Savage was found to have a total offense level of 43 and a criminal history

category of II.  *Id.*; *Savage*, No. 04-269, ECF No. 823.  This resulted in a Guidelines range of

life in prison.  *See Savage*, No. 04-269, ECF No. 859.  Savage was ultimately sentenced to thirty

years in prison.  This was not only within the statutory range for his convictions, it was a

downward variance from the Sentencing Guidelines range.

---

 [14] In fact, during Savage's sentencing hearing, Judge McLaughlin stated on a number of
occasions that Savage's sentence was not based on the arson-murders of the Coleman family
members.  *See Savage*, No. 04-269, ECF No. 859 at 102 (noting that the arson-murder event will
not be considered in sentencing considerations), 88 ("And I also am not— will not consider the
arson murder, I just will not.  So it will not enter into my decision.").

Even if Judge McLaughlin had taken the uncharged conduct into consideration when sentencing Savage, double jeopardy still would not prevent this Court from prosecuting and sentencing Savage for the same conduct.  The Supreme Court has held that "consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range" does not constitute punishment for that conduct for purposes of double jeopardy.  *Witte v. United States*, 515 U.S. 389, 398, 403-04 (1995) (finding that a Guidelines sentence that includes past relevant criminal conduct "constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry"); *see also id.* at 398 (noting that the Supreme Court has specifically "rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime"); *United States v. Gibbs*, 190 F.3d 188, 215 (3d Cir. 1999) ("[A] court does not violate a defendant's protections against double jeopardy when it convicts a defendant for crime X, enhances his sentence for crime X because of conduct Y, and convicts him for conduct Y as well."); *United States v. Castellar*, 455 F. App'x 191, 194 (3d Cir. 2011) (rejecting defendant's argument that his sentence, which took into account drug quantities that, in a separate prosecution, he had already been convicted and sentenced for, violated the Double Jeopardy Clause).

Whether or not Judge McLaughlin took into consideration evidence of uncharged threats, intimidation and violence when sentencing Savage is immaterial.  Savage's sentence of thirty years fell within the statutory range and was below the Guidelines range of life in prison.  His sentence constituted punishment only for the crimes alleged in the 2005 Indictment.  Accordingly, Savage's double jeopardy rights will not be violated if he is subject to punishment

22

for the crimes charged in the instant Indictment.  The Motion to Dismiss is therefore denied.

Savage has failed to make a non-frivolous showing that his double jeopardy rights are at issue.[15]

### C.    Motion to Dismiss Count Nine

Savage also argues that Count 9 of the instant Indictment is impermissibly multiplicitous

of Count 1of the Indictment.  Count 1 charges all Defendants with RICO conspiracy, in

violation of 18 U.S.C. § 1962(d).  Count 9 charges Savage and Merritt with conspiracy to

commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5).  It alleges that

these Defendants conspired and agreed with each other and with Lewis and Kidada to commit

the arson-murders of the Coleman family.[16]

"A multiplicitous indictment charges the same offense in two or more counts [of the

same indictment] and may lead to multiple sentences for a single violation, a result prohibited

by the Double Jeopardy Clause."  *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992).

"However, when an offense requires proof of a fact not necessary for the other offenses,

multiplicity is avoided."  *O'Malley v. United States*, Crim. No. 02-165, 2009 U.S. Dist. LEXIS

---

[15] The Motion is also rejected with respect to Northington.  Northington was subject to a statutory mandatory minimum of ten years in prison and a statutory maximum of up to fifty years in prison.  *See Savage*, 04-269, ECF No. 841.  He was subject to a Guidelines range of 235 to 293 months in prison.  *See Savage*, 04-269, at ECF No. 968.  Northington was sentenced to 235 months in prison, or approximately nineteen-and-a-half years, for his convictions.  This sentence was at the bottom of the Guidelines range for Northington.  *See Savage*, 04-269 at ECF No. 968.

