IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550-03 |
| ROBERT MERRITT | : | NO. 07-550-04 |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |
| KIDADA SAVAGE | : | NO. 07-550-06 |

**SURRICK, J.**                                                                 **SEPTEMBER 14, 2012**

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Motion to Strike the Notice of Intent to Seek the Death Penalty For Violation of Customary International Law and Standards (ECF No. 381). For the following reasons, Defendant's Motion will be denied.

**I.     BACKGROUND**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Kaboni Savage ("Savage") with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15), tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8), conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9), retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth

Superseding Indictment, ECF No. 480.)[1]  Savage was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage ("Kidada").[2]  Defendant Lamont Lewis was also charged in the First Superseding Indictment.  The charges against Lewis were disposed of by guilty plea on April 21, 2011.  On March 14, 2011, the Government filed a Notice Of Intent To Seek The Death Penalty against Savage, Merritt and Northington.  (ECF Nos. 196, 197, 198.)  The Government does not seek the death penalty against Kidada.

On February 21, 2012, Savage filed a Motion to Strike the Notice of Intent to Seek the Death Penalty For Violation of Customary International Law and Standards.  (Def.'s Mot., ECF No. 381.)  On April 10, 2012, the Government filed a Response in opposition to the Motion. (Gov't's Resp., ECF No. 459.)  Trial of Defendants is scheduled for January 7, 2013.

## II. DISCUSSION

Defendant requests that the Court strike the Revised Notice of Intent to Seek the Death Penalty filed by the Government on February 15, 2012.  (*See* ECF No. 361.)  Defendant argues that the United States is bound by customary international law and that such law overwhelmingly proscribes the death penalty.  (Def.'s Mot. 1-6.)  Defendant also contends that the death penalty violates the Eighth Amendment because it disregards evolving international standards of decency.  (*Id.* at 7-9.)  The Government responds that the United States has never entered into

---

[1] The First Superseding Indictment was filed on April 8, 2009.  (ECF No. 51.)  The Second Superseding Indictment was filed on June 22, 2011.  (ECF No. 229.)  The Third Superseding Indictment was filed on September 7, 2011.  (ECF No. 284.)

[2] On May 29, 2012, we entered an Order allowing all Defendants to join the pretrial motions of their codefendants to the extent that the Defendants have standing.  (ECF No. 495.) The death penalty is not being sought against Kidada.  All other Defendants have standing and join in the instant Motion.

any express international agreements prohibiting the death penalty, and that any implied international law that may exist is superseded by the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591, *et seq.* (Gov't's Resp. 2-3.) The Government further contends that international legal norms do not serve as the primary basis for Supreme Court jurisprudence, and that even if they did, the international community has not reached a general consensus as to such norms. (*Id.* at 3-4.)

There are instances in which the United States is bound by customary international law. *See* Restatement (Third) of Foreign Relations Law §§ 102(1)(a), 111(1) (1987). The rule of international law may also be treated as federal common law. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004); *The Paquette Habana*, 175 U.S. 677, 700 (1900). However, customary international law may only be considered "[w]here there is no treaty and no controlling executive or legislative act or judicial decision" on the issue to be decided. *The Paquette Habana*, 175 U.S. at 700; *see also Alvarez-Mendez v. Stock*, 941 F.2d 956, 963 (9th Cir. 1991) (holding that any properly enacted statute is binding on the courts, provided it be constitutional, even if it violates international law). With respect to the death penalty, the FDPA provides for the sentence of death for defendants found guilty of participating in certain acts of violence. *See* 18 U.S.C. § 3591. This is determinative of this Court's ability to consider international customary law in determining whether the Revised Notice of Intent should be stricken. *See Buell v. Mitchell*, 274 F.3d 337, 375-76 (6th Cir. 2001) ("We hold that the determination of whether customary international law prevents . . . [the] carrying out [of] the death penalty . . . is a question that is reserved to the executive and legislative branches of the United States government, as it [is] their constitutional role to determine the extent of this country's

international obligations and how best to carry them out.").

Despite similar challenges by capital defendants, no federal court has ever held that international law superseded the FDPA.  *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1243-44 (10th Cir. 2002); *Buell*, 274 F.3d at 337-76; *Coleman v. Mitchell*, 268 F.3d 417, 443 (6th Cir. 2001); *White v. Johnson*, 79 F.3d 432, 440 n.2 (5th Cir. 1996); *Bemore v. Cullen*, No. 08-311, 2011 U.S. Dist. LEXIS 29840, at *156-64 (S.D. Cal. Mar. 22, 2011); *United States v. Williams*, No. 06-79, 2007 U.S. Dist. LEXIS 73775, at *20-21 (D. Haw. Oct. 2, 2007); *United States v. Perez*, No. 3:02-7, 2004 U.S. Dist. LEXIS 7500, at *50-53 (D. Conn. Apr. 29, 2004); *United States v. Quinones*, No. 00-761, 2004 U.S. Dist. LEXIS 10052, at *7 (S.D.N.Y. June 3, 2004); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 294 (S.D.N.Y. 2001).

