IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550-03 |
| ROBERT MERRITT | : | NO. 07-550-04 |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |
| KIDADA SAVAGE | : | NO. 07-550-06 |

**SURRICK, J.**                                                      **OCTOBER  2 , 2012**

### MEMORANDUM

Presently before the Court are Steven Northington's Motion for Discovery of Information Concerning the Confection of the Grand and Petit Jury Venire (ECF No. 372), and Motion to Secure Jury from the County of Offense Pursuant to 18 U.S.C. § 3235 (ECF No. 403).  For the following reasons, Defendant's Discovery Motion will be granted in part and denied in part, and Defendant's Motion to Secure Jury from the County of Offense will be denied.

**I.      BACKGROUND**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment charging Defendant Steven Northington with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 5 and 7), and tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8).  (Fourth Superseding Indictment, ECF No. 480).[1]  Defendant was charged, along with three co-defendants, Kaboni

---

[1] The First Superseding Indictment was filed on April 8, 2009.  (ECF No. 51.)  The Second Superseding Indictment was filed on June 22, 2011.  (ECF No. 229.)  The Third Superseding Indictment was filed on September 7, 2011.  (ECF No. 284.)

Savage ("Savage"), Robert Merritt, and Savage's sister, Kidada Savage ("Kidada"). Defendant Lamont Lewis was also charged in the First Superseding Indictment.[2] On March 14, 2011, the Government filed a Notice of Intent to Seek the Death Penalty against Defendant. (Notice of Intent, ECF No. 198.)

On February 20, 2012, Defendant filed a Motion for Discovery of Information Concerning the Confection of the Grand and Petit Jury Venire. (Def.'s Discovery Mot., ECF No. 372.) On April 16, 2012, the Government filed a Response to Defendant's Motion for Discovery. (Gov't's Discovery Resp., ECF No. 468.) On February 21, 2012, Defendant filed a Motion to Secure Jury from the County of Offense Pursuant to 18 U.S.C. § 3235. (Def.'s Jury Mot., ECF No. 403; *see also* Def.'s Jury Br., ECF No. 403.)[3] On April 10, 2012, the Government filed a Response to Defendant's Jury Motion. (Gov't's Jury Resp., ECF No. 457.) Trial of Defendants is scheduled for January 7, 2013.

## II.     DISCUSSION

### A.     Motion to Secure Jury from County of Offense

Defendant requests that eligible jurors for this case be selected from Philadelphia County, and not from all nine counties comprising the Eastern District of Pennsylvania.[4] Defendant argues that jurors should be selected from Philadelphia because that is where the capital offense

---

[2] The charges against Lewis were disposed of by guilty plea on April 21, 2011.

[3] On May 29, 2012, we entered an Order permitting all Defendants to join the pretrial motions of their codefendants to the extent that the Defendants have standing. (Order, ECF No. 495.) All Defendants have standing to assert the arguments in the instant Motion.

[4] The Eastern District of Pennsylvania is comprised of the counties of Berks, Bucks, Chester, Delaware, Lancaster, Lehigh, Montgomery, Northampton, and Philadelphia. 28 U.S.C. § 118(a).

with which he is charged was allegedly committed. (Def.'s Mot. 4.) Defendant relies on 18 U.S.C. § 3235, a statute that addresses the venue of trial in capital cases. He contends that the racial makeup of the Eastern District of Pennsylvania, when compared to the racial makeup of Philadelphia county, requires that jurors be selected from Philadelphia in order to assure that Defendants receive a jury that represents a fair cross-section of the community. In support of this argument, Defendant submits data from the 2010 United States Census. The census data cited by Defendant reveals that African-Americans represent approximately forty-three percent (43%) of the population of Philadelphia, and represent approximately seventeen percent (17%) of the population of the entire Eastern District. (Def.'s Mot. 11.) All of the Defendants in this case are African-American.

   The statute that Defendant relies upon, 18 U.S.C. § 3235, states that "[t]he trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience." 18 U.S.C. § 3235. The Government will seek a sentence of death against Defendant on the following charges: (1) murder in aid of racketeering, and aiding and abetting, which resulted in the death of Tybius Flowers (Count 7); and (2) tampering with a witness, which resulted in the death of Tybius Flowers (Count 8). (Notice of Intent 1.) Tybius Flowers was allegedly murdered at the corner of 8th and Butler Streets in North Philadelphia. (Indictment 18.) Defendant's trial will take place at the United States Courthouse in Philadelphia County, and will therefore take place "in the county where the offense was committed." 18 U.S.C. § 3235.

