IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550 - 03 |

**SURRICK, J.**                                                                                  **JANUARY 31, 2013**

## MEMORANDUM

Presently before the Court is the Government's Motion *in Limine* to Admit Statement of Tybius Flowers Made to the Philadelphia Police Department (ECF No. 796), and Defendant Kaboni Savage's Motion *in Limine* for Pretrial Evidentiary Hearing as to Admissibility of Evidence Pursuant to Fed. R. Evid. 804(b)(6) (ECF No. 812). For the following reasons, the Government's Motion will be granted, and Defendant's Motion will be denied.

## I.  BACKGROUND[1]

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment charging Defendant Kaboni Savage with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15); tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8)[2]; conspiracy to commit

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

[2] Count 8 has been dismissed pursuant to an agreement between Defendants and the Government. (*See* ECF No. 855.)

murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.)[3] Savage was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage. Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Savage, Merritt and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada Savage.

The charges against Defendant relate to a long-standing RICO conspiracy involving drug trafficking, murder, and witness intimidation. The Government alleges that all four Defendants were members of a regional criminal organization, which was based in North Philadelphia and was known as the Kaboni Savage Organization ("KSO"). From late 1997 through April 2010, members of the KSO conspired and agreed to distribute large quantities of controlled substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who had testified, or were about to testify, against the racketeering enterprise or its members. It is alleged that the KSO was committed to protecting and expanding its power, territory, and profits by tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence, and murder.

The Fourth Superseding Indictment alleges that on March 19, 1998, Defendant shot and

---

[3] The First Superseding Indictment was filed on April 8, 2009. (ECF No. 51.) The Second Superseding Indictment was filed on June 22, 2011. (ECF No. 229.) The Third Superseding Indictment was filed on September 7, 2011. (ECF No. 284.)

killed Kenneth Lassiter at the corner of 8th and Butler Streets in Philadelphia, Pennsylvania "for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity." (Fourth Superseding Indictment 38-39.) The Government alleges that Defendant shot and killed Lassiter on the drug turf of his rival, Tybius Flowers, in order to send a message to Flowers. (Gov't's Mot. 2, ECF No 796.) Flowers witnessed the murder and provided a statement to the Philadelphia Police Department ("PPD") identifying Defendant as the killer. (*Id.*) The Fourth Superseding Indictment alleges that, on March 1, 2004, Defendant ordered Northington to murder Flowers in order to prevent Flowers from testifying against Defendant in the state murder trial of Lassiter. (Fourth Superseding Indictment 18, 44.)

On December 10, 2012, the Government filed a Motion *in Limine* to Admit Statement of Tybius Flowers Made to the Philadelphia Police Department. (Gov't's Mot.) Defendant did not file a response to this Motion. Instead, Defendant filed a separate Motion *in Limine* for Pretrial Evidentiary Hearing as to Admissibility of Evidence Pursuant to Fed. R. Evid. 804(b)(6). (Def.'s Mot., ECF No. 812.) The Government filed a response to Defendant's Motion on December 20, 2012. (Gov't's Resp., ECF No. 849.)

## II. DISCUSSION

### A. The Parties' Contentions

The Government requests a pretrial ruling on the admissibility of Flowers's statement to the PPD identifying Defendant as the killer of Lassiter. (Gov't's Mot. 2.) The Government argues that, by ordering the murder of Flowers, Defendant intentionally procured the unavailability of Flowers as a witness and therefore Flowers's statement is admissible under the forfeiture by wrongdoing exception to the hearsay rule and the Confrontation Clause. (*Id.*) In

support of this, the Government contends that the Court should adopt a preponderance of the evidence standard to establish the forfeiture by wrongdoing exception, and that a pretrial hearing is not required in order for the Government to meet this evidentiary threshold. (*Id*. at 9-11.) Referencing a procedure used by courts including the Third Circuit, the Government proposes that the Flowers's statement be conditionally admitted at trial "subject to the prosecution making the necessary connection." (*Id*. at 11.)

