IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550-03 |
| ROBERT MERRITT | : | NO. 07-550-04 |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |
| KIDADA SAVAGE | : | NO. 07-550-06 |

**SURRICK, J.**                                                                               **FEBRUARY 1, 2013**

### MEMORANDUM

Presently before the Court is Defendants Kaboni Savage and Steven Northington's Motions to Suppress Physical Evidence Seized From 3643 North Darien Street and Request for a *Franks* Hearing. (ECF Nos. 400, 402.) For the following reasons, the Motions will be denied.

**I.   BACKGROUND**[1]

    **A.   Procedural History**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment charging moving Defendant Kaboni Savage (hereinafter "Defendant") with conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1), twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15), conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9), retaliating against a witness, in violation of 18

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds (ECF No. 374) and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

U.S.C. § 1513(a) (Count 16), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17).  (Fourth Superseding Indictment, ECF No. 480.)[2]  Defendant was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage.  Lamont Lewis was also charged in the First Superseding Indictment.  The charges against Lewis were disposed of by guilty plea on April 21, 2011.  On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Defendant, Merritt, and Northington.  (ECF Nos. 196, 197, 198.)  The Government does not seek the death penalty against Kidada.

Defendant has filed the instant Motion to Suppress Physical Evidence Seized From 3643 North Darien Street and Request for a *Franks* Hearing.  (Def.'s Mot., ECF No. 400.)  Northington has also filed a Motion to Suppress Physical Evidence Seized From 3643 North Darien Street.  (Northington Mot., ECF No. 402.)  The Government has submitted an Omnibus Response.  (Gov't's Resp., ECF No. 466.)  Defendant filed a Reply to the Government's Response on May 30, 2012.  (Def.'s Reply, ECF No. 502.)  We held a suppression hearing on the Motion.  (Min. Entries, ECF No. 516, 519.)  At the hearing, the Government presented testimony from Kevin Lewis, a Special Agent with the Federal Bureau of Investigation ("FBI").  (June 11, 2012 Hr'g Tr. 10 (on file with Court).)  Special Agent Lewis has been the case agent for the FBI investigation into the Kaboni Savage Organization ("KSO") for the past thirteen years.  (*Id.* at 11.)  Special Agent Lewis has been heavily involved in wiretap applications and field work related to the KSO investigation.  (*Id.* at 11, 36, 231-48.)

---

[2] Count 8 of the Fourth Superseding Indictment was dismissed by agreement of the parties.  (ECF No. 855.)

B.     **Factual Background**

On April 7, 2003, agents with the FBI and officers of the Philadelphia Police Department ("PPD") searched a building located at 3643 North Darien Street, Philadelphia, Pennsylvania ("Darien"). The search was conducted pursuant to a warrant issued by United States Magistrate Judge Thomas J. Rueter on April 4, 2003. (Warrant, Def.'s Mot. Ex. A.)

Darien is a "two story row home with a basement." (Warrant Attach. A.) The house has white siding, a front porch with a black and white awning, and a "grey rock front with [a] black steel door." (*Id.*) Prior to his incarceration, Darien was Defendant's home. At the time that the search warrant was issued and executed, Defendant was confined to his home while awaiting trial on murder charges in the Court of Common Pleas of Philadelphia County. (Affidavit ¶¶ 25, 36, 58, Gov't's Resp. Ex. A.)

The Warrant application was supported by Special Agent Lewis's Affidavit ("Affidavit").[3] The Affidavit contains information obtained from confidential informants, intercepted wire and oral communications, and video surveillance of Palmetto. (*See generally* Affidavit ¶¶ 6-17.) The Affidavit begins with an extensive history of Defendant's involvement in illegal drug trafficking in Philadelphia and outlines evidence linking Defendant and his organization ("KSO") with illegal activity. (*Id.* at ¶¶ 19, *et seq.*)

On September 10, 1999, Defendant was arrested in Maple Shade, New Jersey on an outstanding Pennsylvania state warrant, which charged him in connection with the murder of

---

[3] This Affidavit was also the basis for a warrant issued by Magistrate Judge Rueter, authorizing the search of 3510 Palmetto Street, Philadelphia, Pennsylvania ("Palmetto"). Defendant filed a motion to suppress the fruits of that search. (ECF Nos. 398, 415.) We denied Defendant's motion in a separate memorandum and order. (*See* Palmetto Mem. and Order, ECF Nos. 945, 946.)

