IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550-03 |

**SURRICK, J.**                                                                                                            **FEBRUARY 1, 2013**

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Motion to Compel the Production of Non-Jencks Act Discovery (ECF No. 394) and Defendant Kaboni Savage's Supplemental Motion to Compel Non-Jencks Act Discovery (ECF No. 503). For the following reasons, Defendant's Motions will be denied.

**I. BACKGROUND[1]**

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Kaboni Savage with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15); tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding

---

[1] The factual background of this case is more fully set forth in our June 1, 2012 Memorandum and Order denying Defendant Kaboni Savage's Motion to Dismiss the Indictment on Double Jeopardy Grounds and Motion to Dismiss Count Nine of the Third Superseding Indictment on Double Jeopardy Grounds. (*See* ECF Nos. 507, 508.)

Indictment, ECF No. 480.)[2]  Kaboni Savage was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage.  Lamont Lewis was also charged in the First Superseding Indictment.  The charges against Lewis were disposed of by guilty plea on April 21, 2011.  On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Kaboni Savage, Merritt, and Northington.  (ECF Nos. 196, 197, 198.)  The Government does not seek the death penalty against Kidada Savage.

On October 9, 2004, six people, including four children, died as a result of arson at a home located at 3256 North Sixth Street, Philadelphia, Pennsylvania.  (Def.'s Mot. 1, ECF No. 376.)  The Indictment alleges that Kaboni and Kidada Savage solicited and ordered Lewis and Merritt to set fire to the home of Eugene Coleman, a former associate of Kaboni Savage.  (Indictment 21-23.)  Savage believed that Coleman was cooperating with the Government and planned to testify against him in his 2005 federal drug conspiracy trial.[3]  The firebombing took the lives of Coleman's mother, infant son, and four other relatives.  The Government intends to show at trial that the firebombing was ordered by Kaboni Savage in order to intimidate Coleman and prevent him from testifying against him at the 2005 drug conspiracy trial.

Savage has filed a Motion to Compel the Production of Non-Jencks Act Discovery.

---

[2] On December 20, 2012, we entered an Order dismissing Count 8 of the Indictment, upon agreement between the parties.  (*See* ECF No. 855.)

[3] Kaboni Savage, Northington, and four other co-defendants not charged in the instant Indictment were prosecuted in the 2005 drug conspiracy.  After a seven-week trial, Savage was found guilty of conspiracy to manufacture and distribute cocaine, money laundering, firearms possession, witness retaliation and other crimes.  Coleman testified at that trial.  Savage received a sentence of thirty years in prison for these convictions.

(Def.'s Mot., ECF No. 394.)[4]  The Government filed an omnibus response in opposition. (Gov't's Resp., ECF No. 468.)  Savage then filed a Supplemental Motion to Compel Production of Non-Jencks Act Discovery.  (Def.'s Supp. Mot., ECF No. 503.)  We held a hearing on the pretrial motions.  At that hearing, the parties presented additional argument on the Motion. Thereafter, Savage filed a Memorandum of Law in Support of His Motion to Produce Non-Jencks Act Discovery.  (Def.'s Mem., ECF No. 530.)

## II.    DISCUSSION

Defendant seeks production of fourteen sets of materials identified in a November 14, 2011 correspondence with the Government (*see* Def.'s Discovery Mot. Ex. A), additional materials listed in Savage's Supplemental Motion (*see* Def.'s Supp. Mot.), and information stemming from existing discovery identified during the suppression hearing (*see* June 12, 2012 Hr'g Tr. 105 (on file with Court)) pursuant to *Brady* and Rule 16 of the Federal Rules of Criminal Procedure.[5]  The Government advises that many of these materials have been

---

[4] At the June 12, 2012 Suppression Hearing, Kaboni Savage's co-Defendants joined the instant Motion to Compel.

