IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550-03 |
| ROBERT MERRITT | : | NO. 07-550-04 |
| STEVEN NORTHINGTON | : | NO. 07-550-05 |
| KIDADA SAVAGE | : | NO. 07-550-06 |

**SURRICK, J.**                                                                                                         **MARCH  5 , 2013**

## MEMORANDUM

Presently before the Court is Defendant Robert Merritt's Motion for Discovery in Support of Motion to Strike the Current Jury Panel (ECF No. 869). For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.     BACKGROUND**

The factual background of this case is more fully set forth in our January 9, 2013 Memorandum and Order denying Defendant Robert Merritt's Motion in Limine to Exclude Evidence of Cell Block Conversations recorded on January 5, 2005 and Motion to Suppress Evidence of Cell Block Conversations Recorded on January 5, 2005. (*See* ECF Nos. 886, 887.) By way of general background, on May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Robert Merritt with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); six counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 10-15); retaliating against a witness, in violation of 18 U.S.C. §

1513 (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Indictment, ECF No. 480.)

On February 20, 2012, Defendant Steven Northington filed a Motion for Discovery of Information Concerning the Confection of the Grand and Petit Jury Venire. (ECF No. 372.) On October 2, 2012, the Court entered a Memorandum and Order, granting in part and denying in part, Defendant's Motion for Discovery. (*See* ECF Nos. 639, 640.) The Court granted discovery of The Plan of the Random Selection of Grand and Petit Jurors of 1968 for the Eastern District of Pennsylvania (revised December 4, 2009) (the "Jury Plan") and statistical breakdowns by race and ethnicity of Master and Qualified Jury Wheels from 2007, 2009, and 2011. (Discovery Order, ECF No. 640.) On November 6, 2012, Defendant Steven Northington filed a Motion to Increase Pool of Prospective Jurors and to Strike the Current Jury Panel. (Def.'s Jury Mot., ECF No. 701.) On January 28, 2013, the Court entered a Memorandum and Order denying Defendant's Motion to Increase Pool of Prospective Jurors and to Strike the Current Jury Panel. (Jury Mem., ECF Nos. 969, 970.) On December 31, 2012, Defendant filed the instant Motion for Discovery in Support of Motion to Strike the Current Jury Panel (Def.'s Mot., ECF No. 869.) The Government has not filed a response to Defendant's Discovery Motion.

## II. DISCUSSION

Defendant seeks discovery concerning the confection of the venire from which the grand jury in this case was selected and from which the petit jury was also selected. (Def.'s Mot. 3-4.) He alleges that the Eastern District of Pennsylvania's use of voter registration lists to create a pool of eligible jurors "is inadequate to satisfy the constitutional requirement that a jury be comprised of a fair cross-section of the community racially, by gender, and socio-

economically." (*Id.* at 5.) Defendant has retained the services of an expert who has concluded that there is "evidence of a substantial disparity" between African-Americans living in the Eastern District and those represented on the current jury panel. (*Id.* at 7.) Defendant asserts that additional discovery is needed to determine whether this disparity is the result of using voter registration lists as the only source to draw juries. (*Id.*) Defendant requests that the following information be provided to his expert by the Clerk of the Court to support his Motion to Strike the Current Jury Panel:

(a) The Source Lists for the compilation of jury panels in the Eastern District of Pennsylvania for 2007, 2009, and 2011 and the date to which each applied, including the voter lists from each of the counties of the Eastern District of Pennsylvania and whatever data is available regarding the sex, age and race or Hispanic status of each voter;

(b) The actual Master list compiled for 2007, 2009, and 2011;

(c) The records of which names on the Master List were mailed questionnaires, the number of times each were mailed (if there was no immediate response to the first mailing) and the disposition of the mailing, i.e., whether the questionnaire was returned by prospective juror, returned by Post Office, or not returned. This data should include the address to which the questionnaire was mailed and any other information from the voter lists;

(d) The Qualified List in 2007, 2009, and 2011. This data should include which potential jurors were qualified, which were disqualified, and which were deferred. This data should also include all responses to the jury questionnaire used for qualification, including race, Hispanic status, sex and age, as well as address;

(e) The mailing of summons and the disposition of those mailings for 2007, 2009, and 2011, including any disqualifications or deferments that resulted and the reasons such were granted;

(f) The monthly petit term list as of the end of each month from September 1, 2008 through to the date of the trial including Juror Index Number;

(g) The venire panels from September 1, 2008 through the date that of the trial, including Juror Index Number; [and]

(h) Any supplementation to any of the Master or Qualified Wheels.

