IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550 - 03 |
| KABONI SAVAGE | : | |

**SURRICK, J.**                                                                                      **MARCH 25, 2013**

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Motion for Mistrial (ECF No. 1096). For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Kaboni Savage with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15); tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8)[1]; conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.) Savage was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage. Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by

---

[1] Count 8 has been dismissed pursuant to an agreement between Defendants and the Government. (*See* ECF No. 855.)

guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Kaboni Savage, Merritt, and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada Savage.

On February 1, 2013, we filed a Memorandum and Order granting the Government's motion *in limine* to admit lay opinion testimony pursuant to Rules 104 and 701 of the Federal Rules of Evidence.[1] (*See* Lay Opinion Mem., ECF No. 1018; Lay Opinion Order, ECF No. 1019.) The Government requested that it be permitted to elicit the lay opinion and perceptions of FBI Special Agent Kevin Lewis. (*See* ECF No. 755.) In our Lay Opinion Memorandum, we provided the parameters by which Agent Lewis would be permitted to testify at trial concerning his opinion and interpretation of recorded conversations:

> According to the Government, Special Agent Lewis's interpretive testimony about the context and unclear language used in the recordings to be admitted into evidence at trial will be based upon his experience as the case agent investigating the KSO rather than his experience as a law enforcement official in general. At trial, Defendants will be able to both cross-examine Special Agent Lewis about his opinions and their bases and to introduce witnesses who may provide alternate interpretations of the terms in dispute. The jury will then be free to credit either interpretation. While there are risks in having a case agent provide lay opinion testimony, such risks are mitigated by vigorous policing of the Government's questioning, to ensure Special Agent Lewis does not testify about clear statements or provide speculative opinions outside the realm of his rational perception. Special Agent Lewis will be permitted to testify about his impressions of recorded conversations and to interpret the meaning of words used in conversation; he will not be permitted to summarize the conversations or to testify about commonly used terms.

(Lay Opinion Mem. 12 (internal citations omitted).)

Trial commenced on February 4, 2013, and is expected to last many months. During its case in chief, the Government called Special Agent Lewis as a witness. Special Agent Lewis has

---

[1] Rule 701 provides requirements for lay witness opinion testimony. A lay witness may offer an opinion so long as it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge with the scope of Rule 702." Fed. R. Evid. 701.

2

been the lead investigator and case agent, investigating the Kaboni Savage Organization ("KSO") for over thirteen years. (*See* June 11, 2012 Hr'g Tr. 10 (on file with Court).) He prepared the affidavits for all seven of the Title III wiretaps, which permitted the interception of communications in this case. (*Id*. at 11, 17.) During his investigation, Special Agent Lewis interviewed numerous confidential informants and Government co-conspirators and conducted physical surveillance. (*Id*. at 40-41, 59, 64.) Lewis testified on February 21 and 22, 2013 about certain recorded wiretap conversations that were obtained as a result of the Title III wiretap orders. Defendants raised objections to the testimony provided by Lewis, both on direct and cross examination.

On February 22, 2013, Defendant filed the instant Motion. (Def.'s Mot., ECF No. 1096.) The Government filed a Response in opposition to the Motion on February 24, 2013. (Gov't's Resp., ECF No. 1099.)

## II. DISCUSSION

### A. The Parties' Contentions

Defendant requests that the Court declare a mistrial as a result of testimony provided by Special Agent Lewis on direct and cross examination. (Def.'s Mot. 1.) Defendant's objections fall into two categories. The first category relates to lay opinion testimony provided by Special Agent Lewis. Defendant argues that Special Agent Lewis's testimony exceeded the boundaries established by Rule 701 and by the Court's Lay Testimony Order, and that "the effect of [his] pronounced and persistent remarks created substantial prejudice which misled the jury." (*Id*. at 1, 2.) The second category of objections relates to responses Special Agent Lewis provided to defense counsel on cross examination. Defendant contends that Special Agent Lewis injected non-responsive and prejudicial answers to questions, and that the "cumulative effect of [his]

3

persistent and pronounced testimony created substantial prejudice which likely misled the jury and was not the subject of any curative action." (*Id*. at 2.)

