IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550 - 03 |
| KABONI SAVAGE | : | |

**SURRICK, J.**                                                                               **APRIL 26, 2013**

## MEMORANDUM

     Presently before the Court is Defendant Kaboni Savage's Motion to Strike Government's Introduction of Curtis Singleton's Grand Jury Testimony (ECF No. 1078). For the following reasons, Defendant's Motion will be denied.

**I. BACKGROUND**

     On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding Indictment (the "Indictment") charging Defendant Kaboni Savage with: conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d) (Count 1); twelve counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts 2-7, 10-15); tampering with a witness, in violation of 18 U.S.C. § 1512(a) (Count 8)[1]; conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 9); retaliating against a witness, in violation of 18 U.S.C. § 1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count 17). (Fourth Superseding Indictment, ECF No. 480.) Savage was charged along with three co-defendants, Steven Northington, Robert Merritt, and his sister, Kidada Savage. Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by

---

[1] Count 8 has been dismissed pursuant to an agreement between Defendants and the Government. (*See* ECF No. 855.)

guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Savage, Merritt and Northington. (ECF Nos. 196, 197, 198.) The Government does not seek the death penalty against Kidada.

Trial commenced on February 4, 2013. During its case in chief, the Government called Curtis Singleton as a witness. (Feb. 13 Hr'g Tr. 240, ECF No. 1073 (filed under seal).) Singleton provided testimony on February 13 and 14, 2013. (*Id*.; Feb. 14 Hr'g Tr., ECF No. 1095 (filed under seal).) Singleton testified, among other things, about an altercation he had with Defendant on January 7, 2001 at Defendant's home on Darien Street in Philadelphia, Pennsylvania. (Feb. 13 Hr'g Tr. 258.)

On February 15, 2013, Defendant filed the instant Motion. (Def.'s Mot., ECF No. 1078.) The Government filed a Response in opposition to the Motion on February 20, 2013. (Gov't's Resp., ECF No. 1083.)

## II. DISCUSSION

### A. The Parties' Contentions

Defendant requests that the Court reconsider its ruling which permitted the Government to read into evidence grand jury testimony given by Singleton as a prior consistent statement under Rule 801(d)(1)(B) of the Federal Rules of Evidence. On direct examination, Singleton explained to the jury that, during an altercation with Defendant at Defendant's home, Defendant struck him on the side of the head with a gun. (Feb. 13 Hr'g Tr. 258.)[2] During cross examination by defense counsel, Singleton testified that he was interviewed by Special Agent Kevin Lewis and Detective Thomas Zielinski on March 9, 2004 and April 30, 2004. (Feb. 13

---

[2] The altercation arose because Singleton, alleging he was owed money from Defendant, took $500.00 from Defendant's basement without Defendant's permission. (*Id*. at 258-60.) Singleton testified that when Defendant learned that the money was taken, he pulled out a gun, pointed it at Singleton, and demanded that the money be returned, stating "don't make me go back to jail." (*Id*. at 259-260.)

2

Hr'g Tr. 297, 299.) Defense counsel attempted to impeach the credibility of Singleton on a number of occasions.[3] On redirect, the Government sought to rehabilitate Singleton by introducing a portion of the testimony he provided to the grand jury in May of 2004. (Feb. 14 Hr'g Tr. 12-15.) Singleton testified before the grand jury about the altercation at Defendant's home. (*Id.*) Specifically, Singleton stated that Defendant pointed a gun at him, demanded that Singleton return the money, and then struck Singleton over the head with the gun. (*Id.* at 12-14.) He further testified that he took $300 from Defendant, and that Barbara Savage was present during this incident. (*Id.*)

Defendant maintains that Singleton's testimony before the grand jury about being struck by Defendant with a gun was improperly admitted because it did not qualify as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B). Specifically, Defendant argues that the statement was made to the grand jury after the time that Singleton's motive to falsify arose. Defendant contends that at the time Singleton met with Special Agent Lewis and Detective Zielinski in March and April of 2004, he was entrenched in drug distribution, and that because of this criminal exposure, he was motivated to "adopt[] law enforcement's position that he was struck by a gun in order to curry favor with the Government, whom Singleton feared would prosecute him for his drug activities." (Def.'s Mot. 2-3.) Defendant maintains that it was at

---

[3] For example, Defense counsel asked Singleton why he failed to tell the grand jury that Defendant's mother, Barbara Savage, was present during the incident. Defense counsel also impeached Singleton about the inconsistency of his testimony provided at trial and his testimony provided to the grand jury regarding the source of debt allegedly owed to him by Defendant. Singleton testified at trial that he stole $500.00 from Defendant's basement because Defendant owed him money from a cocaine transaction. (*Id.* at 259.) When he testified before the grand jury in May of 2004, Singleton stated that he stole $300 from Defendant and that this money was to repay a gambling debt. (*Id.* at 267-68.) He explained that because he was then incarcerated for drug-related crimes, he told the grand jury that the debt involved gambling because he did not want to be associated with drug dealings at that time. (*Id.* at 268.) Finally, Defense counsel questioned Singleton about the item that Defendant used to strike him. Defendant's theory is that Defendant used a wooden ladle, or his fist to strike Singleton, but not a gun.

3

these meetings that Singleton's motive to fabricate arose, and that because Singleton's testimony before the grand jury occurred after these meetings, any statements made before the grand jury would not qualify as prior consistent statements.

The Government responds that the grand jury testimony was properly admitted as a prior consistent statement under Rule 801(d)(1)(B). It is the Government's position that through defense counsel's aggressive cross examination of Singleton, they "implicitly or explicitly claimed that [Singleton] was lying during his testimony" and that as a result, the motive to fabricate arose during this trial and not during Singleton's meetings with law enforcement officials in 2004. (Gov't's Resp. 2, 4.)

