IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| KABONI SAVAGE | : | NO. 07-550 - 03 |
| ROBERT MERRITT | : | NO. 07-550 - 04 |
| STEVEN NORTHINGTON | : | NO. 07-550 - 05 |

SURRICK, J.                                                    MAY 10, 2013

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Motion to Strike the Revised

Notice of Intent to Seek the Death Penalty (ECF No. 373), Defendant Robert Merritt's Motion to

Strike or Modify the Notice of Intent to Seek the Death Penalty (ECF No. 368), and Defendant

Steven Northington's Motion to Strike Aggravating Factors (ECF No. 364). For the following

reasons, Defendants' Motions will be granted in part and denied in part.

## I.     BACKGROUND

On May 9, 2012, a federal grand jury returned a seventeen-count Fourth Superseding

Indictment (the "Indictment") charging Defendants Kaboni Savage and Robert Merritt with:

conspiracy to participate in the affairs of a racketeering ("RICO") enterprise, in violation of 18

U.S.C. § 1962(d) (Count 1); conspiracy to commit murder in aid of racketeering, in violation of

18 U.S.C. § 1959(a)(5) (Count 9); six counts of murder in aid of racketeering, in violation of 18

U.S.C. § 1959(a)(1) (Counts 10-15); retaliating against a witness, in violation of 18 U.S.C. §

1513(a) (Count 16); and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1)

(Count 17). (Indictment, ECF No. 480.)[1] In addition to these counts, Kaboni Savage was also charged with six additional counts of murder in aid of racketeering (Counts 2-7). (*Id.*) Defendant Steven Northington was charged with RICO Conspiracy and two counts of murder in aid of racketeering (Counts 5, 7.) Defendants were charged along with Kaboni Savage's sister, Kidada Savage. Defendant Lamont Lewis was also charged in the First Superseding Indictment. The charges against Lewis were disposed of by guilty plea on April 21, 2011. On March 14, 2011, the Government filed a notice of intent to seek the death penalty against Savage (ECF No. 196), Merritt (Merritt NOI, ECF No. 197) and Northington (Northington NOI, ECF No. 198). On February 15, 2012, the Government filed a Revised Notice of Intent with respect to Kaboni Savage. (Savage Rev. NOI, ECF No. 361.) The Government does not seek the death penalty against Kidada Savage.

The charges against Defendants relate to a long-standing RICO conspiracy involving drug trafficking, murder, and witness intimidation. The Government alleges that all four Defendants were members of a regional criminal organization, which was based in North Philadelphia and was known as the Kaboni Savage Organization ("KSO"). From late 1997 through April 2010, members of the KSO conspired and agreed to distribute large quantities of controlled substances, to commit murder and arson, and to tamper with, and retaliate against, witnesses who had testified, or were about to testify, against the racketeering enterprise or its members. It is alleged that the KSO was committed to maintaining, preserving, protecting and

---

[1] Defendants' Motions seek relief with respect to the Third Superseding Indictment, which was filed on September 7, 2011 (*see* ECF No. 294.) The Fourth Superseding Indictment is almost identical to the Third Superseding Indictment, except for four minor changes, which include rearranging three overt acts in chronological order, changing the dates of two overt acts, and changing the initials of one cooperating co-conspirator. For purposes of this Memorandum, we will refer to the allegations as they are stated in the Fourth Superseding Indictment.

expanding its power, territory, and profits by tampering with and retaliating against Government witnesses and their families through the use of threats, intimidation, violence, and murder.

A.    **Charges Against Kaboni Savage**

The Indictment alleges that, in support of the KSO, Savage murdered Kenneth Lassiter on March 19, 1998 in Philadelphia. (Indictment 38-39.) Over two years later, on September 6, 2000, Savage allegedly directed the murder of Mansur Abdullah "for the purpose of maintaining and increasing position in the enterprise engaged in racketeering activity." (*Id*. at 40.) It is further alleged that, on September 13, 2001, Savage directed Lamont Lewis to murder Carlton Brown in retaliation for Brown's murder of another individual. (*Id*. at 12, 41.) The Indictment further alleges that on February 26, 2003, Savage and Northington murdered Barry Parker in order to eliminate Parker as a drug competitor. (*Id*. at 34, 42.) In addition, on March 14, 2003, Savage allegedly ordered co-conspirator Kareem Bluntly to murder Tyrone Toliver and steal from him. (*Id*. at 16, 43.) Over a year later, on March 1, 2004, Northington, at the direction of Savage, allegedly murdered Tybius Flowers in order to prevent Flowers's attendance and testimony at Savage's trial for the murder of Kenneth Lassiter in the Court of Common Pleas. (*Id*. at 44-45.) Finally, in Counts 10 - 16, the Government alleges that Savage, together with Merritt and Kidada Savage, murdered by way of arson, six members of the family of Eugene Coleman, a cooperating witness who was to testify against Savage at the 2005 drug conspiracy trial before the Honorable Mary A. McLaughlin. (*Id*. at 47-53.) The victims of this firebombing include Marcella Coleman (age 54), Tameka Nash (age 33), Sean Anthony Rodriguez (age 15), Tajh Porchea (age 12), Khadija Nash (age 10), and Damir Jenkins (age 15 months). (*Id*. at 22.)[2]

---

[2] After these alleged murders but prior to the instant Indictment, Savage was convicted of conspiracy to manufacture and distribute cocaine and firearms possession in a related 2005 drug conspiracy case before the Honorable Mary A. McLaughlin. Savage was sentenced to a term of

In its Revised Notice of Intent with respect to Savage, the Government states that it will seek a sentence of death on the following offenses: (1) murder in aid of racketeering, and aiding and abetting, which resulted in the deaths of Kenneth Lassiter (Count 2), Mansur Abdullah (Count 3), Carlton Brown (Count 4), Barry Parker (Count 5), Tyrone Tolliver (Count 6), Tybius Flowers (Count 7), Marcella Coleman (Count 10), Tameka Nash (Count 11), Sean Anthony Rodriguez (Count 12), Tajh Porchea (Count 13), Khadija Nash (Count 14), and Damir Jenkins (Count 15); and (2) retaliating against a witness, victim or informant, which resulted in the deaths of the Coleman family (Count 16). (Savage Rev. NOI 1-2.)[3] Incorporating the Indictment's Notice of Special Findings listed in Count 1, the Government seeks to prove the following statutory aggravating factors enumerated 18 U.S.C. § 3592(c) against Savage: (1) previous conviction for a serious federal drug offense; (2) creation of a grave risk of death to additional persons; (3) substantial planning and premeditation; (4) commission of the offense for pecuniary gain; (5) procurement of the offense by payment; (6) commission of the offense in an especially heinous, cruel, or depraved manner that involved torture or serious physical abuse to the victim; (7) commission of the offense upon a victim particularly vulnerable due to youth; (7) and (8) intentional killing and attempted killing of more than one person in a single criminal episode. (*Id*. at 3-4.) In addition, the Government intends to introduce evidence of the following non-statutory aggravating factors against Savage: (1) victim impact evidence; (2) future dangerousness of the defendant; (3) contemporaneous conviction for another killing; and (4) obstruction of justice.

---

thirty years imprisonment. Northington was also named in the indictment and found guilty. He was sentenced to a term of approximately twenty years in imprisonment.

[3] The Revised Notice of Intent against Savage also includes the offense of tampering with a witness (Count 8). Count 8 has been dismissed and is no longer a viable justification to seek the death penalty against Savage.

