IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550-03 |
| KABONI SAVAGE | : | |

**SURRICK, J.**                                                                                           **SEPTEMBER 17, 2014**

## MEMORANDUM

Presently before the Court is Defendant Kaboni Savage's Initial Motions Pursuant to Federal Rules of Criminal Procedure 29, 33, and 34 (ECF No. 1469), and Supplement to Motions Pursuant to Federal Rules of Criminal Procedure 29, 33, and 34 (ECF No. 1524).  For the following reasons, Defendant's Motions will be denied.

### I.     BACKGROUND

On May 13, 2013, a jury found Defendant Kaboni Savage guilty of conspiring to participate in the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) ("RICO conspiracy"), twelve counts of murder in aid of racketeering under 18 U.S.C. § 1959(a)(1), conspiracy to commit murder in aid of racketeering under 18 U.S.C. § 1959(a)(5), retaliating against a witness under 18 U.S.C. § 1513(a), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1).  (Verdict Sheet, ECF No. 1330 (filed under seal).)  Defendant was tried along with three co-Defendants:  his sister, Kidada Savage; Robert Merritt; and Steven Northington.  On February 15, 2012, the Government filed a Revised Notice of Intent to seek the death penalty against Defendant.  (ECF No. 361.)

Jury selection for the Fourth Superseding Indictment began on November 7, 2012. Opening statements commenced on February 4, 2013.  The guilt phase of the trial lasted

approximately fourteen weeks.  During the trial, the Government presented over 70 witnesses, over 1000 exhibits, and numerous intercepted Title III wiretap conversations.  All of this evidence was used to establish the Government's theory that Defendants, together with other co-conspirators, participated in an overarching RICO conspiracy involving drug distribution, murder, arson, witness tampering, and witness retaliation.

On May 13, 2013, the jury returned its verdict.  Kaboni Savage was found guilty on all counts.   On June 3, 2013, after a penalty phase hearing, the same jury that determined his guilt sentenced Kaboni Savage to death on each of the thirteen death-eligible counts.  (*See* Min. Entry, ECF No. 1443; Sentencing Verdict, ECF No. 1434.)

On June 14, 2013, Defendant filed an Initial Motion Pursuant to Federal Rules of Criminal Procedure 29, 33, and 34.  (ECF No. 1469.)[1]  On August 30, 2013, Defendant filed a Supplement to the Motion.  (Def.'s Mot., ECF No. 1524.)  On August 28, 2014, the Government filed a Response to the Motion.  (Gov't's Resp., ECF No. 1575.)

## II.     LEGAL STANDARD

Defendant's post-verdict Motion purports to seek relief under Rules 29, 33, and 34 of the Federal Rules of Criminal Procedure.

Rule 29 provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim P. 29(c)(2).  When considering motions for judgment of acquittal, the court must view the evidence in the light most favorable to the prosecution, and must uphold the verdict provided that any rational trier of fact could have found guilt beyond a reasonable doubt given the available evidence.  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).  Motions under Rule 29 are judged under a "highly deferential

---

[1] This motion was simply a place-holder, filed by Defendant to reserve his appellate rights and rights to assert arguments in support of a judgment of acquittal or the grant of a new trial.  The one-and-a-half-page motion contains no arguments.

standard." *United States v. Carbo*, 572 F.3d 112, 119 (3d Cir. 2009). Challenges to the sufficiency of the evidence supporting a jury verdict "should 'be confined to cases where the prosecution's failure is clear.'" *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). Defendant bears the burden of proving that the Government's evidence was insufficient to convict. *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990).

Rule 33 permits a court to vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). When considering a Rule 33 motion, "the court may weigh the evidence, but may set aside the verdict and grant a new trial only if it determines that the verdict constitutes a miscarriage of justice, or if it determines that an error at trial had a substantial influence on the verdict." *United States v. Parrott*, No. 09-245, 2010 U.S. Dist. LEXIS 20613, at *6 (E.D. Pa. Mar. 4, 2010) (quotation omitted). "A new trial is required on the basis of evidentiary errors only when the 'errors, when combined, so infected the jury's deliberation that they had a substantial influence on the outcome of the trial.'" *Id*. (quoting *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993)). Rule 33 Motions should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987).

