IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-550 |
| KABONI SAVAGE | : | |

**MEMORANDUM**

**SURRICK, J.**  SEPTEMBER 25, 2017

Presently before the Court is Defendant-Appellant Kaboni Savage's Motion for a Complete and Accurate Record for Appeal. (ECF No. 1669.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.  BACKGROUND**

On May 13, 2013, a jury found Defendant Kaboni Savage guilty of conspiring to participate in the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) ("RICO conspiracy"), twelve counts of murder in aid of racketeering under 18 U.S.C. § 1959(a)(1), conspiracy to commit murder in aid of racketeering under 18 U.S.C. § 1959(a)(5), retaliating against a witness under 18 U.S.C. § 1513(a), and using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1). (Verdict Sheet, ECF No. 1330.) Defendant was tried with three co-Defendants: his sister, Kidada Savage; Robert Merritt; and Steven Northington.

Jury selection for the Fourth Superseding Indictment began on September 26, 2012. Opening statements commenced on February 4, 2013. The guilt phase of the trial lasted approximately fourteen weeks. During the trial, the Government presented over 70 witnesses, over 1,000 exhibits, and numerous intercepted Title III wiretap conversations. All of this evidence was used to establish the Government's theory that Defendants, together with other co-

conspirators, participated in an overarching RICO conspiracy involving drug distribution, murder, arson, witness tampering, and witness retaliation.

On May 13, 2013, the jury returned a verdict. Savage was found guilty on all counts. On May 31, 2013, after a penalty phase hearing, the same jury that determined his guilt sentenced Savage to death on each of the thirteen death-eligible counts. (Sentencing Verdict, ECF No. 1434.) His sentence was imposed on June 3, 2013. (Min. Entry, ECF No. 1443.)

### A. Procedural History of Appeal

On September 29, 2014, Savage filed a notice of appeal to the Third Circuit Court of Appeals. (ECF No. 1591.) On October 23, 2014, Barry Fisher, Esquire, of the Public Defender Office for the Northern District of New York ("Appellate Counsel"), was appointed to represent Savage during the appeals process.[1] *United States v. Savage*, No. 14-9003 (3d Cir.). In November 2014, January 2015, April 2015, July 2015, November 2015, December 2015, January 2016, February 2016, March 2016, and April 2016, Savage requested extensions of time to file transcript purchase orders with the Third Circuit. Each time, Savage's request was granted. On May 13, 2016, Savage filed the transcript purchase order form on the Third Circuit docket, advising the court that transcripts were on file with the District Court.

On June 24, 2016, an Order was entered by the Third Circuit setting July 25, 2016, as the deadline by which Savage must file his brief on appeal. On July 18, 2016, Savage filed a motion for a 180-day extension of time to file his opening brief. On January 30, 2017, the Third Circuit entered an order consolidating Savage's appeal with the appeals of his co-Defendants and granted Savage's request for a stay of the briefing schedule. The parties were directed to file a proposed briefing schedule prior to July 13, 2017. On July 13, 2017, Savage requested that the

---

[1] Savage's trial counsel were permitted to withdraw.

Third Circuit stay its order requesting a briefing schedule for an additional 90 days. Savage contended that the stay is appropriate as he continues his attempts to construct the complete appellate record. The Government opposed Savage's request for a stay. The Third Circuit has scheduled oral argument for September 27, 2017, on Savage's request to stay the briefing schedule.[2]

B. **District Court's Assistance to Appellate Counsel**

From as early as December 2014, over ten members of the District Court staff, including members of Judge Surrick's Chambers, have assisted Defendant's Appellate Counsel, Barry Fisher, Esquire, in numerous requests for information, documents, and transcripts. Chambers staff and Clerk's Office staff have been involved in collecting, copying, and producing documents for Fisher, and communicating with him about his various requests.

In December 2014, upon the request of Appellate Counsel, the Clerk's Office immediately ordered the official record of Savage's criminal case from the Federal Records Center and made it available for Appellate Counsel's review. In mid-January 2015, Appellate Counsel reviewed that file. He requested that the Clerk's Office make copies of numerous documents that comprised the record. The Clerk's Office complied and sent boxes of documents via Federal Express to Appellate Counsel's office in New York.

