IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 2:07-cr-00550-RBS |
| | ) | |
| v. | ) | |
| | ) | |
| KABONI SAVAGE, | ) | Hon. R. Barclay Surrick |
| | ) | |
| | ) | **CAPITAL CASE** |
| Defendant. | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR LIMITED DISCLOSURE OF JUROR IDENTITIES AND LEAVE TO CONTACT JURORS**

The defense motion seeks nothing more than the same opportunity to investigate and present post-conviction constitutional claims that other similarly situated capital defendants across the country have. In death penalty cases, investigation of potential claims involving jurors is professionally mandated. *See* ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (2003) Guidelines 10.7, commentary fn. 197; 10.15.1(E)(4); 10.10.2, commentary fn. 260. Such investigation has been the foundation of judicial reversals of unconstitutional federal death sentences. *See, e.g., United States v. Fell*, 2014 WL 3697810, * 40 (D. Vt. Jul. 24, 2014); *Sampson v. United States*, 724 F.3d 150 (1st Cir. 2013). *See also Williams v. Taylor*, 529 U.S. 420, 440-43 (2000) (reaching merits of a juror bias claim in federal habeas proceedings). Allowing the government to execute Mr. Savage without affording him this same opportunity would be arbitrary and unjust. *Gregg v. Georgia*, 428 U.S. 153, 188 (1976) (holding that the Eighth Amendment prohibits the arbitrary imposition of death).

1

**I.      That an anonymous jury was empaneled at trial does not bar the limited disclosure of information to Mr. Savage's defense team during post-conviction.**

Much of the government's opposition is a recapitulation of its original argument for having an anonymous jury, an issue that was not disputed at Mr. Savage's trial because his trial lawyers acceded to the request. *See* Doc. 1739 (hereinafter "Response") at 5-10. *See also* Docs. 441, 479, 601, 602. While the potential prejudice arising from the anonymous jury, as well as his lawyers' failure to challenge it, are appropriate claims in a 28 U.S.C. § 2255 motion, they are not at issue in the instant Motion. The anonymous trial has already happened; the question now is whether the government should be able to use the anonymity order as a permanent shield to obstruct a legitimate inquiry and bar Mr. Savage from investigating and raising an entire class of potential constitutional claims. *See* 18 U.S.C. 221 (Section 3432 allowing for the withholding of juror information falling exclusively under "Chapter 221: ARRAIGNMENT, PLEAS AND TRIAL"); *United States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) ("Indeed, stronger reasons to withhold juror names and addresses will often exist *during* trial than *after* a verdict is rendered.") (citation omitted) (emphasis in original).

The cases cited in the Response are largely non-capital cases that are decades old. Most importantly, none of them address the post-conviction disclosure requested here.[1] While the government invokes the three other federal capital cases tried anonymously in this district, it

---

[1] Further, because trial counsel here agreed to an anonymous jury, undersigned counsel must also investigate whether that decision—especially without any discernible effort to preserve an opportunity for post-verdict investigation—was prejudicial to Mr. Savage.

sidesteps their outcomes. *See* Response at 3.[2] **None** of the defendants in *Phillips*, *Williams*, or *Llera-Plaza* were sentenced to die. Further, where those defendants were without counsel during their one and only post-conviction proceeding (Mr. Llera-Plaza did not even manage to file a timely *pro se* Motion to Vacate), these cases are hardly appropriate foils to assess the heightened reliability demanded by the Constitution where a post-conviction petitioner faces execution. *Lowenfield v. Phelps*, 484 U.S. 231, 238-39 (1988) (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed.") (citation omitted).

The government also insists that allowing the limited disclosure sought in the Motion would break a "promise" to Mr. Savage's jury. Response at 11. Whether the language on the juror questionnaire promised permanent anonymity is highly debatable where it was couched in the need to protect the prospective jurors' ability to remain impartial during the trial. *See* Juror Questionnaire at 2-3. Further, this Court encouraged the jurors to talk to whomever they pleased about the case at its conclusion, signaling that the need for anonymity had ceased. *See* Trial Tr. 6/13/13 at 5-6. Indeed, if – as the government now appears to contend – the jurors were primed to believe that Mr. Savage was so dangerous that the Court needed to permanently protect their anonymity, then it is hard to see how they could have fairly and impartially deliberated where the government's express argument for executing Mr. Savage was that he would be dangerous in the future.

