**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal No. 2:07-cr-00550-RBS** |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KABONI SAVAGE,** | ) | **Hon. Chad F. Kenney** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**EXHIBITS IN SUPPORT OF MOTION FOR DISCOVERY AND
MEMORANDUM OF LAW**

| Exhibit No. | Description |
|---|---|
| 1 | Letter to Philadelphia DAO Requesting Files |
| 2 | Philadelphia DAO Open-File Discovery Policy |
| 3 | Katherine Ernst Email to Kara Bailey 1/31/2023 |
| 4 | Oct. 19, 2009, Discovery Letter for Batch 2 |
| 5 | July 29, 2011, Discovery Letter for Batch 6 |
| 6 | *Philly DA: Evidence hidden in 2003 case,* THE PHILADELPHIA INQUIRER, Nov. 15, 2021 |
| 7 | *Justice…Three decades late,* PHILADELPHIA DAILY NEWS, Dec. 2, 2021 |
| 8 | Dawud Bey's Interview Record Notes |
| 9 | Kaboni Savage's Interview Record Notes |
| 10 | FBI FD-302 of Source on 1/28/2002 |
| 11 | David Troyer email to Barry Fisher 1/24/2018 |
| 12 | Handwritten Notes |
| 13 | Handwritten Notes |
| 14 | Investigation Activity Sheet |
| 15 | FBI FD-302 of Source on 9/20/2000, 9/17/2000 and 9/8/2000 |
| 16 | Excerpt from Drug Trial Discovery Index |
| 17 | Search Warrant, Filed Under Seal |
| 18 | FBI Property Items Seized from Search |
| 19 | Photograph of Toliver's Pants |
| 20 | White Paper Homicide Information, 4/8/2003 |

| 21 | FBI FD-302 of Oscar Francis on 11/16/2011 |
| 22 | FBI FD-302 of Confidential Source on 4/10/2002 |
| 23 | Minute Orders Commonwealth v Lamont Lewis |
| 24 | Dolores Policarpo Email to Angela Valdez 7/31/2012 |
| 25 | FBI Confidential Human Source Reporting Document |
| 26 | FBI FD-302 of Source on 7/2/2004 |
| 27 | Philadelphia Police Memorandum Requesting Radio Tapes |
| 28 | Crime Scene Photos from Kenneth Lassiter Murder |
| 29 | Tips to Philadelphia Police Department 6/18/2005 |
| 30 | FBI FD-302 of Source on 11/26/2001 |

Respectfully submitted,

*/s/ Bridget L. Kennedy*
Bridget L. Kennedy
OH Bar 100802
Assistant Federal Public Defender
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
bridget_kennedy@fd.org
(614)-469-4141

*/s/ Natalie Olmstead*
Natalie Olmstead, Chief
OH Bar 85977
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
Natalie_olmstead@fd.org
(614)-469-4141

*/s/ Ryan Norwood*
Ryan Norwood
PA Bar 332919
Assistant Federal Public Defender
Office of the Federal Public Defender
District of Nevada
411 E. Bonneville St.
Las Vegas, NV 89101
ryan_norwood@fd.org
(702) 388-6577

ATTORNEYS FOR KABONI SAVAGE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically through the ECF

system and notice sent to counsel of record for all parties on this date.

*/s/ Natalie Olmstead*
Natalie Olmstead, Chief
OH Bar 85977
Capital Habeas Unit
Office of the Federal Public Defender
Southern District of Ohio
10 West Broad Street, Suite 1020
Columbus, OH 43215
Natalie_olmstead@fd.org
(614)-469-4141

ATTORNEY FOR KABONI SAVAGE

January 29, 2023

Zoe Raney
Paralegal, Federal Litigation Unit
Philadelphia District Attorney's Office
*via email zoe.raney@phila.gov*

**Re: DAO files directly relevant to Kaboni Savage**

Dear Ms. Raney,

Happy New Year. I hope this letter finds you well and as rested as our work allows. I represent Mr. Kaboni Savage, a former Philadelphia resident who is currently on federal death row at ADX in Florence, Colorado.

I am writing to formally request open file discovery for several homicide cases investigated and/or tried by your office that directly bear on Mr. Savage's capital convictions. I direct this letter to your attention, as I am aware that both Mr. George and Mr. Stiegler previously represented my client's codefendants. If this letter is more appropriately directed to someone else, kindly forward it on my behalf.

Though my client was ultimately sentenced to death as the result of a federal RICO prosecution, the DAO's years-long involvement in the underlying capital counts is clear. My team's access to the relevant DAO files is supported by the current DAO Policy on Open-File Discovery (effective 10/1/2020). Particularly given the primacy of informant testimony in this capital case, the DAO's commitment to fairness and error reduction cannot be achieved without full disclosure of the evidence within the DAO's possession and control.

The relevant cases for which we seek open file discovery are:

1) All DAO files and the PPD H-file relating to the murder of Kenneth Lassiter
   o Date of homicide: March 19, 1998
   o Location: 8th and Butler
   o Relevance to Mr. Savage: this homicide was charged under the RICO indictment
   o The DAO prosecuted Mr. Savage for this murder at CP-51-CR-0301121-2000
   o We also seek review of co-d Anthony Mitchell's file at CP-51-CR-0306561-1999

2) All DAO files and the PPD H-file relating to the murder of Mansur Abdullah aka Shafiq aka Shafeeq aka Robert Yates
   o Date of homicide: September 6, 2000

- o    Location: 4200 N. Park Avenue
- o    Relevance to Mr. Savage: this homicide was charged under the RICO indictment

3)  All DAO files and the PPD H-file relating to the murder of Ronald Walston, aka Pumpkin
- o    Date of homicide: August 29, 2001
- o    Location: 8th and Butler
- o    Relevance to Mr. Savage: at Mr. Savage's federal capital trial, the government alleged that Carlton Brown's murder (charged in the federal indictment) was motive/retaliation for Walston's murder

4)  All DAO files and the PPD H-file relating to the murder of Carlton Brown, aka Mohammed aka Charlton Brown
- o    Date of homicide: September 13, 2001
- o    Location: 64th and Lindbergh Boulevard
- o    Relevance to Mr. Savage: this homicide was charged under the RICO indictment
- o    The DAO tried Mr. Savage's federal co-defendant Lamont Lewis multiple times for this homicide at CP-51-CR-0400021-2005 [Lamont is sometimes spelled "Lomont"]

5)  All DAO files and the PPD H-file relating to the murder of Mustafa Bey
- o    Date of homicide: October 1, 2001
- o    Location: roadway outside of Big Faces Lounge (8th and Venango)
- o    Relevance to Mr. Savage: The prosecution alleged that Bey was killed in an attempt to shoot Mr. Savage's codefendant turned cooperator Lamont Lewis in retaliation for the Brown murder (see #4)
- o    The DAO has maintained in pleadings that the Walston murder (#3), the Brown murder (#4) and the Bey murder (#5) are inextricable from each other and should be considered together. *See, e.g.* Commonwealth's Motion to Admit Evidence of Prior Shootings, CP 0504-0002 1/1, filed April 16, 2006.

6)  All DAO files and the PPD H-file relating to the murder of Barry Parker
- o    Date of homicide: February 26, 2003
- o    Location: 3965 N. Franklin Street (n/e corner of Franklin and Luzerne)
- o    Relevance to Mr. Savage: this homicide was charged under the RICO indictment
- o    The DAO prosecuted Steven Northington, Mr. Savage's federal co-defendant, for this murder under the name Rickie Brown at CP-51-CR-0707961-2005

7)  All DAO files and the PPD H-file relating to the murder of Tyrone Toliver
- o    Date of homicide: March 14, 2003
- o    Location: Palmetto Street; body recovered: 2000 Valetta Street
- o    Relevance to Mr. Savage: this homicide was charged under the RICO indictment
- o    The DAO charged Eugene Coleman for this murder at CP-51-CR-1100661-2003, in which a plea agreement was reached; Coleman was the star prosecution witness at Mr. Savage's federal trial

8) All DAO files and the PPD H-file relating to the murder of Kareem Bluntly aka Brian Pride aka Bryant Pride
   o Date of homicide: January 9, 2004
   o Location: 1727 W Master Street
   o Relevance to Mr. Savage: Kareem Bluntly was a crucial informant for the government against Mr. Savage
   o The DAO prosecuted at least Michael Carthon for this murder at CP-51-CR-1003521-2004

9) All DAO files and the PPD H-file relating to the murder of Tybius Flowers
   o Date of homicide: March 1, 2004
   o Location: outside of 3755 N. 8th Street
   o Relevance to Mr. Savage: this homicide was charged under the RICO indictment

10) All DAO files and the PPD H-file relating to the deaths of Marcella Coleman, Sean Rodriguez, Tameka Nash, Khadijah Nash, Damir Jenkins and Tajh Porchea
   o Date of homicides: October 9, 2004
   o Location: 3256 N 6th Street
   o Relevance to Mr. Savage: these homicides were charged under the RICO indictment

Having gone through the DAO open file review process in other capital cases, I appreciate the volume of this request and the considerable work it requires on your end. However, as Mr. Savage faces a federal habeas petition deadline in May 2023, we would appreciate if our request could be considered on an expedited basis.

I have attached my appointment order in this case. Please let me know if there is anything else you require. I will follow up with you soon. Thank you in advance for your assistance.

Sincerely,

Kathryn (Kara) Bailey
Assistant Federal Public Defender
Counsel for Kaboni Savage

\enclosure (federal appointment order signed by Judge Surrick)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 2:07-cr-00550-RBS |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KABONI SAVAGE, | ) | Hon. R. Barclay Surrick |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

## ORDER

AND NOW, this 3rd day of September, 2021, upon consideration of Kaboni Savage's

*Motion for Appointment of Counsel*, it is hereby

ORDERED as follows:

1. Kaboni Savage's motion is GRANTED.

2. The Federal Public Defender's Office for the Western District of Pennsylvania and the

   Federal Public Defender's Office for the Southern District of Ohio are hereby

   appointed to represent defendant Kaboni Savage in post-conviction proceedings,

   including the preparation of a motion under 28 U.S.C. § 2255.

Honorable R. Barclay Surrick
United States District Judge

Savage Motion for Discovery Exhibit 1

# Philadelphia DAO Policies on: (1) Disclosure of Exculpatory, Impeachment, or Mitigating Information, (2) Open-File Discovery



Effective Date: 10/1/2020

Subject to any future changes in the law, this sets forth the office's policies regarding: (1) the disclosure of exculpatory, impeachment, or mitigating information, pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and its progeny; Rule 573 of the Pennsylvania Rules of Criminal Procedures; Rule 3.8 of the Pennsylvania Rules of Professional Conduct; and Rule 3.8(g) & (h) of the American Bar Association Model Rules of Professional Responsibility, as well as (2) open-file discovery.

## I. The Disclosure of Exculpatory, Impeachment, or Mitigating Information

A. The Law and Ethics

- In Brady, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963).

- Pa.R.Crim.P. 573(B)(1)(a) requires that a prosecutor disclose "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth."