[16] The statute allegedly violated in Count 5, 18 U.S.C. § 1959, is known as the Violent Crimes in Aid of Racketeering Act ("VICAR").  VICAR was enacted by Congress in 1984 as a violent crime corollary to the RICO statute.  VICAR provides penalties for similar crimes set forth in RICO, such as murder, assault, kidnaping, and threats made in connection with a racketeering enterprise.  18 U.S.C. § 1959(b)(1) ("'racketeering activity' has the meaning set forth in [RICO, 18 U.S.C. §] 1961 of this title").

19500, at *5 (E.D. Pa. Feb. 6, 2009) (holding that RICO count and separate counts based off of overt acts was not multiplicitous because RICO count required proof of racketeering and substantive offenses did not (citing *Blockburger*, 284 U.S. at 309)); *see also United States v. Betancourt*, 116 F.3d 74, 75 (3d Cir. 1997) (applying *Blockburger* to double jeopardy argument where counts were multiplicitous). The test set forth in *Blockburger* is used to determine whether counts are multiplicitous. Under *Blockburger*, "[i]f each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Blockburger*, 284 U.S. at 304 (citations and quotation marks omitted); *see also United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006) (citing *Blockburger* for the proposition that "[i]f, however, either offense does not contain an element not contained in the other, the offenses are considered the same offense for double jeopardy purposes").

Thus, *Blockburger* requires us to look at the elements of the two conspiracy statutes at issue. Count 1, the RICO conspiracy, requires the Government to prove that:

(1)     Two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity;

(2)     The defendant was a party to or member of that agreement;

(3)     The defendant joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

Third Circuit Model Jury Instructions § 6.18.1962D; *see also* 18 U.S.C. § 1962(d); *United States v. Riccobene*, 709 F.2d 214, 220-21 (3d Cir. 1983).

To prove a VICAR violation under 18 U.S.C. § 1959(a)(5), the Government must prove that "(1) there was an 'enterprise,' (2) that engaged in 'racketeering activity,' (3) affecting interstate or foreign commerce (jurisdictional element), and (4) the defendant committed a crime of violence, (5) for the purpose of gaining entrance to or increasing or maintaining his position in the enterprise." *United States v. Jones*, 566 F.3d 353, 363 (3d Cir. 2009) (citing 18 U.S.C. § 1959(a)).

Count 9, the VICAR conspiracy, contains elements that the RICO conspiracy does not. Specifically, for a §1959(a) conspiracy, the Government must prove that the defendant "(1) agreed with others to commit a violent crime . . . and (2) entered into that agreement 'for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity.'" *United States v. Basciano*, 599 F.3d 184,198-99 (2d Cir. 2010) (quoting 18 U.S.C. § 1959(a)(5)).  These two elements are not needed to prove a RICO conspiracy under 18 U.S.C. § 1962(d).  *Id.*  Rather, the RICO conspiracy requires proof that the defendant agreed with others to conduct the affairs of the enterprise through a pattern of racketeering activity.  *See* 18 U.S.C. § 1962(d); *see also Riccobene*, 709 F.2d at 220-21.  "While the pattern element demands proof of an agreement to commit at least two crimes, neither crime need involve the violence specified in § 1959(a)(5)." *Basciano*, 599 F.3d at 199 (citing 18 U.S.C. § 1961(1) (identifying wide range of crimes that can constitute racketeering activity)).

Accordingly, under *Blockburger*, since the conspiracy to commit murder in aid of racketeering offense is distinct from the RICO conspiracy offense, there are no double jeopardy

implications.  *See United States v. Merlino*, 310 F.3d 137, 141 (3d Cir. 2002) (concluding that a

VICAR offense and RICO conspiracy and substantive RICO offenses are different for purposes

of double jeopardy since each requires proof of an element that the other offense does not);

*Basciano*, 599 F.3d at 198 (holding that a RICO conspiracy under § 1962(d) and a conspiracy to

commit murder in aid of racketeering under § 1959(a)(5) "require proof of different elements

and, therefore, are legally distinct offenses not implicating double jeopardy concerns"); *United

States v. Milburn*, No. 05-167, 2008 U.S. Dist. LEXIS 122882, at *7-8 (N.D. Cal. May 30,