Even if the Court were bound by customary international law, the abolition of the death penalty is not so extensive among other countries as to become customary international practice. We do not deny that there is a growing body of international organizations calling for an end to the death penalty.[3]  Defendant points to reports and protocols issued by the United Nations and other human rights organizations that disparage the death penalty as inhumane to support this argument.  Defendant further bolsters his claim by pointing out that various foreign courts have relied on growing international disapproval of capital punishment to invalidate the death penalty in their respective countries.  However, customary international law is found only when there is a "'general and consistent practice of states'" and a sense of legal obligation to follow such

---

[3] In support of his contention, Defendant points to additional reports and protocols issued by the United Nations and other human rights organizations that disparage the death penalty as inhumane to support this argument.  Defendant further bolsters his claim by pointing out that various foreign courts have relied on growing international disapproval of capital punishment to invalidate the death penalty in their respective countries.

practices. *Buell*, 74 F.3d at 372 (citing Restatement (Third) of Foreign Relations Law § 102 cmt. b. & cmt. c. (1987)). While ninety-seven countries have abolished the death penalty all together, 101 countries retain the death penalty as a possible punishment.[4] This finding does not reveal a general or consistent international practice.

Moreover, Defendant's reliance on the United Nations Universal Declaration of Human Rights (the "Declaration") and the International Covenant on Civil and Political Rights (the "Covenant") is misplaced. The United States is a signatory on these two international documents. However, the Supreme Court has explicitly stated that the Declaration "does not of its own force impose obligations as a matter of international law." *Sosa*, 542 U.S. at 734. The Supreme Court has also stated that "although [the Covenant] does bind the United States as a matter of international law, the United States ratified the Covenant on the express understanding that it was not self-executing and so did not itself create obligations enforceable in federal courts." *Id.* at 735.

Defendant's next argument rests on the principle that the Supreme Court has increasingly relied upon international norms in determining Eighth Amendment "standards of decency" and therefore, this Court should rely upon such standards in its present analysis.[5] (Def.'s Mot. 7-9.)

---

[4] *See* Amnesty International, *Abolitionist and Retentionist Countries*, http://www.amnesty.org/en/death-penalty/abolitionist-and-retentionist-countries (last visited June 26, 2012). Amnesty International reports that ninety-seven countries have completely abolished the death penalty; eight reserve the death penalty for only exceptional crimes; thirty-six retain the death penalty for ordinary crimes, but have not executed someone in at least ten years; and fifty-seven countries retain and are actively enforcing the death penalty for ordinary crimes. *See id.*

[5] Defendants cite a footnote in *Atkins v. Virginia*, 536 U.S. 304, 320 (2002), in which Justice Stevens, writing for the majority, stated that international norms provided additional evidence that executing the mentally ill is unconstitutional. (Defs.' Mot. 8.) Defendants next cite *Roper v. Simmons*, 543 U.S. 551, 576-577 (2005), in which Justice Kennedy, writing for the

As noted above, no clear international norms exist with respect to an outright ban of the death penalty. In *Roper v. Simmons*, the Supreme Court considered international norms in its Eighth Amendment "standards of decency" analysis, and found the death penalty for juveniles unconstitutional. 543 U.S. at 576-578. However, in doing so, the Court reaffirmed that there is no Eighth Amendment violation in utilizing the death penalty as punishment for competent adults of at least eighteen years of age. *Id.* We are bound by the Supreme Court's ruling that the death penalty is not unconstitutional for competent adults. *See*, *e.g.*, *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (holding that the death penalty is not *per se* unconstitutional); *Baze v. Rees*, 553 U.S. 35, 40-41 (2008) (affirming the defendant's death sentence and the use of a three-drug combination as a means of execution). Any action taken by this Court to strike the Notice of Intent to Seek the Death Penalty against Defendant as a violation of the Eighth Amendment would be inconsistent with Supreme Court jurisprudence.

     Defendant's final contention is that the death penalty severely undercuts the role of the United States as leader of the free world. Defendant argues that this Nation, a leader in advancing human rights, should not align itself with such countries as Iran, China, and Vietnam on this issue. However, it is not the duty of the Court to craft foreign policy or to make decisions based upon what we may believe is in the Nation's best interest. That job is left to the legislative and executive branches, and they have both spoken on this issue.

---

majority found the United Nations Convention on the Rights of the Child, Art. 37, Nov. 20, 1989, 1577 U.N.T.S. 3, 28 I.L.M. 1448, 1468–70 (entered into force Sept. 2, 1990) and the United Kingdom's abolition of the death penalty for juveniles some fifty-six years ago to be compelling arguments for prohibiting juvenile capital punishment in the United States. (Defs.' Mot. 8.) In neither case was the international legal consensus the primary basis for the Supreme Court's decisions.

### III.     CONCLUSION

For the foregoing reasons, Defendant Kaboni Savage's Motion to Strike the Notice of Intent to Seek the Death Penalty For Violation of Customary International Law and Standards will be denied.

An appropriate Order will follow.

BY THE COURT:


*/s/ R. Barclay Surrick*
**U.S. District Judge**