   Section 3235 is unambiguous. There is nothing in § 3235 that requires the jury to be selected from the county of the offense. We reject Defendant's attempt to import a "vicinage

requirement" into the statute.  Defendant invites us to construe the terms "venue" and "trial" in 18 U.S.C. § 3235 as encompassing a requirement that the empaneled jury must be citizens of the county of the offense.  Such a constrained interpretation finds no support in the law.  The statute requires only that the trial of a capital defendant be held in the county where the offense was committed.  It says nothing with respect to the location from which jurors will be selected.

Moreover, Defendant fails to cite a single case that supports his interpretation of 18 U.S.C. § 3235.  In fact, the cases that he relies upon do just the opposite.  In *United States v. Zicarelli*, 543 F.2d 466 (3d Cir. 1976), the Third Circuit confirmed that "petit jurors [are] drawn from within the state and federal jurisdictional district in which the crime was committed" and that "a narrower geographical focus" is not required.  *Id*. at 482.  The Court explained that, at one time, a capital defendant had a statutory right to a jury selected from the county of the offense.  *Id*. at 478 (referencing the Judiciary Act of 1789).  However, that right was repealed by Congress in 1862.  *Id*. at 478 n.60.  The Court did not discuss, let alone cite to 18 U.S.C. § 3235.  Not only is there no statutory right to a jury from the county of offense, there is no explicit right to empanel such a jury in the Constitution.  *See id.* at 477 ("[T]he concept that a criminal trial must be before a jury composed of residents of the county where the crime occurred was not deemed to be of sufficient consequence to be guaranteed by the Constitution.").

Similarly, Defendant's reliance on *United States v. Green*, 389 F. Supp. 2d 29 (D. Mass. 2005), and *United States v. Johnson*, No. 04-17, 2010 U.S. Dist. LEXIS 42626 (E.D. La. Mar. 29, 2010), is misplaced.  In *Green*, neither 18 U.S.C. § 3235, nor the issue of whether a jury must be selected from the county of offense was at issue.  In *Johnson*, the defendant argued that reference to "venue" in Section 3235 "contemplates jury venire and selection as well as the

4

presentation of evidence, and that the jury therefore must be selected from the county of the offense. 2010 U.S. Dist. LEXIS 42626, at *6. This is essentially the same argument made by Defendant here. The court in *Johnson* rejected the defendant's argument, and determined that the jury selection process, which involved empaneling jurors from the entire district, did not violate 18 U.S.C. § 3235 or the Sixth Amendment. *Id*. at *7-8 ("The clear language of those sections does not lend direct support to the creative argument proposed by Defendant."). Accordingly, we conclude that 18 U.S.C. § 3235 does not provide Defendant with the right to select a jury comprised of only Philadelphia County residents.

To the extent that Defendant attempts to raise arguments under the Sixth Amendment or the Jury Selection and Service Act of the 1968 ("JSSA"), 28 U.S.C. §§ 1861, *et seq*., such arguments are also devoid of merit.[5] The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." U.S. Const. amend. VI. Section 1861 of the JSSA states that "[i]t is the policy of the United States that all litigations in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Section 1863 of the JSSA provides that "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed

---

[5] Defendant fails to include any legal analysis under the JSSA or the Sixth Amendment. Rather, Defendant merely states that "a decision to rely on the entire Eastern District of Pennsylvania rather than the county in which the capital offense occurred to secure a jury pool violates [Defendant's] right to a trial in the venue and vicinage of the offense guaranteed by 18 U.S.C. § 3235 and the Sixth Amendment." (Def.'s Jury Mot. 7.)

to achieve the objectives of sections 1861 and 1862 . . . ." 28 U.S.C. § 1863(a). In the Eastern District of Pennsylvania, grand and petit juries are randomly selected for criminal and civil trials pursuant to the Plan of the Random Selection of Grand and Petit Jurors of 1968 for the Eastern District of Pennsylvania (the "Jury Plan"). (Jury Plan (on file with Court).)[6]

In order to make a *prima facie* showing that the jury selection process violates the fair cross-section of the community requirement of the Sixth Amendment, a defendant must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systemic exclusion of the group in the jury selection process. *United States v. Duren*, 439 U.S. 357, 364 (1979).