Defendant failed to respond to the Government's Motion. Instead, Defendant filed a separate Motion requesting that the Court preclude admission of Flowers's statement to the PPD. (Def.'s Mot. 1.) Defendant argues that the statement is inadmissible because it is hearsay and violates Defendant's rights under the Confrontation Clause. (*Id*.) Defendant further argues that, if the Government seeks admission of Flowers's statement under the forfeiture by wrongdoing hearsay exception, the Court should rule on the admissibility of the statement at a pretrial evidentiary hearing instead of at trial. Finally, Defendant contends that at the pretrial hearing, the Government should be required to prove by clear and convincing evidence that the forfeiture by wrongdoing exception applies. (*Id*. at 2-3.)

### B. Applicable Law

The Confrontation Clause guarantees criminal defendants the opportunity "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has determined that the Confrontation Clause bars admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Supreme Court has also made clear that a defendant's rights under the Confrontation Clause are subject to the forfeiture by wrongdoing

4

exception, which is a common law doctrine that allows unconfronted testimonial statements of witnesses to be admitted into evidence "where the defendant ha[s] engaged in wrongful conduct designed to prevent a witness's testimony." *Giles v. California*, 554 U.S. 353, 366 (2008). "[O]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis v. Washington*, 547 U.S. 813, 833 (2006); *see also Crawford*, 541 U.S. at 62 ("The rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds."); *United States v. Baskerville*, 448 F. App'x 243, 250 n.5 (3d Cir. 2011) (quoting *United States v. Martinez*, 476 F.3d 961, 967 (D.C. Cir. 2007) ("'[A] defendant forfeits the constitutional right to confront a witness when, through his misconduct, he causes the witness to be unavailable.'").

The common law forfeiture by wrongdoing doctrine is codified in Rule 804(b)(6) of the Federal Rules of Evidence. Rule 804(b)(6) provides an exception to the hearsay exclusion for statements "offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). To admit a statement under Rule 804(b)(6), "the government must show (1) that the defendant engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability." *Baskerville*, 448 F. App'x at 249 (quoting *United States v. Scott*, 284 F.3d 758, 762 (7th Cir. 2002)). The policy behind the forfeiture by wrongdoing doctrine is clear: "[it] recognizes the need for a prophylactic rule to deal with abhorrent behavior 'which strikes at the heart of the system of justice itself.'" Fed. R. Evid. 804(b)(6) advisory committee's note

(quoting *United States v. Mastrangelo*, 693 F.2d 269, 273 (2d Cir. 1982), *cert. denied*, 467 U.S. 1204 (1984)).

>    C.   **A Pretrial Hearing is Not Required to Determine Whether the Forfeiture by Wrongdoing Exception Applies**

Defendant argues that the Government must prove that the forfeiture by wrongdoing exception applies at a pretrial evidentiary hearing before the statement can be introduced to the jury. (Def.'s Mot. 3.)[4] The Government contends that a pretrial hearing is not necessary and instead suggests using a procedure akin to the one we adopted with respect to the admissibility of co-conspirator hearsay statements. (Gov't's Mot. 10-11.) In our Memorandum and Order denying Defendant Kaboni Savage's motion to exclude co-conspirator's statements, which was entered on November 19, 2012, we determined that a pretrial evidentiary hearing on the admissibility of statements made by co-conspirators would not be practical or efficient, and was therefore not required. (*See* ECF Nos. 742, 743); *United States v. Savage*, No. 07-550, 2012 U.S. Dist. LEXIS 165239, at *14 (E.D. Pa. Nov. 19, 2012). We further held that the Government was permitted to conditionally admit the statements at the trial, subject to establishing the proper foundation for their admissibility as co-conspirator non-hearsay. *Savage*, 2012 U.S. Dist. LEXIS 165239, at *14-15. The Government proposes to offer Flowers's statement at trial, contingent

---

[4] Defendant also argues that the Court should altogether preclude the Government from admitting Flowers's statement at trial on the basis that it would violate Defendant's Sixth Amendment right to confront witnesses against him. (Def.'s Mot. 2-3.) This argument is easily rejected. Defendant provides no legal authority, and we are aware of none, that deprives the Government the opportunity to establish the admissibility of a hearsay statement under the exceptions provided for by Rule 804. To the extent that the Government is able to establish that Flowers's statement is admissible under the forfeiture by wrongdoing exception to the hearsay rule, Defendant's claims under the Confrontation Clause would be forfeited. *See Crawford*, 541 U.S. at 62; *Baskerville*, 448 F. App'x at 250 n.5.

upon proving that the exception applies and that Defendant intended to and did in fact wrongfully procure Flowers's unavailability by ordering him to be murdered.