3

Kenneth Lassiter. (*Id*. at ¶ 26.) Officers with the Maple Shade Police Department searched the apartment where Defendant was located and Defendant's vehicle pursuant to a search warrant. (*Id*.) Defendant filed a motion to suppress the fruits of these searches, which included controlled substances and drug paraphernalia. (ECF No. 418.)[4]

On September 17, 1999, pursuant to a federal search warrant issued that day, FBI agents searched a self-storage unit located at Devon Self-Storage in Philadelphia, Pennsylvania, which was registered to an individual named "Joseph Amill." Defendant filed a motion to suppress the fruits of this search, which included controlled substances and drug paraphernalia. (ECF No. 405.)[5]

Defendant's involvement in the drug trade in the years prior to the execution of the Darien search was extensive. According to the Affidavit, since at least 1999, Defendant had been a "major supplier of cocaine . . . in the Philadelphia metropolitan area." (Affidavit ¶ 20.) Defendant's drug trafficking enterprise involved a host of other individuals, including Gerald Thomas, Kareem Bluntly, and others. (*Id*. at ¶ 21.)

Special Agent Lewis's personal observations, intercepted wire and oral communications, video surveillance, and statements from cooperating witnesses and confidential informants formed the bases for the Affidavit. In the Affidavit, Special Agent Lewis recounted, in detail, the topics discussed by Defendant and his alleged co-conspirators during intercepted telephone

---

[4] We denied Defendant's motion to suppress physical evidence seized from the Village of Stoney Run apartment and Defendant's 1997 Mercury Villager and request for a *Franks* Hearing in a separate Memorandum and Order. (*See* ECF Nos. 947, 948.)

[5] We denied Defendant's motion to suppress physical evidence seized from Devon Storage and request for a *Franks* hearing in a separate Memorandum and Order. (*See* ECF Nos. 949, 950.)

4

conversations from September through December of 2000.  (*Id*. at ¶¶ 35-52.)  These conversations centered primarily on the acquisition and trafficking of narcotics.

A telephone conversation intercepted on January 7, 2001, as well as telephone conversations intercepted over the course of the following days, indicated that on January 7, 2001, an individual named "Kurt" was assaulted by Defendant in the basement of Darien.  (*Id*. at ¶¶ 53-54.)  Defendant, upset that "Kurt" had tried to steal several thousand dollars, "pistol-whipped" him in the head.  (*Id*. at ¶ 54.)  In January 2001, confidential informant CI-1 informed the FBI that "Kurt" had managed to alert law enforcement while he was being beaten in the basement of Darien, prompting a visit by PPD.  (*Id*. at ¶ 64.)  By the time PPD demanded to search Darien, "Kurt" was no longer present.  (*Id*.)

Confidential informants also provided information which suggested that Darien was a nucleus for KSO's illegal activities.  In January 2001, according to CI-1, KSO associate Brandon Edwards "dropped off thousands of dollars as payment for cocaine [he] had received from [Defendant]."  (*Id*. at ¶ 68.)  In March 2002, CI-1 notified FBI agents that Dawud Bey, a KSO associate, "was a regular visitor to [Darien]," (*id*. at ¶ 70), and that Edwards had recently been at Darien (*id*. at ¶ 72).  In May 2002, according to CI-1, Defendant held a meeting at Darien with Bluntly, Northington, and another KSO associate.  (*Id*. at ¶ 77.)  Video surveillance also indicated that other KSO associates frequented Darien.  (*Id*. at ¶¶ 99-101.)