[5] Broadly stated, these seventeen items include:  (1) audio/video recordings involving Lamont Lewis; (2) Philadelphia Police Department ("PPD") Narcotics Intelligence Unit and PPD Investigations Unit reports for fourteen individuals and eight locations; (3) PPD, Federal Bureau of Investigation ("FBI"), United States Drug and Enforcement Agency ("DEA"), and Bureau of Alcohol, Tobacco, and Firearms ("ATF") reports for the same fourteen individuals and eight locations; (4) reports pertaining to the "ninety man roundup"; (5) Steven Northington audio recordings; (6) Federal Detention Center ("FDC") audio recordings for seven individuals; (7) prison correspondence to and from five individuals; (8) Lamont Lewis prison audio recordings; (9) Tyrone Tolliver's medical examiner's report; (10) witness/civilian interviews related to the Tyrone Tolliver murder; (11) ballistics reports related to the arson-murders; (12) PPD, FBI, ATF, DEA reports related to homicide investigations involving ten individuals; (13) photograph identification books; (14) video tapes from the Palmetto Street surveillance; (15) information provided to news media about Eugene Coleman and the arson-murders; (16) reports related to interviews of Eugene Coleman following the arson-murders; (17) information regarding an

3

produced,[6] made available to Defendants,[7] are better suited for Jencks Act-related productions,[8] or simply do not exist.[9] (Gov't's Resp. 28-32.) To the extent that any of the requested

---

inmate at Curran-Frumhold Correctional Facility ("CFCF"); and (18) 302 reports and interview notes from FBI interviews with Savage.

[6] The Government contends it has already produced: (2) reports of named individuals that were generated in the current investigation; (5) audio recordings of telephone calls made by Steven Northington from prison; (6) recordings of FDC telephone calls for applicable individuals; (7) assorted prison correspondence for requested individuals; (9) a medical examiner's report for Tyrone Tolliver; (10) and (12) homicide reports, photographs, and records for each homicide involved in the full investigation; and (11) ballistics reports related to the arson-murders. (*See* Gov't's Resp. 29-32.)

[7] The Government said that it "has made, and continues to make . . . all physical evidence, available to counsel for review at a time mutually convenient to the parties." (*See* Gov't's Resp. 31.) Included in this evidence is: (7) assorted prison correspondence for requested individuals; (13) an identification book containing photographs of believed co-conspirators; and (14) video tapes from the Palmetto Street surveillance. (*Id*.) At the suppression hearing, the Government noted that they do not anticipate any witnesses arguing that Savage is in any of the video tapes from the Palmetto Street surveillance. (*See* June 12 Hr'g Tr. 112.)

[8] For example, the Government contends that: (1) the audio/video recordings involving Lamont Lewis; (2) PPD reports pertaining to individuals involved in the current trial that have not been previously produced; and (17) a 302 Report relating to the inmate at CFCF with respect to the Tybius Flowers murder will be produced pursuant to the Government's Jencks Act production obligations. (*See* Gov't's Resp. 28-29; *see also* June 12 Hr'g Tr. 113.)

[9] Defendant requests documentation from the PPD, PPD Narcotics Intelligence and Investigation Unit, the FBI, the DEA, and the ATF pertaining to the "90-man roundup" referenced in wiretap conversations. (Def.'s Mot. Ex. A. Request 4.) Savage believes this evidence will reflect that he did not control certain specific corners in North Philadelphia and that individuals acted independently. (June 12 Hr'g Tr. 103.) The Government claims that it doesn't "know that that has anything to do with this case . . . [and] do[es]n't have any information on that." (*Id.* at 112.)
In addition, Defendant seeks documentation pertaining to news media reports, specifically involving Walt Hunter of CBS News, about preexisting threats to Eugene Coleman prior to the October 9, 2004 arson-murders. (June 12 Hr'g Tr. 107-08.) The Government responds that it does not have access to any information that may have been communicated to the media. (*Id.* at 114, 116-17.) Outside of disclosures and discovery obligations related to parties acting under the control or at the request of the Government, *see infra* Section II.B, we find that the Government has no obligation to produce information that may or may not have been

4

documentation is Jencks Act material, we expect the Government to produce them in accordance with their statutory discovery obligations and our Order dated June 14, 2012.[10] *See* 18 U.S.C. § 3500 (requiring the production of statements and reports of Government witnesses or prospective Government witnesses after the witnesses' testimony on direct examination); *see also United States v. Kimoto*, 588 F.3d 464, 475 (7th Cir. 2009). With regard to the materials that the Government claims do not exist, they obviously cannot be produced. If the Government discovers responsive documents in their possession that they are obligated to produce, the Government shall produce them.