(Def.'s Mot. 1-2.)

The Sixth Amendment and the Jury Service Selection Act of 1968 ("JSSA") guarantee defendants a trial by a jury selected from a fair cross-section of the community.[1] In order to establish a prima facie fair cross-section violation under the Sixth Amendment or the JSSA, a defendant has the burden of demonstrating:

> (1) the group alleged to be excluded is a 'distinctive' group in the community; (2) the representation of this group in jury venires is not 'fair and reasonable' in relation to the number of such persons in the community; and (3) the underrepresentation is caused by the 'systematic exclusion of the group in the jury selection process.'

*Weaver*, 237 F.3d at 237 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Determining whether a group is represented fairly and reasonably in jury venires in relation to the number of such persons in the community is a mathematical exercise that must be supported by statistical evidence. *Id.* at 240. A defendant must also demonstrate that the alleged underrepresentation stems from more than exclusive reliance on voter registration lists where a cognizable group has "freely excluded itself quite apart from the system itself . . . ." *Id.* at 244. Defendant's request for discovery is made in support of his claim of a systematic exclusion of African-Americans and Hispanics in jury pools.

The JSSA permits discovery of information related to the jury selection process if a party wishes to challenge such process. Specifically, section 1867(f) of the JSSA provides in relevant part:

---

[1] The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." U.S. Const. amend. VI. The JSSA codifies the Sixth Amendment cross-section right. *United States v. Weaver*, 267 F.3d 231, 236 (3d Cir. 2001). The JSSA provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion [challenging compliance with jury selection procedures] under . . . this section . . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such motion.

28 U.S.C. § 1867(f). In *Test v. United States*, the Supreme Court stated that Section 1867(f) "makes clear that a litigant has essentially an unqualified right to inspect jury lists" and "grants access in order to aid parties in the 'preparation' of motions challenging jury-selection procedures." 420 U.S. 28, 29-30 (1975). A defendant "need only allege that he is preparing a motion to challenge the jury selection process" in order to "avail himself of the right of access to jury selection records." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996).

Since *Test*, federal courts have determined that the right to inspect jury selection records, although "unqualified," is not unlimited. *See United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006) ("The right to discovery by the [JSSA] and *Test* is not limitless."); *United States v. Gotti*, No. 02-743, 2004 U.S. Dist. LEXIS 20280, at *20 (S.D.N.Y. Oct. 6, 2004) (noting that a defendant who made a request under § 1867(f) "is not entitled to unencumbered access to juror information, and given the concerns about juror safety . . . will not have it"). Highly invasive requests that pose an extraordinary administrative burden on the courts will be deemed "infeasible" and can be denied on that basis alone. *See, e.g.*, *United States v. Luna-Santillanes*, No. 11-20492, 2012 WL 3464764, at *5 (E.D. Mich. Aug. 14, 2012) (holding that requests for discovery concerning jurors that go beyond the scope of juror number, race, and Hispanic ethnicity must be substantiated by more than speculation and assumptions to offset the "heavy burden" fulfilling such requests place on the courts); *United States v. O'Reilly*, No. 05-80025,

2008 WL 4960173, at *3 (E.D. Mich. Nov. 20, 2008) (finding that granting access to the court's computer files would be "unprecedented" and cause a "tremendous administrative burden" on the courts) (internal quotations omitted). "The [JSSA] is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court." *United States v. Rice*, 489 F. Supp. 2d 1312, 1316 (S.D. Ala. 2007). Rather, "[t]he right to inspection extends to all jury selection materials relevant to a complete determination of whether a grand or petit jury has in fact been selected at . . . random from a fair cross-section of the community." *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (citation omitted). Therefore, we must limit Defendant's discovery to only those records he needs to substantiate his claim.