The Government responds generally that Defendant's request for a mistrial is specious. (Gov't's Resp. 1.) Specifically, the Government contends that Special Agent Lewis's testimony was proper and within the bounds of Rule 701 and the Court's Lay Opinion Order. (*Id*.) With regard to the allegation that Special Agent Lewis provided non-responsive and prejudicial responses to questions, the Government argues that the opposite actually occurred: that his answers to questions on cross examination were directly responsive to the questions posed to him. (*Id*. at 2-4.) The Government asserts that it is defense counsel's strategy to suggest, through the examination of Special Agent Lewis and other witnesses, that certain Government cooperators were immunized from the prosecution for violent crimes. The Government contends that it is this trial tactic, which is fraught with peril, that has caused Special Agent Lewis to provide responses on cross examination that were not intended by defense counsel.

**B.     Legal Standard**

The District Court has the power to declare a mistrial prior to the conclusion of the presentation of evidence. *United States v. Wecht*, No. 06-26, 2008 U.S. Dist. LEXIS 34957, at *20 (W.D. Pa. Apr. 29, 2008) (citing *United States v. Scott*, 437 U.S. 82, 92 (1978)). A mistrial may be a proper remedy when remarks are made during trial that prejudiced the defendant. *United States v. Riley*, 621 F.3d 312, 336 (3d Cir. 2010). However, "[e]ven when improper remarks are made during trial, mistrial is not warranted when those remarks are harmless." *United States v. Greenstein*, 322 F. App'x 259, 265 (3d Cir. 2009) (citing *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995)). In determining whether remarks made by a witness during trial prejudiced the defendant, the following three factors are considered: "(1)

whether [the witness's] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the district court." *Riley*, 631 F.3d at 336 (quoting *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005)).

    **C.**    **A Mistrial is Not Warranted**

        *1.*    *Objections Based on the Scope of Special Agent Lewis's Testimony under Rule 701*

Under Federal Rule of Evidence 701, a lay witness may provide opinion testimony if it is "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003). A lay witness is permitted to testify about their understanding of "code like" conversations if it will assist the fact finder in understanding the testimony of the witness on the stand. *See United States v. O'Grady*, 280 F. App'x 124, 130 (3d Cir. 2008) (citing *United States v. De Peri*, 778 F.2d 963, 977-78 (3d Cir. 1985)). In our Lay Opinion Memorandum, we determined that Special Agent Lewis would be "permitted to testify about his impressions of recorded conversations and to interpret the meaning of words used in conversation" but that he would "not be permitted to summarize the conversations or to testify about commonly used terms." (Lay Opinion Mem. 12.)

Defendant does not provide any examples to support his argument. He baldly asserts that Special Agent Lewis offered improper lay opinion testimony, including interpretations of recordings that exceeded the bounds of the Government's proffer. Our review of the trial transcripts from February 21 and 22, 2013, reveals that the lay opinion testimony provided by Special Agent Lewis does not warrant a mistrial. Based upon the limited number of objections

5

raised by defense counsel to the scope of Special Agent Lewis's testimony, Special Agent Lewis's remarks were not persistent and did not create any likelihood of misleading the jury.[2] Moreover, the Government has presented other compelling evidence in support of the charges against Defendant.

In addition, the Court has actively policed the examination of Special Agent Lewis, and has sustained defense counsel's objections when the questions posed could potentially elicit opinion testimony that exceeds the scope of Rule 701. (*See, e.g.*, Feb. 21 Trial Tr. 45 (sustaining objection when Special Agent Lewis was asked to discern the individual referenced in the recorded conversation); 46-47 (sustaining objection when Special Agent Lewis was asked to interpret conversation and determine the individuals referred to by the speakers); 49-50 (sustaining objection to question posed to Special Agent Lewis regarding whether he knew the specific attorney being referenced in the recorded conversation).) In addition, we cautioned counsel for the Government during the trial about its examination of Special Agent Lewis:

> Now, with regard to Agent Lewis, however, the transcripts that are clear and need no interpretation, there is no necessity to ask him what they mean, and I have sustained several objections in that regard and I caution you that its unnecessary to ask him what something means if the jury can listen to it and read it and know exactly what is going on, okay.