**B.      Legal Standard**

Rule 801(d)(1)(B) of the Federal Rules of Evidence states that a prior statement made by a witness is not hearsay when it "is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying" Fed. R. Evid. 801(d)(1)(B). "Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because [he] has been discredited." *Tome v. United States*, 513 U.S. 150, 157 (1995). The purpose of the Rule permitting admission of consistent statements is to "rebut a charge of recent fabrication or improper influence or motive" and not to "bolster the veracity of the story told." *United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006) (internal citations omitted).

In order for a prior consistent statement to be admitted into evidence under Rule 801(d)(1)(B), the following four requirements must be met: (1) the declarant must testify at trial and be subjected to cross examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must

offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Id*. The parties agree that the first three elements are not at issue. The only issue raised by Defendant is whether Singleton's statement to the grand jury was made prior to the time that the supposed motive to falsify arose. This is commonly referred to as the "premotive" requirement of Rule 801(d)(1)(B).

"[T]he premotive inquiry is interrelated with the fabrication/motive/influence inquiry" and "should be made after an examination of the parties' positions, [and] the record." *Id*. The requirement is met when a district court "can reasonably determine from the record a range of time when a motive to fabricate could have arisen after the prior consistent statement." *Id*. at 93-94. In determining whether impeachment of a witness triggers application of the rule, courts assess whether there has been "a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *Id*. at 88 (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991)). District Courts have substantial discretion in determining whether to admit prior consistent statements under Rule 801(d)(1)(B). *Id*. at 88-89.

### C. Singleton's Grand Jury Testimony Was Properly Admitted as a Prior Consistent Statement

At trial, defense counsel attempted to impeach Singleton's credibility with regard to nearly every subject area on which he testified. Defendant's Motion raises an issue with just one area of Singleton's testimony: the manner in which Defendant struck Singleton during the altercation that took place at Defendant's home on January 7, 2001. Our inquiry will therefore be limited to this area of testimony. The thrust of Defendant's argument is that Singleton lied to law enforcement officials by stating that Defendant struck him with a gun instead of a ladle or

Defendant's fist, and that this fabrication of the incident was motivated by an attempt on the part of Singleton to curry favor with the Government and avoid prosecution for drug activities. If the motivation to fabricate arose at the time Singleton met with Special Agent Lewis and Detective Zielinski in March and April of 2004, then Singleton's statement to the grand jury in May of 2004 that Defendant struck him with a gun would not qualify as a prior consistent statement because it occurred after the time the motivation to fabricate arose. Defendant's argument is not supported by the record.

A review of the testimony provided by Singleton on February 13 and 14, 2013 reveals that he did not have any agreement with the Government regarding his testimony before the grand jury or his testimony at trial. (Feb. 13 Hr'g Tr. 248.) Singleton did not enter into a plea agreement with the Government and did not feel forced to testify. (*Id*.) In fact, Singleton did not even contact Special Agent Lewis to volunteer information about the altercation with Defendant. (*Id*. at 278-80.) Instead, law enforcement, already aware of the altercation, contacted Singleton to interview him about the event. (*Id*. at 279.) At best, defense counsel was able to elicit from Singleton, however impliedly, that he was motivated to speak and cooperate with the law enforcement in 2004 since he was actively engaged in selling drugs. However, the record does not support the conclusion that Defendant was motivated to dramatize his altercation with Defendant by stating he was struck with a gun and not a ladle in order to curry favor with the Government.[4] We are satisfied that the motivation to fabricate regarding how Singleton was

---

[4] The record does, however, support the conclusion that at the time Singleton met with law enforcement, he was motivated to fabricate the reason why Defendant owed him money. It is apparent from Singleton's testimony that he feared disclosing that he was involved in drug activity at that time. This compelled Singleton to conceal that the source of the debt was for a cocaine transaction and explain to law enforcement and to the grand jury that Defendant owed him money for gambling. When Singleton testified at trial, he confessed that the source of debt related to a drug transaction. Singleton's grand jury testimony about the source of debt therefore was a prior inconsistent statement and is not at issue in this Motion.

struck by Defendant did not arise during or prior to his meetings with law enforcement officers in 2004.

      Defense counsel attempted to undermine Singleton's credibility by seeking to impeach him about nearly every detail surrounding the incident at Defendant's home. Defense counsel's impeachment tactics included questions to the witness about how he was struck, the extent of damage as a result of being struck, the individuals present during the altercation, whether he was owed money from Defendant for drugs or for gambling, how much money he was owed, whether he was driven home after the altercation, whether he was demanded to strip naked or removed his clothes voluntarily, and whether he felt embarrassed or humiliated. The purpose of Defendant's aggressive impeachment tactics was to discredit Singleton's testimony in total. The result was to create the impression that Defendant exaggerated the event to the jury in order to bolster his testimony after having confessed to them that he was not entirely truthful to the grand jury about the source of Defendant's debt. This "implied charge of recent fabrication" necessarily arose at the time of trial. *See United States v. Burden*, 600 F.3d 204, 229-30 (2d Cir. 2010) (admission of prior consistent statement was proper where defense counsel attempted to impeach the witness by suggesting that testimony at trial was a recent fabrication). After a review of the record and the parties' arguments, we are satisfied that Singleton's grand jury testimony was properly admitted as a prior consistent statement. Accordingly, Defendant's Motion must be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant Kaboni Savage's Motion to Strike Government's Introduction of Curtis Singleton's Grand Jury Testimony will be denied.

An appropriate Order will follow.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**