B.    **Charges Against Robert Merritt**

In its Notice of Intent with respect to Merritt, the Government states that it will seek a sentence of death on the following offenses:  (1) murder in aid of racketeering, and aiding and abetting, which resulted in the deaths of Marcella Coleman (Count 10), Tameka Nash (Count 11), Sean Anthony Rodriguez (Count 12), Tajh Porchea (Count 13), Khadija Nash (Count 14), and Damir Jenkins (Count 15); and (2) retaliating against a witness, victim or informant, which resulted in the deaths of the Coleman family (Count 16).  (Merritt NOI 1-2.)  The Government seeks to prove the following statutory aggravating factors enumerated 18 U.S.C. § 3592(c) against Merritt: (1) grave risk of death to additional persons; (2) heinous, cruel, or depraved manner that involved torture or serious physical abuse to the victim; (3) pecuniary gain; (4) substantial planning and premeditation; (5) conviction for two felony drug offenses; (6) vulnerability of victim; and (7) multiple killings or attempted killings in a single criminal episode.  (*Id*. at 3-4.)  In addition, the Government intends to introduce evidence of the following non-statutory aggravating factors against Merritt:  (1) victim impact evidence; (2) future dangerousness of the defendant; and (3) obstruction of justice.  (*Id*. at 4-5.)

C.    **Charges against Steven Northington**

The Indictment alleges that, in support of the KSO, Defendant murdered Barry Parker and Tybius Flowers.  (*Id.* at 42, 44-45.)[4]  In its Notice of Intent with respect to Northington, the Government contends that a sentence of death is justified based on the charge of murder in aid of racketeering activity related to the death of Tybius Flowers (Count 7).  (Northington NOI 1.)[5]

_____

[4] Northington is presently serving a sentence of life in prison for the murder of Barry Parker.

[5] The Notice of Intent filed against Northington also stated that a sentence of death would be sought based on Count 8, which charged tampering with a witness resulting in the death of Tybius Flowers.  However, since Count 8 was dismissed, it can no longer be a basis to seek the death penalty against Northington.

Incorporating the Indictment's Notice of Special Findings listed in Count 1, the Government will endeavor to prove the following statutory aggravating factors: (1) previous conviction of offense for which a sentence of death or life imprisonment was authorized; (2) creation of a grave risk of death to additional persons; (3) substantial planning and premeditation; and (4) conviction for serious federal drug offenses. (*Id.* at 2.) In addition, the Government intends to introduce evidence of non-statutory aggravating factors, namely: (1) victim impact evidence; and (2) future dangerousness of the defendant.

### D. Procedural History

On February 17, 2012, Northington filed a Motion to Strike Aggravating Circumstances or in the Alternative to Compel Discovery. (Northington Mot., ECF No. 364.) On February 20, 2012, Merritt filed his Motion to Strike or Modify the Notice of Intent to Seek the Death Penalty. (Merritt Mot., ECF No. 368.) On February 21, 2012, Savage filed a Motion to Strike the Revised Notice of Intent to Seek the Death Penalty. (Savage Mot., ECF No. 373.) On April 16, 2012, the Government filed an Omnibus Response to these Motions and other motions challenging the death penalty on constitutional grounds. (Gov't's Resp., ECF No. 467.)[6]

On December 3, 2012, Savage filed a letter with the Court concerning one aspect of his Motion: the request for informational outlines from the Government to support the statutory and non-statutory aggravating factors set forth in the Notice of Intent. (ECF No. 775.) At a hearing held on December 17, 2012, counsel for Savage, Merritt, and Northington presented additional argument on their request for informational outlines. (*See* ECF No. 859 (on file with Court).) Counsel for Savage presented additional arguments in support of his request to strike the

---

[6] In addition to challenging aggravating factors contained in the Notice of Intent, Merritt's Motion raises arguments challenging the death penalty on various other constitutional grounds. This Memorandum addresses the challenges to the aggravating factors only. Merritt's other constitutional arguments will be addressed separately.

aggravating factors from the Revised Notice of Intent in a letter addressed to the Court dated

May 5, 2013.  (*see* ECF No. 1296.)

Trial of Defendants began on February 4, 2013.  To the extent a sentencing phase is

needed, it will commence immediately following the jury's verdict with respect to Defendants'

guilt or innocence.

## II.    DISCUSSION

### A.    Parties' Contentions

Defendants move to strike the Notices of Intent to seek the death penalty against them on

two principle grounds.  First, Defendants argue that the Notices should be dismissed because the

Indictment is inconsistent with the Fifth Amendment.  (Savage Mot. 17; Merritt Mot. 54-56.)

Specifically, Defendants contend that their Fifth Amendment rights were violated because the

grand jury was unaware when it returned the "special findings" section of the Indictment that the

consequence would expose Defendants to a capital prosecution.  Second, Defendants contend

that the Notices of Intent fail to provide adequate notice required by the Federal Death Penalty

Act ("FDPA"), 18 U.S.C. §§ 3591, *et seq.*  Specifically, Defendants argue that the Notices fail to

plead the required mental state and the aggravating factors with sufficient specificity to permit

Defendants to prepare their defense in a capital sentencing.[7]  Defendants seek to strike certain of

the aggravating factors on the grounds that they fail to allege any factual basis to support them,

or are vague, duplicative, unascertainable, irrelevant, or unfairly prejudicial.  (Savage Mot. 23-

24; Merritt Mot. 74.)  In the alternative, Defendants request that the Government provide

additional information in the form of an offer of proof or "informational outline" to support each

of the deficient statutory and non-statutory aggravating factors.

---

[7] Only Savage contends that the required mental state is not alleged with adequate specificity.
Merritt concedes this aspect of the Indictment and takes issue only with the notice of aggravating
factors.

With respect to Defendant's Fifth Amendment arguments, the Government responds that it is not constitutionally required to inform the grand jury that the death penalty is a possible consequence of returning the special findings in the Indictment. (Gov't Resp. 34-35.) The Government also argues that the Notices of Intent provide sufficient notice in accordance with the FDPA. (*Id*. at 49-50.) Specifically, the Government contends that the FDPA mandates notice of the aggravating factors upon which the Government will rely, but does not require detailed evidence to support each of the factors. (*Id*. at 50.) To the extent that the Court determines that further disclosure is required, the Government submits that providing an informational outline is preferable to holding an evidentiary hearing.

### B. Legal Framework

#### 1. *Structure of Capital Sentencing*

The FDPA sets forth the findings that a jury must make during the penalty phase of a capital case. First, the jury must determine whether the defendant is eligible for the death penalty, by deciding whether the Government has proven beyond a reasonable doubt (1) the defendant is eighteen years or older, (2) that the defendant acted with the requisite intent pursuant to 18 U.S.C. § 3591(a), and (3) the existence of one statutory aggravating factor. *See* 18 U.S.C. §§ 3591(a), 3592(c), 3593(c), (e); s*ee also Tuilaepa v. California*, 512 U.S. 967, 971 (1994). If the jury determines that the defendant is eligible, then in a separate hearing, the same jury must consider whether the death penalty should be imposed after balancing all of the statutory and non-statutory aggravating factors and the mitigating factors. *United States v. Natson*, 444 F. Supp. 2d 1296, 1309 (M.D. Ga. 2006). Specifically, the jury is charged with considering "whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a

mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). The jury's determination as to whether a defendant should be sentenced to death or to life imprisonment must be unanimous. *Id.* at § 3593(c). On the other hand, an individual juror may consider any mitigation factor if found by a preponderance of the evidence, regardless of whether all jurors agree that the mitigating factor has been proven. *Id.* at § 3593(d).

### 2. *The Notice of Intent and Aggravating Factors*

The FDPA requires the Government to give notice to a defendant charged with a capital crime (1) "stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified . . . and that the government will seek the sentence of death" and (2) "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a). Section 3592(c) of the FDPA lists sixteen statutorily-enumerated aggravating factors for homicide offenses that the Government may allege in support of a death sentence. The section also provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." *Id.* at § 3592(b). Aggravating factors provided for in the Notice of Intent that do not fall under any of the specifically enumerated categories but are rather alleged pursuant to this catchall provision are referred to as non-statutory aggravating factors.