Under Rule 34, a defendant may move for an order arresting judgment if: (1) the indictment fails to charge an offense; or (2) the court lacks jurisdiction over the charged offense. Fed. R. Crim. P. 34(a). These are the only two grounds for a motion in arrest of judgment. *See United States v. Caramandi*, 415 F. Supp. 443, 445 (E.D. Pa. 1976) (denying Rule 34 motion because defendant did not contend that the indictment failed to charge an offense, nor that the court lacked jurisdiction). Defendant's Motion does not allege or argue that the Indictment

against him failed to charge an offense, nor does it allege or argue that the Court lacked jurisdiction. Accordingly, there is no viable basis for relief under Rule 34. Defendant's arguments will be considered under Rules 29 and 33.

## III. DISCUSSION

In support of his request for an acquittal or new trial, Defendant generally renews the multitude of objections that he made prior to and during the trial and the sentencing hearing.[2] Defendant's supplemental motion specifically renews his objections to: (1) the use of certain aggravating factors during his penalty phase hearing; (2) the application of the Federal Death Penalty Act as to him; (3) the admission of a recorded admission during his sentencing hearing; (4) the admission of Bureau of Prison documents during the sentencing hearing; (5) testimony by a defense expert; (6) a statement made by Government counsel during closing argument; and (7) the penalty phase verdict form provided to the jury. Defendant's three-page Motion provides no arguments, analysis, or authority, nor does it identify any factual insufficiencies that he contends warrant a judgment of acquittal or the grant of a new trial. Instead, Defendant simply lists his objections and cites to either the trial transcripts where the objection was made on the record, or the Memorandum or Order issued by the Court where the objection had been overruled.

This failure to provide the Court with any argument or authority in support of his Motion may, in and of itself, be sufficient to deny Defendant's request for a judgment of acquittal or the

---

[2] As the Government observes, there were hundreds of motions and objections made and responded to by the Government during the trial and pretrial. These motions and objections were ruled upon by the Court, frequently with detailed memoranda or footnoted orders. We rely on those previous rulings.

grant of a new trial. However, considering the nature of this case, and the severity of the penalties imposed, we will briefly address the merits of Defendant's objections.[3]

### A.     Aggravating Factors

Defendant renews his objections to certain of the aggravating factors listed in the Government's notice of intent to seek the death penalty. Specifically, he renews his objections to the following aggravating factors: (1) grave risk of death to additional persons; (2) previous conviction for a serious drug offense; (3) substantial planning and premeditation; (4) heinous, cruel, or depraved manner of committing the offense; and (5) future dangerousness.

On May 10, 2013, a Memorandum and Order were filed denying Defendant's motion to strike the revised notice of intent to seek the death penalty. (May 10 Mem., ECF No. 1321.)[4] In this Memorandum, we overruled many of Defendant's objections to these aggravating factors.[5]

---

[3] It is unclear whether Defendant's request for a judgment of acquittal or a new trial relates to the guilt phase of the trial, to the sentencing phase, or to both. Each specific renewed objection listed in the Motion relates to issues that pertain to his sentencing, however, the Motion itself seeks a judgment of acquittal or a new trial.
  On April 24, 2013, at the conclusion of the evidence in the guilt phase of the trial, but before the jury began deliberations, counsel for Defendant made an oral motion for an acquittal on the record. (April 24, 2013 Trial Tr. 170-71, ECF No. 1393.) Specifically, counsel made a "global motion for judgment of acquittal pursuant to Rule 29, challenging the sufficiency of the evidence to sustain a conviction as to Counts 1 through 17 in a general sense." (*Id*. at 170.) Counsel provided only one specific argument in support of his request for an acquittal—that the evidence was insufficient for a jury to determine that the Lassiter murder was committed in furtherance of the RICO conspiracy. (*Id*. at 171.) To the extent that Defendant renews the arguments raised on the record on April 24th, or otherwise requests an acquittal based on the evidence presented at the guilt phase of the trial, his request is denied. There was overwhelming evidence presented at trial to support each of the seventeen counts on which Defendant was convicted, including the Lassiter murder charge. Based on this evidence, any rational juror could have found Defendant guilty beyond a reasonable doubt on each count.

[4] Defendant's Motion is docketed at ECF No. 373.