Appellate Counsel also requested access to all documents that were filed under seal, including any sealed documents that related specifically to co-Defendants, including one co-Defendant, Mackie Dent, who was never charged with Savage in any indictment, and did not

---

[2] Oral argument will also address Savage's motion for relief from the Special Administrative Measures ("SAMs") to which he is subjected at the United States Penitentiary.

testify in Savage's trial.[3] Prior to being given access to the actual documents, he was permitted to review the expanded docket, which included detailed descriptions of each of the sealed documents. Many of the sealed entries related to the appointment of and the authorization of expenses to, various experts and attorneys retained by Defendants. On May 20, 2016, the Court entered an Order unsealing all of the sealed entries for the limited purpose of permitting Appellate Counsel access to the documents. (ECF No. 1657.) After the Order was entered, Clerk's Office staff members immediately began locating and making copies of the 126 sealed documents, and sending them via Federal Express to Appellate Counsel in his New York office. Only eight of those 126 sealed documents related to Savage specifically; the remaining documents were filed on behalf of his co-Defendants and Mackie Dent.

The Clerk's Office also complied with Appellate Counsel's request to transcribe over 30 proceedings that had not yet been transcribed. Of those proceedings, only seven relate in any way to Savage's case; the remaining relate to co-Defendants, and five pre-date Savage even being named in an Indictment. Most of these transcripts appear to be wholly irrelevant to any appeal issues Savage could raise with respect to his conviction and sentence.

Finally, in May 2017, Appellate Counsel requested access to the official record from Savage's 2005 drug conspiracy case before Judge Mary McLaughlin in the Eastern District of Pennsylvania. The Clerk's Office staff ordered the file from the Federal Records Center and notified Appellate Counsel shortly thereafter that it was available for his review. Despite access to the file being granted over four months ago, Appellate Counsel has still not visited the District Court to review the file.

---

[3] Dent was only charged in the First Indictment with Lamont Lewis. Lewis entered into a plea agreement with the Government and testified as a Government witness. Savage was first indicted in the Second Superseding Indictment.

## III. DISCUSSION

Savage filed an appeal of his conviction and sentence nearly three years ago. Since that time, Appellate Counsel has spent more time "compiling the record on appeal" than the District Court and the parties spent on over 60 pretrial motions and associated hearings, a multi-month jury selection process, and a fourteen-week trial. Savage's Motion inaccurately casts blame on the District Court and the Government for not providing him with items he alleges are essential "for a complete and accurate" appellate record. We appreciate the fact that this was a complex capital case, and that Appellate Counsel is under an obligation to aggressively protect his client's rights. For this reason, the District Court has allocated countless hours and resources assisting Appellate Counsel in obtaining every request he has made to date. However, the continued and increasing demands of Appellate Counsel, when viewed in juxtaposition with his repeated continuance requests to the Third Circuit, suggest that this Motion may simply be a tactic to further delay Savage's appeal. This Motion is essentially an unprecedented attempt to conduct a discovery fishing expedition on a district court. Counsel seeks an inordinate amount of information from this Court—including all notes taken by the District Court Judge, all notes taken by every attorney involved in the case, and every e-mail that the District Court Judge's staff exchanged with the parties. This information is unrelated to what comprises a record on appeal. *See* Fed. R. App. P. 10(a). In addition, compiling this information would impose an extraordinary burden on the District Court and the parties. Several of Savage's requests are reasonable and relate to information that comprises the record on appeal. These requests will be granted. However, many of the requests find no support in the law and will be denied.

Appellate counsel requests that the following information be provided by the Court or the Government:

1. Documentary evidence introduced or published by the Government.
2. Recordings introduced or published by the Government.
3. Tangible exhibits admitted or published by the Government.
4. Exhibits introduced or published by the Defendants.
5. Written communications not filed on ECF.
6. The District Court Judge's notes and files, in addition to an Order directing each attorney to provide their notes and files.
7. Docket entries not yet received by Appellate Counsel.
8. Lists of jurors in the case that reflect race and gender.
9. An order from the Court directing that a corrected transcript be filed for April 8, 2013.

We will address each request separately.

### A. Documentary Evidence Introduced or Published By the Government

Appellate Counsel for Savage requests that the Court compel the Government to provide a complete set of the Government's trial exhibits. Appellate Counsel had requested that Government Counsel copy its binder of all Government exhibits admitted during the trial. The Government responded that they did not have a binder that contained a complete set of exhibits admitted at trial, and to recreate one would entail great effort and expense on their part. The Government offered to make available all Government exhibits that were admitted during the

trial for Appellate Counsel to review and copy at his leisure.[4] Appellate Counsel refused the Government's offer, contending it was too burdensome in light of the fact that Counsel is not based in Philadelphia. Counsel insists that the Court compel the Government to undertake the copying and mailing of its exhibits to Appellate Counsel.