---

[2] Nor did the government provide their citations. They are: *United States v. Phillips et. al.*, 2:07-cr-00549-PD; *United States v. Williams*, 2:01-cr-00512-MSG; and *United States v. Gonzalez et. al. (Llera-Plaza),* 2:98-cr-00362.

3

## II. There is nothing improper about speaking with jurors after a trial.

The government generally maligns the practice of post-conviction juror investigation by defense counsel and their investigators. Response at 11. Among other adjectives, it calls counsel's requests "reckless and irresponsible." *Id.* at 2. This hostility is baseless. Firstly, undersigned counsel are rule-abiding officers of this Court and over a dozen others; they have decades of experience conducting interviews in serious criminal cases. Second, many jurisdictions, including Pennsylvania, allow the parties to contact jurors after trial with little or no restriction.[3] Prosecutors, too, seek such contact when they believe it to be important.[4]

Finally, as this Court expressly reminded Mr. Savage's jury at the end of the case, jurors who don't wish to speak about the case are free to decline any post-conviction interview requests. *See* Trial Tr. 6/13/13 at 5-6 ("At this point, you are free to talk to anybody about this case, and it is entirely up to you. If you choose to talk to anyone, you certainly may. If you choose not to talk to anyone, you certainly may, also."). The jurors in this case should be allowed to decide whether

---

[3] For example, at least as of 2020 the following federal districts did not require court permission or otherwise limit counsel from contacting and interviewing jurors after criminal trials: D. AK, C.D. CA, E.D. CA, N.D. CA, S.D. CA, D. DE, N.D. FL, D. Guam, D. HI, D. ID, D. ME, D. MA, E.D. MI, W.D. MI, D. MN, W.D. MO, D. NE, D. NV, D. NM, E.D. NY, N.D. NY, S.D. NY, W.D. NY, E.D. NC, M.D. NC, W.D. NC, D. ND, D. NMI, N.D. OH, E.D. OK, D. OR, W. D. PA, D. RI, D. SC, W.D. TX, D. UT, and D. WY.

[4] *See, e.g., United States v. Fumo*, 639 F. Supp. 2d 544, 553 n.4 (E.D. Pa. 2009) (faulting defense counsel for **not** requesting juror interviews pursuant to Local Rule 24.1(c) and confirming that had counsel done so, the Court would have been disinclined to grant the United States Attorney's Office for the Eastern District of Pennsylvania its desired "unfettered access to the jurors in question").

they wish to speak with counsel, rather than have the Court and the prosecutor effectively decide for them by perpetuating an anonymity order.[5]

Even when jurors, either by their own election or a Court's order or rule, do not speak with the parties, counsel (just like any other member of the public) can normally access available information in the public domain that may be relevant to potential claims. Perpetuating an anonymity order also prevents this essential desk investigation and forecloses constitutional relief like that granted in *Sampson v. United States*, 724 F.3d 150 (1st Cir. 2013) (vacating death sentence after public records revealed juror bias and misrepresentations during jury selection).

The government's insinuations notwithstanding, there is nothing improper about either variety of investigation. *See Wecht*, 537 F.3d at 238 (quoting *In re Globe Newspaper Co.*, 920 F.2d 88, 94 (1st Cir. 1990)) (recognizing that "information about jurors, obtained from the jurors themselves or otherwise" can benefit the judicial system, and that "public knowledge of juror identities could also deter intentional misrepresentation at voir dire.").[6] Finally, the government's cries of "cyber-stalking" are particularly not well taken where the government has admitted to conducting such searches regarding members of Mr. Savage's current defense team. *Compare* Response at 11 *with* Doc. 1726 at 18.

---

[5] Notably, this Court grants blanket permission for parties to attempt to interview jurors in civil cases. *See* Honorable R. Barclay Surrick, Chamber Rules: Civil Cases: Jury Deliberations: Rule 7 "Interviewing the Jury". If the need for juror privacy does not trump the need to ensure the reliability of civil judgments, it should not trump the reliability of a death sentence.

[6] As the government points out, the Motion cited only to the imbedded case for this proposition. (See Response at 12). The correct citation should have been to the Third Circuit case *Wecht*, quoting *Globe*, as cited here.