- Pa.R.P.C. 3.8(d), in turn, requires a prosecutor in a criminal case to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."

- ABA Model R.P.C. 3.8 (g) addresses a prosecutor's post-conviction obligation to disclose Brady evidence by specifically stating that "[w]hen a prosecutor knows of new, credible and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall: (1) promptly disclose that evidence to an appropriate court or authority,

1

Savage Motion for Discovery Exhibit 2

and (2) if the conviction was obtained in the prosecutor's jurisdiction, (i) promptly disclose that evidence to the defendant unless a court authorizes delay, and (ii) undertake further investigation, or make reasonable efforts to cause an investigation, to determine whether the defendant was convicted of an offense that the defendant did not commit.

- ABA Model R.P.C. 3.8 (h) also requires a prosecutor to seek to remedy a conviction when he or she is aware of clear and convincing evidence which establishes that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit.

## B.  Guidance

Information is *exculpatory* if it tends to excuse, justify, or absolve the guilt of a defendant. *Impeachment* information refers to a subcategory of exculpatory information that can be used to attack the credibility of a Commonwealth witness. Although it may sometimes be more difficult to identify, courts have treated impeachment information as significant because the truthfulness and reliability of a given witness may ultimately be determinative of a defendant's guilt or innocence. Information is *mitigating* if it tends to reduce the moral blameworthiness of the defendant.

While such definitions are facially simple, any application of these definitions to a given case requires a fact-specific analysis with the understanding that disclosure compliance is contextual.

It is important to understand, however, that questions of evidentiary materiality should *not* factor into a prosecutor's determination of which pieces of information qualify as exculpatory, impeaching, or mitigating. A prosecutor has the obligation to disclose exculpatory, impeaching, or mitigating evidence—full stop.

For purposes of these Policies, this office considers the court-determined constitutional obligations laid down in Brady and its progeny to be co-extensive with the rules-based obligations observed by the Commonwealth set out in the rules of criminal procedure and professional conduct as well as the ABA Model Rules' extension of prosecutorial disclosure obligations in the post-conviction realm.

## C.  Policy

Assistant district attorneys must understand and comply with their constitutional, statutory, and ethical duties to disclose exculpatory, impeaching, and mitigating information to the defense. These duties exist regardless of the particular form of the information (i.e., written v. oral, recorded v. unrecorded) and regardless of whether the criminal case is resolved via plea or trial.

In the event that an assistant district attorney is uncertain about disclosure or concludes that disclosure is in fact not required, that attorney shall consult with his or her supervisor regarding the matter. In cases where an assistant district attorney decides to withhold information, he or she must document and be prepared to articulate a basis for that decision. If additional guidance is needed regarding whether information falls within an assistant district attorney's

Savage Motion for Discovery Exhibit 2

constitutional, statutory, or ethical disclosure obligations, the Conviction Integrity Unit should be consulted.

Any disclosure of exculpatory, impeaching, and mitigating evidence shall be recorded in an approved office disclosure form and shall occur as soon as practicable. Because a prosecutor's statutory and ethical duty to disclose such information is a continuing obligation, if new information becomes known to or comes into the possession of an assistant district attorney, the existence of that information shall be promptly disclosed to the defendant or the court.

A prosecutor's <u>Brady</u> obligation is based on due process and exists to ensure a defendant a fair trial as it unfolds. However, in light of the ABA Model R.P.C.'s extension of <u>Brady</u> obligations to the post-conviction stage, if an assistant district attorney acquires information which casts doubt upon the correctness of a conviction, he or she shall adhere to Rule 3.8(g) and (h) by promptly disclosing to the defense any new <u>Brady</u> information that is acquired or learned post-trial.

Intentional failures to disclose exculpatory, impeaching, or mitigating information will not be tolerated and will be subject to discipline.

## II. Open-File Discovery

### A. <u>Overview</u>

*Open-file discovery* ("OFD") refers broadly to a concept of prosecutorial transparency, wherein the prosecution provides the defense with everything in its file, irrespective of evidentiary materiality. Proponents of OFD emphasize the ways in which the practice coheres with arguably the most elemental tenet of our legal system, the pursuit of truth.

More pointedly, OFD has several significant advantages:

- *Fairness*: Since defendants in criminal trials typically wield less resources, OFD gives them the opportunity to level the legal playing field by accessing information that would otherwise be cost-prohibitive.
- *Informed Decision-Making*: Informed defendants can make more deliberate decisions about whether to accept a plea or proceed to trial when they know the full weight of the evidence against them.
- *Efficiency*: OFD conserves prosecutorial and judicial resources by encouraging defendants who fully understand the weight of the evidence against them to plead guilty.
- *Error reduction*: Because OFD requires full disclosure without regard to materiality, prosecutors are not faced with the kind of discretionary disclosure decisions that can result in inadvertent or erroneous evidentiary suppression.

### B. <u>Current Legal Terrain</u>

Presently, there is no national model for OFD, with states falling along a continuum with respect to how much information prosecutors must disclose to the defense. Although this policy draws from the precepts of OFD insofar as it seeks to excise the question of materiality from

3

evidentiary analysis, the OFD policy is not assuming any position on the logistical issues associated with implementing OFD office wide. With that said, this office is actively working with IT and the Executive Team to create an electronic infrastructure and case management system capable of maintaining case files in such a way as to allow for efficient identification of information disclosable pursuant to OFD while also ensuring privileged information exempt from OFD is maintained separately so as to protect the confidentiality of that information (i.e., witness safety, grand jury and work product).

## III. Goal

All criminal defendants deserve a fair trial and reasonable access to justice thereafter. Whether intentional or negligent, prosecutorial suppression of exculpatory, impeaching, and/or mitigating information at the plea, trial, or post-trial stage can result in flawed adjudications and unwarranted convictions, which directly undermines perhaps the most basic tenet of our legal system, the pursuit of truth.

In enacting these policies and committing to adopting OFD as soon as practicable, this office demonstrates an ongoing commitment to the kind of fair criminal law practice that will invariably reinforce its legitimacy in the eyes of the community it serves.

Savage Motion for Discovery Exhibit 2

| | |
|---|---|
| **From:** | Katherine Ernst |
| **To:** | Kara Bailey |
| **Cc:** | Zoe Raney |
| **Subject:** | Open File Review Request-Kaboni Savage |
| **Date:** | Tuesday, January 31, 2023 8:47:27 AM |

Dear Ms. Bailey,

Zoe Rainey forwarded your request for discovery related to the Kaboni Savage matter. I am the assistant supervisor in the federal litigation unit, and I also ran your request by Nancy Winkelman, supervisor of the law division. I am sorry to tell you that because you do not represent your client in an open habeas matter to which this office is a respondent, your request does not fall under our open file policy. We will, of course, comply with any court order you obtain.

I wish you the best,

--------------------------------------------------

Katherine Ernst
Assistant District Attorney
Federal Litigation Unit
Philadelphia District Attorney's Office
(c) 215-850-1448
*she/her*

Savage Motion for Discovery Exhibit 3



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

#2

---

CHRISTINE E. SYKES
Direct Dial: (215) 861-8441
Facsimile:  (215) 861-8694

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

October 19, 2009

Christopher D. Warren, Esquire
1500 Walnut Street, Suite 1900
Philadelphia, PA  19102

Timothy J. Sullivan, Esquire
6305 Ivy Lane, Suite 700
Green Belt, MD  20770

William C. Nugent, Esquire
1628 JFK Boulevard, Suite 1600
Philadelphia, PA  19103

Christopher W. Adams, Esquire
1800 Peachtree Street, N.W., Suite 300
Atlanta, GA  30309

William R. Spade, Jr., Esquire
1525 Locust Street, 14th Floor
Philadelphia, PA  19102

Paul M. George, Esquire
239 South Camac Street
Philadelphia, PA  19107

Thomas C. Egan III, Esquire
621 Swede Street
Norristown, PA  19401

William L. Bowe, Esquire
1420 Walnut Street, Suite 1400
Philadelphia, PA  19102

RE: ***United States v. Kaboni Savage, et al.***, Crim. No. 07-550

Dear Counsel:

   Enclosed please find one (1) DVD containing discovery items and early *Jencks* material concerning the homicides of Marcella Coleman, Damir Jenkins, Tameka Nash, Khadjah Nash, Tahj Porchea, Sean Rodriguez, Carlton Brown, Barry Parker, Tyrone Toliver, and Tybius Flowers, and the double shooting at 824 Venango Street on July 25, 2008.  The DVD also contains discovery and early *Jencks* materials related to the Savage drug organization and the 2005 *Savage* federal trial.

   For your convenience, shortly, we will be providing you with a detailed index of the enclosed materials and a duplicate copy of the materials in a "searchable" computer format.

Letter to Counsel
October 19, 2009
Page 2

Once you have had an opportunity to review the enclosed materials, please feel free to contact us with questions you may have. Please contact us immediately if you do not find enclosed the materials listed above.

Very truly yours,

MICHAEL L. LEVY
United States Attorney

CHRISTINE E. SYKES
DAVID E. TROYER
Assistant United States Attorneys

enclosures



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

#6

David E. Troyer
**Senior Litigation Counsel**
*Direct Dial: (215) 861-8475*
*Facsimile:   (215) 861-8618*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

July 29, 2011

Christian J. Hoey, Esquire
50 Darby Road
Paoli, PA  19301-1416

Timothy J. Sullivan, Esquire
6305 Ivy Lane, Suite 700
Green Belt, MD  20770

William R. Spade, Jr., Esquire
1525 Locust Street, 14th Floor
Philadelphia, PA  19102

Paul M. George, Esquire
239 South Camac Street
Philadelphia, PA  19107

Thomas C. Egan III, Esquire
621 Swede Street
Norristown, PA  19401

William L. Bowe, Esquire
1420 Walnut Street, Suite 1400
Philadelphia, PA  19102

Christopher P. Phillips, Esquire
1518 Walnut Street, Suite 1406
Philadelphia, PA 19102

Teresa Whalen, Esquire
801 Wayne Avenue, Suite 400
Silver Spring, MD 20910

RE: *United States v. Kaboni Savage, et al.,* Criminal No. 07-550

Dear Counsel:

Enclosed please find the sixth discovery batch, consisting of five DVDs that contain discovery items and early *Jencks* material.  Disk #1 contains the following materials: The Philadelphia Police Department (PPD) file for the Mansur Abdullah murder; the PPD fugitive file for Eugene Coleman; the PPD file for the Kenneth Lassiter murder; materials from the Philadelphia District Attorney's Office for the Barry Parker murder; materials regarding the federal firearms case against Robert Merritt; a recording by MCC-NY of the April 27, 2010 call between Kaboni Savage and Barbara Savage; the 1999 UFAP warrant for Kaboni Savage; the Philadelphia Fire Marshal's final report for the Coleman arson murders; a PPD report of interview for Robert Merritt's proffer; Robert Merritt's audio intercepts (consensual recordings by an informant); and FBI 302 reports and documents.  Disk #1 also contains three folders of materials from three boxes of the PPD's arson murder file, which are titled "Arson Case PPD File," Parts 1, 2, and 3.