2008) (holding that the elements of a VICAR conspiracy are different than the elements of a

RICO conspiracy, and thus charging the defendant with these two offenses in the same

indictment was not a violation of the Double Jeopardy Clause); *contra United States v. Gardner*,

417 F. Supp. 2d 703, 717 (D. Md. 2006) (holding that murder in aid of racketeering count is

multiplicitous of RICO conspiracy count).[17]

        Savage relies on *United States v. Gardner* in support of his argument that Count 9

should be dismissed.  In *Gardner*, the court concluded that the defendant's double jeopardy

rights were violated when the government charged a RICO conspiracy and a conspiracy to

commit murder in aid of racketeering in the same indictment.  417 F. Supp. 2d at 713-14.  In

reaching its conclusion, the court applied a modified *Blockburger* analysis which "look[s]

beyond the literal words of the relevant statutes to consider the facts alleged in the indictment

---

        [17] In *Basciano*, the Second Circuit found no double jeopardy violation when a defendant
was indicted for conspiracy to commit murder in aid of racketeering under 18 U.S.C. §
1959(a)(5) after having been previously convicted of RICO conspiracy.  *Basciano*, 599 F.3d at
198.  Although in *Basciano*, the claims were not charged in the same indictment as they are here,
we see no reason to distinguish between situations where the counts are charged in the same
prosecution and situations where the counts are charged in different prosecutions.

(or presented at trial) when evaluating the elements of two offenses." *Id.* at 709. This fact-based approach is also sometimes referred to as the "same conduct test." The same conduct test "look[s] past the statutory elements of a charged offense to the particular facts the government intend[s] to prove in the challenged prosecution." *Basciano*, 599 F.3d at 198.

The Government contends that *Gardner* is an outlier that contains flawed reasoning, and should not be followed. We agree. Significantly, the Court in *Gardner* relied entirely on a fact-based approach, which approach was expressly overruled by the Supreme Court in *United States v. Dixon*, 509 U.S. 688, 704 (1993). *See Basciano*, 599 F.3d at 198 (refusing to adopt reasoning in *Gardner* since the fact-based approach employed by the court in *Gardner* was expressly overruled by the Supreme Court in *Dixon*); *see also Dixon*, 509 U.S. at 704 (noting that *Grady v. Corbin*, 495 U.S. 508 (1990), and its adoption of the "same-conduct" approach "must be overruled"). Our conclusion is supported by other courts that have rejected the *Gardner* analysis. *See, e.g.*, *Basciano*, 599 F.3d at 198 (rejecting *Gardner* since it employed a fact-based analysis to double jeopardy argument); *United States v. Burke*, No. 09-135, 2011 U.S. Dist. LEXIS 71276, at *10 (E.D.N.Y. July 1, 2011) (rejecting defendant's invitation to adopt a fact-based approach and reliance on *Gardner*); *United States v. Cerna*, No. 08-730, 2010 U.S. Dist. LEXIS 35085, at *15-16 (N.D. Cal. Apr. 9, 2010) (rejecting defendant's argument that the holding in *Gardner* should control a multiplicitous double jeopardy argument since the case is contrary to legal precedent); *United States v. Joseph*, No. 06-80, 2007 U.S. Dist. LEXIS 94236, at *9 (D. Haw. Dec. 21, 2007) ("This court is not persuaded by [defendant's] citation of *United States v. Gardner*" since "that case is contrary to established Ninth Circuit case law that is binding on this court").

27

Accordingly, we reject Savage's argument that Counts 1 and 9 are multiplicitous. Savage's Motion to Dismiss Count Nine is therefore denied.  Savage has failed to make a non-frivolous showing that his double jeopardy rights are at issue.[18]

## III.    CONCLUSION

For the foregoing reasons, Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds, in which Defendant Steven Northington has joined, and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds, in which Defendant Robert Merritt has joined, are denied.

An appropriate Order will follow.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

---

[18]  The Motion to Dismiss Count Nine is also denied with respect to Merritt.