Defendant has failed to make a *prima facie* showing that the Jury Plan's system of selecting jurors from the entire Eastern District violates the fair cross-section of the community requirement. The first prong of the *prima facie* showing is not at issue. African-Americans

---

[6] The Jury Plan was last revised on December 4, 2009. (Jury Plan.) In accordance with the Jury Plan, a master jury wheel is created. (Jury Plan § 3.) The master jury wheel consists of a random selection of individuals from lists of registered voters from each of the nine counties in the Eastern District. (*Id.*) Names are randomly selected from the master jury wheel, and those prospective jurors are mailed juror questionnaires. (*Id.* at §§ 4, 5.) Based upon a review of the returned juror questionnaires, a qualified jury wheel is created, which contains the names of jurors not disqualified, exempt, or excused in accordance with the Jury Plan. (*Id.* at § 7.) Prospective jurors are then randomly selected from the qualified jury wheel and summoned for jury service. (*Id.*)

Master jury wheels are repopulated every two years. In the Eastern District, there is a master jury wheel that was repopulated in 2007 (the "2007 Master Jury Wheel"), in 2009 (the "2009 Master Jury Wheel") and in 2011 (the "2011 Master Jury Wheel"). Qualified jury wheels were then created based upon each of the Master Jury Wheels (the "2007 Qualified Jury Wheel," "2009 Qualified Jury Wheel," and "2011 Qualified Jury Wheel").

constitute a cognizable group. *United States v. Weaver*, 267 F.3d 231, 240 (3d Cir. 2001); *see also United States v. Hafen*, 726 F.2d 21, 23 (1st Cir. 1984) ("[T]he Supreme Court has held that blacks are a 'distinctive group' for the purposes of jury composition challenges."). With respect to the second prong, Defendant relies on census data and argues that the District-wide selection of jurors dilutes the number of African-Americans eligible to serve on the jury for his trial. (Def.'s Jury Br. 12.) Defendant contends that Philadelphia County contains more African-Americans than all other counties in the Eastern District combined. (*Id*.) However, the use of census data alone is insufficient to establish a constitutional violation. *See United States v. Murphy*, 464 F. App'x 60, 63 (3d Cir. 2012) (denying defendant's claim that jury selection process was unconstitutional where defendant supported claim with only census data from the various counties within the district). With respect to the third prong, a defendant must be able to establish a "systematic exclusion," which is "shown by a large discrepancy repeated over time such that the system must be said to bring about the underrepresentation." *Weaver*, 267 F.3d at 245. Defendant has not even attempted to establish a large discrepancy that is repeated over time. Accordingly, Defendant's claim that the selection of jurors from the entire Eastern District of Pennsylvania violates his Sixth Amendment rights must be rejected. *See United States v. Grisham*, 63 F.3d 1074, 1080 (11th Cir. 1995) (holding that "the Sixth Amendment does not entitle a federal criminal defendant to a jury summoned from a fair cross-section of the community immediately surrounding the place of the crime, but merely to a jury drawn from a fair cross-section of some previously defined geographical area within the boundaries of the judicial district in which the offense occurred"); *see also Savage v. United States*, 547 F.2d 212,

215-16 (3d Cir. 1976) (holding that the petitioner's constitutional and statutory rights were not violated by the Jury Plan for the Eastern District of Pennsylvania).

      B.      **Motion for Discovery of Information Concerning Confection of Grand and Petit Jury Venire**

Defendant seeks discovery concerning the confection of the venire from which the grand jury was selected in this case and from which the petit jury will be selected. (Def.'s Discovery Mot. 2.) He alleges that the Eastern District of Pennsylvania's use of voter registration lists to create a pool of eligible jurors "has significantly underrepresented African-Americans, as well as individuals eighteen to twenty-two." (*Id.* at 4.)[7] Defendant states that he intends to file a motion challenging the Eastern District's application of, and compliance with, the JSSA. He requests the following information from the Clerk of the Court in support of this motion:

(a) the source-lists from which the jury pool is created;
(b) the total number of persons in the source or sources and the actual copy of the source list from which the initial selections were made;
(c) the completed questionnaires of all persons qualified for service;
(d) the completed questionnaires of all persons disqualified, excused, or exempted, and any other materials or information concerning these determinations (including requests for excusal and exemption and orders or notations concerning excusals, exemptions, and disqualifications);
(e) all records related to the summoning of jurors for grand jury or petit jury service, including all records or documents relating to the excusal or disqualification of any potential grand or petit jurors summoned;

---

[7] We reject Defendant's attempt to argue that prospective jurors "eighteen to twenty-two" are underrepresented in violation of the JSSA. Courts have held that young adults do not constitute a distinctive, cognizable group for purposes of establishing a fair cross-section of the community claim. *See Ford v. Seabold*, 841 F.2d 677, 681 (6th Cir. 1988) ("Young adults and college students, however, do not comprise distinctive groups."); *Anaya v. Hansen*, 781 F.2d 1, 3 (1st Cir. 1986) (stating the "young adults" ages eighteen to twenty-four do not constitute a cognizable group for purposes of establishing a fair cross-section claim). Thus, for purposes of this Motion and determining the extent of discovery to which Defendant is entitled, we will only consider Defendant's contention that the underrepresentation of African-Americans violates the fair cross-section of the community guarantee.