The Third Circuit recently approved of the procedure proposed by the Government. *See Baskerville*, 448 F. App'x at 249.[5] In *Baskerville*, the court rejected the defendant's argument that the district court erred by failing to hold a pretrial evidentiary hearing regarding the admissibility of statements made by a Government informant who was murdered prior to the defendant's trial. 448 F. App'x at 249-50. The Government sought to introduce the unavailable witness' statements under the forfeiture by wrongdoing exception to the hearsay rule. *Id*. at 245. The Third Circuit concluded that "the District Court's decision to forgo a mini-trial on the admissibility of [the unavailable witness]' statements" was reasonable. *Id*. at 250. Relevant to the court's holding was the district court's reliance on a pretrial proffer of evidence submitted by the Government that connected the defendant to the murder of the unavailable witness. *Id*. at 249-250. The court stated that the procedure was "an acceptable way to avoid wasting judicial resources by conducting in effect a trial before the trial." *Id*.

Here, the Government proffers substantial evidence that connects Defendant to the murder of Flowers. Specifically, the Government offers the following evidence:

- Flowers was an eye-witness to Defendant's murder of Kenneth Lassiter, and that Defendant intended to kill Lassiter on Flowers's drug turf to send a message to Flowers. (Gov't's Resp. 5.)[6]

---

[5] *Baskerville* is an unreported and non-precedential opinion. However, since it is the only Third Circuit case that provides guidance with respect to Rule 804(b)(6), we find it instructive.

[6] On January 24, 2013, we entered a Memorandum and Order denying Defendant's request to preclude the Government from admitting the testimony of Government witness Lamont Lewis related to Defendant's intentions for murdering Lassiter. (*See* ECF Nos. 955,

7

- On March 1, 2004, the night before Defendant was scheduled to stand trial for the murder of Lassiter, Flowers was murdered. (Gov't's Resp. 6 & Ex. C.)
- C.W., who was also a witness to the Lassiter murder, and provided a signed statement to the police identifying Defendant as the killer, was attacked and stabbed prior to being called as a witness at Defendant's murder trial. At the trial, C.W. recanted his prior statement to police identifying Defendant as the killer of Lassiter. The Government intends to call C.W. at the trial in this matter. (*Id*. at 6 n.3 & Ex. D.)
- Defendant told Lamont Lewis that Flowers would never make it to Defendant's state murder trial because D.B. was going to "take care of that." (*Id*. at 6.)[7]
- Defendant told Lamont Lewis that C.W. would also not make it to the trial, that C.W. had been stabbed at Defendant's direction, and that C.W. "cried like a bitch" when he was stabbed. (Gov't's Resp. 6.)
- A number of individuals approached Flowers in the weeks leading up to Defendant's state court trial and warned Flowers that Defendant planned to kill him in order to prevent his testimony. (*Id*. at 7.)[8]

---

956.) Lewis is expected to testify that Defendant told him that Lassiter was murdered in order to send a message to Flowers.

[7] The Fourth Superseding Indictment alleges that Defendant directed co-Defendant Steven Northington and two other co-conspirators, D.B. and J.T. a/k/a "Reef," to murder Flowers in order to prevent Flowers from testifying against Defendant at the state murder trial of Lassiter. (Gov't's Resp. 6; *see also* Fourth Superseding Indictment 18.)

[8] We recognize that this evidence may constitute hearsay testimony. The Government argues that hearsay evidence, including the unavailable declarant's statement, may be considered by the Court in determining the admissibility of evidence under the forfeiture by wrongdoing

8

- On February 24, 2004, which was nine days prior to the Flowers murder, Defendant was visited at Curran-Fromhold Correctional Facility ("CFCF") by Northington, who used an alias to enter the prison. At this meeting, Defendant told Northington that he had to "get with Tibby [Flowers]." (Gov't's Resp. 7.) Two days later, co-conspirators D.B. and J.T. visited Defendant at CFCF. (*Id.*)