The impetus for seeking a warrant was evidence that Tyrone Toliver, a KSO associate, had been murdered in February or March of 2003.  Much of Special Agent Lewis's Affidavit is devoted to explaining the circumstances surrounding Toliver's disappearance, and the clear connections between Defendant, the KSO, and the Toliver murder.  We incorporate our

5

discussion of that evidence found in our earlier Memorandum denying Defendant's motion to suppress the fruits of the 3510 Palmetto Street search. (*See* Palmetto Mem.)

The Warrant specifically delineated eighteen categories of evidence that could be seized. (Warrant Attach. B.) The search yielded an array of evidence. Agents found three firearms, including a loaded .22 caliber revolver, a 9mm handgun, and a .44 caliber revolver with laser sights, which was loaded with fifteen rounds of ammunition. (FBI Receipt 2, 4, Def.'s Mot. Ex. B.) Agents found additional ammunition throughout the house, in addition to a scale, various drug paraphernalia, thousands of dollars in cash, several cellular telephones, and a wallet with identification belonging to "Yusef Billa." (*Id*. at 2-4.) Agents also found a Federal Express envelope addressed to Kareem Bluntly. (*Id*. at 2.)

During the search of Darien, law enforcement officials encountered several individuals. FBI agents found Northington, who was wanted on outstanding felony drug and weapons charges, in the basement of Darien and transferred him to the PPD for processing. (Northington FD-302, USA008917, Warrant Attachs.) FBI agents encountered Kidada Savage and interviewed her regarding weapons recovered inside Darien. (Kidada FD-302, USA008919, Warrant Attachs.) FBI agents also spoke with Defendant's mother, Barbara Savage, and Defendant himself. (USA008920-21, 24, Warrant Attachs.) These conversations were about the weapons discovered inside Darien, and about several homicides. (*Id*.) Defendants have not moved to suppress statements made incident to the Darien search.

## II. LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *Id.*; *see also United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982). Evidence obtained in violation of the Fourth Amendment is generally not admissible at trial. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 139-40 (2009) (explaining history of exclusionary rule). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## III. DISCUSSION

### A. Defendants' Capacity to Challenge Search

To establish "standing" for a Fourth Amendment claim, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). A defendant can show the reasonableness of such expectation by referring to "'concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Id.* (quoting *Rakas*, 439 U.S. at 140). A defendant need not show that he had a possessory interest in the property in order to establish standing.

The plain text of the Fourth Amendment indicates that an individual has the capacity to challenge a search conducted in his own home. U.S. Const. amend. IV; *see also Payton v. New York*, 445 U.S. 573, 589 (1980) ("In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home."). The Supreme Court has recognized that "in some circumstances a person may have a legitimate expectation of

7

privacy in the house of someone else." *Carter*, 525 U.S. at 89. Defendant resided at Darien prior to the search.[6] Accordingly, he has standing to challenge this search.[7]

       1.     *Staleness*

Defendant argues that "the affidavit of probable cause provides information which occurred over two years prior to the issuance of the warrant." (Def.'s Mem. 16.) Defendant specifically points to the use of intercepted wire and oral communications from September 2000 through January 2001, and information provided by confidential informants. Defendant argues that this information "must be considered stale and does not demonstrate probable cause for a search of the property." (*Id.*; *see also* June 11 Hr'g Tr. 171.)

If information supporting a warrant application is stale, it cannot be used to establish probable cause. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). However, age alone does not determine whether information is stale. *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010). The reviewing court must assess: (1) the nature of the crime; and (2) the type of evidence sought by the warrant. *Harvey*, 2 F.3d at 1322. In addition, "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the

---

[6] There is ample evidence that Defendant utilized other residences in Pennsylvania and New Jersey, but Defendant was confined to Darien by court order at the time. (*See* Affidavit ¶¶ 31, 57, 72.)