The remaining issue is the Government's obligation to locate, review, and produce requested documentation, to the extent that it exists, from a number of other governmental agencies. Defendant contends that because the Government's investigation is inherently inter-departmental, the Government is compelled to produce the requested evidence in advance of trial. Specifically, these outstanding requests relate to any reports by the PPD, FBI, DEA, and ATF for fourteen individuals and eight locations.[11]

---

communicated to the news media. *See United States v. Petters*, No. 08-364, 2009 WL 1076199, at *3 (D. Minn. Mar. 26, 2009) (denying Defendant's request for discovery of media information).

In terms of the request for 302 reports related to FBI interviews with Savage, the Government contends that no such interviews occurred on the dates mentioned. (June 12 Hr'g Tr. 113.)

[10] By Order Dated June 14, 2012, we denied Defendants' Motion for Early Disclosure of Jencks Material and strongly encouraged the Government to immediately provide Jencks material to Defendants, with a mutually agreed upon date of July 2, 2012 for final production. (*See* June 14, 2012 Order, ECF No. 527.) It is the Court's understanding that all Jencks material has been provided to Defendants.

[11] These fourteen individuals are: Dawud Bey; Gerald Thomas; Shamsud-Din Ali; Lamont Lewis; Eugene Coleman; Paul Daniels; Robert Wilkes; Wendell Mason; Tyrone

A.      *Brady* Material and Rule 16 Discovery

As an initial matter, the Government has an ongoing obligation to produce material evidence under its control pursuant to *Brady*. In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Similarly, the prosecution is required to turn over impeachment evidence to the defense — that is, evidence relating to a Government witnesses' credibility. *United States v. Friedman*, 658 F.3d 342, 357 (3d Cir. 2011) (citing *United States v. Giglio*, 405 U.S. 150, 154 (1972)). While *Brady* evidence must be turned over "in time for its effective use at trial," *Giglio* material need not be produced prior to trial. *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) (holding that a defendant's due process rights are satisfied as long as evidence pertaining to Government witness credibility is produced the day of their testimony).

These ongoing production obligations differ from Rule 16 discovery obligations. *See United States v. Boffa*, 513 F. Supp. 444, 499 (D. Del. 1980) (finding that the *Brady* Rule "is not a discovery rule but a rule of fairness and minimum prosecutorial obligation"). Rule 16 states that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents . . . if the item is within the government's

---

Tolliver; Kareem Bluntly; Juan Rosado; Myron Wilson; Craig Oliver; and Kimberly Oliver. These eight locations are street corners in Philadelphia, Pennsylvania, including: 6th Street and Glenwood Avenue; 6th Street and Westmoreland Avenue; 6th Street and Allegheny Avenue; Fairhill Street and Allegheny Avenue; Westmoreland Street and Allegheny Avenue; 8th Street and Butler Avenue; 8th Street and Erie Avenue; and 8th Street and Venango Avenue. (Def.'s Discovery Mot. Ex. A.)

possession, custody, or control and the item is material to preparing the defense . . . ." Fed. R. Crim. P. 16(a)(1)(E).  Unlike *Brady*, "Rule 16 contemplates a fundamentally limited range of pretrial discovery."  *United States v. Norris*, 753 F. Supp. 2d. 492, 529 (E.D. Pa. 2010); *see also United States v. Mohammad*, No. 10-389, 2012 WL 1605472, at *2 (N.D. Ohio, May 8, 2012) (denying Defendants' request for early production of Jencks material and finding that Government met its discovery obligations under Rule 16).