As a result of our October 2, 2012 Discovery Order, Defendants were provided the following information:

(a) The Plan of the Random Selection of Grand and Petit Jurors of 1968 for the Eastern District of Pennsylvania (revised December 4, 2009);
(b) Spreadsheets with statistical breakdowns by race and ethnicity for the jurors contained on the 2007 Master Jury Wheel, 2009 Master Jury Wheel, and 2011 Master Jury Wheel;
(c) Spreadsheets with statistical breakdowns by race and ethnicity for the jurors contained on the 2007 Qualified Jury Wheel, 2009 Qualified Jury Wheel, and 2011 Qualified Jury Wheel;
(d) A spreadsheet with the statistical breakdown by race and ethnicity for the 1,000 jurors that were initially summoned for petit jury selection in this case;
(e) A spreadsheet with the statistical breakdown by race and ethnicity for the 549 jurors that responded to the summons and showed up to fill out a jury questionnaire on September 26 and 27, 2012; and
(f) A spreadsheet with the statistical breakdown by race and ethnicity for the jurors that served on the Grand Jury that returned the First Superseding Indictment on April 8, 2009.

(Discovery Order 1-2.) Defendant's expert proposes an analysis based upon the above information that yields preliminary disparity figures similar to figures that this Court has already

6

held are not demonstrative of unfair representation in jury pools.[2] Nevertheless, Defendant's expert states that further data is necessary to establish systematic disparities inherent in the Eastern District of Pennsylvania's use of voter registration lists as the sole source of eligible jurors. (Def.'s Mot. Ex. 3.) In addition, he contends that information regarding the manner in which potential jurors are excluded and deferred is necessary to demonstrate systemic issues in identifying jurors that represent a fair cross-section of the community. (*Id.*) We conclude that Defendant is entitled to some additional discovery to substantiate his claims. We must warn, however, that "[w]here a defendant fails to make anything of the data he requested underlying the selection of the [] jury, a defendant is not entitled to rummage through the records for other months without such a showing." *Rice*, 489 F. Supp. 2d at 1325 (internal quotation marks omitted).

Defendant seeks the original source lists from 2007, 2009, and 2011, as well as the voter registration lists from each of the counties comprising the Eastern District of Pennsylvania. He contends that the actual source lists will help him understand the distribution of prospective jurors geographically, as well as "impute the race and Hispanic status of those to which qualification forms were mailed." (Def.'s Mot. 6.) While all lists of prospective jurors are sampled from an original source list, qualification forms are mailed to names and addresses directly obtained from the relevant Master list. Defendant makes no representation as to why the

---

[2] Defendant's expert asserts that the "absolute disparities with respect to blacks range 6.86 percent to 8.60 percent and the comparative disparities range from 52.5 percent to 39.7 percent." (Def.'s Mot. Ex. 3.) He offers that the absolute disparities for Hispanics "range from 1.91 percent to 3.50 percent and the comparative disparities range from 39.1 percent to 57.2 percent." (*Id.*) We have already determined that an absolute disparity of African-American representation in jury pools of 8.45 percent and a comparative disparity of 50.23percent is insufficient to establish an unfair and unreasonable representation in jury pools. (Jury Mem. 11.)

actual source list is necessary in preparing his fair cross-section challenge. *See, e.g.*, *Rice*, 489 F. Supp. 2d at 1318 (holding that raw data in the original source list is not reasonably necessary to any fair cross-section challenge, especially when provided with other demographic information relating to pertinent jury wheels); *Diaz*, 236 F.R.D. at 483-84 (finding that the JSSA does not authorize access to raw data from original source lists). If Defendant's expert wants to inspect the original voter registration lists from each county comprising the Eastern District of Pennsylvania, and from which the source list is compiled, then he is free to inspect these documents. As Defendant's expert points out, "voter lists themselves are publicly available in Pennsylvania." (Def.'s Mot. Ex. 3.) Accordingly, Defendant's request for access to the original source list is denied.