(Feb. 21 Trial Tr. 54.) Whenever the examination of Special Agent Lewis suggested a possibility that his testimony would exceed the boundaries of Rule 701 or our Lay Opinion Order, we intervened. Accordingly, no prejudice resulted from the testimony of Special Agent Lewis. *See De Peri*, 778 F.2d at 978 (finding that lay opinion testimony about recorded conversations was proper where the district court "vigorously policed the government's

---

[2] Defendant cites three examples of when defense counsel lodged objections to the scope of Special Agent Lewis's testimony.

6

examination of the witness to ensure that he was not asked to interpret relatively clear statements").

        2.    *Objection Based on Non-Responsive and Prejudicial Answers by Special Agent Lewis on Cross Examination*

Defendant also argues that on cross examination, Special Agent Lewis volunteered answers that were prejudicial and non-responsive to the questions he was asked. Defendant included the following examples:

> Q. Well, if someone is trying to kill a rival drug dealer to prevent that rival drug dealer from selling drugs in a particular territory, that murder becomes part of their conspiracy, does it not?
> A. Again, as with this case, that could eventually become a part of federal racketeering conspiracy, yes.

(Def.'s Mot. 3 & Ex. D; *see also* Feb. 7, 2013 Trial Tr. 96 (on file with Court).)

> Q. Keanon Tucker happened to be a very close associate of Paul Daniels, didn't he?
> A. Also your client.
>
>> [Defense counsel]: Well, I move to strike as non-responsive and ask the Court to admonish the witness to please answer the question that is asked.

(Def.'s Mot. 3 & Ex. E; *see also* Feb. 7 Trial Tr. 99.)

> Q. For everybody's edification, he is on house arrest at that point, the day of the shooting?
> A. The day of the shooting he was on house arrest and was supposed to be working.

(Def.'s Mot. 3 & Ex. F; *see also* Feb. 7 Trial Tr. 149.)

> Q. All right, He didn't get along with Dawud Bey based on what you've been told, right?
> A. No, not necessarily. I mean, Dawud Bey was at Mr. Savage's house regularly. Coleman was a regular at this house, also. I didn't know that they didn't get along. I mean, I don't know that they didn't get along. I know there was one time where Bubby had warned Eugene Coleman and maybe somebody else about dealing with Dawud Bey.
> Q. Right? That Dawud Bey should be dealt with, right?

7

| | | |
|---|---|---|
| A. | He warned him against dealing with him. | |
| Q. | Dangerous guy, right? | |
| A. | Among other dangerous guys, yes. | |

(Def.'s Mot. 3 & Ex. G; *see also* Feb. 11, 2013 Trial Tr. 125-26 (on file with Court).)

Q. On March 14 of 2003, according to your investigation, Daren Blackwell was pistol whipped by Kareem Bluntly, right?
A. Correct . . .
Q. This is Exhibit 125. I'm going to reference page 8 and simply ask, agent, if you could – I have highlighted a section at the top, this clipoff, [to] make it easier for you, if you can read that to yourself. Does that refresh your recollection that March 14, 2003 was the day that Kareem Bluntly was pistol-whipped by Daren Blackwell?
A. It says Kaboni Savage.

(Def.'s Mot. 3-4 & Exs. H, I; *see also* Feb. 21, 2013 Trial Tr. 140-41 (on file with Court).)

The cross examination of Special Agent Lewis has been very aggressive. As a result, some of Special Agent Lewis's responses may have been more detailed than the question demanded. However, the responses clearly do not rise to the level of prejudice that would justify the granting of a mistrial. Defendant's request for a mistrial based upon the testimony of Special Agent Lewis is frivolous.

### III. CONCLUSION

For the foregoing reasons, Defendant Kaboni Savage's Motion for Mistrial will be denied.

An appropriate Order will follow.

**BY THE COURT:**

**/s/ *R. BARCLAY SURRICK, J.***