Aggravating factors serve many functions in a capital sentencing. They "focus the jury's attention on the particular facts and circumstances pertinent to each defendant found guilty of an offense punishable by death in the context of mitigating factors unique to him as an individual human being." *United States v. McVeigh*, 944 F. Supp. 1478, 1488 (D. Colo. 1996). They also

serve to enable the jury to distinguish between those defendants who deserve capital punishment from those who do not. *Arave v. Creech*, 507 U.S. 463, 474 (1993). Aggravating factors ensure that due process is protected by assisting a defendant in preparing to defend against imposition of a capital sentence. In this regard, they reveal how the Government intends to "channel the sentencer's discretion" by providing a framework from which a defendant may structure a defensive strategy.

In order to pass constitutional muster, an aggravating factor must meet two requirements. First, the aggravating factor must not be constitutionally vague. *United States v. Minerd*, 176 F. Supp. 2d 424, 437 (W.D. Pa 2001) (citing *Tuilaepa*, 512 U.S. at 972). Second, the aggravating factor must not be unconstitutionally overbroad in that it must not apply to every defendant convicted of murder. *Id*. (citing *Tuilaepa*, 512 U.S. at 972). With respect to the vagueness inquiry, "[a]n aggravating factor may not be so indeterminate that it effectively leaves jurors with unbridled discretion." *United States v. Runyon*, 707 F.3d 475, 502 (4th Cir. 2013). The process during both the eligibility phase and the penalty phase must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Tuilaepa*, 512 U.S. at 973. A district court has substantial discretion in determining whether an aggravating factor is constitutionally vague. *Id*. The Supreme Court has explained that an aggravating factor is not unconstitutionally vague if it has some "'common-sense core [] meaning . . . that criminal juries should be capable of understanding.'" *Id*. (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)). A jury must be provided a limiting or narrowing definition of the aggravating factor. *Minerd*, 176 F. Supp. 2d at 437 (citing *Walton v. Arizona*, 497 U.S. 639, 653-54 (1990)). With respect to the overbreadth analysis, "[a]n aggravator is unconstitutionally overbroad 'if the sentencer fairly could conclude that [the] aggravating

circumstance applies to *every* defendant' eligible for the death penalty, such that the factor fails to sufficiently narrow the class of offenders who may receive that punishment." *Runyon*, 707 F.3d at 503 (quoting *Arave*, 507 U.S. at 474) (emphasis in original). Put simply, an aggravating factor must not apply to every defendant eligible for the death penalty. *Jones v. United States*, 527 U.S. 373, 401 (1999).

In exercising its gatekeeping function with respect to capital sentencing proceedings, a district court is empowered to preclude the Government from offering evidence in support of aggravating factors to the extent the court determines that constitutional rights would be violated. District courts have the discretion in determining whether the Government must provide greater specificity to support the factors outlined in its Notices of Intent. *See Minerd*, 176 F. Supp. 2d at 448-49; *see also United States v. Catalan Roman*, 376 F. Supp. 2d 108, 112 (D.P.R. 2005) (observing that Congress left the fashioning of the penalty phase procedure, including issues of disclosure, to the courts).

### C. Defendants' Fifth Amendment Rights Were Not Violated

The Indictment Clause in the Fifth Amendment states that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Defendants argue that their Fifth Amendment rights were violated because the grand jury that returned the Indictment was not informed that the consequence of returning the special findings was that Defendants would potentially face the death penalty. Defendants contend that "[b]y not informing the jury that it was returning an indictment charging a capital offense, and misinforming the grand jury about who determines punishment in a federal capital case, the government turned the proceeding into a sham – one

that gave the appearance of complying with the Fifth Amendment, but that deprived [Defendants] of [their] constitutional and statutor[y] rights." (Savage Mot. 19.)

Defendants cite no recent authority to support their contention that the Indictment Clause requires a grand jury to be informed that its special findings might make Defendants eligible for the death penalty. Indeed, this argument has been raised and rejected on numerous occasions. *See, e.g.*, *United States v. Williams*, No. 08-70, 2013 U.S. Dist. LEXIS 45323, at *43 (M.D. Pa. Mar. 29, 2013) (holding that the grand jury "was able to fulfill its constitutional role in determining whether probable cause existed to charge defendant with the crimes in the indictment without consideration of the possible sentences"); *United States v. Troya*, No. 06-80171, 2008 U.S. Dist. LEXIS 71525, at *19-20 (S.D. Fla. Sept. 22, 2008) (finding no requirement that the grand jury be informed as to the ultimate punishment); *Natson*, 444 F. Supp. 2d at 1305 (finding that "since neither the Fifth or Sixth Amendments required the Indictment to include the ultimate punishment sought for the offenses, no reason existed for the grand jury to even know what that punishment may be"); *United States v. Haynes*, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) (rejecting the defendant's attempt to "extend the meaning of the Indictment Clause beyond its Constitutional limits"); *United States v. Matthews*, 246 F. Supp. 2d 137, 147 (N.D.N.Y 2002).

Defendants' argument reveals their misunderstanding of the role of the grand jury. "Grand juries do not make findings or recommendations concerning punishment or sentencing and such consideration should not influence their decision. It is for the petit jury to make that determination." *Williams*, 2013 U.S. Dist. LEXIS 45323, at *43 (quoting *Matthews*, 246 F. Supp. 2d at 147). "[R]ather, the grand jury check on prosecutorial power stems from its independent *factual* determination of the existence of probable cause for the essential elements

of the charged offense." *Haynes*, 269 F. Supp. 2d at 981 (emphasis in original); *see also Matthews*, 246 F. Supp. 2d at 147 ("The role of the grand jury simply 'is to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary.'") (quoting *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir. 2000)).  Defendants' argument that their Fifth Amendment rights have been violated is rejected.

### D.    Aggravating Factors Alleged Against Defendant Merritt

Merritt seeks to strike three statutory aggravating factors and one non-statutory aggravating factor.  The statutory aggravating factors include (1) heinous, cruel, or depraved manner of committing the offense, (2) substantial planning and premeditation, and (3) vulnerability of the victims.[8]  The non-statutory aggravating factor Defendant Merritt requests be stricken from the notice of intent is victim impact.

#### 1.    *Especially heinous, cruel or depraved manner of committing offense*

The FDPA states that when considering whether a sentence of death is justified, the jury may consider whether "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim."  18 U.S.C. § 3592(c)(6).  The Notice of Intent filed with respect to Merritt merely recites this statutory language.  Merritt contends that this factor is unconstitutionally vague unless it is accompanied by a proper limiting instruction.  (Merritt Mot. 78-79.)  Specifically, Defendant argues that, consistent with federal precedent, so long as the jury is informed that commission of the offense must have involved torture of serious physical abuse, the aggravating factor does not otherwise raise constitutional problems.  (*Id*. at 78 & n.4 (citing cases).)  His challenge is thus not to the constitutionality of the aggravating factor, but rather to the sufficiency of the evidence

---

[8] All of the aggravating factors that Merritt challenges are alleged with respect to Counts 10-16. These counts charge murder in aid of racketeering of the Coleman family members (Counts 10-15), and retaliation against a witness, for the arson murders (Count 16).

supporting it.  Merritt claims that the Government's evidence on the arson murders, including the post-mortem examinations of the arson victims, does not support the inference that the victims were tortured or subjected to serious physical abuse prior to their deaths.  (*Id*.)  On this point, Merritt request that the Government provide an outline of proofs to support the aggravating factor.  (Merritt Mot. 79.)