[5] For a general discussion about statutory and non-statutory factors, and the legal framework governing capital sentencing proceedings, see the Court's May 10, 2013 Memorandum. (ECF No. 1321); *United States v. Savage*, No. 07-550, 2013 U.S. Dist. LEXIS 66772 (E.D. Pa. May 10, 2013).

For other objections, we ordered that the Government provide an informational outline containing additional factual support. The analysis and reasoning behind overruling certain of Defendant's objections is set forth at length in that Memorandum.

1.  *Grave Risk of Death to Additional Persons*

Defendant renews his objection to the grave risk of death statutory aggravating factor being submitted to the jury for their consideration. The jury was asked to determine—unanimously and beyond a reasonable doubt—whether in the commission of certain of the murder counts, Defendant "knowingly created a grave risk of death to one or more persons in addition to the victims of the offense." (Sentencing Verdict); *see also* 18 U.S.C. § 3592(c)(5). This factor was submitted to the Jury on Count 2 (Lassiter murder), Count 5 (Parker murder), Counts 10-15 (Coleman family murders), and Count 16 (witness retaliation). (Sentencing Verdict.)[6] The Jury determined that the grave risk factor was proven with respect to the Lassiter and Coleman family murders, and the witness retaliation charge, but not proven with respect to the Parker murder. We will consider Defendant's renewed objection to the Lassiter and Coleman family murders only.

---

[6] The Notice of Intent filed by the Government stated that the grave risk of death aggravating factor applied to Count 2 (murder of Kenneth Lassiter), Count 3 (murder of Mansur Abdullah), Count 5 (murder of Barry Parker), Count 6 (murder of Tyrone Toliver), Count 7 (murder of Tybius Flowers), Counts 10-15 (murder of the Coleman family members), and Count 16 (witness retaliation). In our May 10 Memorandum, we determined that the Notice of Intent lacked the factual support necessary to assess the constitutionality of this aggravating factor as applied to Counts 2-3, 5-7, and 10-16, and we ordered the Government to provide an informational outline. (May 10 Mem. 22-23.) On May 15, 2013, the Government filed the informational outline. (Info. Outline, ECF No. 1338.) In the informational outline, the Government limited this aggravating factor to Counts 2, 5, 7, and 10-16. The Court heard argument on the issue on May 20, 2013. (May 20, 2013 Trial Tr., ECF No. 1426.) The matter was taken under advisement and we ultimately determined that the grave risk of death factor was appropriate for the Lassiter murder (Count 2), the Parker murder (Count 5), the Coleman family murders (Counts 10-15), and for witness retaliation (Count 16), but not appropriate with respect to the Flowers murder (Count 7). (Penalty Verdict Sheet, ECF No. 1434 (filed under seal).)

6

The grave risk of death aggravating factor has been explained as creating "a significant and considerable possibility" that others in addition to the victim will be placed in a "zone of danger." *United States v. Barnette*, 211 F.3d 803, 819 (4th Cir. 2000).  The jury was instructed that Defendant must have "knowingly created a grave risk of death," which means that Defendant "was conscious and aware that his conduct in the course of committing the offense might have this result."  (May 30, 2013 Trial Tr. 26, ECF No. 1478.)

Defendant personally committed the Lassiter murder on a public street corner, in a densely populated residential area, where the homes are situated adjacent to the sidewalks.  At the time of the murder, people were standing in close proximity to the victim when he was shot and killed by Defendant.  (Feb. 27, 2013 Trial Tr. 129-133, ECF No. 1362.)  One witness, Sam Rosado, testified that when the shot was fired, he was scared, and he grabbed a child standing nearby, and ducked behind a car.  (*Id*. at 134.)  Rosado was no more than twenty feet from Defendant when the shot was fired.  (*Id*. at 133.)  It cannot be reasonably argued that the other people on the street within feet of this murder or the people in the homes adjacent to the street were not knowingly in the zone of danger when Defendant fired his weapon.  We are satisfied that the grave risk of death aggravating factor was appropriately submitted to the jury.  *See United States v. Pleau*, No. 10-184, 2013 U.S. Dist. LEXIS 55023, at *10 (D.R.I. Apr. 17, 2013) (holding that allegations that the defendant discharged a firearm between four and six times in a public place with several people nearby was sufficient to support a finding that the defendant created a grave risk of death to others); *see also United States v. Robinson*, 367 F.3d 278, 289 (5th Cir. 2004) (holding that "[n]o rational grand jury would fail to find" evidence that defendant fired a weapon from a moving vehicle in a residential neighborhood in close proximity to at least two adolescents playing on a nearby porch was sufficient to support the grave risk aggravating