Appellate Counsel's refusal is disingenuous. Even though he is based in New York, he has already traveled to Philadelphia for a number of other reasons related to this appeal. Moreover, he has even made requests in this Motion that require additional trips to Philadelphia.[5] We are aware of no authority, and Savage has provided none, that supports his request that the Government be compelled to provide a complete set of admitted exhibits to Appellate Counsel. Accordingly, Savage's request that the Court enter an order compelling the Government to provide Appellate Counsel with these exhibits will be denied. The Government has offered to make the exhibits available for Counsel's review, and should continue to do so.

B. **Recordings Introduced or Published by the Government**

Savage also requests that the Court compel the Government to provide the various recordings that were played for the jury during the trial, including the accompanying transcripts. The Government responds that in November 2014, it provided a DVD disc containing all admitted recordings and transcripts, and that it never heard anything from Counsel about that disc, or its contents, until this Motion. After Savage filed the Motion, the Government sent

---

[4] The Government also reminded Appellate Counsel that he is already in possession of every exhibit because each is contained in the discovery material provided to Counsel. The Government's exhibit list, in most instances, identifies where in the discovery material the exhibit may be located.

[5] For example, Savage requests that the Court compel the Government to permit his counsel to examine all tangible exhibits admitted or published by the Government during the trial, including demonstrative or oversized exhibits. The examination would necessarily have to take place in Philadelphia.

7

another DVD disc containing all of the recordings and transcripts. As a result, this request appears to be moot.

C. **Tangible Exhibits Admitted or Published by the Government**

Savage also requests that the Government, through the FBI, make available to Appellate Counsel all tangible exhibits—including the guns, drugs, ammunition and cocaine presses—that were admitted during the trial. Savage contends that examination of these exhibits is "essential for [his] counsel to familiarize themselves with the entire record on appeal so that they can identify all viable appellate claims." (Savage Mot. 13.) Savage does not say how examining tangible exhibits will assist in determining appellate issues. He seeks to compile an appellate record, not a trial record. His trial attorneys reviewed each tangible item prior to trial, and did not file any motions *in limine* seeking to exclude their admission at trial. Again, Savage has failed to provide any authority, and we are aware of none, that would support this request. Each admitted tangible exhibit is described on the record as reflected in the trial transcripts. This is sufficient for purposes of determining appellate issues. Accordingly, Savage's request that an Order be entered compelling the Government to provide every tangible exhibit admitted during trial for Appellate Counsel's examination will be denied.

D. **Exhibits Introduced or Published by Defendants**

Savage requests that the Court make available all exhibits introduced or published by Defendants. Appellate Counsel contends that Savage's trial counsel, Christian Hoey, and counsel for co-Defendant Kidada Savage, Teresa Whalen, represented that they provided all defense exhibits to the Court "for safekeeping." (Savage Mot. 14.) Counsel is mistaken. The only defense exhibits that the Court agreed to store, and indeed is in possession of, are Defendants' oversized demonstrative poster boards. Generally, the policy of the Clerk of Court

is to deny requests by parties to store exhibits. It is the responsibility of counsel to store exhibits. Appellate Counsel may examine the oversized demonstrative poster boards that the Court has in its possession. It is the Court's understanding that Appellate Counsel will be in Philadelphia for oral arguments scheduled in the Third Circuit on September 27, 2017. We will make these exhibits available for Appellate Counsel's review on that day. Counsel should contact Chambers to set up a convenient time for his review.

    E.    **Written Communications (Letters, Emails, Courtroom Submissions, and Other Communications) Not Filed on ECF**

Savage also requests "letters, courtroom submissions, e-mails and other written communications between counsel and the Court." (Savage Mot. 15.) This request constitutes an unprecedented and unfounded discovery request on a district court. Savage contends that these communications involved substantive legal issues. This is simply incorrect. The Court has already explained to Counsel that any substantive matters that involved any aspect of this case are reflected on the docket.

In any event, the e-mails and correspondence at issue do not constitute the record on appeal. Rule 10(a) of the Federal Rules of Appellate Procedure defines the record on appeal. It provides:

> (a) Composition of the Record on Appeal. The following items constitute the record on appeal:
>     (1) the original papers and exhibits filed in the district court;
>     (2) the transcript of proceedings, if any; and
>     (3) a certified copy of the docket entries prepared by the district clerk.

Fed. R. App. P. 10(c). All of the documents reflected in Rule 10(c) have been provided to Appellate Counsel.