**III.     A protected disclosure only to counsel does not present any danger to jurors.**

The government repeats its familiar litany of decades-old offenses, statements, and allegations regarding Mr. Savage. Response at 4-5. These assertions are not relevant where Mr. Savage will never know the name or identifying information of any juror. The government still prophesizes that a limited release of names will "undoubtedly result in a motion and hearing, in which jurors' identities would be publicized to everyone." Response at 2.[7]

These concerns are both baseless and unripe. Counsel will not reveal the names of any jurors in any motion. If investigation gave rise to a meritorious constitutional claim, and if it were necessary to reveal names to communicate any claims to the Court, that would be done under seal as this Court has allowed for innumerable other pleadings in this case containing sensitive information. Likewise, if such a claim required a hearing, counsel has no doubt the Court could and would take appropriate measures to protect the disclosures of the names, just as it did when the same jurors participated in voir dire and a months-long trial in this case.

**IV.     Local Rule 24.1 requires only that counsel seek permission from the Court, and counsel has complied with the rule.**

The government attempts to graft a good cause requirement onto jury interviews where it does not exist. *See* Response at 1 (There is simply no evidence of [misconduct]."); Response at 12 ("Factually, there is no evidence of juror misconduct…[o]nly in such cases would it be permissible for post-trial jury interviews to be permitted.") (citing out of district, non-capital cases dealing with verdict impeachment.) Firstly, Mr. Savage does not seek to impeach the jury's verdict. Rather,

---

[7] The government simultaneously protests that the instant Motion "claims Constitutional rights that do not exist" (Response at 2) but that the requested juror investigation would "undoubtedly" lead to a hearing under §2255. *Id.* Both things cannot be true. *See* 28 U.S.C. §2255 (a) and (b).

6

his counsel seeks to investigate cognizable claims of constitutional error. *See Sixberry v. Buster*, 88 F.R.D. 561, 562 (E.D. Pa. 1980) ("In those instances in which such questioning of jurors is allowed, it is limited for the purpose of allowing counsel to investigate possible irregularities that might provide grounds for a new trial.") (citation to ABA formal opinion omitted).

Second, instances of juror misconduct—by their very nature—are shrouded. Often, there is no "evidence" of misconduct until jurors are affirmatively engaged. In *United States v. Fell*, for example, no specific showing of suspected misconduct was proffered to the court. Rather, counsel for Mr. Fell, who was under a sentence of death, provided *ex parte* notice to the district court of his intention to interview jurors. *See United States v. Fell*, 5:01-cr-00012-wks (D. Vt.) (Doc. 391). Notably, juror interviews were permitted without notice to or input from the government. *See generally Fell* Docket. Counsel's juror interviews triggered a veritable avalanche of misconduct, including juror-on-juror intimidation, lies on juror questionnaires, unauthorized crime scene visitation, and other external influences. After further *in camera* questioning of select jurors, the Court vacated the death sentence. *United States v. Fell*, 2014 WL 3697810 (D. Vt. July 24, 2014).[8] Just as in *Fell,* the fact that Mr. Savage faces execution more than establishes cause to allow jury interviews under Local Rule 24.1, a rule that does not require cause. Defense counsel take their responsibilities to this Court seriously. Any lingering concerns about the scope, operation and effectiveness of the limited disclosure sought in the Motion can be discussed and resolved between counsel and this Court. They are not a basis to deny the Motion.

---

[8] In *Fell*, too, the government's position was that the jury should be anonymous; however, the trial court denied its motion. *See* Minute Entry (4/8/2005).

## V. Conclusion

For the above reasons and those stated in the Motion, counsel for Mr. Savage requests that the Court grant his motion for the limited disclosure of identifying juror information to defense counsel under a protective order and permit the defense team to interview the jurors from this case.

Respectfully submitted,

*/s/ Bridget L. Kennedy*
Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
bridget_kennedy@fd.org
614-469-4141

*/s/ Ryan Norwood*
Ryan Norwood
NH Bar 15604
*/s/ Kathryn Bailey*
Kathryn Bailey
PA ID 308242

Assistant Federal Public Defenders
Capital Habeas Unit
Office of the Federal Public Defender
Western District of Pennsylvania
1001 Liberty Avenue, Ste. 1500
Pittsburgh, PA 15222
ryan_norwood@fd.org
kara_bailey@fd.org
(412) 644-6565

ATTORNEYS FOR KABONI SAVAGE

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

*/s/ Bridget L. Kennedy*
Bridget L. Kennedy
CA Bar 253416; OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
bridget_kennedy@fd.org
614-469-4141

ATTORNEY FOR KABONI SAVAGE