Disk #2 contains videotapes made by the Philadelphia Police Department and Fire Marshal, of the arson scene.  It also contains news reports, which are being supplied pursuant to defense request.

Disks #3, 4, and 5 contain video footage from the Palmetto Street pole camera. Disk #3 contains footage from March 13 and 14, 2003. Disk #4 contains such video footage from March 15 and 16, 2003. Disk #5 contains video footage from March 14 and 15, 2003. Collectively, this footage would relate mostly to the Tyrone Toliver homicide, and was specifically requested by counsel for defendant Kaboni Savage. This footage also has some relevance to the overall drug conspiracy aspect of the RICO conspiracy, and to witness Eugene Coleman. There are pole camera recordings of this same location on other dates, which recordings have not been copied, but which are available for inspection and review upon request.

The FBI has obtained all physical evidence regarding the homicides charged in this indictment, from the PPD. This physical evidence, as well as all physical evidence in the case, is available for viewing at the FBI. Due to the number of defense counsel in this matter, the government suggests that defense counsel confer with one another to agree on a date on which the viewing of physical evidence can occur. We also suggest that any viewing of physical evidence occur sometime in the next one or two months. Due to the large volume of physical evidence, the government will not be able to entertain requests for multiple, separate viewing sessions, nor requests to view evidence shortly before trial.

During the course of the electronic surveillance, including the court-authorized wiretaps and pen registers, that occurred in support of the 2004 Savage federal case, there were numerous subpoenas and requests for telephone number subscriber information, and calling data for those numbers. The records amassed as a result of these requests is voluminous. These records include subscriber information, pen and trap records, and information from public sources. Subject to limited exceptions, this information has no relevance in the current case; and, subject to limited exceptions, the government does not intend to use this information at trial. Thus, the government does not intend to copy such information for defense counsel. Although the government does not view this material as discoverable, or as Brady material, defense counsel is advised of its existence, and is welcome to view the evidence upon request.

There are additional financial items in the government's possession, related to Mel Stein, a co-defendant in the 2004 Kaboni Savage federal prosecution. These items have no relevance or bearing on the current prosecution, the government does not intend to introduce these items into evidence at trial, and the government does not intend to call Mr. Stein as a witness. Accordingly, the government does not view these materials as discoverable, and does not intend to copy or distribute them to defense counsel in this case. However, in an abundance of caution, the government is making defense counsel aware of the existence of these items, and will make the items available for inspection and copying by defense counsel upon request. There are also some recordings made by Mr. Stein of people who may be called as witnesses at trial. Those recordings are also available for inspection, and can be copied into digital format for distribution to counsel, upon request, if counsel believe them to have any impeachment value.

As counsel can see from a review of the materials disclosed, the government has made extraordinarily broad and inclusive disclosures of law enforcement and investigative files. Items not normally subject to disclosure, including investigative reports, intelligence reports, and handwritten notes, have now been disclosed well over a year prior to trial.

The government has already supplied many items that constitute <u>Jencks</u> material. However, there is more <u>Jencks</u> material that will be disclosed at a later time, with accompanying <u>Giglio</u> / <u>Napue</u> information that would likewise disclose the identity of witnesses. As previously stated, the government will disclose these items sufficiently in advance of trial, to allow for preparation and use by defense counsel. However, the nature and facts of this case dictate that the government must also protect the security and lives of the witnesses and their family members. Thus, these items will not yet be disclosed.

Once you have had an opportunity to review the enclosed materials, please feel free to contact us with any questions you may have. Please contact us immediately if you do not find enclosed the materials listed above.

Very truly yours,

ZANE DAVID MEMEGER
United States Attorney

_____

David E. Troyer
John M. Gallagher
Assistant United States Attorneys

Enclosures

Newspapers
by ancestry
https://www.newspapers.com/image/786518506

Philadelphia Inquirer (Philadelphia, Pennsylvania)  ·  Mon, Nov 15, 2021  ·  Page B1

Downloaded on Jun 21, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Savage Motion for Discovery Exhibit 6

Newspapers
by ancestry
https://www.newspapers.com/image/786518578

Philadelphia Inquirer (Philadelphia, Pennsylvania)  ·  Mon, Nov 15, 2021  ·  Page B2
Downloaded on Jun 21, 2023





Copyright © 2023 Newspapers.com. All Rights Reserved.

Savage Motion for Discovery Exhibit 6

Newspapers
by ancestry
https://www.newspapers.com/image/786495743

Philadelphia Daily News (Philadelphia, Pennsylvania) · Thu, Dec 2, 2021 · Page A5
Downloaded on Jun 21, 2023

## NEWS | COURTS

# JUSTICE . . . THREE DECADES LATE

### Third man exonerated in debunked 30-year-old murder probe; two others suing

By Samantha Melamed
STAFF WRITER

FOR 30 years, Troy Coulston said he was innocent of the 1989 murder of Michael Haynesworth, one of a web of cases prosecutors now say were all tainted by the same informant's testimony.

This week, the Philadelphia District Attorney's Office and a Common Pleas Court judge agreed to vacate his conviction, setting into motion a process his lawyers believe will lead to his release.

Coulston's exoneration is the latest fallout from six murder cases that were handled by the same prosecutor and relied on false testimony by James White, who was 19 at the time of his arrest and is now serving concurrent life sentences for the six homicides.

Christopher Williams — who was prosecuted for all six murders but was acquitted of two and exonerated of four — was released from prison in February. He filed a lawsuit Wednesday morning in U.S. District Court in Philadelphia, naming as defendants the city, former District Attorney Lynne Abraham, trial prosecutor David Desiderio, and 17 police detectives.

Joseph J. Santarone, a lawyer for Desiderio, said the former prosecutor could not comment while litigation is pending. In 2020, Desiderio told The Inquirer the exonerations were "garbage," and questioned the DA's motives. "A jury believed [White]. I don't know how they can invade the province of the jury."

Williams is represented by a legal team that includes Ben Crump, the high-profile civil rights lawyer who represents the families of George Floyd and Ahmaud Arbery. Crump said that, as in those cases, Williams' story



**Christopher Williams** (right), with attorney Ben Crump, was exonerated after years on death row. A judge and the DA agreed to vacate the conviction of a codefendant. JESSICA GRIFFIN / Staff Photographer

reflects both a historic injustice and "a historical teachable moment for America."

"Chris Williams ... is almost like the symbol for wrongful conviction of Black men in America," he added. "We have to be better than this. We cannot continue to let racism cloud our judgment when it comes to not even just wrongful convictions but administering justice."

At a news conference Wednesday, Crump called for accountability. "What is the price for stealing his life?" he asked.

Williams said he was "elated" that the case against Coulston was dropped. He said that when he spoke with his codefendant this week, he counseled patience.

"There has to be a process to

this, because you can't consume a whole meal with one bite. And what we've been through? I would view that as a buffet," he said. "No one in the history of the United States of America has walked away exonerated of six homicides, who spent 25 years on death row with two execution warrants signed for his death."

The District Attorney's Office, in agreeing that Coulston should be cleared, called the evidence in the case "a house of cards" that began to collapse in 2019.

"Once the collapse began, a complete collapse was inevitable," Assistant District Attorneys Arlyn Katen and Michael Garmisa wrote. They noted there was no physical evidence against

Coulston, only testimony from White and two other discredited witnesses, and said critical evidence had been suppressed.

Kevin Haynesworth, the brother of the 19-year-old victim who was found beaten, bound, and shot repeatedly in a car in Fairmount Park, appeared by videoconference at a hearing for Coulston on Tuesday and expressed dismay. "It sounds like another murderer, or murder conspirator, is going to be released," he told Judge Scott DiClaudio. Haynesworth did not respond to an interview request.

DiClaudio, however, said the case had been irreparably tainted by the undisclosed evidence.

In the original theory of the

case, Williams, a father of five in Germantown, was cast by the prosecution as the leader of a violent drug gang that routinely robbed other drug dealers.

But Williams was acquitted at trial of the 1989 drug-related murder of Marron Genrette, 19, and the fatal shooting of William Graham, a 60-year-old cabdriver who was shot in the head in his taxi. He fought from death row for decades to be cleared of Haynesworth's killing and the murder of three young men, Otis Reynolds, Gavin Anderson, and Kevin Anderson, drug dealers who were all shot at close range and left on the street in locations around North Philadelphia on the same day in September 1989. They were killed in shootings that prosecutors say appeared to be linked to a member of the Jamaican Shower Posse, a gang so named because members showered their victims with bullets.

Jennifer Merrigan, a lawyer with the nonprofit firm Phillips Black who represented Coulston and Williams' other codefendant, Theophalis "Binky Bilal" Wilson, said information in the police and prosecutor's file made clear all three men were innocent. "Where was the oversight in the office?" she said.

In his lawsuit, Williams alleged police "buried leads; they hid and destroyed evidence of alternative suspects; and they coerced troubled teenagers to tell fictitious stories to fit the evidence. And they did it all to obtain convictions at any cost, despite the truth." The complaint alleges a campaign of coercion by police and prosecutors to obtain false testimony from White, alternately threatening him with the death penalty and promising him early release from prison.

See **EXONERATE** Page 20

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com

Savage Motion for Discovery Exhibit 7

Newspapers™
by ancestry

https://www.newspapers.com/image/786495729

Philadelphia Daily News (Philadelphia, Pennsylvania) · Thu, Dec 2, 2021 · Page A20

Downloaded on Jun 21, 2023

## NEWS

### SUPREME COURT
*Continued from Page 3*

ditions. They've damaged the democratic process. They've poisoned the law," said Stewart, a former clerk to Justice Clarence Thomas. "For 50 years, they've kept this court at the center of a political battle that it can never resolve."

But Julie Rikelman, a lawyer for the Center for Reproductive Rights representing Mississippi's only abortion clinic, countered that turning the issue over to the states would allow legislatures to deny a woman a role in making one of the most crucial decisions she would ever face.

"For a state to take control of a woman's body and demand that she go through pregnancy and childbirth with all the physical risks and life-altering consequences that brings is a fundamental deprivation of her liberty," Rikelman said.

The court's decision in *Roe* said women have a fundamental right to an abortion. *Casey* said that there could not be prohibitions on abortion before viability and that regulations on the right could not impose an "undue burden" on a woman's choice.

Thomas, who joined the dissenting opinion in *Casey* nearly 30 years ago that said *Roe* was wrongly decided, challenged the lawyers for the clinic and the federal government to locate a woman's right to abortion in the Constitution.

"If I were to ask you what constitutional right protects the right to abortion, is it privacy? Is it autonomy? What would it be?" Thomas asked.

"It's liberty, your honor," Rikelman replied. "It's the textual protection in the 14th Amendment that a state can't deprive a person of liberty without due process of law, and the court has interpreted liberty to include the right to make family decisions and the right to physical autonomy, including the right to end a pre-viability pregnancy."