  (f)  all surveys regarding the composition of the master or qualified jury panel (typically compiled on Form JS-12); and
  (g)  all information that has been provided in other instances.

(Def.'s Discovery Mot. 4-5.)

  The Government concedes that Defendant is entitled to certain of the requested materials. However, the Government objects to disclosing any information that exposes personal information of prospective jurors, such as names, addresses, Social Security numbers and other personal data. (Gov't's Discovery Resp. 11.)[8]  The Government argues that the only information needed in order to assert a claim under the JSSA and the Sixth Amendment is the Jury Plan and the statistical data contained in a monthly summary report known as a JS-12. (Gov't's Resp. 13.)[9]

  As noted above, the Sixth Amendment and the JSSA guarantee defendants a trial by a jury selected from a fair cross-section of the community.  In order to establish a violation of this guarantee, Defendant must show that:  (1) African-Americans are a distinctive group in the community; (2) the representation of this group is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is inherent in the system used to select the jury pools or venires.  *Duren*, 439 U.S. at 364; *Weaver*, 267 F.3d at 237.  Doing so requires a showing of a statistical disparity between the entire venire and the population of the district.  *See Weaver*, 267 F.3d at 240 (noting that proof of a fair cross-selection

---

[8] By Memorandum and Order dated September 14, 2012, we determined that an anonymous jury was appropriate in this case. (*See* ECF Nos. 601, 602.)

[9] Preparation of the monthly JS-12 form is not mandatory.  The Jury Board in the Eastern District of Pennsylvania does not normally prepare JS-12 forms.  Nor can the Jury Board retroactively reconstruct these forms.  In any event, the information we will provide to Defendant is broader in scope than the information typically contained on JS-12 forms.

claim is "a mathematical exercise, and must be supported by statistical evidence"); *United States v. Lara*, 181 F.3d 183, 192 (1st Cir. 1999) ("A showing of underrepresentation must be predicated on more than mere guesswork.  Such a showing requires competent proof (usually statistical in nature)."); *United States v. Stone*, No. 93-131, 1993 U.S. Dist. LEXIS 8728, at *17 (E.D. Pa. June 30, 1993) (denying defendant's constitutional challenge because defendant failed to "demonstrate any statistical underrepresentation of African-Americans" on the jury wheel).

Defendant's request for discovery is made in order to support this statistical showing.  The JSSA permits discovery of information related to the jury-selection process if a party wishes to challenge such process.  Specifically, Section 1867(f) of the JSSA provides in relevant part:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion [challenging compliance with jury selection procedures] under . . . this section . . . .  The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such motion.

28 U.S.C. § 1867(f).  In *United States v. Test*, the Supreme Court stated that Section 1867(f) "makes clear that a litigant has essentially an unqualified right to inspect jury lists" and "grants access in order to aid parties in the 'preparation' of motions challenging jury-selection procedures."  420 U.S. 28, 29-30 (1975).  A defendant "need only allege that he is preparing a motion to challenge the jury selection process" in order to "avail himself of the right of access to jury selection records."  *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996).

Since *Test*, federal courts have determined that the right to inspect jury selection records, although "unqualified," is not unlimited.  *See United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006) ("The right to discovery by the Act and *Test* is not limitless."); *United States v. Gotti*

10

*(Gotti II)*, No. 02-743, 2004 U.S. Dist. LEXIS 20280, at *20 (S.D.N.Y. Oct. 6, 2004) (noting that defendant who made a request under § 1867(f) "is not entitled to unencumbered access to juror information, and given the concerns about juror safety . . . he will not have it"). "The [JSSA] is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court." *Rice*, 489 F. Supp. 2d at 1316. Rather, "[t]he right to inspection extends to all jury selection materials relevant to a complete determination of whether a grand or petit jury has in fact been selected at . . . random from a fair cross-section of the community." *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (citation omitted).[10]

Based on the foregoing, we conclude that some of Defendant's discovery requests are beyond the scope of information to which he is entitled under the JSSA. Defendant's request to access the completed jury questionnaires (Requests (c) and (d)) will be denied. *See Davenport*, 824 F.2d at 1514-15; *United States v. Rice*, 489 F. Supp. 2d 1312, 1319 (S.D. Ala. 2007); *Diaz*, 236 F.R.D. at 482. The juror questionnaires contain personal identifying information such as place of employment, address, and Social Security number. Defendant will receive other discovery that will provide him with the relevant data to assess whether he has a valid claim under the JSSA and the Sixth Amendment. Clearly, "any marginal benefits of disclosure would be greatly outweighed by the risks associated with dissemination of personal information contained on those questionnaires and by the burden on the Clerk of Court in providing (and