- Telephone records show that on the night that Flowers was murdered, Northington and D.B. were in frequent contact. The records also show that during a one hour period leading up to the moment Flowers was murdered, Northington made sixteen (16) calls to a cell phone used by J.T. The telephone records also show that Northington was located in the area of 8th and Butler streets at the time of Flowers's murder, which is alleged to be the location of the murder. (*Id.*)

- Defendant told M.C., a Government witness, that he was not worried about Flowers testifying against him because Flowers "ain't going to make it" to the

---

exception to the hearsay rule. (Gov't's Resp. 7.) The Government relies on *Davis v. Washington* to support this argument. In *Davis*, the Supreme Court observed that state courts had permitted consideration of hearsay evidence in determining whether the forfeiture by wrongdoing exception applied. 547 U.S. at 833 (citing *Commonwealth v. Edwards*, 830 N.E.2d 158, 174 (Mass. 2005)). The Supreme Court did not hold, as the Government asks us to do here, that hearsay evidence may be considered at trial, and in the presence of the jury, when determining whether the forfeiture by wrongdoing doctrine applies. Nevertheless, *Davis* has been cited for the general proposition that hearsay evidence may be considered when determining the applicability of Rule 804(b)(6). In *Jones v. Warren*, No. 08-894, 2010 U.S. Dist. LEXIS 98892, at *45-46 (W.D. Mich. Aug. 20, 2010), the court rejected the habeas petitioner's claim that the lower court erred by relying on hearsay evidence in concluding that the elements of the forfeiture by wrongdoing doctrine applied. *Id*. The Court further stated that *Davis* "opened the door to the trial court's use of hearsay statements in determining whether a defendant forfeited his confrontation rights." *Id*. at *46. In *Ware v. Harry*, 636 F. Supp. 2d 574, 587 n.3 (E.D. Mich. 2007), the court rejected the habeas petitioner's argument that the trial court erred in considering the unavailable witness' out of court statement in determining whether that statement was admissible under Rule 804(b)(6).

trial. (*Id*. at 8.) After the murder, Defendant told M.C. "[w]hat did I tell you, he wouldn't make it to court." (*Id*.)

- Northington told Government witnesses A.C. and B.M. that he "slumped" Flowers, "a rat," who was providing testimony against Defendant. (*Id*.)

- Intercepted wiretap conversations recorded at the FDC reveal Defendant and co-conspirator D.B. discussing a newspaper article that named Defendant, D.B., and J.T. as suspects in the murder of Lassiter. (*Id*. at 8 & Ex. E.) D.B. states in response to the article, "Yup, I'm going to jail." (*Id*. at 8.) The wiretap conversations also reveal D.B. and Defendant discussing the legal fees associated with his acquittal in the state murder trial of Lassiter, and D.B. joking that the acquittal had little to do with his legal representation.[9]

We are satisfied that the Government's proffer sufficiently connects Defendant to the murder of Flowers to justify forgoing a pretrial hearing and admitting Flowers's statement at trial subject to later connection by the Government under Rule 804(b)(6). *See Baskerville*, 448 F. App'x at 249 (finding that the Government's proffer, which included "nam[ing] several witnesses who would offer evidence that [the defendant] sought [the unavailable witness'] murder to beat drug charges" to be sufficient to forgo a pretrial hearing). In taking this approach,

---

[9] The Government offers the following exchange between Defendant and D.B.:
KS: (laughs) As long as they got that acquittal, fuck that money.
DB: Yeah, I guess you're right. Them pussies ain't beat that case anyway. I represented you, nigga.
KS: (laughs) Yeah, no bullshit.
DB: They didn't do shit.
KS: No, they didn't do nothin'.
DB: They didn't have anybody to cross-examine.
(Gov't's Resp. 9.)

we are persuaded by the substantial amount of evidence that the Government proffers, as well as the impracticality and inefficiency that would undoubtedly result by requiring the Government to prove the admissibility of Flowers's statement at a pretrial hearing. In light of the duplication of evidence necessarily involved, holding a pretrial hearing would "amount to a significant waste of judicial resources." *United States v. Johnson*, 403 F. Supp. 2d 721, 812 (N.D. Ohio 2005); *see also Baskerville*, 448 F. App'x at 249-50; *United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997) (noting that the defendant's suggestion of holding a pretrial hearing "would have been wasteful of judicial time, as the hearing and trial testimony on the murder would have been largely duplicative"). Only after the Court is satisfied that the Government has offered sufficient evidence that ultimately supports application of the forfeiture by wrongdoing exception may Flowers's statement be considered by the jury in deliberations.