[7] Merritt, Northington, and Kidada Savage have joined this Motion to the extent they have standing. (*See* ECF No. 495 (granting motions to join all co-Defendants' motions).) Northington filed his own Motion to Suppress Evidence Seized from 3643 North Darien Street. (Northington Mot.) Defendants have failed to articulate specific factors which might lead us to determine that they have standing. Nevertheless, we will assume for the sake of argument that all co-Defendants have the capacity to challenge the constitutionality of the Darien search.

passage of time between occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance." *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005).

Although Special Agent Lewis's affidavit refers to events which occurred as far back as 1999, the primary purpose of such references is to establish the KSO's ongoing criminal character. The mere mention of background information does not render that information stale. Moreover, even if one were to disregard this information, the Affidavit provided more than sufficient information to establish probable cause for the issuance of the warrant. Special Agent Lewis presented concrete examples of suspicious activity and the presence of known KSO associates at Darien. Given the serious nature of the alleged criminal activity, and the evidence linking Darien to illegal activity preceding the issuance of the warrant, including notice of a May 2002 meeting between Kaboni Savage and two known KSO associates, (Affidavit ¶ 77), we conclude that this information was both material and recent. In addition, the multiple year investigation into the KSO, which revealed known KSO associates repeatedly visiting a suspected leader of a criminal enterprise at his home, reflected ongoing, continuous criminal activity. *See United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997) ("Thus, when the criminal activity has been going on continuously for years, staleness is of less concern."); *United States v. Costa*, 736 F. Supp. 2d 859, 863 (D. Del. 2010) ("[D]efendant's continuous course of conduct in a large scale drug operation made it reasonable to conclude that the illegal drug sales would continue . . . .").

    2. *Probable Cause*

Defendant claims that there was insufficient probable cause alleged in the affidavit to justify issuance of a warrant for the search of Darien. Alternatively, he claims that the basis for the affidavit's probable cause determination was tainted because it relied on evidence seized

9

during two 1999 searches of Defendant's apartment and vehicle, which Defendant claims were illegal. (Def.'s Mem. 16-17.)

"Probable cause to search exists where information suggests that the items sought will be in the location searched." *United States v. Marranca*, 98 F. App'x 179, 181 (3d Cir. 2004). When considering whether to issue a search warrant, a magistrate must consider that "[t]he likelihood evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *United States v. Greene*, No. 07-120, 2008 WL 2246923, at *3 (E.D. Pa. June 2, 2008) (citing *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973)). While "direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant," *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993), probable cause creating a nexus between the suspected criminal activity and the place to be searched may be inferred. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)).

Defendant's argument as to the sufficiency of probable cause is completely devoid of merit. Special Agent Lewis's fifty-two page Affidavit describes, in exhaustive detail, the history of the KSO and the identities of its key personalities. Special Agent Lewis's extensive introduction leaves no doubt that the KSO was an enterprise engaged in illegal activities, chiefly drug dealing. The affidavit establishes concrete links between known KSO associates and Darien, based on a number of sources, including confidential informants and cooperating witnesses, as well as physical and video surveillance. By way of example, Special Agent Lewis's Affidavit included information ascertained from CI-1, which consisted of known KSO associate Brandon Edwards dropping off payments for illegal drug purchases, (Affidavit ¶ 68), Dawud Bey, another

known KSO associate, regularly visiting Darien (*id.* at ¶ 70), and Defendant meeting with co-Defendant Northington and Bey in May of 2002 (*id.* at ¶ 77). Similar meetings took place in February of 2003. (*Id.* at ¶ 39.) Defendant argues that "[a]t best, this surveillance reveals nothing more than the Defendant and other black males entering and exiting the property." (Def.'s Mot. 6.) We disagree. The surveillance, as described by Special Agent Lewis, the case agent for the KSO investigation, revealed numerous meetings at Darien between Defendant and known KSO members. Based on the history of the KSO, Defendant's extensive involvement in the drug world, and the significant record of violence perpetrated by KSO members, including Defendant, to protect their enterprise, there was ample probable cause supplied by the Affidavit.