Under Rule 16 discovery, a defendant is required to make a *prima facie* showing of materiality with regard to the evidence requested.  *United States v. Boffa*, 89 F.R.D. 523, 535 (D. Del. 1981).  As with *Brady* evidence, materiality in the Rule 16 context is such that "'there must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'"  *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978) (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975)); *see also United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir. 1991) (finding that materiality is based on whether there is a reasonable probability that the production of evidence would affect the outcome of the trial); *United States v. Garcia*, No. 99-064, 2001 WL 173784, at *2 n.8 (D. Del. Feb. 13, 2001) (same).  In terms of materiality in the present case, Defendant contends that the law enforcement agency reports may provide additional information about the individuals and locations listed in Exhibit A and that the resulting intelligence will be exculpatory.  (Def.'s Mot. 4-5.)

B.  **Constructive Possession**

The Government represents that it has and will continue to produce *Brady* material in its possession.[12] The issue remaining is whether the Government constructively possesses information and materials that may or may not be possessed by other governmental agencies. For the purposes of *Brady* material, "the government's duty to disclose . . . reaches beyond evidence in the prosecutor's actual possession." *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006). With respect to *Giglio* material, "prosecutors have 'a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). Constructive or imputed possession occurs when evidence may not physically be in the Government's control, but is readily available. *See Perdomo*, 929 F.2d at 970-71 (finding that prosecution's failure to search for and produce criminal history record of key Government witness was a violation of *Brady*). In the *Brady* context, prosecutors are charged with constructive knowledge of accessible inter-departmental information and evidence. *See Risha*, 445 F.3d at 304 (quoting *United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)) ("[P]rosecutors have an obligation to make a thorough inquiry of all enforcement agencies that ha[ve] a potential connection with the [ ] witnesses.")); *see also United States v. Gonzalez*, 938 F. Supp. 1199, 1207 (D. Del. 1996) ("[I]nformation in the possession of one government agency is deemed to be in the constructive possession of the others.").

---

[12] As in *United States v. Astacio-Espino*, we emphasize that we take the Government's obligations under *Brady* especially seriously when the penalty of death is being sought. 783 F. Supp. 2d 287, 290 n.1 (D.P.R. 2011).

There are, however, limits to the ends the Government is expected to go in inter-departmental discovery. In *United States v. Joseph*, the Third Circuit Court of Appeals found that a prosecutor's failure to discover and produce a piece of contradictory, exculpatory evidence in a separate case file was not a *Brady* violation. 996 F.2d 36, 40-41 (3d Cir. 1993). There, defendants failed to specifically call the prosecutor's attention to the evidence in question. *Id.* at 40. In reaching its decision, the court rejected an interpretation of *Brady* that would "require prosecutors to search their unrelated files to exclude the possibility, however remote, that they contain exculpatory information." *Id.* at 41. The court reasoned that "[s]uch a requirement would place an unreasonable burden on prosecutors for it is one thing to require honest searches, reasonable in scope, of unrelated files for specific identifiable information, but quite another to send prosecutors on open-ended fishing expeditions." *Id.*; *see also United States v. Pelullo*, 399 F.3d 197, 217 (3d Cir. 2005) (holding that because "the government is not under an obligation to obtain and disclose all information in possession of other arms of the government that are not involved in the particular prosecution . . . the prosecution is under no obligation to ferret out evidence from another pending proceeding"); *United States v. Merlino*, 349 F.3d 144, 154-55 (3d Cir. 2003) (finding that there was no *Brady* violation where Government failed to turn over additional United States Bureau of Prison tapes that contained information favorable to the defense).