Defendant's expert will be granted access to the Master lists for 2007, 2009, and 2011. Master lists will contain home addresses and any available information regarding sex, age, race, or ethnicity of each voter. Social security numbers and other information not relevant to Defendant's expert's analysis will be removed from the lists. Likewise, Defendant's expert will be granted access to the 2007, 2009, and 2011 redacted Qualified lists. Both Master and Qualified lists will include fields denoting each potential juror's most recent qualification and availability status.

Defendant's request for records of which names on the master lists were mailed questionnaires, the number of times each were mailed, and the disposition of mailings cannot be fulfilled in a single list format, as jury administrators do not track such information in static

electronic form.[3] Returned questionnaires are purported to be voluminous and are located in numerous boxes within the Courthouse basement. Defendant's expert will be granted access to the envelopes returned as undeliverable so that he may compile his own list. *See, e.g.*, *United States v. Miller*, 116 F.3d 641, 658 (2d Cir. 1997) (finding that a defendant only has a right to access jury records and papers already in existence); *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996) (holding that access to envelopes returned as undeliverable provided the defendant with the information he needed to demonstrate a systematic exclusion of African-Americans or Hispanics).

Similarly, Defendant's expert will be provided access to boxes containing returned summonses, as the specific dispositions of returned summonses are not maintained by jury administrators in a single file format. In addition, jury administrators do not maintain the reasons for juror disqualification or deferment within a single database. When emergency excuses are granted, a district court judge reviews the claim and issues an order as to whether the individual requesting the excuse will be granted a permanent disqualification, or whether that person will be repopulated into the relevant qualified wheel. Excuse orders issued by district court judges are also stored within the basement of the Courthouse. Defendant's expert will be granted access to such materials.

Defendant's request for monthly petit term lists from September 1, 2008 to the date of trial cannot be granted, as the Eastern District of Pennsylvania does not operate on a monthly

---

[3] A juror's status on the relevant master wheel may change at any time (e.g., when a questionnaire is returned), but the number of mailings or previous mailing disposition is not recorded.

petit term system. However, Defendant's expert will be provided a list of jurors summoned each week from September 1, 2008 until the date of trial.

The Court assumes that Defendant's request for venire panels from September 1, 2008 until the beginning of trial is a request for the list of jurors that appeared at the courthouse to attend juror orientation during that time period. Defendant's expert will be provided such a list. Because master and qualified wheels are not supplemented by any sources other than voter registration lists, Defendant's request for any supplementary materials will be denied.

In view of the fact that the jury in this case is anonymous (*see* ECF No. 602), before any of the above-discussed discovery is released to Defendant's expert, Defendant must provide the Court with affidavits of confidentiality signed by Defendant's expert and his assistants. No person other than Defendant's expert and his assistants shall have access to any of the discovery discussed herein.

Our conclusion here is reached by balancing Defendant's specific assertions of need for extensive data against the likely burden on the Court and its Jury Department in fulfilling Defendant's discovery requests. Defendant's claim of particularized need for such broad discovery was given significant deference because of the gravity of the charges in the instant case. (*See* ECF Nos. 197, 198, 361.) The Court is concerned that Defendant has embarked on a fishing expedition in his request to inspect documents that contain millions of names and addresses. However, the qualitative difference of death from all other punishments requires such deference. *Ford v. Wainwright*, 477 U.S. 399, 411 (1986); *California v. Ramos*, 463 U.S. 992, 998-99 (1983). The Sixth Amendment's fair cross-section guarantee is one such procedure.

**III. CONCLUSION**

For the foregoing reasons, Defendant Robert Merritt's Motion for Discovery in Support of Motion to Strike the Current Jury Panel will be granted in part and denied in part.

An appropriate Order will follow.

                                              **BY THE COURT:**

                                              _____
                                              **R. BARCLAY SURRICK, J.**