Merritt has been provided with sufficient evidence to anticipate the Government's position with respect to this aggravating factor.  Whether exposure to extreme heat prior to death by smoke inhalation constitutes torture or serious physical abuse is for the jury to decide.  *See United States v. Bernard*, 299 F.3d 467, 481 (5th Cir. 2002) (finding that a reasonable jury could conclude that the defendant intentionally setting fire to the victim's car with victim unconscious in the trunk and causing victim to die of smoke inhalation would constitute heinous and cruel commission of the murder).  Merritt is free to argue to the jury that the circumstances leading up to the deaths of the arson victims fail to demonstrate that the crime was committed in a heinous, cruel, or depraved manner.  Merritt's request for an evidentiary basis to support this aggravating factor will be denied.

### 2. *Substantial planning or premeditation*

The FDPA provides that the jury may consider during a capital sentencing, the aggravating factor of whether "the defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism."  18 U.S.C. § 3592(c)(9).  Merritt argues that the difference between planning and premeditation, which does not support a sentence of death, and *substantial* planning and premeditation, which does support a sentence of death, "is a concept of such slippery and nuanced vagueness that the factor should be stricken."  (Merritt Mot. 80.)

This argument has repeatedly been raised and rejected. *See, e.g.*, *United States v. Basciano*, 763 F. Supp. 2d 303, 345 (E.D.N.Y. 2011) (denying the defendant's motion to strike substantial planning aggravating factor and citing numerous cases that similarly rejected constitutional challenges to this factor under section 3592(c)(9)); *United States v. Bourgeois*, 423 F.3d 501, 511 (5th Cir. 2005) (holding that substantial planning and premeditation factor is not unconstitutionally overbroad and vague since it "narrow[s] the class of murderers who could be eligible for the death penalty because not every murder involves substantial planning or premeditation"); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 485 (E.D. Pa. 2001) (citing cases and stating that "[f]ederal courts . . . have routinely upheld the use of § 3592(c)(9) as an aggravating factor in capital cases . . . ."). Courts have also determined that the word "substantial" is not unconstitutionally vague since it has a "commonsense meaning" that juries will have no difficulty comprehending. *United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996); *Llera Plaza*, 179 F. Supp. 2d at 485. Any concerns about the meaning of "substantial" will be further allayed by appropriate instructions to the jury. *See United States v. Glover*, 43 F. Supp. 2d 1217, 1225 (D. Kan. 1999) ("[T]he court finds that precise instructions to the jury should resolve [the defendant's] vagueness concerns regarding the term 'substantial.'").

Accordingly, we reject Defendant Merritt's request to strike the substantial planning and premeditation aggravating factor as it does not offend constitutional precepts. Merritt's request for an offer of proof to support this aggravating factor is also denied. The Government provided voluminous discovery and presented extensive evidence at trial concerning Merritt's role in preparing for the commission of the arson murders of the Coleman family members. As a result, Merritt has been put on adequate notice of the factual support necessary to defend this aggravating factor at the penalty phase of trial, if there is one. It is the jury's duty to decide

whether the evidence supports a finding that the arson murders were committed after *substantial*
planning and premeditation by Merritt.

### 3. *Vulnerable victim*

In support of the death penalty, the Government alleges that it will prove at sentencing
that Merritt committed the offense upon a victim particularly vulnerable due to youth.  (Merritt
NOI 4.)   Merritt requests an offer of proof to support this aggravating factor.  Specifically,
Defendant argues that there must be a nexus between a victim's vulnerability and the offense
committed, and that it is not clear how the youth of the arson victims rendered them more
vulnerable to death by smoke inhalation.  (Merritt Mot. 81.)  The Government counters that the
nexus between vulnerability and youth is obvious and need not be further fleshed out.

Merritt correctly points out that the vulnerable victim aggravating factor requires some
nexus between the vulnerability and the criminal offense.  "There must be 'a connection between
the victim's vulnerability and the offense committed upon the victim.'"  *United States v.
Jacques*, No. 08-117, 2011 U.S. Dist. LEXIS 48540, at *68 (D. Vt. May 4, 2011) (quoting 1 L.
Sand, Modern Federal Jury Instructions ¶ 9A.14); *see also United States v. Johnson*, 136 F.
Supp. 2d 553, 560 (W.D. Va. 2001) (striking vulnerable victim aggravating factor where there
was no evidence that victim's pregnancy or condition made her particularly susceptible to
instantaneous death by explosive device); *cf United States v. Sampson*, 486 F.3d 13, 49 (1st Cir.
2007) (evidence that victim was overweight, had undergone heart surgery and had difficulty
walking showed sufficient nexus between victim's vulnerability and death).  In *Jacques*, the
court denied the defendant's motion to strike the vulnerable victim aggravating factor as it
applied to the death of a fourteen-year old girl because the Government had provided ample

discovery showing that the defendant had exploited the victim's age prior to and during the commission of the rape and murder.  *Id*. at *69.

Here, we do not have the same evidentiary foundation to substantiate the victim's vulnerability due to youth as was shown in *Jacques*.  We have six victims ranging in age from fifty-four years to eighteen months old.[9]   In certain cases, the victim's age and the circumstances surrounding the crime, without more, may establish the required nexus between the victim's vulnerability and the crime.  *See, e.g.*, *United States v. Mitchell*, 502 F.3d 931, 978 (9th Cir. 2007) (affirming use of vulnerable victim aggravating factor where the defendant killed a 9-year old girl).  Certainly, the younger the age of the child, the more vulnerable he or she would have been to protect themselves from the criminal conduct.  However, the Government has alleged that this aggravating factor applies to all victims of the arson.  It is difficult to see how the Government intends to show that a fifty-four year old woman is vulnerable "due to youth."  Because the nexus is not clear, the Government will be required to submit an offer of proof outlining the evidence they intend to show in support of this aggravating factor as it applies to all of the victims.  Merritt may renew his objection to this aggravating factor upon receipt of this additional information.

>    4.    *Victim Impact*

As stated in Merritt's Notice of Intent, the Government intends to offer victim impact evidence at sentencing.  The Government alleges that:

> The defendant's participating in the murder of each of victim has caused injury, harm and loss to the victim, and to the victim's family because of the victim's personal characteristics and his/her potential as an individual human being and the

---

[9] The victims included fifty-four year old Marcella Coleman (Count 10), thirty-three year old Tameka Nash (Count 11), fifteen-year old Sean Anthony Rodriguez (Count 12), twelve-year old Tajh Porchea (Count 13), ten-year old Khadijah Nash (Count 14), and fifteen-month old Damir Jenkins (Count 15).

consequent impact of the victim's death upon his/her family. The murder of each victim has caused that victim's family extreme emotional suffering and irreparable harm.

(Merritt NOI 4.)  While not enumerated as a statutory aggravating factor, the Government, pursuant to the FPDA, may nevertheless introduce "factors concerning the effect of the offense on the victim and the victim's family" during the sentencing phase of the trial.  18 U.S.C. § 3593(a).  Specifically, with regard to the impact of the offense on the victim, the Government is permitted to introduce "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."  *Id.*

Defendant raises the following challenges to the admission of victim evidence during sentencing:  (1) the aggravating factor as alleged is unconstitutionally vague, lacks specifics, and is broader than permitted by the FDPA; (2) it does not sufficiently narrow the class of defendants eligible for the death penalty; and (3) victim impact evidence should be excluded under the Eighth Amendment's heightened standard of reliability, and because its probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or a likelihood that the jury will be misled.  (Merritt Mot. 82-84.)[10]  Alternatively, Merritt requests more specific details about the type and nature of victim impact evidence the Government seeks to introduce.

The Supreme Court has held "that the Constitution permits evidence 'concerning the victim's personal traits and the effect of the crime on her family . . . so long as . . . victim impact factors are used to direct the jury to the individual circumstances of the case.'"  *United States v. Cooper*, 91 F. Supp. 2d 90, 110 (D.D.C. 2000) (quoting *Jones*, 119 S. Ct. at 2108).  The scope

_____

[10] Savage raised nearly identical arguments with respect to the victim impact evidence alleged in Revised Notice of Intent filed against him.  (Savage Mot. 45-51.)

and limit of victim impact evidence "is a matter for the court's discretion and must be determined with consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice." *McVeigh*, 944 F. Supp. at 1488 (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).