factor).  *Cf. United States v. Diaz*, No. 05-167, 2007 U.S. Dist. LEXIS 62645, at *10-11 (N.D. Cal. Aug. 14, 2007) (holding that the notice of intent sufficiently alleged facts to support the grave risk of death factor where it stated that the defendant shot a firearm in close proximity to civilians and public-housing units).

Six people in the Coleman family residence—two adults and four children—were killed in a firebombing of the Coleman home on Defendant's order.  (April 1, 2013 Trial Tr. 61, ECF No. 1377.)  Defendant Merritt and co-conspirator and Government cooperating witness, Lamont Lewis, carried out the order.  (*Id*.)  Lewis was told to firebomb the Coleman residence during the early morning, around 3:00 or 4:00 a.m., when everyone would be home.  (*Id*. at 200.)  The Coleman residence was a row home in an urban residential neighborhood.  The Philadelphia Fire Department Captain testified that a wheelchair-bound neighbor living in the adjoining row home needed to be rescued after being engulfed in smoke from the fire.  (April 10, 2013 Trial Tr. 8-9, ECF No. 1380.)  A rational jury could (and did) conclude, based upon this evidence, that Defendant knowingly created a grave risk of death to others who were not the intended victims.  Submission to the jury of this statutory aggravating factor on Counts 10-16 was appropriate.  Defendant's request for a judgment of acquittal or a new trial on this basis will be denied.

        2.        *Previous Conviction for Serious Drug Offense*

Defendant renews his objection to the previous conviction for a serious drug offense statutory aggravating factor.  This factor was submitted to the jury on all death-eligible Counts.  (Sentencing Verdict.)  In considering whether a sentence of death was appropriate, the jury determined that Defendant had "previously been convicted of violating Title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of 1 or more years may be imposed."  18 U.S.C. § 3592(c)(12).

Again, Defendant offers no argument to support his renewed objection, but merely cites to a trial transcript where counsel objected to the submission of this aggravating factor to the jury. (Def.'s Supp. Mot. 2.) Specifically, counsel contended that this aggravating factor does not apply because the previous serious drug conviction contemplated by the statute must predate the commission of the charged murders. Defendant raised this objection prior to the start of trial. In our May 10 Memorandum, we considered Defendant's argument, and ultimately rejected it. (May 10 Mem. 24-25.) We relied on the Fourth Circuit case, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), in which the defendant raised a nearly identical argument. In our May 10 Memorandum, we discussed the *Higgs* decision as follows:

> [The defendant in *Higgs*] contended that the aggravating factor for previous conviction for a serious federal drug offense was improperly submitted to the jury because for purposes of the factor, a 'previous conviction' can only occur if the predicate federal drug offense occurred prior to the conduct giving rise to the capital murder. The court rejected this argument, concluding that the statutory aggravating factor encompasses all predicate convictions occurring prior to sentencing, even those occurring after the conduct giving rise to the capital charges. The court observed that, unlike other statutory aggravating factors, this one is concerned with the characteristics of the offender as of the time that he is sentenced as opposed to concerning matters directly related to the death penalty offense. The court's rationale in *Higgs* is well-reasoned and we agree with its conclusion.

*United States v. Savage*, No. 07-550, 2013 U.S. Dist. LEXIS 66772, at *42-43 (E.D. Pa. May 10, 2013) (internal citations and quotation marks omitted); (May 10 Mem. 24-25).