Savage argues that he is entitled to this discovery under Appellate Rule 10(e), which provides a mechanism to correct or modify a record on appeal "[i]f any difference arises about

9

whether the record truly discloses what occurred in the district court . . . ." Fed. R. App. P. 10(e)(1). This Rule presupposes an actual omission or mistake reflected in the record on appeal. Fed. R. App. P. 10(e)(2) ("If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected."). Rule 10(e) does not broaden what constitutes the record on appeal, as stated in Rule 10(a). Nor does it allow for unbridled discovery on a district court. The cases relied upon by Savage simply do not support this extraordinary discovery request. (*See* Savage Mot. 8 n.6.)[6] Savage's request for written communications not filed on ECF will be denied.

---

[6] For example, in *Dobbs v. Zant*, 506 U.S. 357, 358 (1993), a death penalty case, the Supreme Court reversed the Eleventh Circuit's decision to not consider the sentencing transcript on habeas review, noting the "importance of reviewing capital sentences on a complete record." Unlike in *Dobbs*, in Savage's case, the complete pre-trial, trial, and sentencing proceedings were transcribed and made part of the docket. *Dobbs* does not support Savage's request for unfettered access to District Court files. In *Roberts v. Ferman*, 826 F.3d 117, 123 (3d Cir. 2016), the court addressed the failure of a party to comply with Rule 10(c) in producing a statement after it was discovered that the actual trial transcripts could not be found. Here, every substantive aspect of this case is transcribed and reflected on the docket: the pretrial hearings, the jury *voir dire*, the trial, including all substantive sidebar conferences, and each Defendant's sentencing. In *Simmons v. Beyer*, 44 F.3d 1160, 1168 (3d Cir. 1995), a case that did not even discuss Rule 10, the court held that the appellant sufficiently raised a *Batson* claim despite the absence of *voir dire* transcripts. *Simmons* is inapposite to this case. The case *United States v. Negron-Sostre*, 790 F.3d 295, 300-06 (1st Cir. 2015), is unrelated to the issues presented here. In that case, the First Circuit ordered a new trial after finding that the district court erred by closing the courtroom during jury selection. *Id.* The case has nothing to do with the record on the appeal, supplementing that record, or Federal Appellate Rule 10. In *United States v. Moreno*, 857 F.3d 723, 727 (5th Cir. 2017), the court rejected the appellant's argument that the court showed deference to the Government as revealed by an e-mail that was never made a part of the record. *Moreno* does not authorize discovery, nor does it address what may or may not be made part of a record on appeal. *Moreno* has no application here. Savage has not alleged that there are omissions from the record. He has not identified a single document that is not reflected on the docket that should be made a part of the record. Instead, he asks for access to every document or communication ever made about this case. Such broad discovery on a district court is simply not permitted.

### F. The Court's Files and an Order Directing Production of Files of Attorneys

Savage also requests the personal notes and files of the District Court Judge, and of every attorney involved in the case. Specifically, Appendix E to Savage's Motion is a list of nearly fifty "sidebars, conferences, and other unrecorded proceedings" that Savage believes should have been transcribed. Because they were not transcribed, he requests "the notes or other records" drafted by the District Court and every attorney that participated in the case "memorializing, summarizing, or otherwise documenting these, or any other, sidebars, conferences, and other such unrecorded proceedings." (Savage Mot. 21.)

Most of the Chambers conferences or telephone conferences dealt with scheduling issues. Eleven attorneys were involved in the case, and coordinating everyone's schedules consumed substantial time and effort. Contrary to Appellate Counsel's representation, sidebar conferences that involved substantive matters such as evidentiary objections were transcribed and are reflected in the trial transcripts that are published on the docket. In the event that any sidebar conference may have touched on substantive matters, the Court and the parties were diligent in assuring that the record reflected those matters. (*See, e.g.*, April 24, 2013 Trial Tr. 118-119, ECF No. 1393.) In those limited instances, whatever was discussed off the record was restated on the record and transcribed. (*Id.*)

Even if the unrecorded "proceedings" were substantive or relevant, there is a procedure available to Appellate Counsel in the Federal Rules. Specifically, Rule 10(c) provides as follows:

> **(c) Statement of the Evidence When the Proceedings Were Not Recorded or When a Transcript is Unavailable.** If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days after being served. The statement and any objections