Justice Samuel A. Alito Jr. also seemed ready to overturn *Roe*. After a long back-and-forth with Prelogar, the justice concluded: "So there are circumstances in which a decision may be overruled, properly overruled, when it must be overruled simply because it was egregiously wrong at the moment it was decided?"

But liberal Justice Elena Kagan disagreed, saying the court's abortion jurisprudence did not fit such a scenario.

"Usually there has to be a justification, a strong justification, in a case like this beyond the fact that you think the case is wrong," she said. "And I guess what strikes me when I look at this case is that, you know, not much has changed since *Roe* and *Casey*, that people think it's right or wrong based on the things that they have always thought it was right and wrong for."

While Sotomayor in particular made impassioned remarks about the importance of abortion rights, the liberal justices were largely bystanders as the six conservatives debated what to do.

Kavanaugh and Barrett replaced two justices, Anthony M. Kennedy and Ruth Bader Ginsburg, respectively, who favored abortion rights.

Kavanaugh was the most outspoken among the three newest justices — and none of his remarks favored the abortion-rights supporters. He rattled off a list of cases — involving on gay rights, integration, one-person, one-vote — that he said marked times when the court reversed previous decisions.

### EXONERATE
*Continued from Page 5*

Wilson, who was exonerated of the triple murder and released in February 2020, filed his own lawsuit against the city, police, and prosecutors earlier this year.

Desiderio, the former prosecutor, and Abraham are seeking to dismiss that suit. In their filing, Desiderio said he was acting within the scope of his duties, and therefore is entitled to absolute immunity.

Since Pennsylvania is one of a minority of states providing no compensation to exonerees, Wilson and Williams were released from their decades in prison into precarious financial positions.

Williams, a union carpenter before his arrest, launched back into the workforce at age 61 — tackling everything from construction punch lists to metal fabrication. He dreams of starting a construction company that will offer training and employment to men coming out of prison. But now he is living paycheck to paycheck.

Williams said his lawsuit is about accountability — but also about the full restoration of his freedom. To him, that means regaining control over his time and

his destiny. "I am alive. I don't feel that way sometimes," he said, adding, "To this day, I don't know what freedom feels like, but I'm trying to figure it out."

Wilson, 50, once a jailhouse lawyer, has been working as a paralegal with Phillips Black, while starting a foundation called Before It's Too Late that has helped link others with innocence claims to legal aid.

As for Coulston, his path to release is not straightforward, because he was also convicted in Montgomery County of assault by a life prisoner, for a 1997 fight with another prisoner in the State Correctional Institution Graterford. That charge carries an automatic life sentence. He'll seek to vacate that conviction, as the Pennsylvania Supreme Court recently ruled that an assault-by-a-lifer conviction can't stand when the underlying life sentence is removed.

Coulston, 52, said he's eager to return home — but uncertain what awaits him. He has no place to stay, and no job lined up.

"I've been locked up for so long, I don't know what type of skills I have," he said.

✉ smelamed@inquirer.com
📞 215-854-5053 🐦 samanthamelamed

---

## legal notices
INQUIRER.COM

**ESTATE NOTICES**    **LEGAL NOTICES**

Letters have been granted on the Estate of each of the following decedents to the representatives named, who request all persons having claim against the Estate to present them in writing and all persons indebted to the Estate to make payment to them (unless otherwise noted all addresses being in Philadelphia):
BRADY, EDWINA-- Marc Kent, Executor, 218 Long Lane, Apt 1, Upper Darby, PA 19082; Rhonda Anderson, Esq., 610 OLD YORK ROAD, SUITE 400, JENKINTOWN, PA 194046
LUBERSKI, VALERIA L - Sandra M. Luberski, Executrix, 105 Taylor St., Bristol, PA 19007
SIMMONS, LEROI-- Kenneth Simmons, Executor, 411 W. Chelten Avenue, Phila., PA 19144; Rhonda Anderson, Esq., 610 OLD YORK ROAD SUITE 400, JENKINTOWN, PA 194046

**LEGAL NOTICES**

NOTICE IS HEREBY GIVEN THAT Articles of Incorporation were filed with the Department of State of The Commonwealth of Pennsylvania on the 25 day of October 2021, for the purpose of obtaining a Certificate of Incorporation pursuant to the provisions of the Business Corporation Law of the Commonwealth of Pennsylvania, approved May 5, 1933 as amended.
The name of the Corporation is **Preachers for Progress Inc.**
The purpose or purposes for which it was organized are as follows: Social welfare purposes, namely to engage in grassroots organizing and advocacy to fight for climate justice, consistent with its tax-exempt status under 501(c)(4) of the Internal Revenue Code of 1986, as amended.

**Notice of Intent to Remediate (NIR) Submittal Under the Pennsylvania Land Recycling and Environmental Remediation Standards Act**
Pursuant to the Land Recycling and Environmental Remediation Standards Act, the act of May 19, 1995, P.L. 4, No. 1995-2, ("Act 2"), notice is hereby given that MAP REAL ESTATE, LLC ("Remediator") has submitted to the Pennsylvania Department of Environmental Protection a revised Notice of Intent to Remediate (NIR) for a property located at 3421 Aramingo Avenue in Philadelphia, Pennsylvania. The original NIR was submitted in February 2021 for soil only. The revised NIR also addresses groundwater. The subject property is city of Philadelphia parcel 25-N19-15B.
The subject property ("Site") currently includes a parking lot and a 3,800-square-foot vacant commercial building. Historically, the Site was used as an iron works, and current and historical use of the adjoining and surrounding properties include manufactures, a metal refinery, filling stations, and facilities with oil and solvent storage.
Initial environmental assessment activities have identified semivolatile organic compounds (SVOCs) and metals contamination in soil and lead in groundwater. The Remediator has indicated that the proposed remediation measures will include engineering and institutional controls to prevent contact with contaminated media, if necessary. The proposed future use of the property will be non-residential for commercial use.
The Remediator plans to use the site-specific standard to address lead in groundwater at the site. The Act provides for a 30-day public comment period for site-specific standard remediations. The 30-day comment period is initiated with the publication of this notice. Until December 10, 2021, the city of Philadelphia may submit a request to the Remediator to be involved in the development of the remediation and reuse plans for the site. The city of Philadelphia may also submit a request to the Remediator during this 30-day comment period to develop and implement a public involvement plan. Copies of these requests and of any comments should also be submitted to the Department of Environmental Protection at 2 East Main Street, Norristown, PA 19401.

**LEGAL NOTICES**

On October 5, 2021, the State Board of Cosmetology suspended the license of Sa Ly, license no. CL178736, of Philadelphia, Philadelphia County, for failing to pay a previously imposed civil penalty.

**MEETING NOTICES**

NOTICE is hereby given that the Southeastern Pennsylvania Transportation Authority will be holding a virtual Pension Committee Meeting on **Thursday, December 16, 2021, at 1:55 PM** at the SEPTA offices at 1234 Market Street, Mezzanine Level, Philadelphia, Pennsylvania.
Carol R. Looby
Secretary

## merchandise marketplace

**AUTOS**
WE BUY CARS & TRUCKS IN ANY CONDITION! $300 - $5000 Cash 267-229-1970

**MERCHANDISE MARKET**
Coins, Comics, Trains, Mags, Toys, Military, Model Kits, Books 610.639.0563

**PERSONAL ADS**
HELP WANTED In need of two house maids, that speak both, english and urdu languages. I live in the far northeast in Philadelphia, in the area of Normandy Village. Contact # 2156710138.

**PETS/LIVESTOCK**
PLEASE BE AWARE POSSESSION OF EXOTIC/WILD ANIMALS MAY BE RESTRICTED IN SOME AREAS.
American Bulldog Pups, born 9/20/21, NKC reg, $900. 215-500-0177
KITTENS Free to good home. 3F, 2M. 856-512-2085

**HOMES FOR RENT NJ**
CAMDEN CITY 2-4BR. $1000-$1500/mo. 844-607-6425

**ROOMS**
Hunting Pk: Furn. Rooms. Incl. Utils - Cable & A/C Avail. Males 50+ pref. 267-331-5382
Olney, $460/mo + sec. Furn rm, shared kit & BA. Verify Income. 516-527-0186
ROOMS/APTS For Rent. $400-$900/mo. Call 267-632-4455
S. Philly Fully Furn Room, $175/wkly. 1st & last Mo sec. Jay, 267-304-0272
SP, WP & SW Rooms for Rent. $500 & up, SSI, Vets welc. 267-595-4414
SW & N PHILLY, 40+ & Seniors Pref. Incl utils. Ask for Steve 610-212-6760
W. OAKLANE. Furn rm, pvt ent, $135 /wk. Senior male prefer. 215-205-2437

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers™



Savage Motion for Discovery Exhibit 7

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA |
|---|---|
| *CONTINUATION  SHEET* | POLICE  DEPARTMENT |

| NAME | PAGE | CASE NO. |
|---|---|---|

DAWUD BEY        10/18/04        7:45pm / 8:13 Pm.

" NOT THE MAN THAT KEVIN LEWIS IS MAKING HIM OUT to BE "

75-483A

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA | |
|---|---|---|
| CONTINUATION  SHEET | POLICE    DEPARTMENT | |
| NAME | PAGE | CASE NO. |

75-483A

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA | | |
|---|---|---|---|
| CONTINUATION SHEET | POLICE   DEPARTMENT | | |
| NAME | | PAGE | CASE NO. |

Kaboni Savage        10/18/04            8:20pm

"Hey I've been blamed for things before"

"I knew that family that AINT My thing"

75-483A

Savage Motion for Discovery Exhibit 9

| INVESTIGATION  INTERVIEW  RECORD | CITY OF PHILADELPHIA |
|---|---|
| *CONTINUATION  SHEET* | **P O L I C E    D E P A R T M E N T** |

| NAME | PAGE | CASE NO. |
|---|---|---|
| | | |

75-483A

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of ___SOURCE_____ , On _1/28/02_____ , Page __2__

## ADMINISTRATIVE

A Criminal History Check for MARLIN MEACHEM met with negative results.

FBI FOIMS, DISCOVERY PLUS along with BMV checks revealed that MARLIN L. MEACHEM, black male, has DOB ████/75, SSAN ████████ ████, PA OLN 24216643.  MEACHEM is mentioned in FBI case 88A-PH-86083.  This investigation was a fugitive case to locate and apprehend KABONI SAVAGE, who was wanted for murder and MEACHEM was developed as an associate of SAVAGE's.

Savage Motion for Discovery Exhibit 10

RE: Missing Documentary Guilt Exhibits

**Subject:** RE: Missing Documentary Guilt Exhibits
**From:** "Troyer, David (USAPAE)" <David.Troyer@usdoj.gov>
**Date:** 1/24/2018 1:43 PM
**To:** Barry Fisher <barryfisher4@gmail.com>

Barry:
The Palmetto Street photos, GX 25 (photos 1 through 44) are indeed circled and were indeed contained in the binders I sent you.  I personally compiled those binders, then went through each book, before sending them to you, to ensure that all exhibits were there.  I retained a full copy of the binders I sent you, and they are in fact in my copy of your binders.  I suggest you look again.
As for the other items:
GX 109: There are several letters concerning Kidada and Dawud Bey, and I am having difficulty ascertaining which one you are missing.
GX 110, 111, and 115: I have not been able to find these items yet.
GX 166:  This consists of multiple boxes of raw telephone data, too voluminous to copy.  You are welcome to come look at it, but I cannot imagine why you would want to do so.
GX 193:  I have not located this item.  This was entered via stipulation.  The records merely corroborated that Blackwell was treated at Temple Hospital on the day that he was pistol-whipped and his teeth were broken.
GX 834 and 835:  There were a lot of cell site charts, and a number of drafts and revisions (even during trial).  I have not yet found the ones marked with those exhibit numbers.
GX 1234 and 1235:  I have not found these items.