---

[10] For example, defendants do not have an absolute right to access jury questionnaires. *See United States v. Davenport*, 824 F.2d 1511, 1514-15 (7th Cir. 1987). Defendants also do not have the absolute right to access the names and addresses of grand jurors. *See McLernon*, 746 F.2d at 1122-23. One court has determined that production of the district's jury plan satisfies the statutory requirement. *See, e.g.*, *United States v. Davis*, No. 06-911, 2009 U.S. Dist. LEXIS 19401, at *49 (S.D.N.Y. Mar. 11, 2009).

presumably supervising) defendant's access to . . . [the] confidential questionnaires." *Rice*, 489 F. Supp. 2d at 1320.

We will also deny Defendant's request for a copy of the source list from which the jury pool was created (Requests (a) and (b)). These lists are derived from voter registration records and contain the same personal identifying information as the juror questionnaires. The benefits of disclosing the lists containing confidential information do not outweigh the risks and burdens associated with disclosure. Rather, we will provide Defendant with spreadsheets containing the information that he seeks. Specifically, we will provide Defendant with the statistical breakdown by race and ethnicity of the prospective jurors contained on each of the 2007, 2009, and 2011 Master and Qualified Jury Wheels. We will also provide the statistical breakdown by race and gender for the jurors that served on the Grand Jury that returned the First Superseding Indictment on April 8, 2009. (*See* ECF No. 51.) All of these spreadsheets contain demographic statistics that were derived from data contained on the source lists. The spreadsheets also contain the total number of persons on each of the source lists (Request (b)).

With respect to Defendant's request for "all records related to the summoning of jurors for grand jury or petit jury service, including all records or documents relating to the excusal or disqualification of any potential grand or petit juror summoned" (Request (e)), we will provide the Jury Plan. The Jury Plan describes in detail the procedures related to the creation of the Master and Qualified Jury Wheels. (Jury Plan.) The Jury Plan also contains information about the excusal, exemption, and disqualification of jurors. (*Id*.) With respect to Defendant's request for "all surveys regarding the composition of the master or qualified jury panel" (Request (f)), we will provide Defendant with the statistical breakdown by race and ethnicity of the 1,000

jurors that were summoned for petit jury service in this case, and of the 549 jurors that responded to the summons and showed up to fill out the jury questionnaire on September 26 and 27, 2012. Finally, we will deny Defendant's request for "all information that has been provided in other instances" (Request (g)). (Def.'s Discovery Mot. 5.) This request is vague and overly broad.

In summary, the following discovery information will be provided to Defendant:[11]

1. The Plan of the Random Selection of Grand and Petit Jurors of 1968 for the Eastern District of Pennsylvania (revised December 4, 2009);

2. Spreadsheets with statistical breakdowns by race and ethnicity for the jurors contained on the 2007 Master Jury Wheel, 2009 Master Jury Wheel, and 2011 Master Jury Wheel;

3. Spreadsheets with statistical breakdowns by race and ethnicity for the jurors contained on the 2007 Qualified Jury Wheel, 2009 Qualified Jury Wheel, and 2011 Qualified Jury Wheel;

4. A spreadsheet with the statistical breakdown by race and ethnicity for the 1,000 jurors that were summoned for petit jury selection in this case;

5. A spreadsheet with the statistical breakdown by race and ethnicity for the 549 jurors that responded to the summons and showed up to fill out a jury questionnaire on September 26 and 27, 2012; and

6. A spreadsheet with the statistical breakdown by race and ethnicity for the jurors that served on the Grand Jury that returned the First Superseding Indictment on April 8, 2009. (*See* ECF No. 51.)

We are satisfied that this discovery provides Defendant with the information he needs in order to assess whether the Jury Plan and the Eastern District's use of voter registration lists to create a pool of eligible jurors has caused an underrepresentation of African-Americans on grand and petit juries.

---

[11] This information will be sent directly to counsel for Defendants and counsel for the Government.

III.   **CONCLUSION**

For the foregoing reasons, Defendant Steven Northington's Motion for Discovery of Information Concerning the Confection of the Grand and Petit Jury Venire will be granted in part and denied in part, and Defendant's Motion to Secure Jury from the County of Offense Pursuant to 18 U.S.C. § 3235 will be denied.

An appropriate Order will follow.

                                                        **BY THE COURT:**

                                                        _____
                                                        **R. BARCLAY SURRICK, J.**