### D. Applicable Evidentiary Standard

Finally, we must decide what evidentiary standard is applicable to the Government's proof at trial in establishing that Flowers's statement is admissible under the forfeiture by wrongdoing exception. The parties dispute the applicable standard. Defendant argues that the Government should be required to show that Defendant intended to and did procure the unavailability of Flowers by clear and convincing evidence, while the Government argues for a preponderance of the evidence standard.

The Supreme Court has not yet indicated whether a preponderance of the evidence or a clear and convincing evidentiary standard applies to the forfeiture by wrongdoing doctrine. In *Davis v. Washington*, the Court declined to determine the applicable standard, stating: "[w]e take no position on the standard necessary to demonstrate such forfeiture, but federal courts using

11

Federal Rule of Evidence 804(b)(6), which codifies the forfeiture doctrine, have generally held the Government to the preponderance-of-the-evidence standard." 547 U.S. at 834. Similarly, the Third Circuit has failed to take a position. *See Baskerville*, 448 F. App'x at 250 n.4 ("[T]his court has yet to decide the appropriate evidentiary standard for admitting statements pursuant to FRE 804(b)(6). We decline to decide that issue here."). In *Baskerville*, the Court determined that the Government's showing sufficed under either standard. *Id*.

Most federal courts have either adopted a preponderance of the evidence standard of review or affirmed lower court decisions that relied on this standard when analyzing claims under the forfeiture by wrongdoing exception. *See, e.g.*, *United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012); *United States v. Parks*, 278 F. App'x 527, 534 (6th Cir. 2008); *United States v. Vallee*, 304 F. App'x 916, 921 (2d Cir. 2008); *United States v. Stewart*, 485 F.3d 666, 670 (2d Cir. 2007); *Hodges v. Attorney General, State of Florida*, 506 F.3d 1337, 1345 (11th Cir. 2007); *United States v. Nelson*, 242 F. App'x 164, 171 (5th Cir. 2007); *United States v. Johnson*, 495 F.3d 951, 972 (8th Cir. 2007); *United States v. Montague*, 421 F.3d 1099, 1103 (10th Cir. 2005); *United States v. Scott*, 284 F.3d 758, 762 (7th Cir. 2002); *United States v. Hernandez*, No. 08-739, U.S. Dist. LEXIS 62140, at *16 (D. Haw. May 3, 2010). Similarly, the Advisory Committee Notes to Rule 804(b)(6) adopt the preponderance of the evidence standard in consideration of "the behavior the new Rule 804(b)(6) seeks to discourage." Fed. R. Evid. 804(b)(6) advisory committee's note. Defendant invites the Court to adopt a clear and convincing standard, but offers only two state court cases in support of the standard. (Def.'s Mot. 3 (citing *People v. Garaci*, 649 N.E.2d 817, 822 (N.Y. 1995), *State v. Mason*, 162 P.3d 396, 404 (Wash. 2007)).) In light of the of the overwhelming weight of federal authority, and a clear

edict from the Advisory Committee to the Federal Rules of Evidence, we are compelled to apply a preponderance of the evidence standard to the Government's showing.

Accordingly, Defendant's request to preclude the statement that Flowers made to the PPD is denied. Defendant's request for the Court to hold a pretrial evidentiary hearing on the admissibility of Flowers's statement is also denied. The Government's request to admit the statement of Flowers at trial is granted; however, the statement will be conditionally admitted subject to the Government offering sufficient proof by a preponderance of the evidence that Defendant wrongfully intended to, and did, procure Flowers's unavailability.

### III. CONCLUSION

For the foregoing reasons, the Government's Motion *in Limine* to Admit Statement of Tybius Flowers Made to the Philadelphia Police Department will be granted, and Defendant Kaboni Savage's Motion *in Limine* for Pretrial Evidentiary Hearing as to Admissibility of Evidence Pursuant to Fed. R. Evid. 804(b)(6) will be denied.

An appropriate Order will follow.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**U.S. District Judge**