Defendant's "taint" argument is similarly meritless. Defendant alleges that Special Agent Lewis's mention of a September 1999 search of his apartment in Maple Shade, New Jersey, conducted pursuant to a warrant, taints the probable cause in the warrant to search Darien. (Def.'s Mem. 17.) Defendant also points to a search conducted of Defendant's 1999 Plymouth Villager minivan, also pursuant to a warrant. (*Id*.) Defendant filed a motion to suppress the fruits of those searches. (*See* ECF No. 418.) Defendant contends that evidence seized during the Palmetto search constitutes the "fruit of the poisonous tree," *see Wong Sun v. United States*, 371 U.S. 471, 488 (1963), and should be excluded because of the Palmetto affidavit's citation to those searches.

We have already ruled that all of these searches were constitutional. *See supra* n. 4, 5. Since the searches cited were not illegal, the doctrine of the "fruit of the poisonous tree" does not apply. Defendant's argument that Special Agent Lewis's Affidavit, which provided the basis for the search of Darien, should be stricken because of the taint of illegally obtained evidence, is meritless.

11

## B. *Franks* Hearing

Finally, Defendant requests that we conduct a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) "to determine the validity of the search warrant affidavit." (Def.'s Mem. 21.) Defendant lists several "intentional and reckless misrepresentations," which he alleges "amount[] to a material misrepresentation within the affidavit," and "likely had a profound effect" on Magistrate Judge Rueter's probable cause determination. (*Id.*) The Government contends that the "information in the affidavit contained no material misrepresentations nor omissions." (Gov't's Resp. 14.)

The Supreme Court in *Franks* stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155-56. If a defendant can make a "substantial preliminary showing" to overcome the affidavit's presumption of validity, the defendant must ultimately prove, by a preponderance of the evidence, that the affiant's statements were material to a finding of probable cause and were made knowingly and intentionally, or with reckless disregard for the truth. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks*, 438 U.S. at 171-72). If the defendant meets this burden, "the Fourth Amendment requires that . . . the fruits of the search [must be] excluded to the same extent as if probable case was lacking on the face of the affidavit." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) (quoting *Franks*, 438 U.S. at 156).

To make a substantial preliminary showing, a defendant must raise "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof."

12

*Franks*, 438 U.S. at 171. The Third Circuit has set out a standard "to identify what constitutes 'reckless disregard for the truth' regarding both misstatements and omissions." *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006).

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (citations omitted).

Defendant cites several classes of omissions and misrepresentations. We addressed Defendant's contentions in our Palmetto Memorandum. (*See* Palmetto Mem.) We found Defendant's arguments were unpersuasive because they were isolated statements and we concluded that they did not impugn CI-1's credibility. (*Id.*) We also observed that Defendant's continued involvement with the KSO was not implausible despite the fact that he was under Government supervision. (*Id.*); *see also United States v. Blake*, 288 F. App'x 791, 794 (3d Cir. 2008) (citing examples of prisoners orchestrating criminal activity while incarcerated). Finally, we noted that the exact nature of Defendant's relationship with Kareem Bluntly was irrelevant, as the two were known associates and Defendant had failed to establish why Bluntly lacked credibility. (*See* Palmetto Mem.)

Furthermore, probable cause for the search of Darien was rooted in a number of intercepted wire and oral communications, information gleaned from a confidential informant, physical and video surveillance conducted by the FBI, and substantial historical information, including information about Defendant's past drug trafficking operations.

Defendant has failed to make a substantial showing that would justify a Franks hearing.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions must be denied.  An appropriate Order follows.

BY THE COURT:


*/s/R. Barclay Surrick*
**U.S. District Judge**