In *Risha*, the Third Circuit created a three-part test to determine if "cross-jurisdictional constructive knowledge" is present. *See Risha*, 445 F.3d at 304; *United States v. Reyeros*, 537 F.3d 270, 281-82 (3d Cir. 2008) (applying *Risha* test and finding no constructive knowledge in case involving documents possessed by Colombian government). Such knowledge is imputed if:

9

(1) the party with knowledge of the information is acting on the Government's behalf or under its control; (2) state and federal Governments are acting as part of a team or in a joint investigation with shared resources; and (3) the entity has ready access to the evidence. *Risha*, 445 F.3d at 304; *see United States v. Rigas*, 779 F. Supp. 2d 408, 414 (M.D. Pa. 2011) (citing *Risha* test for constructive possession and finding that SEC jointly investigated Defendants with USAO making SEC interview notes discoverable).

On balance, prosecutors are held responsible for exculpatory information that they reasonably should be able to discover from sources that are acting in concert with the pending prosecution. Here, the case against Defendants stemmed from an approximately decade long joint investigation into the KSO, conducted by the PPD and FBI. Accordingly, the Government has constructive possession over exculpatory documents actually possessed by either agency related to the investigation. The Government represents that it has produced or made available all such materials and has no reason to believe that any others exist. Defendant has not alleged, nor is the Court aware of, any nexus between the current prosecution and possible investigations by the DEA and ATF. No constructive possession has been established with regard to those two Government agencies.

Once constructive possession has been established, we must consider the practicality of the scope of Defendant's requests for additional discovery. Although not the law in the Third Circuit, the dissent in *Risha* highlighted a few factors to consider with regard to the practicality of cross-jurisdictional discovery, including: (1) the location of the information requested; (2) the size and the scope of the investigation required to review the sources of information; (3) the

specificity of a defendant's request; and (4) the connection between the instant case and the proceeding in which the material is located. *Risha*, 445 F.3d at 309.

In consideration of these factors, we are compelled to conclude that Defendant's additional requests not only lack specificity, they are unduly burdensome in size and scope. The investigation of the KSO went on for more than ten years. There were many incidents related to KSO activities that occurred all over Philadelphia in many different police districts. The Government informs that they have produced materials to Defendants related to the named individuals. (Gov't's Resp. 29.) With regard to Defendant's demand for documentation related to particular locations and reports generated by other agencies, Defendant's requests would require the Government to search unrelated files in many police districts to hunt for exculpatory information. *Joseph*, 996 F.3d at 41. This is not a reasonable request. Moreover, Defendant's contention that the requested materials may contain exculpatory material is nothing more than "mere speculation." *United States v. Allick*, No. 2011-020, 2012 WL 592924, at *5 (D.V.I. Feb. 22, 2012) (finding that defendant made a showing that was "*just enough* to overcome the label of 'mere speculation'" where defense compared press release about shooting to autopsy report creating a reasonable basis for the belief that government agencies' files contained discoverable information) (emphasis in original); *United States v. Galestro*, No. 06-285, 2008 WL 2783360, at *19 (E.D.N.Y. July 15, 2008) (quoting *Merlino*, 349 F.3d at 154-55) ("Defendant has not made a 'plausible showing' that inspection of the items he seeks will reveal material evidence favorable to him, but seeks to have the prosecution embark on an open-ended 'fishing expedition' . . . on his behalf.") To the extent Defendant believes additional materials would benefit his defense, he may subpoena the PPD or any other entity, including CBS News, for that documentation.

In light of the Government's efforts to produce or make available relevant documentation in its control, we do not find any independent basis for ordering additional Rule 16 discovery at this time nor do we conclude based upon the Government's representations that the Government has any additional obligations under *Brady*, *Giglio*, or the Jencks Act to fish for exculpatory materials in unrelated files.

### III.    CONCLUSION

For the foregoing reasons, Defendant Kaboni Savage's Motion to Compel Production of Non-Jencks Act Discovery and his Supplemental Motion to Compel Non-Jencks Act Discovery will be denied.

An appropriate Order will follow.

**BY THE COURT:**


*/s/R. Barclay Surrick*
**U.S. District Judge**