Several courts have considered whether notice of generic victim impact evidence is sufficient. Some courts have determined that generic language that tracks the FDPA is not adequate to provide the defendant notice. In *Llera Plaza*, the Government provided the following notice with respect to proposed victim impact evidence:

> The defendant's murder of [victim] has caused injury, harm, and loss to the victim, and to the victim's family, because of the victim's personal characteristics and potential as an individual human being and the consequent impact of the death upon the victim's family.

179 F. Supp. 2d at 474. The court determined that this notice, which is similar to the victim impact evidence notice provided in this case, was inadequate and ordered the Government to provide an informational outline. *Id*. at 474-75; *see also United States v. Wilson*, 493 F. Supp. 2d 364, 393 (E.D.N.Y. 2006) (directing the Government to provide the defendant with the specifics on the nature, extent, and scope of the harm suffered by victim impact witnesses); *Cooper*, 91 F. Supp. 2d at 111 (finding that the notice of intent fails to give sufficient notice of victim impact evidence and ordering the Government to provide "more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove").

The Government's notice with respect to victim impact evidence does not provide much more than a recitation of the language contained in the FDPA. Absent more information from the Government, the Court is not in a position to consider Defendant's specific constitutional and

evidentiary challenges to the victim impact evidence. Accordingly, the Government shall provide to Defendants any victim impact statements, and to the extent a statement is not available, an outline of the specific evidence about which that victim will testify. Upon receipt of the informational outlines from the Government, Merritt may renew specific objections to the victim impact evidence.

### E.   Savage's Request for More Information on Intent Factors

Savage also seeks dismissal of the Revised Notice of Intent on the basis that the Government failed to plead the required mental states with sufficient specificity to permit him to prepare a defense. (Savage Mot. 24.) Specifically, Defendant Savage claims that the Government has failed to set forth any factual basis in support of the four mental states contained in the Revised Notice of Intent.[11] In addition, Defendant argues that by alleging that all four

---

[11] The Savage Revised Notice of Intent sets forth the following four intent factors:

a. That defendant . . . intentionally killed the victim (18 U.S.C. § 3591(a)(2)(A));

b. The defendant . . . intentionally inflicted serious bodily injury that resulted in the death of the victim (18 U.S.C. § 3591(a)(2)(B));

c. The defendant . . . intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and the victim died as a result of the act (18 U.S.C. § 3591(a)(2)(C));

d. The defendant . . . intentionally and specifically engaged in one or more acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victim died as a result of the acts (18 U.S.C. § 3591(a)(2)(D)).

(Savage Rev. NOI 2-3 (citing (18 U.S.C. § 3591(a)(2)(A)-(D).)

mental states apply, "the Government has added nothing to the bare notice already provided by the statute itself." (Savage Mot. 25.)

Unlike the Government's obligation to provide notice of aggravating factors, the FDPA does not require specific notice as to the mental state factors. If the Government believes that a sentence of death is justified, it shall provide notice:

> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter . . . and that the government will seek the sentence of death; and

> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a). The FDPA's notice provision is silent with respect to the gateway mental state factors. In any event, Savage has been provided with voluminous discovery and has heard expansive testimony during the guilt/innocence phase of trial. Savage has been put on sufficient notice of the underlying factual basis for each of the mental state factors. Accordingly, his request to strike the mental state factors from the Notice of Intent will be denied. Similarly, Savage's alternative request for an offer of proof to support the intent factors will be denied.

### F.     Statutory Aggravating Factors Alleged Against Defendant Kaboni Savage

Defendant Savage also seeks dismissal of the Revised Notice of Intent on basis that the Government failed to allege the statutory and non-statutory aggravating factors with sufficient specificity. The Notice of Intent alleges the following statutory aggravating factors: grave risk of death to additional persons; conviction for serious federal drug offenses; substantial planning and premeditation; pecuniary gain; procurement of offense by payment; heinous, cruel, or depraved manner of committing the offense; vulnerability of victim; and multiple killings or

21

attempted killings.  (Savage Rev. NOI 3-4.)[12]  We will address each of the aggravating factors in turn.[13]

### 1.    *Grave Risk of Death to Additional Persons*

In the Revised Notice of Intent filed against Savage, the Government states that it intends to offer evidence supporting the aggravating factor that in committing the offenses charged in the Indictment, Savage "created a grave risk of death to one or more persons in addition to the victim of the offense."  (Rev. Savage NOI 3.)  This aggravating factor applies to Count 2 (murder of Kenneth Lassiter), Count 3 (murder of Mansur Abdullah), Count 5 (murder of Barry Parker), Count 6 (murder of Tyrone Toliver), Count 7 (murder of Tybius Flowers), Counts 10-16 (Coleman family murders) and Count 16 (witness retaliation).

---

[12] The statutory aggravating factors of grave risk of death to additional persons and conviction for serious federal drug offenses are alleged with respect to Counts 2-7 and 8-16.  (Savage Rev. NOI 3.)  The statutory aggravating factor of substantial planning and premeditation is alleged with regard to Counts 3-7 and 10-16.  (*Id*.)  The pecuniary gain statutory aggravating factor is alleged with respect to Counts 3 and 6.  (*Id*. at 4.)  The procurement of offense by payment statutory aggravating factor is alleged with respect to Counts 4-5 and 10-16.  (*Id*.)  The statutory aggravating factors of (1) heinous, cruel, or depraved manner of committing the offense, (2) vulnerability of victim, and (3) multiple killings or attempted killings are alleged with respect to Counts 10-16.

[13] The Court has already considered the statutory aggravating factors of (1) heinous, cruel, or depraved manner of committing the offense, and (2) vulnerability of victim with respect to Defendant Merritt, *see supra* at Sections II.D.1 & II.D.3.  Savage's arguments with respect to these two factors are similar to Merritt's arguments.  In addition, these aggravating factors are alleged with respect to identical Counts as to both Defendants: Counts 10-16.  Accordingly, with respect to Savage, we similarly conclude that his request to strike these aggravating factors should be denied, and that his request for more specific evidentiary information to support these aggravating factors should be also denied.

In addition, the aggravating factor of substantial planning and premeditation has also been addressed with respect to Merritt.  *See supra* at Section II.D.2.  The Government intends to offer evidence of substantial planning and premeditation against Savage in support of five murder counts in addition to the six murder counts related to the Coleman murders.  Savage has been placed on adequate notice of the evidence the Government intends to use to establish this aggravating factor as it applies to all of the murders.  The jury will be instructed on the meaning of "substantial" and is capable of evaluating the evidence to determine whether the Government has met its burden in establishing the charged murders were committed after substantial planning and premeditation.

Savage argues that the aggravating factor as alleged is unconstitutionally vague. In the alternative, he requests additional evidentiary support. Specifically, Savage contends that the Government has failed to allege any other person in the Indictment or through discovery who was exposed to "grave risk" during the commission of the charged murders. The parties do not dispute that the individual who must be exposed to "grave risk" for purposes of this aggravating factor must be someone other than the victim or victims of the crime. Nowhere in the Revised Notice of Intent or in the Indictment does the Government allege any individuals, other than the victims, who were exposed to "grave risk" during the commission of the charged murders. The Court is not in the position at this juncture to evaluate whether the aggravating factor as alleged is unconstitutionally vague without any information about the individuals put at risk during the charged murders. Accordingly, Defendant's request for additional evidentiary support will be granted. The Government shall submit an outline of the evidence it intends to use at the sentencing phase with respect to this aggravating factor. *See Llera Plaza*, 179 F. Supp. 2d at 473 (directing the Government to submit an outline of information it intends to use to establish the grave risk of death to additional persons aggravating factor where the Government failed to allege any additional persons put at risk during the murder).