When raising the objection to this aggravating factor on the record, counsel for Defendant conceded that the Court had already ruled on his objection. However, counsel urged the Court to reconsider its position in light of the Eighth Circuit model jury instructions for capital cases. The Eight Circuit model instructions contain a note stating that the conviction under 18 U.S.C. § 3592(c)(12) must predate the charged murder. The Eighth Circuit jury instruction is inconsistent with the holding in *Higgs*. We are satisfied that the analysis set forth in *Higgs*, a

9

reported Circuit Court opinion, is more persuasive than the note in the model jury instructions. This is particularly true in light of the fact that *Higgs* has been relied on by other district courts. *See, e.g.*, *United States v. Basciano*, 763 F. Supp. 2d 303, 350-351 (E.D.N.Y. 2011) (relying on *Higgs* and rejecting defendant's argument that previous conviction of a violent felony involving a firearm was not truly "previous" because it arose after the charged capital murder). Defendant's request for a judgment of acquittal or new trial on this basis will be denied.

      3.  *Substantial Planning and Premeditation*

  The substantial planning statutory aggravating factor was alleged with respect to Counts 3 through 7 and 10 through 16.  (Sentencing Verdict; *see also* May 30 Trial Tr. 22-23.)  The factor required that the jury consider whether Defendant "committed the offense after substantial planning and premeditation to cause the death of a person."  18 U.S.C. § 3592(c)(9).  We instructed the jury that "planning means mentally formulating a method for doing something or achieving an end" and that premeditation means "thinking or deliberating about something and deciding beforehand whether to do it."  (May 30 Trial Tr. 28.)  We also instructed the jury that "substantial planning and premeditation means a considerable or significant amount of planning or premeditation."  (*Id.*)

  Again, Defendant fails to offer any explanation or authority in support of his renewed objection to this aggravating factor being submitted to the jury.  During trial, counsel for Defendant noted on the record that the facts do not support a finding that Defendant planned the murders.  We disagree.  The evidence admitted at trial was voluminous.  It showed that Defendant was behind each of murders committed.  The murders were hits ordered by Defendant.  The evidence showed that he met with co-conspirators, discussed the circumstances warranting each hit—whether it was related to drugs, the receipt of money, or in retaliation for

witnesses cooperating with the Government—and he directed others to commit the crime.  The jury was specifically instructed that to find this aggravating factor proven, they must find unanimously that that the evidence showed a "*considerable or significant* amount of planning or premeditation."  (May 30 Trial Tr. 28 (emphasis added)); *see also United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996) (noting that the term "substantial" has a commonsense meaning of significantly large, "which criminal juries are capable of understanding").  The jury determined that this aggravating factor was proven with regard to each count for which it was submitted.  Contrary to Defendant's argument, ordering a hit on a murder victim, as opposed to personally committing the murder, can entail substantial planning and premeditation.  *See Basciano*, 763 F. Supp. 2d at 345 (rejecting request to dismiss the substantial planning and premeditation aggravating factor when the death penalty was sought against defendant for a murder he ordered to be committed).[7]  Defendant's argument is without merit.

        4.       *Heinous, Cruel, or Depraved Manner of Committing the Offense*

Defendant also renews his objection to the statutory aggravating factor that permitted the jury to consider whether "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim."  18 U.S.C. § 3592(c)(6).  This factor was submitted to the jury on the Coleman family murder charges (Counts 10-15), and the retaliating against a witness charge (Count 16).

Defendant objected to this factor prior to the sentencing hearing.  We addressed his objections in our May 10 Memorandum.  We explained that "[w]hether exposure to extreme heat

---

[7] In *Basciano*, it is not immediately apparent from the district court opinion that the murder charge for which the substantial planning aggravator applied resulted in a hit ordered by defendant, Basciano.  However, a review of the docket makes clear that Basciano did not personally commit the murder, but instead ordered others to murder the victim.  *See United States v. Basciano*, Crim. No. 05-60 (E.D.N.Y.), at ECF Nos. 358 (Superseding Indictment) & 294 (Notice of Intent to Seek the Death Penalty).

11

prior to death by smoke inhalation constitutes torture or serious physical abuse is for the jury to decide." (May 10 Mem. 14); *see also United States v. Bernard*, 299 F.3d 467, 481 (5th Cir. 2002). Defendant renewed his objection on the record, contending that this aggravating factor was not appropriate because it is reserved for instances where a defendant engages in torture of the victims, and the arson-murders of the Coleman family do not qualify. (May 29, 2013 Trial Tr. 95-97, ECF No. 1441.) We considered and rejected this argument in our May 10 Memorandum. We instructed the jury on the precise meanings of "heinous" and "cruel."[8] Based on our instruction, the jury determined that the arson-murders of the Coleman family members constituted a heinous, cruel, or depraved manner of committing the offense. (Sentencing Verdict.) Based upon the evidence and testimony presented at trial, and particularly the testimony of the medical examiner, the suggestion that the arson murders of the Coleman family was not heinous, cruel, and depraved and did not involve torture and serious physical abuse is ridiculous.