11

or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

Fed. R. App. P. 10(c). In the event that Savage believes that any of the fifty "unrecorded proceedings and conferences" involved substantive matters, he may submit a statement in accordance with Rule 10(c). Nowhere in Rule 10(c), however, or in any of the Federal Rules for that matter, are litigants entitled to discovery from a district court or from attorneys. *See, e.g., United States v. Casa*, 376 F.3d 20, 22-23 (1st Cir. 2004) (denying the appellant's request to internal court memoranda drafted by district court judgment because (1) they are confidential, (2) there is no authority that supports production of the memoranda, and (3) memoranda are not a part of the district court record, as defined by Rule 10(a) of the Federal Rules of Appellate Procedure); *United States v. Honken*, 477 F. Supp. 2d 1004, 1006 (N.D. Iowa 2007) ("Nothing in [Rule 10(c)], however, suggests that the appellant is entitled to discovery of the appellee's (or the court's) notes, memoranda, or other records concerning the proceedings in question; instead the Rule contemplates that the appellant will rely on the 'best available means' at his disposal, 'including the appellant's recollection.'"). Savage has not cited, and indeed, the Court has not found, any authority that would permit discovery from this Court or from the attorneys involved in the case. Accordingly, Savage's request for discovery of this information will be denied.

G. **Items Listed on the Docket Not Yet Received**

Savage also requests access to documents reflected on the docket but that he has not yet received. Specifically, he requests 30 items from the docket. Twenty-three of these documents are minute sheets, which are internal court documents that are meant to reflect time spent for purposes of reporting to the Administrative Office. In most instances, the information that is contained in the minute sheet is also reflected on the minute entry for that minute sheet.

12

District Court staff searched its internal files and searched the official records that were ordered from off-site. Based on that search, many of the missing docket items will be provided to Appellate Counsel. Some of the items were not located and cannot be provided. Most of the missing items are minute sheets from the years 2007 through 2012, before district courts in this District made it a practice to upload minute sheets for viewing on the online public dockets. Thus, in all likelihood, those minute sheets were lost or do not exist.

### H. Jury Lists

Savage requests that the Court provide Appellate Counsel with:

> any lists (including lists reflecting race and gender), which it or its staff possess of (a) the seated jurors, (b) the jurors who were peremptorily struck by each side, (c) the jurors who appeared for *voir dire*, and (d) the jurors who were summoned.

(Savage Mot. 22.) We note that this reads like a discovery request on a district court, which is improper. However, we agree with Savage that jury composition could serve as an appellate issue since jury composition was raised by defense in pretrial motions. Accordingly, we will provide Appellate Counsel and the Government a list of all jurors that reported for duty in this case. Because an anonymous jury panel was maintained throughout the jury selection process and trial, the names and identifying information about the jurors have been omitted. Included on the list is the following information: (1) juror number; (2) age; (3) marital status; (4) county; (5) race; and (6) gender. Appellate Counsel may refer to the docket and the jury selection transcripts for information about which of these jurors were seated, peremptorily struck, or appeared for *voir dire*.

I. An Order Directing that a Corrected Transcript be Filed for April 8, 2013

Finally, Savage asks that the Court compel the Court Reporter that transcribed the trial on April 8, 2013, to file a corrected transcript. Specifically, Savage argues that "a slight but potentially significant transcription error" occurred on this date. (Savage Mot. 22.)

The portion of the transcript comprises testimony by a Government witness, Bienvenido Morales. Morales testified that Savage's co-Defendant, Robert Merritt, confided in him about the fire-bombing. Morales states:

> Like I said, [Merritt] never said he burned – he said he was the driver. He said, they were supposed to burn the house down to *square* Twin's family to stop Twin from testifying and whoever else thought about telling on Kaboni.

(April 8 Trial Tr. 73-74, ECF No. 1379 (emphasis added).)

Savage believes that Morales stated that burning down the house was to "scare" Twin's family, and not to "square" Twin's family. The proceedings that occurred on this day were transcribed by the Court Reporter; no recording of them exists. Therefore, the Court has no way to independently confirm Morales' testimony. After transcripts are provided to the parties, counsel are permitted to submit any corrections prior to the final transcripts being filed on the docket. No corrections were submitted with respect to the April 8, 2013 transcript. Now, over four years later, Appellate Counsel wishes to make a correction. It seems likely that Morales said "scare" as opposed to "square."[7] However, the Court has no ability to confirm the alleged mistake. Accordingly, Savage's request for an Order compelling the Court Reporter to file a corrected transcript will be denied. We will reconsider this ruling if all counsel agree that this was a transcription error.

---

[7] However, one definition of "square" includes "to even the score of." Merriam-Webster's Dictionary (10th ed.) at 1137. Although unlikely, Morales could have meant square given the context of his testimony.

## IV. CONCLUSION

For these reasons, Defendant-Appellant Kaboni Savage's Motion for a Complete and Accurate Record for Appeal will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.