David E. Troyer
Assistant United States Attorney
Chief, Government and Health Care Fraud
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
215-861-8475

---

**From:** Barry Fisher [mailto:barryfisher4@gmail.com]
**Sent:** Wednesday, January 24, 2018 10:18 AM
**To:** Troyer, David (USAPAE) <DTroyer@usa.doj.gov>
**Subject:** Missing Documentary Guilt Exhibits

Good morning, David.  Our review of the binders you recently sent us shows the following documentary exhibits that (according to your accompanying list), the government introduced or published at the guilt-innocence trial, but which you did not circle because you did not send us (in addition to #1254 and #1255 from the sentencing hearing, which we've separately e-mailed about).

Can you confirm that I've got this right?

Also, should I assume that, as with #1254 and #1255, you've looked for those, including reaching out to your agent and/or other witnesses associated with the exhibit, and could not find them?

And, finally, if so, is there any information about their contents you can provide us beyond what's discussed in the trial transcripts?

Savage Motion for Discovery Exhibit 11

RE: Missing Documentary Guilt Exhibits

Thanks,

Barry

GEX 0025 – 3510 Palmetto St. – photos re Toliver Homicide – 3/13/13, pg. 213
GEX 0109 – Kidada:  Dawud Bey letter – 3/6/13, pg. 130
GEX 0110 -  Kidada – list of names in care – 3/6/13, pg. 130
GEX 0111 – philly.com article re C. Oliver from car – 3/6/13, pg. 130
GEX 0115 – FBI lab 11/2/04 reports (same as Defense Exhibit 350?) – 3/25/13, pg. 114
GEX 0166 – Telephone subscriber records (mult. Boxes) (1B136) (Certifs) – 3/26/13, pg. 219
GEX 0193 – Temple Hosp. records re D. Blackwell (stip) – 3/12/13, pg. 161
GEX 0834 – Cell site record chart #1 – 3/26/13, pg. 220
GEX 0835 – Cell site record chart #2 – 3/26/13, pg. 224

```
--
Barry J. Fisher
Federal Capital Appellate Resource Counsel
Office of the Federal Defender, NDNY
39 North Pearl Street, 5th Floor
Albany, NY 12207
Tel. (518) 650-9031
Fax (518) 436-1780
barry_fisher@fd.org
```

1/26/2018 7:16 PM

Savage Motion for Discovery Exhibit 11

Blood on drivers seat
CD's
model car box
childs game box
AT+T cell phone box + cell phone
FCC on floor drivers side
          passenger

Savage Motion for Discovery Exhibit 12



Corey Jenkins
Cell #
(215) ███████

Shafeeq left 20 grand at my house because him + his girlfriend were arguing - but he spent the night

John said that they went back to the car lot and about 11pm he got a phone call and ~~Real~~ left.

Sold to the boys on Jerome

heard that feeq hired somebody to kill the boys who robbed him - but

Savage Motion for Discovery Exhibit 13



the boy knew the boys that robbed
Faeeq

Shafeeq brought a AK-47
because the guy he hired to
do the killing asked him to

Johnathan Ford

# ACTIVITY SHEET

**Platoon # 3**                                            **Date:** 9/26/00

**H / M# M00-216**                                      **Suprv:** Lt Deegan

**Victim:** ABDULLAH, M                               **Assigned:** Patterson

Detectives Patterson and McGuffin went to the 4300 block of Old York rd. to locate Tracy Jones B/F. Jones may have been with the decedent just prior to his death. Detectives were not able to contact Jones at this time.

Detectives did contact Jackie Hodges B/M, owner of J's Hilltop Auto Sales, who the decedent worked for prior to his death. Hodges provided copies of the decedent's Nex Tel phone invoices so that any calls the decedent made or relieved could be checked.

Detectives also attempted to locate several males who the decedent may have had contact with on the date of his death.

Investigation
continues... .....................................................................................................

Savage Motion for Discovery Exhibit 14

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    09/20/2000

Source advised that at 2:00 p.m. today, a funeral would take place for a Muslim at the Masjid, 47th and Wyalusing Streets, Philadelphia, Pennsylvania (PA).

Source stated that the funeral was for someone known to source as "Shafeeq" (MANSUN ABDULLAH, PHPD 818485).

Source advised that ABDULLAH was killed Tuesday night while sitting in his car in the Hunting Park section of Phila-delphia. Source stated that ABDULLAH was shot numerous times and the killers then attempted to set his car on fire.

Source had heard that ABDULLAH, at the time of his murder, was a fugitive from the state of New Jersey where he had an open case.

Source advised that ABDULLAH had been robbed two-three weeks ago of approximately $40,000 in drug proceeds. Source had heard on the street that ABDULLAH was telling everyone he knew who robbed him and was putting the word out that he was going to hunt them down. Source speculates that the initial robbers from several weeks ago caught up to ABDULLAH first and murdered him.

Source stated that GERALD THOMAS, also known as (aka) "Bubbie," was at the funeral and that ABDULLAH was a member of his drug organization, who frequented KABANI SAVAGE's house, ██████████ Philadelphia, PA.

---

Investigation on    09/08/2000    at   PHILADELPHIA, PA.

File #

Date dictated    09/17/2000

by

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Savage Motion for Discovery Exhibit 15

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of _____SOURCE_____ , On 09/08/2000 , Page __2__

## ADMINISTRATIVE

Contact with Philadelphia Homicide revealed MANSUN ABDULLAH was murdered on Wednesday, September 6, 2000, at approximately 12:29 a.m. The Homicide report indicates that Philadelphia Police responded to a vehicle fire on the highway at 4200 North Park Avenue, Philadelphia, PA., and upon arrival found a smoldering vehicle with the body of a black male lying across the front seat dead from multiple gun shot wounds.

The Homicide reports lists MANSUN ABDULLAH is residing at 6036 North 11th Street, Philadelphia, AP., and was 22 years of age, with PHPD 818485. Homicide lists this case as M-216.

The information gathered above by the FBI was disseminated to Homicide.

Savage Motion for Discovery Exhibit 15

1332.USA010671  FBI 302's re: information, meetings, and consensual recordings involving Mel Stein, various co-conspirators, and others:(8/8/03, 8/11/03, 8/15/03 (2 reports), 8/18/03, 8/19/03, 8/27/03, 9/2/03, 9/3/03 (3 reports), 9/10/03, 9/12/03, 9/17/03 (3 reports), 9/23/03, 9/26/03, 9/29/03, 9/30/03 (2 reports);10/1/03, 10/03-10/8/03, 10/6/03, 10/9/03, 10/10/03, 10/10-10/24/03,10/17/03, 10/27 - 10/29/03, 10/31/03; 11/3/03 (5 reports), 11/11/03, 11/12/03, 11/18/03, 11/20/03, 11/21/03 (9 reports), 11/26/03, 11/27/03 (2 reports), 11/20-12/1/03, 12/7/03, 12/11/03 (3 reports), 12/12/03, 12/16/03, 12/12-12/15/03, 12/16-12/17/03, 12/17/03, 12/18/03, 12/21/03, 12/23/03 (2 reports), 1/6/04 (7 reports), 1/15-1/16/04, 1/16/04 (3 reports), 1/21/04, 1/29/04, 2/4/04, 2/6/04, 2/19/04, 2/20/04 (6 reports), 4/1/04 (2 reports).

**Telephone Toll Records/PEN Register Data**

| | Phone # | Subscriber | Time Frame |
|---|---|---|---|
| 1333. | 215-668-5801 | Juaqunia Hollman | January 2003 - April 2003 |
| 1334. | 267-970-5479 | Kadida Savage | January 2003 - April 2003 |
| 1335. | 267-767-8885 | Deborah Whitfield | March 2003 - May 2003 |
| 1336. | 215-681-5831 | Eric Wright | January 2001 - April 2001 |
| 1337. | 215-229-0169 | Barbara Savage | May 2000 - March 2001 |
| 1338. | 267-246-1413 | Horace Lacy | December 2000 - April 2001 |
| 1339. | 610-453-4054 | Kadida Savage | September 2000 - Oct  2001 |
| 1340. | 215-681-5069 | Paul Robinson | June 1999 - March 2000 |
| 1341. | 215-740-0762 | Shermika Wilson June 1999 - March 2000 | |
| 1342. | 215-432-4727 | Gerald Thomas | May 1998 - May 2002 |
| 1343. | 267-246-0311 | Mark Desmond | March 2001 - August 2001 |
| 1344. | 215-778-3346 | Ronald Eddings | September 2000 - June 2001 |
| 1345. | 856-582-6738 | Richard Johnson | September 2000 - Oct  2000 |
| 1346. | 267-973-3445 | James Blair | September 2000 - Oct  2000 |
| 1347. | 215-224-0743 | unknown (Dawud Bey) | February 2000 - Dec 2000 |
| 1348. | 215-796-2962 | Tabetha Fulton | March 1999 - February 2001 |
| 1349. | 215-729-8608 | Grace Spencer | December 1999 - Dec  000 |
| 1350. | 215-778-3345 | Ronald Eddings | November 2000 - Jan 2001 |

Savage Motion for Discovery Exhibit 16

**Telephone Toll Records/PEN Register Data (cont'd):**

|  | Phone # | Subscriber | Time Frame |
|---|---|---|---|
| 1351. | 267-231-6026 | Gerald Thomas | November 1999 - Dec 1999 |
| 1352. | 267-312-9747 | Eugene Coleman | February 2003 - April 2003 |
| 1353. | 215-485-6159 | Joseph Amill | July 1999 - August 1999 |
| 1354. | 215-432-3215 | Kaboni Savage | July 1999 - August 1999 |
| 1355. | 215-681-0688 | Kenneth Clark | September 2000 - Oct 2000 |
| 1356. | 609-783-1950 | Kimberly Price | March 1999 - August 1999 |
| 1357. | 856-309-8497 | Kimberly Price | October 2000 - Dec 2000 |
| 1358. | 856-783-1950 | Kimberly Price | October 2000 - Dec. 2000 |
| 1359. | 267-210-8168 | unknown (Craig Oliver) | July 2003 |
| 1360. | 267-767-8885 | Deborah Whitfield | March 2003 - May 2003 |
| 1361. | 215-416-1690 | William Minor | May 2002 - July 2002 |

1362. USA010767   FD-340 re: Advise of Rights, Myron Wilson (3/12/04)

1363. USA010769   FD-340 re: Items returned to Concetta Savage (2/18/04)

1364. USA010771   FD-340 re: Letter and envelop from Robert Wilks, SCI Chester (1/6/03)

1365. USA010775    FD-340 re: Biographical Info. on Malik Jones (5/20/04)

1366. USA010778   FD-340 re: Lab worksheet on specimens Q 164-176 (8/21/03)

1367. USA010780   FD-340 re: Items received from Kaboni Savage (4/14/04)

1368. USA010782   FD-340 re: seizure of Craig Oliver's Toyota Solara

1369. USA010784   FD-340 re: seizure of 2003 Mercedes Benz from Mercedes Benz of Princeton (12/12/03)

1370. USA010786   FD-340 re: Advise of Rights, Robert Wilks (5/21/04)

1371. USA010788   FD-340 re: Advice of Rights and Biographical Info, Dawud Bey (5/20/04)

1372. USA010792   FD-340 re: Oscar Francis receipt for gun (5/20/04)

1373. USA010794   FD-340 Advice of Rights, Biographical Info, Joseph Newman (5/20/04)

1374.                12/29/00 Videotape surveillance of 3600 block of Darien Street.