2. *Conviction of Serious Federal Drug Offenses*

Savage seeks to strike the aggravating factor that alleges that he has "been previously convicted of violating Title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed." (Savage Rev. NOI 3.) Savage argues that the aggravating factor fails to "reasonably justify" a more serious sentence of the death penalty when it is based upon a prior non-violent conviction. (Savage Mot. 28) However, Savage fails to recognize that prior convictions, even when non-violent, are "properly

and routinely considered in federal sentencing" because they serve to further principles of retribution and deterrence, particularly with defendants who have significant criminal histories. *United States v. Caro*, 597 F.3d 608, 623-24 (4th Cir. 2010) (concluding that aggravating factor for conviction for a serious federal drug offense does not violate the Eighth Amendment); *see also United States v. Bolden*, 545 F.3d 609, 617 (8th Cir. 2008) (rejecting the defendant's argument that statutory aggravating factor for prior non-violent drug conviction does not "rationally narrow the class of death-eligible defendants").

Savage also argues that the aggravating factor is not applicable to him since the drug conviction on which it is based occurred after the commission of the murders for which he is charged in the instant Indictment. Thus, as Savage contends, the serious drug offense was not truly "previous" as contemplated by the statute. This precise argument was raised and rejected by the Fourth Circuit in *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003). In *Higgs*, the defendant had been convicted by way of guilty to plea of possession with intent to distribute cocaine base prior to the murder for which he was later charged. *Id.* at 317. He contended that the aggravating factor for previous conviction of a serious federal drug offense was improperly submitted to the jury because for purposes of the factor, a "previous conviction" can only occur if the predicate federal drug offense occurred prior to the conduct giving rise to the capital murder. *Id.* The court rejected this argument, concluding that the statutory aggravating factor "encompasses *all* predicate convictions occurring prior to sentencing, even those occurring after the conduct giving rise to the capital charges." *Id.* at 318 (emphasis in original). The court observed that, unlike other statutory aggravating factors, this one "is concerned with the characteristics of the offender as of the time that he is sentenced" as opposed to concerning matters directly related to the death penalty offense. *Id.* The court's rationale in *Higgs* is well-

reasoned and we agree with its conclusion.  Savage argues that *Higgs* was wrongly decided; however, he fails to offer any authority to support his position.

Finally, Savage argues that because he has sought post-conviction review of his federal drug conviction by way of a habeas petition, his conviction is not final and does not constitute a "prior conviction" as contemplated by the FDPA.  Savage's argument is unavailing.  A defendant's conviction is deemed "final" for purposes of post-conviction review on the later of "(1) the date on which the supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely filed petition for certiorari review expires."  *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).  Savage has provided no authority in support of his contention that a conviction is only final after habeas review is exhausted when considered for purposes of capital sentencing.  Savage's request to strike this aggravating factor will be denied.

### 3.      *Pecuniary Gain*

The Government provided notice that, with respect to Count 3 (the murder of Mansur Abdullah) and Count 6 (the murder of Tyrone Tolliver), it intends to offer evidence that Savage "committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value."  (Savage Rev. NOI 4.)  Savage requests that this aggravating factor be stricken, or in the alternative that the Government be compelled to provide additional evidentiary support for this factor prior to sentencing.

Savage argues that in order for this aggravating factor to be presented to the jury, the evidence must show that the expectation of pecuniary gain is from the actual killing and not just the underlying felony.  In other words, there must be a link between the killings and the pecuniary gain.  In support of his argument, Defendant relies on *United States v. Bernard*, 299

F.3d 467, 483 (5th Cir. 2002). In *Bernard*, the defendant had committed a robbery that resulted in a murder. The court held that application of the pecuniary gain aggravating factor is "limited to situations where 'pecuniary gain' is expected 'to follow as a direct result of the [murder]'" and not as a direct result of the underlying felony, robbery. *Id.* (quoting *United States v. Chanthadara*, 230 F.3d 1237, 1263 (10th Cir. 2000)). In *Chanthadara*, also relied on by Savage, the issue was whether the pecuniary gain was expected from the murder and not from the underlying felony robbery. 230 F.3d at 1264 (holding that pecuniary value instruction was erroneous where it "failed to specify [that] the 'offense' to which it referred was the homicide, not the underlying robbery). These cases are easily distinguished. Savage is charged with murdering Mansur Abdullah and Tyrone Toliver in aid of racketeering. He is not charged with robbery, let alone felony murder with the underlying felony being robbery. The jury will have no difficulty understanding that the aggravating factor would apply if the evidence shows that the murders were committed in consideration for something of pecuniary value. Defendant's request to strike this aggravating factor will therefore be denied.

Defendant also requests additional information to support the pecuniary gain aggravating factor. When a defendant has been placed on adequate notice of the evidence through discovery, the need for additional evidentiary support is not warranted. *See, e.g.*, *Wilson*, 493 F. Supp. 2d at 376 (denying request for the Government to specify the "thing of pecuniary value" for which the defendant allegedly committed the offense because the defendant was made aware of the facts through discovery); *Llera Plaza*, 179 F. Supp. 2d at 472 (holding that the defendants were given adequate notice of the facts the Government will use to establish the statutory pecuniary gain aggravating factor through the indictment and through discovery). Here, the Defendant has been provided sufficient notice of the evidence the Government intends to use in order to establish

that the murders of Mansur Abdullah and Tybius Flowers were committed by Savage as consideration for the receipt of, or in the expectation of the receipt, of anything of pecuniary value. Defendant's request for specific information to support this factor will also be denied.

### 4. Procurement of Offense by Payment

In its Notice of Intent against Savage, the Government stated that it intends to introduce evidence showing that Savage "procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value." (Savage Rev. NOI 4.) This aggravating factor is alleged with respect to Counts 4-5 and 10-16, which all involve murder or retaliation against a witness that resulted in murder. Savage argues that this aggravating factor should be stricken because it only applies to situations where the defendant was charged with "hiring" another person to commit the murder. (Savage Mot. 37.) Defendant cites no authority to support this proposition. Defendant's request to strike this aggravating factor will be denied. Moreover, Defendant's request for specific information and/or evidence to support this factor will be denied. Defendant has received sufficient notice of the facts related to the procurement of payment in each of the charged murders to which this aggravating factor relates.

### 5. Multiple Killings or Attempted Killings

The Government provided notice that it intends to offer evidence during sentencing that Savage "intentionally killed and attempted to kill more than one person in a single criminal episode." (Savage Rev. NOI 4.) This statutory aggravating factor applies to the arson murders of the Coleman family. Savage argues that the Revised Notice of Intent lacks adequate notice to support this aggravating factor; however, he fails to indicate what additional information would be useful. Savage's request to strike this aggravating factor and alternative request for additional evidentiary support will be denied.

## G. Non-Statutory Aggravating Factors Alleged Against Defendant Kaboni Savage

In addition to the statutory aggravating factors, the Revised Notice of Intent lists four non-statutory aggravating factors that the Government seeks to prove: (1) victim impact evidence; (2) future dangerousness of the defendant; (3) contemporaneous conviction for another killing; and (4) obstruction of justice. (Savage Rev. NOI 5-6.)[14] Savage also requests that each of these aggravating factors be stricken.[15]

### 1. Future Dangerousness

One of the statutory aggravating factors alleged against Savage is his future dangerousness. The Government alleges that "[Savage] is likely to commit, or procure the commission of, retaliatory and other criminal acts of violence in the future, which acts would be a continuing and serious threat to the lives and safety of others. In addition, he has demonstrated low rehabilitative potential and/or has demonstrated a lack of remorse." (Savage Rev. NOI 5.)