     5.    *Future Dangerousness*

Defendant renews his objection to the future dangerousness non-statutory aggravating factor. This factor, which was submitted to the jury on all death-eligible counts, required the jury to consider whether Defendant "would be a danger in the future to the lives and safety of other persons, and is likely to commit or procure the commission of, retaliatory and other criminal acts of violence in the future." (Sentencing Verdict.) Defendant again offers no argument in support of his renewed objection, but merely points to excerpts from the trial transcripts.

---

[8] The Court instructed the jury that "heinous means shockingly atrocious" and that for a killing to be heinous, "it must involve such additional acts of torture or serious physical abuse of the victim as to set it apart from other killings." (May 30 Trial Tr. 31.) The Court also instructed the jury that "cruel means that the defendant intended to inflict a high degree of pain by torture or serious physical abuse of the victim in addition to the killing of the victim." (*Id.*)

12

The first objection made by Defendant is that the Government was permitted to question Special Agent Kevin Lewis about his investigation into Defendant's use of a legal telephone line to call individuals who were not his attorneys, which was strictly against the rules. One individual was a man by the name of Kenneth Tuck, who had a prior felony conviction. (May 20 Trial Tr. 97; May 21 Trial Tr. 183, ECF No. 1428.) Defense counsel contends that it was prejudicial for the jury to hear that Defendant was bypassing the prison regulation system to communicate with an individual who was a known criminal. We disagree. Evidence showing that, despite the extreme security measures that Defendant was subjected to while he was incarcerated, he was able to nevertheless find ways to violate the prison regulations and security measures and communicate with individuals outside of prison, including individuals with criminal records, goes to the heart of future dangerousness. This is particularly true in light of the fact that the evidence at trial showed that Defendant had ordered several of the murders while he was incarcerated by bypassing prison regulations and prison security measures.

The second objection cited by Defendant was to the Government's opening statement in the penalty phase. The Government was describing instances when Defendant had made threats to others. (May 21, 2013 Trial Tr. 78-80.) Counsel for Defendant lodged an objection, arguing that the incidents referred to by the Government were not listed in the informational outline provided to Defendant prior to the sentencing hearing. (*Id*. at 92.) Counsel also argued that the prior threats, some of which had occurred nine years prior, were not relevant to Defendant's *future* dangerousness. Defense counsel's arguments are completely without merit. As to counsel's first argument, the purpose of the informational outline was to give notice to Defendant of the types of evidence it intended to use to support the aggravating factors. The list of incidents where Defendant made threats to others was based on evidence that was admitted at

13

trial. Defendant had ample notice of this evidence and that it would be used to support the future dangerousness aggravating factor. (*See* Informational Outline (noting that in support of the future dangerousness aggravating factor, the Government intended to "reference Defendant's actions taken against witnesses and potential witnesses while incarcerated, including the testimony presented at trial").) With respect to counsel's second argument, evidence that Defendant made threats to witnesses and potential witnesses while incarcerated, even if those threats were made many years prior, is certainly relevant to the question of whether Defendant would be a danger to others in the future, or would be likely to commit retaliatory or other acts of violence in the future. Defendants' request for a judgment of acquittal or new trial will be denied.

      **B.**     **Objections to Application of Federal Death Penalty Act**

Defendant also renews his objection to "the application of the Federal Death Penalty Act to him, as set out in" various motions he filed prior to trial. Defendant lists three motions: (1) motion to declare the death penalty unconstitutional (ECF No. 380); (2) motion to strike the revised notice of intent to seek the death penalty because of discrimination based on race (ECF No. 379); and (3) motion to strike the revised notice of intent to seek the death penalty for violating customary international law and standards (ECF No. 381). (Def.'s Mot. 2.) We considered and rejected all of the arguments raised by Defendant in these motions in detailed memoranda. (*See* ECF Nos. 603, 604, 1332, 1333, 1376.) Defendant offers no new arguments. Defendant's request for a judgment of acquittal or new trial is denied on this basis.