Savage Motion for Discovery Exhibit 16

۱-340 (Rev. 3-8-01)

niversal Case File Number ___ Z4SF-PH-8Z601 - 1 A 138 ___

eld Office Acquiring Evidence ___ P H ___

:rial # of Originating Document ___

ate Received ___ 5/28/03 ___

rom ___ Sr lF ___

(Name of Contributor)

___

(Address of Contributor)

___

(City and State)

y ___ CA Kevin M. Lewis ___

> Be Returned ☐ Yes ☒ No

:ceipt Given ☒ Yes ☐ No

rand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
:deral Rules of Criminal Procedure

☐ Yes ☒ No

:deral Taxpayer Information (FTI)

☐ Yes ☒ No

tle: RAM Squad

:ference ___

(Communication Enclosing Material)

___

escription: ☐ Original notes re interview of

___ FD-597 Items seized from 1025 Rosalie St, Phila, PA ___

Savage Motion for Discovery Exhibit 18

FD-597 (Rev 8-11-94)

Page ___1___ of ___1___

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # _____2YSF-PH·82681_____

On (date) _____5/28/03_____

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☑ Seized

(Name)_____Kareem Bluntly_____

(Street Address)_____1025 Rosalie St._____

(City)_____Phila   PA_____

Description of Item(s): _____Misc Papers From Kitchen_____
_____Misc Papers From Back Bedroom_____
_____3 4 8 Cellphones_____
_____Hair Brush_____
_____4 Toothbrushes_____
_____Misc Clothing_____
_____Misc Boots_____
_____Nissan Altima FCV-4151 w/ keys_____
_____PHA ID card  Tanya Carter_____

Received By: _____ (Signature)      Received From: _____Refused to sign_____ (Signature)

Savage Motion for Discovery Exhibit 18

-340 (Rev. 3-8-01)

niversal Case File Number ___ Z4SF-PH-62661 - 1A 138 ___

eld Office Acquiring Evidence ___ P H ___

:rial # of Originating Document _____

ate Received ___ 5/28/03 ___

rom ___ Si lF ___

(Name of Contributor)

_____

(Address of Contributor)

_____

(City and State)

y ___ CA Kevin M. Lewis ___

) Be Returned  ☐ Yes    ☒ No

:ceipt Given  ☒ Yes    ☐ No

rand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
:deral Rules of Criminal Procedure

☐ Yes    ☒ No

:deral Taxpayer Information (FTI)

☐ Yes    ☒ No

tle: RAM SQuAD

:ference· _____

(Communication Enclosing Material)

_____

escription:    ☐ Original notes re interview of

___ FD -597 Items seized From ███████████████

_____

Savage Motion for Discovery Exhibit 18

FD-597 (Rev 8-11-94)

Page ___1___ of ___1___

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # ___245F-PH-82681___

On (date) ___5/28/03___

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☑ Seized

(Name)___Kareem Bluntly___

(Street Address)___[redacted]___

(City)___[redacted]___

Description of Item(s): ___Misc Papers From Kitchen___
___Misc Papers From Back Bedroom___
3" 4 8 Cellphones
Hair Brush
4 Toothbrushes
Misc Clothing
Misc. Boots
Nissan Altima FCV-4151 w/ keys
PHA ID card Tanya Carter

Received By: ___[signature]___
(Signature)

Received From: ___Refused to sign___
(Signature)

Savage Motion for Discovery Exhibit 18





USA008546

Savage Motion for Discovery Exhibit 19

 PALHETTO-HO

April 8, 2003

## WHITE PAPER

## HOMICIDE INFORMATION

On Tuesday, April 1, 2003 FBI Squad 2 and the Philadelphia Homicide Unit began working on the recent murder of TYRONE TOLIVER (PPN# 735412) from 2000 Valetta Street, who was found inside the trunk of a 1989 Mercury Grand Marquis on March 31, 2003. This incident was reported on DC# According to Homicide Interviews EUGENE COLEMAN (PPN 697717) was the last person seen with TOLIVER before he disappeared on March 14, 2003.

The apartment/garage located at 3510 Palmetto Street, is the location in which EUGENE COLEMAN resides and he is a lieutenant in the KABONI SAVAGE drug organization and the prime suspect in the TOLIVER homicide case.

This residence is the target of an ongoing FBI drug investigation and Squad 2 has been conducting video surveillance of this location. After reviewing video tapes from March 14, 2003, it was revealed that TOLIVER entered 3510 Palmetto Street with COLEMAN, but never exited that apartment. It was further determined that on March 15, 2003, the Mercury Grand Marquis in which the decedent TOLIVER was found, was driven into the garage of 3510 Palmetto Street by COLEMAN and BLUNTLY, and taken out shortly afterward.

After reviewing video tapes, interviews with witnesses and several surveillance connected with the SAVAGE Drug Organization it was determine that the TOLIVER homicide did in fact occur at that location.

On Wednesday, April 2, 2003 FBI SA Kevin Lewis , Detective Linda Hughes and Detective Thomas Zielinski began the process of putting together a search warrant for 3510 Palmetto and 3642 Darien Street, Philadelphia, in connection to the TOLIVER homicide and the SAVAGE Drug Organization.

On Monday, April 7, 2003 search and arrest warrants where executed at 3643 N. Darien Street and 3510 Palmetto Street in connection with the KABONI SAVAGE Drug Organization and Homicide of TYRONE TOLIVER.

Confiscated from both properties were 2 assault rifles, 3 handguns, assorted paraphernalia used for drug packaging, 5 re-rock presses, USC, 1 Chevrolet Conversion Van and evidence relating to the murder of TYRONE TOLIVER.

245-PH-82681

SEARCHED ___ INDEXED ___
SERIALIZED ___ FILED ___

APR 1 0 2003

FBI NEW YORK

 

KABONI SAVAGE (PPN 719792) was detained inside his residence, 3643 N. Darien Street and subsequently transported to 1401 Arch Street where his House Arrest was violated and he was taken into custody. (SAVAGE is awaiting trial in an unrelated homicide, DC # 99-25-026882). Additionally STEVEN NORTHINGTON was taken into custody under the authority of a Warrant issued for his arrest for Drug related charges. (NORTHINGTON is the prime suspect in another Homicide, Det. Burns assigned.) Attempts to locate EUGENE COLEMAN and KAREEM BLUNTLY was unsuccessful.

Based on the evidence collected from 3510 Palmetto Street and 3643 N. Darien Street, it is expected that arrest warrants will be issued for the arrest of EUGENE COLEMAN , PPN 697717 and KAREEM BLUNTLY, PPN 767397 regarding the murder of TYRONE TOLIVER. This investigation is pending, Det. Thomas Augustine assigned.

All evidence from 3510 Palmetto Street was collected by the FBI Evidence Response Team and submitted to the FBI Lab for processing.

Detective Linda Hughes
NIU            #982

FD-302 (Rev. 10-6-95)

      *0F111511*

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    11/16/2011

OSCAR FRANCIS, a Hispanic male born on ███/1976, was interviewed. Also present during the interview were AUSA David Troyer, AUSA John Gallagher and DOJ trial attorney Steven Mellin. During this interview FRANCIS provided the following information:

OSCAR FRANCIS stated his wife was taken to the Philadelphia Police Homicide Unit after TYRONE TOLIVER had been murdered. FRANCIS stated that this happened because his wife's name was on the lease of the apartment, 3510 Palmetto Street. FRANCIS stated that they had moved from Palmetto Street on May 12 or 19th, to his present address.

FRANCIS stated that in the days following, he went down to see (Kaboni) SAVAGE at his house, 3643 N. Darien Street, Philadelphia, PA. FRANCIS stated that when he asked SAVAGE what happened, SAVAGE and "Bree" true name KAREEM BLUNTLY) told FRANCIS that "Twin" (true name EUGENE COLEMAN) had shot and killed TOLIVER. FRANCIS stated that SAVAGE told him that COLEMAN had owed TOLIVER money. SAVAGE told FRANCIS that COLEMAN had brought TOLIVER to SAVAGE'S home in an effort to get SAVAGE to pay the debt. SAVAGE told COLEMAN and TOLIVER that he had nothing to do with that and they left. SAVAGE told FFANCIS that COLEMAN then took TOLIVER to his apartment (3510 Palmetto Street) and shot him. FRANCIS stated he was surprised because he had never seen COLEMAN with a gun and didn't know COLEMAN to be "built like that" (capable of shooting someone).

FRANCIS stated that in the next few days he saw COLEMAN and COLEMAN was saying that "Bree" (KAREEM BLUNTLY) had been threatening Coleman with phone calls and leaving messages not to go to the police.

Investigation on    11/15/2011    at   Philadelphia

File #   245D-PH-82681

Date dictated

by   Det. Thomas R. Zielinski

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    04/10/2002

A Confidential Source (SOURCE), who is not in a position to testify, provided the following information:

SOURCE advised that on this date SOURCE was in the tint shop/garage in the 2000 block of N. Randolph Street, when he observed a green mini-van with broken windows being backed into one of the garage bays. SOURCE then observed a Puerto Rican male he knows as "Doe" or "Dough" being treated in back bathroom for what appeared to be a bullet wound to his left shoulder. SOURCE heard "Doe" or "Dough" being told that the bullet was in too deep and that he would have to go to the hospital. "Doe" or "Dough" responded that he was already on the run and could not go to a hospital.

SOURCE advised that he/she believed that this was the green mini-van featured on the news today as having been involved in a shooting with FEDERAL BUREAU OF INVESTIGATION (FBI) personnel and tow truck drivers.

SOURCE advised that the tint shop building was owned by "Cat." "Cat" rents the part of his building containing the mini-van to "Nigie." "Cat" was aware of the aforementioned facts and SOURCE tried to convince "Cat" to tell law enforcement about the mini-van being stored in the garage bay, but "Cat" resisted out of concerns for his safety.