Defendant challenges the future dangerous aggravating factor on several grounds: (1) the Government's notice is broad in that it is not limited to future dangerousness in the prison setting; (2) the Government should be limited in presenting evidence as to future dangerousness of Defendant while he is under Special Administrative Measures ("SAMs"); and (3) the Government's allegation that Savage has "demonstrated low rehabilitative value and/or has demonstrated a lack of remorse" is unconstitutionally vague and should be struck; and (4) to the

---

[14] The non-statutory aggravating factors of victim impact evidence, future dangerousness of the defendant, and contemporaneous conviction for another killing are alleged with regard to Counts 2-7 and 10-16. (Savage Rev. NOI 5.) The non-statutory aggravating factor of obstruction of justice is alleged with regard to Counts 10 through 16. (*Id*. at 6.)

[15] We have already addressed victim impact with respect Merritt, *see supra* Section II.D.4., and will not repeat the Court's findings. Similar to its obligations with respect to Merritt, the Government shall provide Savage with any victim impact statements of witnesses in their possession. To the extent a victim has not prepared a statement, the Government shall provide an outline of the evidence it intends to introduce with respect to that victim.

extent the factor is not struck, the Court should compel the Government to provide an informational outline.

Savage correctly points out the any evidence that the Government intends to present in support of this aggravating factor is limited to potential dangerousness in the prison setting. Generally, courts have determined that when a defendant faces either a death sentence or a sentence of life imprisonment, the future dangerous aggravating factor is limited to evidence related to the defendant's future dangerousness in the prison context. *See United States v. Gilbert*, 120 F. Supp. 2d 147, 154 (D. Mass. 2000) ("The proposed information lacks any substantial relevance to defendant's dangerousness in a prison setting."); *United States v. O'Reilly*, 545 F. Supp. 2d 630, 638 (E.D. Mich. 2008) (citing cases regarding the same)*; Cooper*, 91 F. Supp. 2d at 111-12; *Llera Plaza*, 179 F. Supp. 2d at 487-88. The Government does not dispute this limitation. (Gov't's Resp. 69 (citing cases that restrict the future dangerous aggravating factor to the prison context).) However, Savage's conduct while incarcerated, as alleged in the Indictment and as heard during the trial included threats, intimidation, and ordering others to engage in violence. Evidence of this conduct clearly supports this factor. Accordingly, Savage's overbreadth argument is rejected.

Savage's next argument that the Government's proof of the future dangerous aggravating factor should be even further limited to the context of a defendant placed under SAMs restrictions is without merit. Savage was first placed under SAMs restrictions by the Attorney General in February 2007.[16] The Attorney General has reauthorized the SAMs annually. Savage's argument assumes, without any basis, that if he receives a sentence of life in prison, he

---

[16] Federal regulations provide that the Bureau of Prisons may implement SAMs, upon direction of the Attorney General, when "there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons." 28 C.F.R. § 501.3(a).

will be under SAMs restrictions for the duration of that sentence.  The imposition of SAMs is within the discretion of the Attorney General and not the Court.  We may only intervene with SAMs when they infringe on constitutional rights.  As Savage well knows, SAMs restrictions expire and may be reauthorized.  There has been no suggestion that the restrictions he is currently under are permanent.  Nor can the Court assume that they would be.  Under these circumstances, it is not appropriate for future dangerousness to be presented only in the context of SAMs restrictions.

Savage's vagueness challenge to allegations of low rehabilitative potential and lack of remorse has been generally rejected by other courts.  *United States v. Bin Laden*, 126 F. Supp. 2d 290, 303-04 (S.D.N.Y. 2001) (citing cases and stating that "not surprisingly, lower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA, including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse"); *Basciano*, 763 F. Supp. 2d at 352; *United States v. Casey*, No. 05-277, 2012 U.S. Dist. LEXIS 181354, at *19-20 (D.P.R. Dec. 20, 2012).  Low rehabilitative potential is relevant to a finding of whether Savage will pose a risk of danger in the prison setting.  There is ample evidence in the record demonstrating that Savage, despite previous punishment and incarceration, continued to commit violent and drug-related crimes.  We do not find this element of future dangerousness to be vague.

Finally, we see no reason to compel the Government to provide a further offer of proof to support this aggravating factor.  The Indictment is replete with examples of Savage's dangerous tendencies while incarcerated, statements he made after the arson murders that demonstrate his lack of remorse, and his long-standing criminal history involving drug trafficking and violence that demonstrates his low rehabilitative potential.  This, together with the voluminous discovery

provided to him, including countless intercepted Title III recordings, and the Bureau of Prison records disclosed by the Government, placed Savage on sufficient notice of the evidence the Government intends to present to support the future dangerousness aggravating factor.

### 2. *Obstruction of Justice*

Savage seeks to strike the obstruction of justice non-statutory aggravating factor as it applies to Counts 10-16, which charge the murder of the Coleman family in aid of racketeering. (Savage Mot. 62.) The Government alleges that

> [Savage] procured the murder of the victims to prevent Eugene Coleman from continuing to cooperate with law enforcement's criminal investigation of Savage, and also implicitly or explicitly threatened harm to others whom he believed contemplated cooperating with law enforcement against him. [Savage's] procurement of the murders of the victims had a chilling and terrorizing effect on Eugene Coleman and the remaining incarcerated witnesses in the case, and in other federal cases, who felt helpless to protect their family members from prison.

(Savage Rev. NOI 6.)

Defendant Savage argues that the obstruction of justice aggravating factor (1) is "extraordinarily broad and vague," (2) does not serve to narrow the pool of convicted defendants subject to the death penalty, and (3) is duplicative of the crimes charged in the Indictment. (Savage Mot. 63.) In support of his vagueness and overbreadth challenge, Savage argues that it is "impossible" for a jury to ascertain how he "implicitly or explicitly threatened harm" to others whom he believed contemplated cooperating with law enforcement. (*Id.*) We disagree. The discovery provided to Defendants and the testimony and evidence presented during the guilt/innocence phase of the trial provide ample support for the Government's allegation that the purpose of, and effect of, committing the arson murders was to not only dissuade Coleman from further cooperating with law enforcement, but also silence others who may have been cooperating.

The second and third arguments are related. Essentially, Savage contends that the obstruction of justice aggravating factor impermissibly duplicates the witness retaliation crime charged in the Indictment. Stated differently, if the jury were to find Savage guilty of witness retaliation as to the Coleman arson murders, the jury would then be asked during the sentencing phase to determine whether the obstruction of justice factor is present, after having already determined beyond a reasonable doubt the facts necessary to establish this aggravating factor. Defendant contends that this duplication frustrates the primary function of aggravating factors to narrow the category of capital defendants eligible for the death penalty.

In *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988), the Supreme Court considered whether a sentencing scheme that permitted an element of a capital offense to also be used as an aggravating factor offended the Constitution. The Court held that it was permissible to count an element of the underlying offense as an aggravating factor where the "narrowing function" occurs either at the sentencing phase of the trial or the guilt phase. Thus, "an aggravating factor that does not add anything above and beyond the offense is constitutionally permissible provided that the statute itself narrows the class of death-eligible defendants." *McCullah*, 76 F.3d at 1108 (citing *Lowenfield*, 484 U.S. at 246).

Since *Lowenfield*, most federal courts have concluded that a statutory aggravating factor that duplicates an element of the charged capital crime does not violate the Eighth Amendment. *See Llera Plaza*, 179 F. Supp. 2d at 484 (finding that the Government would not be barred from pleading as aggravating factors elements of the offenses which had been proven at the guilt phase); *Johnson*, 136 F. Supp. 2d at 559-60; *Bin Laden*, 126 F. Supp. 2d at 301; *United States v. Frank*, 8 F. Supp. 2d 253 (S.D.N.Y. 1998). Many of these cases find that the FDPA performs its narrowing function at the eligibility phase. Accordingly, Savage's argument that the obstruction

of justice aggravating factor impermissibly duplicates the crimes charged in the indictment is rejected.