      **C.**     **Evidence Admitted During Sentencing Phase of Trial**

Defendant also renews his objection to the admission of two pieces of evidence at trial. First, he objects to "recorded conversations in which Mr. Savage states his belief in the

appropriateness of the death penalty as a punishment in this case." (Def.'s Mot. 3.) Defendant mischaracterizes the conversation at issue here. In the recording, Defendant can be heard stating: "Yeah, this is what he tell me. You got to understand that I grew up with this N all my life. And the shit we did together, right, could have put me on death row." (May 20 Trial Tr. 76.) This is not, as Defendant contends, an opinion as to the appropriateness of the death penalty as a sentence. Instead, it is an admission, which was properly admitted into evidence. Defendant fails to show how the statement is prejudicial, let alone how its admission resulted in a miscarriage of justice.

Defendant also renews his objection to the admission of "documents allegedly prepared by the Bureau of Prisons but not authenticated by an employee of the Bureau of Prisons." (Def.'s Mot. 3.) Defendant appears to be referencing documents that were admitted during the testimony of Bureau of Prison ("BOP") expert witness, Scott Dodrill. (May 28, 2013 Trial Tr. 264, ECF No. 1477; May 29 Trial Tr. 16-17; 84.) The evidence at issue is a BOP chart illustrating the step-down process for inmates subject to Special Administrative Measures ("SAMs") that contains statistical information about the number of BOP lifers who had committed homicide and other acts of violence. (May 28 Trial Tr. 264; May 29 Trial Tr. 16-17; Gov't Ex. 1253.) This evidence was properly authenticated and admitted during the trial. (*See* May 20 Trial Tr. 264-66; May 29 Trial Tr. 16-17, 84). Defendant has failed to articulate how this information in any way prejudiced him or constituted a miscarriage of justice. Defendant's request for a judgment of acquittal or new trial on this basis will be denied.

      D.     **Defense Expert Testimony**

Defendant also renews his objection to "the Court's directing a defense expert to answer the Government's question regarding whether, in her expert opinion, the killing of a child is the

worst thing that could happen." (May 23, 2013 Trial Tr. 300, ECF No. 1430.) To understand Defendant's objection, it needs to be placed into context. The defense expert, Dr. Caroline Burry, testified during Defendant's sentencing hearing. She has a Ph.D. in social work and specializes in the area of child welfare. (*Id*. at 253.) Dr. Burry was asked to assess the relationship between Defendant and his children, and opine on whether Defendant would be able to maintain an ongoing relationship with them. (*Id*. at 257.) Dr. Burry testified that Defendant's children had a positive attachment to Defendant, were connected with him, and derived meaning from their relationship with him. (*Id*. at 262, 298.) On cross-examination, counsel for the Government asked whether it would affect her opinion to know that Defendant had been convicted of killing four children. (*Id*. at 298.) Dr. Burry answered no. (*Id*.) Counsel for the Government then asked Dr. Burry if her opinion would change knowing that Defendant not only killed these children, but referred to them as mice and talked about pouring barbeque sauce on them after they perished in a fire. (*Id*. at 299.) Dr. Burry again answered no. (*Id*. at 300.) Government counsel then asked Dr. Burry if, as a social worker who specializes in child welfare, she would "agree that the worst thing that could happen is for a person to murder a child." (*Id*. at 300-301.) Dr. Burry responded, "I can't imagine much worse than that." (*Id*. at 301.)

      Defendant offers no argument as to why this testimony warrants a judgment of acquittal. In its Response, the Government defends its probing of Dr. Burry by explaining that if an expert in child welfare is going to proclaim that a positive attribute for a child is to maintain a relationship with a convicted murderer of children, then it was proper to inquire whether the killing of children itself is a positive or negative attribute. Although the Government's question could have been better phrased, it was based upon evidence presented during the trial, and it was not beyond the scope of proper cross-examination. The Court's overruling of Defendant's

objection to this statement was proper under the circumstances. Defendant's Motion will be denied.