SOURCE identified two male associates with "Doe" or "Dough" on this date as "D-nice" and "U-God." "D-Nice" is a Puerto Rican male from the area of Fairhill, 7th, Pike and Luzene Streets. "U-God" is a black male. SOURCE further described "Doe" or "Dough" as heavy-set with curly hair.

---

Investigation on    04/09/2002    at Philadelphia, PA

File #    _____    (So 4)    Date dictated    04/10/2002

by    SA EDWARD J. GALLANT, III
SA ROLAND D. SWANSON, II        EJG:ejg

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

COMMONWEALTH VS.

| RECORD CON. NO. | | NAME, A/K/A, ADDRESS, ZIP CODE LUMONT LEWIS 6122 WASHINGTON AVE | | OTN# N3154782 | YEAR, TERM & NO. 0504 0002 1/1 | |
| --- | --- | --- | --- | --- | --- | --- |
| POLICE PHOTO NO. 738883. | | PHILA. PA 19143 | | | THIS CASE INVOLVES NOS. CHARGE 5 TO 5 | |

| STATUS OF DEFENDANT | | | PLACE OF PRELIM. HEARING KM 306 CJC | | ISSUING AUTH. STACK | 719 |
| --- | --- | --- | --- | --- | --- | --- |
| Bail Set $ | | Bail Made $ | DT. OF INCIDENT 9/13/01 | BIRTH DATE 3/10/76 | SEX M 1 | RACE A-A | D.C. NO. 0112071665 |
| Surety Name & Address | | | ATTY CD 10593 F | M.C. CASE NO. 0501 1818 1/1 | COMPLAINT DT. 1/13/05 | DT. PREL. HEARING. 3/22/05 |

| DISM. | BILL NO. | DATE 4/07/05 | DATE OF ARRAIGN. 4/13/05 | POL. SURG. RM. 504 |
| --- | --- | --- | --- | --- |

CHARGE CODES & CHARGES CCU9070 — POSSESSING INSTRUMENTS OF CRIME  0907        M1

*See motions on file #1*

---

| PRE-TRIAL/ TRIAL | WAIVER/JURY | | | |
| --- | --- | --- | --- | --- |
| DATE 4-17-06 | ROOM 607 | COURT STENO *Lawrence Mascuilli* | COURT CLERK *Joyce Armoin* |
| JUDGE *Shelly Jaerns New* | ADA *Jason Bologna* | COUNSEL *David Rudenstein, Esq.* |

PLEA 4-17-06.
Jury Selection began and Completed.
4-19-06 - Defendant formally arraigned and entered a plea of Not Guilty.
Opening statements. Testimony begins.
4-24-06 - Testimony Completed. Jury Charge.
Closing arguments.
Jury retired to deliberate at 3:00 p.m.

Clerk: K. Smith. Jury Spencer charged at 11:10 AM, Jury Hopelessly deadlocked.
4-26-06 @ 12:45 pm - Hung Jury. Mistrial declared. New trial date 10-3-06, Rm. 607
By the Court, K.S. / . Attys attached.
Motion for Mistrial granted. Time ruled excludable from 7-10-06
to 10-3-06 (Def. atty unavailable)

By the Court,

_____
Judge

| SENTENCE | | | | |
| --- | --- | --- | --- | --- |
| DATE | ROOM | COURT STENO | COURT CLERK |
| JUDGE | ADA | COUNSEL | |

Savage Motion for Discovery Exhibit 23

| COMMONWEALTH VS. | | SUPPLEMENT TO: INDICTMENT NO. |
|---|---|---|

NAME, A/K/A, ADDRESS, ZIP CODE

*Lamont Lewis*

*PP# 736863*

YEAR, TERM & NO.

*CP 05-04-0002    1*

THIS CASE INVOLVES NOS.

*Bill 1*    TO

## STATUS OF DEFENDANT

### PROCEEDING

| DATE | TYPE | COURTROOM |
|---|---|---|
| 10-3-06 | Jury Trial | 607 |

| COURT CLERK | COURT STENO. |
|---|---|
| Joyce Amoia | Meg Clarke |

| ADA | DEF. COUNSEL |
|---|---|
| Jason Bologna | David Budenstein |

| CONT. CODE | CONT. TO RM. | ON (Date) |
|---|---|---|

- [ ] B.W. ISSUED      [ ] BAIL SUED OUT
- [ ] B.W. WITHDRAWN   [ ] NEW BAIL
- [ ] SAME BAIL        $ _____

### PROCEEDING

| DATE | TYPE | COURTROOM |
|---|---|---|
| | | |

| COURT CLERK | COURT STENO. |
|---|---|

| ADA | DEF. COUNSEL |
|---|---|

| CONT. CODE | CONT. TO RM. | ON (Date) |
|---|---|---|

- [ ] B.W. ISSUED      [ ] BAIL SUED OUT
- [ ] B.W. WITHDRAWN   [ ] NEW BAIL
- [ ] SAME BAIL        $ _____

### PROCEEDING

| DATE | TYPE | COURTROOM |
|---|---|---|

| COURT CLERK | COURT STENO. |
|---|---|

| ADA | DEF. COUNSEL |
|---|---|

| CONT. CODE | CONT. TO RM. | ON (Date) |
|---|---|---|

- [ ] B.W. ISSUED      [ ] BAIL SUED OUT
- [ ] B.W. WITHDRAWN   [ ] NEW BAIL
- [ ] SAME BAIL        $ _____

6-288A

## DOCKET IN CHRONOLOGICAL ORDER
### (List Charge No. and follow with sentence – signed & dated by Judge)

Hon. Shelley Julius New
10-3-06, Rm 607
Charge - Murder - 2502
Jury Selection began.
10-4-06 - Jury Selection completed.
Opening Statements both sides.
Formal arraignment - Plea -
Not Guilty.
testimony began.

10-5-06 - testimony completed
10-6-06 - Jury Retired to deliberate
On 10-10-06 - Case sent to 601
Judge term for further deliberations.
(Judge Julius - New was not
sitting.)
10-24-06 - Scheduling Conference

By the Court,

*Shelley New*

**COMMONWEALTH VS.**

NAME, A/K/A, ADDRESS, ZIP CODE

Lomont Lewis    736863

SUPPLEMENT TO:
INDICTMENT NO.

YEAR, TERM & NO.
CP-51-CR- 0400021-2005

THIS CASE INVOLVES NOS.
TO

## STATUS OF DEFENDANT

### PROCEEDING

| DATE 4/9/07 | TYPE Jury | COURTROOM 607 |
|---|---|---|
| COURT CLERK O.Russell | COURT STENO. Nicole Warren | |
| ADA Jason Bologna | DEF. COUNSEL Lee Mandell ESQ | |
| CONT. CODE | CONT. TO RM. | ON (Date) |

- [ ] B.W. ISSUED
- [ ] B.W. WITHDRAWN
- [ ] SAME BAIL
- [ ] BAIL SUED OUT
- [ ] NEW BAIL
- $ _____

### PROCEEDING

| DATE | TYPE | COURTROOM |
|---|---|---|
| COURT CLERK | COURT STENO. | |
| ADA | DEF. COUNSEL | |
| CONT. CODE | CONT. TO RM. | ON (Date) |

- [ ] B.W. ISSUED
- [ ] B.W. WITHDRAWN
- [ ] SAME BAIL
- [ ] BAIL SUED OUT
- [ ] NEW BAIL
- $ _____

### PROCEEDING

| DATE | TYPE | COURTROOM |
|---|---|---|
| COURT CLERK | COURT STENO. | |
| ADA | DEF. COUNSEL | |
| CONT. CODE | CONT. TO RM. | ON (Date) |

- [ ] B.W. ISSUED
- [ ] B.W. WITHDRAWN
- [ ] SAME BAIL
- [ ] BAIL SUED OUT
- [ ] NEW BAIL
- $ _____

## DOCKET IN CHRONOLOGICAL ORDER
(List Charge No. and follow with sentence – signed & dated by Judge)

Hon Shelley Robins New Jury Selection Completed 4/10/07 Jury Sworn. After formal arraignment deft. enters a plea of not guilty. Open statements completed! CW begins testimony

4/11/07 - CW completes testimony. Defense completes testimony.

4/12/07 Closing statements. Completed. Jury charged and begins deliberations Court takes question from jurors at 3:42 pm

4/13/07
Verdict reached 3:00 pm

By the Court
Shelley Robins New

6-288A

Savage Motion for Discovery Exhibit 23

| | |
|---|---|
| **From:** | Policarpo, Dolores P. |
| **To:** | Angela Valdez |
| **Subject:** | RE: Requests for notes of testimony |
| **Date:** | Tuesday, July 31, 2012 10:55:34 AM |

Good morning Angela,

Hope you are well.  Sorry I did not get to return your call yesterday but I was in and out of meetings.

As I explained to you previously I did not expect a response from Nicole Warren.  I have emailed her numerous times and the emails have been received but that is all that has happened.  At this point in time you will not be getting the transcripts for the

Debbie Flamer has been trying to locate the trial paper tapes for the dates which are outstand and so far no luck.  We have ordered old boxes from archives and they are not in the boxes.  It is possible the tapes were previously ordered and when sent back for archiving were not put back in the right box.

Are you still waiting to hear from any other reporters?

Thanks,

Dolores

*Dolores P. Policarpo*
*Court Administrative Officer*
*100 South Broad Street, 2nd Floor*
*Philadelphia, PA 19110*
*215-683-8000   FAX  215-683-8005*
*dolores.policarpo@courts.phila.gov*

---

**From:** Angela Valdez [mailto:valdez.angela@gmail.com]
**Sent:** Monday, July 23, 2012 8:36 AM
**To:** Policarpo, Dolores P.
**Subject:** Re: Requests for notes of testimony

Dolores,

Could you give me a call? I have not heard back from anyone regarding the other requests.

Thanks,

Angela

On Monday, July 9, 2012, Angela Valdez wrote:
Thanks Delores!
Coleman: I will put a check in the mail today for the Coleman notes.  I will mail it with a copy of my request.

Savage Motion for Discovery Exhibit 24

Regarding the others:

Ricky Brown/Steven Northington: I have a partial transcript so it seems like it must be somewhere. This notation appears on the cover of one of the pages I already have:
Original File Aprif!'16,"2007.txt, 79 Pages
CRS Catalog ID: 07081350

Lamont Lewis: I also have partials of two of the three trials. It's important that I get full transcripts of all. Regardless, the note on one of them says:
Original File 4-19-06.txt, 184 Pages
CRS Catalog JD: 06091672

Is someone else handling Kaboni's case?

Thank you much!