### 3. *Contemporaneous Conviction for Another Killing*

Savage seeks to strike the aggravating of contemporaneous conviction for another killing, which asserts that "[Savage] also participated in the killing of one or more other victims and is subject to a contemporaneous conviction, as part of this case, for that killing." (Savage Rev. NOI 5.) This factor applies to all the murder counts and the retaliating against a witness count. (*Id.*) Savage argues that this aggravating factor should be stricken because (1) it is duplicative of the crimes already charged in the Indictment, (2) it is duplicative of the "multiple killings" statutory aggravating factor, and (3) that if he is found guilty of any of the crimes in the guilt phase of trial, the verdicts do not amount to "convictions" for purposes of death penalty sentencing. (Savage Mot. 59-61.)

The first argument that the factor duplicates the crimes charged in the Indictment has already been rejected. *See supra* Section II.G.2. (explaining that it is constitutionally permissible to charge aggravators that duplicate elements of the underlying offenses).

With respect to Savage's second argument that the "contemporaneous conviction for another killing" aggravating factor is duplicative of the "multiple killings" statutory aggravating factor, Savage fails to cite any legal authority. This exact argument was raised and rejected in *Llera Plaza*. The court determined that the multiple killings aggravating factor referenced killings "in a single criminal episode" whereas the simultaneous convictions aggravating factor, in contrast, referred to killings that took place in a different criminal episode. *Llera Plaza*, 279 F. Supp. 2d at 489. The court ultimately denied the defendant's motion to strike the contemporaneous killing aggravating factor because it targets a different type of criminal

conduct than the multiple killings aggravating factor. *Id.* Here, the Government has alleged the

multiple killings statutory aggravating factor for the Coleman murders. This factor focuses on

Savage's intent to kill more than one person in a *single* or the same criminal episode. In contrast,

the contemporaneous conviction aggravating factor, which is alleged with respect to all the

murder counts, focuses on killing of others in *different* criminal episodes. The two factors are

not duplicative. In any event, the jury will be instructed that when weighing the aggravating and

mitigating factors, they should not simply count each factor and reach a decision based on which

number is greater, but rather should individually consider the weight and value of each factor in

determining which sentence is appropriate. *Bolden*, 545 F.3d at 625; *see also Jones*, 527 U.S. at

399-400 ("[A]ny risk that the weighing process would be skewed was eliminated by the District

Court's instruction" to the jury that it should consider the weight and value of each factor and not

simply count the number of aggravating and mitigating factors).

Savage's final argument is that the factor should be stricken because "conviction"

requires a judgment of conviction and not simply a verdict of guilty. In other words, if the jury

determines during the guilt phase of trial that Savage is guilty of one or more of the capital

crimes with which he is charged, the guilty verdict does not constitute a conviction for another

killing. Savage relies on *United States v. Pitera*, 795 F. Supp. 571, 573 (E.D.N.Y 1992). In

*Pitera*, the court observed that the capital statute at issue, which fell under the Anti-Drug Abuse

Act of 1988 ("ADAA") and not the FDPA, and the aggravating factor alleged by the

Government under the ADAA, was silent as to the definition of "conviction."[17] 795 F. Supp. at

577. The court concluded, based on the rule of lenity and the requirement that aggravating

---

[17] The statutory aggravating factor under the ADAA that was at issue in *Pitera* has since been
repealed. *See* 21 U.S.C. § 848. In the repeal, Congress effectively consolidated the procedural
death penalty provisions in the ADAA with the procedures set forth in the FDPA. *See United
States v. Hager*, 530 F. Supp. 2d 778, 781 (E.D. Va. 2008).

factors serve to narrow the class of death-eligible defendants, that "conviction" required "a judgment of conviction and not simply a plea or verdict of guilty." *Id.* This exact argument and reliance on *Pitera* was rejected by the district court in *Llera Plaza*. As pointed out in *Llera Plaza*, the court's holding in *Pitera* actually undermines the argument that a murder conviction for purposes of the contemporaneous convictions aggravating factor requires more than a guilty verdict because the court in *Pitera* "confined its holding by pointing out that the government remained 'free to proffer evidence of . . . additional homicides as non-statutory aggravating factors.'" *Llera Plaza*, 179 F. Supp. 2d at 488 (quoting *Pitera*, 795 F. Supp. at 577). For the same reasons that the argument was rejected in *Llera Plaza*, we find Savage's argument to be unavailing. Accordingly, Savage's request to strike the contemporaneous convictions non-statutory aggravating factor will be denied.

## H.    Aggravating Factors Alleged Against Northington

Northington seeks to strike one statutory aggravating factor – grave risk of death to additional persons – and two non-statutory aggravating factors – victim impact and future dangerousness.[18]

We have already addressed the statutory aggravating factor of grave risk of death to additional persons, *see supra* Section II.F.1, and determined that, with respect to Savage, the Government's Revised Notice of Intent failed to provide sufficient detail to put Defendants on notice of this aggravating factor. We reach the same conclusion with respect to Northington. The Government shall submit an outline of the evidence it intends to use at the sentencing phase in support of its allegation that in committing the murder of Tybius Flowers, Northington "created a grave risk of death to one or more persons in addition to the victim of the offense."

---

[18] The aggravating factors challenged by Northington are alleged with respect to Count 7 only. Count 7 charges Northington with the murder of Tybius Flowers in aid of racketeering.

We have also addressed the non-statutory aggravating factor of victim impact, *see supra* Sections II.D.4 & II.F, and determined that, with respect to Savage and Merritt, the Government's Revised Notice of Intent failed to provide sufficient notice of the victim impact evidence it intends to introduce during the sentencing phase of trial. We also determined that without more information, we are not in a position to consider Defendant's specific evidentiary and constitutional objections to victim impact evidence. We reach the same conclusion with respect to Northington. The Government shall submit any victim impact statements in its possession. To the extent a victim has not prepared a statement, the Government shall submit an outline of the specific evidence about which that victim will testify.

We have also addressed the non-statutory aggravating factor of future dangerousness, *see supra* Section II.G.1, and determined that, with respect to Savage, the constitutional challenges to this factor lacked merit. We also concluded that the Government's Revised Notice of Intent, together with the Indictment and all evidence in the record in this case, placed Savage on sufficient notice of this factor. We reach a different conclusion with respect to Northington. Unlike the record as to Savage, we have seen no evidence that touches upon Northington's potential for future dangerousness in the prison setting, low rehabilitative value, or lack of remorse. Accordingly, with respect to Northington, the Government shall provide an outline of the evidence it intends to introduce in support of this aggravating factor. *See Llera Plaza*, 179 F. Supp. 2d at 474 ("The court will therefore order the government to submit an outline of the evidence it intends to introduce to support the non-statutory aggravating factor of 'future dangerousness.' This outline will include a description of any unadjudicated act of misconduct that the government intends to prove.").

## I.    Vicarious Liability for Aggravating Factors

Finally, Savage requests oral argument or a hearing to address the argument that certain of the aggravating factors are not relevant to his actual conduct and intent based on a theory of vicarious liability.    (Savage May 5, 2013 Ltr, ECF No. 1296.)   Defendant points to the grave risk of death to additional persons and heinous, cruel and depraved manner of committing the offense aggravating factors.   Defendant fails to point to any authority and we are aware of none that precludes the vicarious imposition of aggravating factors on a defendant when the evidence supports a reasonable inference that the defendant knew how the murders would be committed. Savage's request to be heard on this argument is denied.

## III.    CONCLUSION

For the foregoing reasons, Defendant Kaboni Savage's Motion to Strike Aggravating Circumstances or in the Alternative to Compel Discovery is granted in part and denied in part, Defendant Robert Merritt's Motion to Strike or Modify the Notice of Intent to Seek the Death Penalty is granted in part and denied in part, and Defendant Steven Northington's Motion to Strike Aggravating Factors is granted in part and denied in part.

An appropriate Order will follow.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**