### E.  Comment During the Government's Closing Argument

Defendant also renews his objection to a statement made by counsel for the Government during its closing statement at the sentencing hearing. Defendant contends that Government counsel "stated that the jury should impose death to avoid expending resources on the incarceration of Mr. Savage." (Def.'s Mot. 3.) Defendant mischaracterizes the Government's statement. During rebuttal, Government counsel stated:

> While his children are certainly innocent victims in all of this, his very limited relationship with them does not outweigh the horrific violence that he has caused, and there's no reason to exhaust BOP resources to keep him from himself.

(May 29 Trial Tr. 199.)

Counsel did not suggest that the jury should impose the death penalty, let alone should impose it because it may be less expensive. The Government explained that this statement was made in response to Defendant's theme during the sentencing hearing that, if sentenced to life in prison, Defendant would spend the rest of his life in an eight foot by ten foot concrete box. The Government explains that the evidence instead showed that a BOP inmate placed on SAMs, like Defendant, undergoes a step-down process with the goal of placing the inmate in the least restrictive environment. The statement at issue, according to the Government, was rhetorical in nature, and intended to address the defense theory that future dangerousness is not an issue since Defendant would be restricted by SAMs measures forever. Again, the Government's statement may have been better phrased, but it certainly does not justify granting Defendant a judgment of acquittal or a new trial. Defendant has failed to offer any argument or authority in support of his request. Defendant's Motion will be denied.

F.  **Verdict Form**

Finally, Defendant renews his objection to the structure of the Special Verdict Form for Penalty Phase ("Special Verdict Form"), which was the verdict provided to the jury to fill out after deliberating on whether Defendant should receive a sentence of death or life in prison on the thirteen death-eligible counts.  Specifically, Defendant objects to the fact that the Special Verdict Form listed each aggravating factor for each count, but listed mitigating factors only once.  (Def.'s Mot. 3.)

The Special Verdict Form was 75 pages in length.  For each of the thirteen capital counts, it listed each of the statutory aggravating factors and each of the non-statutory aggravating factors that were associated with the count.  Thereafter, the Verdict contained a section listing each of the mitigating factors.  There were 20 mitigating factors submitted to the jury for their consideration.[9]  Because the mitigating factors applied to each capital count, they were listed only once.  However, because each capital count contained different statutory and non-statutory aggravating factors, they were listed separately as they related to each capital count.

Defendant's argument—that the verdict form prejudiced him by listing aggravating factors on each count but mitigating factors only once—is without merit.  The Verdict Form made clear that each of the mitigating factors applied to each of the capital counts.  The Verdict contained the following statement in uppercase, bold font that was larger than the font contained in the rest of the Verdict form:

> **NOTE:  IN CONSIDERING THE MITIGATING FACTORS, YOU MUST KEEP IN MIND THAT EACH MITIGATING FACTOR IS ALLEGED WITH RESPECT TO EACH OF THE CAPITAL COUNTS.  IF YOU DETERMINE BY A PREPONDERANCE OF THE EVIDENCE THAT A MITIGATING FACTOR IS PRESENT, THEN IT MUST BE**

---

[9] During its deliberation, the jury independently found two additional mitigating factors to be present.

18

   **CONSIDREED IN THE WEIGHING PROCESS FOR EACH AND EVERY CAPITAL COUNT.**

(Sentencing Verdict.)  Moreover, the Court instructed the jury that before it may consider the appropriate punishment on each capital count, it must consider whether the defendant has proven the existence of any mitigating factors with respect to that count.  (May 30 Trial Tr. 41); *see also Slaughter v. Parker*, 450 F.3d 224, 241 (6th Cir. 2006) (citing *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) ("We must consider the verdict form in conjunction with the jury instructions.")).  The Court also read each of the twenty mitigating factors to the jury prior to their deliberations.  (May 30 Trial Tr. 41.)  The jury never expressed any confusion about their obligation to consider and weigh mitigating factors on each capital count.  Defendant's request for a judgment of acquittal or new trial is without merit.

### IV. CONCLUSION

   For the foregoing reasons, Defendant Kaboni Savage's Motions Pursuant to Federal Rules of Criminal Procedure 29, 33, and 34 will be denied.

   An appropriate Order will follow.

                 **BY THE COURT:**

                 _____
                 **R. BARCLAY SURRICK, J.**