On Mon, Jul 9, 2012 at 10:25 AM, Policarpo, Dolores P. <Dolores.Policarpo@courts.phila.gov> wrote:


**Good morning Ms. Valdez,**


**Our office is in receipt of your request for notes of testimony on a number of trials.  I will be assisting you in obtaining/or not the notes from some of the cases.**


**C v Eugene Coleman**

**CP-51-CR-1100661-2003**

**3/31/2006 – J Lerner**

**Notes are completed – cost is $35.00**

**The check is made payable to the Court Reporter Administration**


**C v Ricky Brown**

**CP-51-CR-0707961-2005**

**4/19 & 4/24/2007 are not archived on our system – I will contact Debra Flamer, who is no longer with the FJD and find out the status of the notes.  Deb was with J Sarmina for the entire trial so I do not understand why the notes are not completed.**

Savage Motion for Discovery Exhibit 24

**C v Lamont Lewis**

**CP-51-CR-0400021-2005**

**4/10-13/2007 – J Robins-New**

**I will attempt to contact the court reporter, Nicole Warren, about these notes, but Ms. Warren left the FJD and is not always able to recover her old work.  I will keep you apprised of this situation.**

**Any questions please feel free to contact me.**

**Thanks,**

**Dolores**

--
Angela Valdez
Investigator
District of Columbia License No.: 3164
(202) 215-6404

--
Angela Valdez
Investigator
District of Columbia License No.: 3164
(202) 215-6404

Savage Motion for Discovery Exhibit 24

# FEDERAL BUREAU OF INVESTIGATION

**Confidential Human Source (CHS) Reporting Document**

**Reporting Date:**  9/11/2007

**Case ID #:**  ██████████████████

**Contact Date:**  7/7/2007

**Type of Contact:** In Person

**Location:**  Philadelphia, PA

**Writer:**  SA Kevin M. Lewis:FKW
**Other(s) Present:** Detective Thomas R. Zielinski (PHDAO)

**Source Reporting:**   At approximately 12:53 p.m., source was provided with a body recorder to record his conversations with Robert Merritt, Sr. at the Remax Real Estate Office located at 2021 Stenton Avenue, Philadelphia, Pennsylvania (PA).  The source and the source's car were searched for large amounts of money and contraband.  No contraband was located.  The source was in possession of $679 in U.S. currency.  Four hundred dollars of the currency had been provided to the source by the investigating agents as a source payment with the instructions that $200 were to be provided to Robert Merritt as partial payment for a debt the source owed Merritt.

A review of the recording revealed the following:

When the source arrived at the Remax Real Estate Office, he spoke with a female named "Cookie."  "Cookie" indicated that Robert Merritt was not there at the time.  Source returned to meet with the investigating agents and the recorder was turned off at 1:20 p.m.

At approximately 2:16 p.m., the source was again provided with a body recorder to record his conversations with Robert Merritt.  The source and the source's vehicle were searched for money and contraband.  The source was found to be in possession of $679.  No contraband was located.

A review of the recording revealed the following:

Source met with Merritt and told Merritt that he had $200 for him. The sound of money being counted can be heard in the background. Merritt and source talk about the source owing an additional $800. The source asked about "BJ" (Robert Merritt, Jr.). Robert Merritt indicates that "BJ" is in prison in West Virginia. The source and Merritt have a conversation about non-pertinent topics. The source asked Merritt whether he needs any help at work. The source asked Merritt whether he needs any help "laying carpet" or "burning shit down." Merritt tells the source that the source doesn't know how to burn. Merritt tells the source that the source made it known to "too many people." Merritt asked the source if he knows how many places "he (Merritt) burnt" and that the only people that have any idea is the one that the source did. The source and Merritt talk about that being 20 years ago. Merritt tells the source that he cannot use the source in that category. Merritt tells the source that he has a couple of people that he needs some "money out of."

The source met with the investigating agents, was searched and was found to be in possession of $479. No contraband was located on the source or in the source's car.

♦♦

2

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription     7/2/2004

Source, who is not in a position to testify, provided the following information:

Source stated that "Manny" (RAYMOND WILMORE) has been in contact with "Dollar Bill" (STEVEN NORTHINGTON). Source stated that "Manny" believes that KABONI SAVAGE is going to ultimately plead guilty to his drug case. Source stated that "Manny" has been having arguments with TARIQ EL SHABAZZ because SHABAZZ wants "Manny" to pay more money for KABONI SAVAGE's defense and "Manny" believes that SHABAZZ is going to plead SAVAGE out.

Investigation on     7/2/2004     at PHILADELPHIA, PA.     (telephonically)

File #                                              e dictated    7/2/2004

by    SA KEVIN M. LEWIS:FKW

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Savage Motion for Discovery Exhibit 26



# *MEMORANDUM*

**POLICE**
**CITY OF PHILADELPHIA**

**DATE   03/19/98**

**TO**        COMMANDING OFFICER, POLICE RADIO

**FROM**    COMMANDING OFFICER, HOMICIDE DIVISION

**SUBJECT**   REQUEST RADIO TAPES/ TELEPHONE TRANSMITTALS

1   Request all radio tapes, telephone and radio transmittals pertaining to the following incident being investigated by the Homicide Division

INCIDENT      Shooting
DATE/TIME    03/19/98 at 4 05PM
LOCATION     8th & Butler Sts
DIVISION       East

2   DC#  98-25-026882

3   Homicide Case Number:  M98-79

4   Assigned Investigator   Det. CANNON #9042

Inspector Jerrold Kane
Commanding Officer
Homicide Division

Savage Motion for Discovery Exhibit 27

Case Id:            R-98-332
Case Description:
Call Id:            R-98-332
Call Description:
Image Id:           116822

# Crime Scene Single Image





6/27/02        11:34:30AM

Savage Motion for Discovery Exhibit 28

Case Id:                    R-98-332
Case Description:
Call Id:                    R-98-332
Call Description:
Image Id:                   116825

# Crime Scene Single Image





6/27/02        11:34:30AM

Savage Motion for Discovery Exhibit 28

Case Id:                    R-98-332
Case Description:
Call Id:                    R-98-332
Call Description:
Image Id:                   116828

# Crime Scene Single Image





6/27/02        11:34:30AM

Savage Motion for Discovery Exhibit 28



Crime Scene Single Image

Case Id:              R-98-332
Case Description:
Call Id:              R-98-332
Call Description:
Image Id:             116834

4

6/27/02       11:34:30AM

Savage Motion for Discovery Exhibit 28

Case Id:              R-98-332
Case Description:
Call Id:              R-98-332
Call Description:
Image Id:             116837

# Crime Scene Single Image



6/27/02      11:34:30AM

Savage Motion for Discovery Exhibit 28

Case Id:            98-332
Case Description:
Call Id:            98-332
Call Description:
Image Id:           116792

# Crime Scene Single Image





6/27/02        12:00:22PM

Savage Motion for Discovery Exhibit 28

Case Id:            98-332
Case Description:
Call Id:            98-332
Call Description:
Image Id:           116795

# Crime Scene Single Image



6/27/02        12:00:22PM

Savage Motion for Discovery Exhibit 28

Case Id:            98-332
Case Description:
Call Id:            98-332
Call Description:
Image Id:           116774

# Crime Scene Single Image





6/28/02        3:47:47PM

Savage Motion for Discovery Exhibit 28

Case Id:              98-332
Case Description:
Call Id:              98-332
Call Description:
Image Id:             116768

# Crime Scene Single Image



6/28/02        3:47:47PM

Savage Motion for Discovery Exhibit 28

**While You Were Out**

FOR _____  Urgent ☐

DATE _____ TIME _____ A.M. P.M.

M _____ Burns

OF _____

PHONE _____
AREA CODE    NUMBER    EXTENSION

| TELEPHONED | | PLEASE CALL | |
| CAME TO SEE YOU | | WILL CALL AGAIN | |
| RETURNED YOUR CALL | | WANTS TO SEE YOU | |

MESSAGE _____ Mitous
3600 Darela St
3600 Marshall St
afternoon
12PM
Block Bonnervll
3510 marshal

SIGNED _____ SSI

adams 9711

---

**While You Were Out**

FOR Hawkins    Urgent ☐

DATE 6-78-05    TIME 110 A.M. P.M.

M Tammy Parker

OF re Barry Parker

PHONE 215- ███    EXTENSION
AREA CODE    NUMBER

| TELEPHONED | | PLEASE CALL | |
| ... TO SEE YOU | | WILL CALL AGAIN | |
| RETURNED YOUR CALL | | WANTS TO SEE YOU | |

MESSAGE
Shooter is
Lamont
9th + Pike

SIGNED

adams 9711

Savage Motion for Discovery Exhibit 29

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    11/26/2001

Source advised of having heard that the PHILADELPHIA POLICE DEPARTMENT (PHPD), Homicide Unit, may be looking for KABONI SAVAGE for his involvement in the murder of CARLTON LNU (Last Name Unknown).

Source stated that CARLTON LNU is believed to have been involved in the August 29, 2001, murder of RONALD WALSTON, also known as (aka) "Pumpkin" at 8th and Butler Streets in North Philadelphia.

Source stated that after WALSTON was murdered, CARLTON, the suspect in that murder, was killed two or three weeks later. Source said that CARLTON had lived directly across the street from KABONI SAVAGE whose address is 3643 North Darien Street and they were actually friends having grown up together. Source stated that SAVAGE's alliance would have been with WALSTON since he was part of SAVAGE's drug organization.

Source has heard that CARLTON's mother, again who resides directly across the street from SAVAGE, has been to the PHPD Homicide and the PHILADELPHIA DISTRICT ATTORNEY's OFFICE telling them that SAVAGE orchestrated her son, CARLTON's, murder.

Source stated that CARLTON's mother believes that SAVAGE had a North Philadelphia drug dealer known as "LAMONT" carry out the killing. This individual, LAMONT, was shot approximately two weeks after CARLTON got killed and source believes that was in retaliation for CARLTON's murder.

Source stated that CARLTON's mother has moved off of SAVAGE's block for fear SAVAGE will come after the rest of her family. Source stated that LAMONT LNU used to regularly hang at KABONI SAVAGE's house on Darien Street and also at a bar located at 8th and Venango Streets where SAVAGE's drug crew hung out. Source believes that LAMONT has several prior drug arrests, all of which

Investigation on    11/19/01    at  PHILADELPHIA, PA.

File

Date dictated    11/19/01

by

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of ___SOURCE_____ , On _11/19/01____ , Page __2___

probably occurred in the area of 8th and Butler Streets in North Philade

    Source is also aware that CRAIG OLIVER is now involved in the drug business with JEFF GRAY, aka "Jazzie Jeff," and supplies him from time to time.

    Source is also aware that CRAIG OLIVER is attempting to re-establish a drug hookup with a black male who currently resides in Houston, TX.  Source stated that this individual was originally from Philadelphia, but is stationed at some type of military unit in the Houston, TX. area.

    Source stated that CRAIG OLIVER and MANSUN ABDULLAH, aka "Shafeeq," used to make trips to visit this individual in Houston and bring back cocaine.  Source believes these trips stopped when ABDULLAH was murdered in September of 2000 in North Philadelphia.

### ADMINISTRATIVE

    The indivivdual "LAMONT" mentioned above is believed to be identical to a member of SAVAGE's drug organization known as LAMONT RUSSELL, B/M, DOB ▇▇▇72, SSAN ▇▇▇▇▇▇ PPN 860534, FBI #572925PA1, with a last known address of 3903 North 9th Street, Philadelphia, PA.